**25-6898**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TARONTAE D. JACKSON,
Plaintiff-Appellee,

v.

STOLK, et al.,
Defendants-Appellants.

---

On Appeal from the United States District Court
For the District of Nevada,
D.C. No. 3:23-cv-00247-MMD-CSD

---

## DEFENDANTS - APPELLANTS' OPENING BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Seth Davis, Daniel Jacobs,*
*Dent Kirkland and Michael Stolk*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................ii

TABLE OF AUTHORITIES......................................................................iv

I.  INTRODUCTION.............................................................................1

II. JURISDICTIONAL STATEMENT...............................................2

III. STATEMENT OF THE ISSUES PRESENTED............................3

IV. STATEMENT OF CASE AND PROCEDURAL HISTORY ............3

V.  STANDARD OF REVIEW ..............................................................12

VI. SUMMARY OF ARGUMENT........................................................14

VII. ARGUMENT ..................................................................................15

A.  Defendants Are Entitled to Qualified Immunity Under
    Established Precedent ..........................................................15

B.  Defendants did *NOT* Use Excessive Force Against
    Jackson in Violation of the Eighth Amendment ..................18

    1.  Sgt. Stolk Had No Personal Involvement in
        Jackson's Cell Extraction and Therefore Did and
        *NOT* Violate the Eighth Amendment..........................19

    2.  The Cell Extraction Team's Use of Force Was
        Necessary and *NOT* Excessive ...................................22

    3.  Jackson Failed to Establish a Sadistic or
        Malicious Purpose for the Force Applied.....................40

      4.     Jackson Failed to Establish that Sgt. Jacobs Personally Employed Any Force, Much Less Excessive Force ........................................................... 41

  C.    Jackson Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law ..... 43

VIII. CONCLUSION ................................................................. 47

STATEMENT OF RELATED CASES .................................................. 49

CERTIFICATE OF COMPLIANCE ...................................................... 49

CERTIFICATE OF SERVICE.............................................................. 50

iii

# TABLE OF AUTHORITIES

## CASES

*Allen v. Bosley*, 253 Fed. Appx. 658, 2007 WL 3244002 (9th Cir. 2007) ........................................................................ 27, 28, 29, 35, 40

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) ............................................................................. 12, 13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................. 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................... 19

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) .................. 18, 19, 37

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ................................................. 3

*Bell v. Wolfish*, 441 U.S. 520 (1979) ....................................................... 35

*Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992) ................................... 31

*Camp v. Brennan*, 54 Fed. Appx. 78, 2002 WL 31723093 (3d Cir. 2002) ......................................................................................... 30

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) .............................. 16, 47

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................... 14

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021) ..................... 16

*Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) .............................. 38

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ........................... 44

*Curley v. City of N. Las Vegas*, 772 F.3d 629 (9th Cir. 2014) ............... 12

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .............................. 13

*Eccleston v. Oregon ex rel. Oregon Dept. of Corr.*, 168 Fed. Appx. 760, 2006 WL 390228 (9th Cir. 2006)...............................27, 28, 29, 39

*Farmer v. Brennan*, 511 U.S. 825 (1994) .........................................20, 42

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013) ..............................37

*Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018) ..................................18

*Howard v. Nunley*, 465 Fed. Appx. 669, 2012 WL 35396 (9th Cir. 2012)............................................................ 26, 28, 29, 35, 39

*Hudson v. McMillian*, 503 U.S. 1 (1992)................................... 18, 22, 23

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022) ..................23, 24, 43

*Hunter v. Young*, 238 Fed. Appx. 336, 2007 WL 1678060 (10th Cir. 2007).....................................................................................30

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990)..........14

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001) ................................ 40, 47

*Jefferson v. Cruse*, 324 Fed. Appx. 599, 2009 WL 1112762 (9th Cir. 2009)................................................................................30, 31

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002)....................................19

*Keller v. Trefz*, 66 Fed. Appx. 44, 46, 2003 WL 1870718 (7th Cir. 2003).....................................................................................41

*Kisela v. Hughes*, 584 U.S. 100 (2018) ............................................ 16, 17

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988)................................. 19, 20

*LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993) ...................................28

*Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) .........................30

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) ....................................................................................... 13

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010) ................................. 19

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .............................................. 2

*Reichle v. Howards*, 566 U.S. 658 (2012) ........................................ 15, 16

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) .............................. 16, 17

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992) ............................................................................ 14

*Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 990 (C.D. Cal. 2014) ................................................................................. 44, 45

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) 18, 44, 45

*Rodriguez v. Elmore*, 407 Fed. Appx. 124, 2010 WL 5393881 (9th Cir. 2010) ................................................................. 26, 27, 28, 29, 41

*Scott v. Harris*, 550 U.S. 372 (2007) ...................................................... 21

*Skinner v. Cunningham*, 430 F.3d 483 (1st Cir. 2005) ..................... 33, 34

*Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984) ................. 24, 25, 26, 29, 36

*Stenzel v. Ellis*, 916 F.2d 423 (8th Cir. 1990) ................................. 38, 39

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ................................. 42

*Whitley v. Albers,* 475 U.S. 312 (1986) ................................. 19, 31, 32, 33

*Wilkins v. Gaddy*, 559 U.S. 34 (2010) ......................................... 23, 40, 47

*Zorn v. Linton*, Case No. 25–297, 2026 WL 795469 (U.S. Mar. 23, 2026) ........................................................................... 17, 45, 46

## **STATUTES**

28 U.S.C. § 1291 ............................................................................. 2

## **REGULATIONS**

NDOC AR 707 ................................................................................. 4

## **RULES**

9th Cir. R. 32-1 ............................................................................ 49

Fed. R. App. P. 32 ........................................................................ 49

Fed. R. Civ. P. 56 ......................................................................... 12

## I.    INTRODUCTION

The district court erred by denying the motion for summary judgement, filed by Defendants-Appellants Seth Davis, Daniel Jacobs, Dent Kirkland and Michael Stolk, because they are entitled to qualified immunity, as employees or former employees of the Nevada Department of Corrections (NDOC).

Plaintiff-Appellee Tarontae Jackson is a violent offender, lawfully incarcerated with NDOC, who has repeatedly been found with concealed weapons.  Jackson concedes he repeatedly and intentionally refuses direct orders, including the order to submit to restraints, in an attempt to assert his authority over that of NDOC.  These intentional actions placed NDOC staff and other offenders in danger, especially when officers did not know whether Jackson was concealing a weapon.

Jackson was repeatedly ordered to submit to restraints after reports that he propelled urine on staff.  Jackson concedes that he intentionally refused to comply.  Due to Jackson's admitted intentional disobedience, the Associate Warden properly authorized the use of force, including the use of a taser, to extract Jackson from his cell so that he and his cell could be searched for the items used to propel the urine.

Defendants did not violate the Eighth Amendment's prohibition against cruel and unusual punishment because the use of force was a good faith effort to restore discipline, after Jackson intentionally

1

refused to comply with officers' lawful orders, and therefore the force was not used maliciously and sadistically for the purpose of causing harm. By properly employing the use of force, Defendants were able to extract Jackson from his cell in less than two minutes, with minimal injury.

Defendants are entitled to qualified immunity because they did not violate the Eighth Amendment, much less violate a right clearly established beyond debate. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant Defendants' motion because they are shielded by qualified immunity.

## II.   JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal, pursuant to 28 U.S.C. § 1291, because Defendants' notice of appeal of the district court's denial of Defendants' motion for summary judgment, asserting qualified immunity, was timely filed on October 29, 2025 (ER-295-97, ECF No. 65). *See* Fed. R. App. P. 4 (the notice of appeal "must be filed with the district court clerk within 30 days after the entry of the judgment or order appealed from"); *see also Plumhoff v. Rickard*, 572 U.S. 765 (2014) (holding an appellate court properly exercises jurisdiction over an appeal of the denial of a motion for summary judgment asserting qualified immunity when it is "beyond serious

2

dispute" that the defendants did not violate the constitution, even though the district court "determine[ed] that there exists a trialable issue of fact"); *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate appeal," which may be raised "at either the dismissal stage or the summary judgment stage").

## III.  STATEMENT OF THE ISSUES PRESENTED

**A.**  Whether the district court erred by denying Defendants' motion for summary judgment on Plaintiff offender's claim of excessive force in violation of the Eighth Amendment when the use of force was employed only after Plaintiff repeatedly and intentionally refused to obey the lawful orders of prison officers to submit to restraints, and the objectively reasonable force was applied in a good faith effort to maintain or restore discipline because it was unknown whether Plaintiff, a violent offender, was concealing a weapon.

**B.**  Whether district court erred by denying Defendants' motion for summary judgment asserting qualified immunity when Plaintiff failed to point to facts establishing a violation of the Eighth Amendment, much less a violation of clearly established law, beyond debate.

## IV.  STATEMENT OF CASE AND PROCEDURAL HISTORY

Jackson was lawfully incarcerated in the custody of NDOC and housed at Ely State Prison (ESP).  ER-110, ECF No. 53-1 at 4.  Prior to

3

December 21, 2022, Jackson had a long history of disobedience, aggression, and violence. ER-152-63, ECF No. 53-6 at 3-14. In fact, prison officials repeatedly found Jackson with prison made weapons, including a blade made from scissors. ER-159-60, ECF No. 53-6 at 10-11.

On December 21, 2022, at approximately 6:08 a.m., Sgt. Stolk reported that when feeding inmates in Unit 2, Jackson had half his window covered in violation of NDOC AR 707.02(6). ER-152, ECF No. 53-6 at 3; ER-292, ECF No. 6 at 3. Officer Stolk ordered Jackson to uncover his cell window and turn on his lights. ER-152, ECF No. 53-6 at 3. Jackson refused to comply but merely stared at Sgt. Stolk. ER-152, ECF No. 53-6 at 3. Sgt. Stolk repeated the order two (2) more times. ER-152, ECF No. 53-6 at 3. Jackson each time failed to comply.

As a result, Sgt. Stolk moved on to feed the next cell. ER-152, ECF No. 53-6 at 3. Stolk reported that Jackson then propelled an unknown liquid substance, which smelled like urine, out of the side of his door striking Sgt. Stolk's left back side. ER-152, ECF No. 53-6 at 3. Sgt. Stolk turned around and Jackson yelled, "fuck you bitch, I'll show you just like I showed them." ER-152, ECF No. 53-6 at 3. Jackson was eventually found guilty of violating MJ40, propelling, a major violation. ER-152, ECF No. 53-6 at 3.

4

Due to the propelling, a cell extraction was required to allow Officers to search Jackson's cell and properly identify what liquid was propelled, so that prison staff may assess whether such liquids were hazardous or posed a health risk. ER-133-34, ECF No. 53-3 at 4-5. A planned use of force was authorized because Jackson refused to comply with orders to come out of his cell so that his cell could be searched. ER-168, ECF No. 53-8 at 3.

At approximately 12:46 p.m., Sgt. Jacobs assembled a planned-use-of-force team, consisting of Senior Correctional Emergency Response Team (CERT) Officers Davis and Brown, and CERT Officers Kleer, Main and Kirtland. ER-168, ECF No. 53-8 at 3; Video Recording, Time Index (TI) 0:01-0:48.[1] A review of Jackson's medical records revealed that Jackson was on the desensitized list which prevented the use of chemical agents. The use of taser, however, was authorized should Jackson not comply with orders. ER-167, 172-73, ECF No. 53-8 at 2, 7-8; Video Recording, TI 0:14-0:22. The team was briefed and CERT Officer Kleer was assigned to the shield, CERT Officer Kirtland was assigned the upper body and taser, Senior CERT Officer Brown was assigned the upper body, CERT Officer Main was assigned legs,

---

[1] Concurrent with this brief, Defendants-Appellants moved to transmit the video recording, which was manually filed with the district court as Exhibit G to Defendants' motion for summary judgment. ER-85-86, ECF No. 54.

Senior CERT Officer Davis was assigned legs. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 0:22-0:40.

Once the briefing was completed, the team entered the unit and lined up in front of Jackson's cell. ER-168, ECF No. 53-8 at 3; Video Recording, TI 0:40-1:48. Jackson was ordered to put his hands through the red box food slot so that he could be restrained and was warned that force would be applied if he did not comply. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 1:48-1:55. Jackson again refused to comply with officers' lawful orders. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 1:55-1:58. Due to Jackson's repeated refusals to obey officers' orders, the use of force was authorized. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 1:58-2:06.

Jackson retreated to the back of his cell and laid down on his bunk on his stomach (ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 2:06-2:33), with his hands behind his back (ER-293, ECF No. 6 at 4).[2] Officers then entered the cell, and repeatedly ordered Jackson to give up his hands. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI

---

[2] Defendants-Appellants dispute that Jackson had his hands behind his back when he entered the cell, and instead Jackson's hands were under his stomach. ER-167-73, ECF No. 53-8 at 2-8. For purposes of this appeal only, however, the facts should be construed as establishing that Jackson had his hands behind his back when Officers entered his cell.

2:12-2:33. Because Jackson was lying on his stomach, Officer Kirtland could not determine if Jackson had a weapon under his stomach. ER-167, 171-72, ECF No. 53-8 at 2, 6-7. As it would only take a fraction of a second for Jackson to reach under his stomach and retrieve any hidden weapon, Officer Kirtland immediately deployed his taser and stunned Jackson in the lower back. ER-167, 172, ECF No. 53-8 at 2, 7; Video Recording, TI 2:14-2:16. Jackson, however, actively resisted restraints and began to squirm, roll and sporadically move his torso. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 2:14-2:16. Officer Kirtland gave Jackson several orders to give up his hands. ER-167, 173, ECF No. 53-8 at 2, 8; Video Recording, TI 2:14-2:16. Because Jackson continued to struggle and refused to allow officers to gain control of his arms, Officer Kirtland stunned Jackson a second time. ER-167, 169, 173, ECF No. 53-8 at 2, 4, 8; Video Recording, TI 2:16-20. This second attempt was ineffective because Jackson's squirming and struggling affected contact with the drive stun. ER-167, 169, 173.

After Officer Brown gave Jackson multiple orders to give his hands, Brown delivered multiple strikes to Jackson's upper extremities in an effort to gain control of Jackson's right hand so that he could be restrained. ER-171, ECF No. 53-8 at 6; Video Recording, TI 2:28-58.

Officer Davis also allegedly hit Jackson in both eyes and his temple.[3] ER-293, ECF No. 6 at 4. While Officers were ordering Jackson to "give us your hands," Jackson would reply "you have my hands." Video Recording, TI 2:16-20.

Because Officer Kirtland observed that officers continued to struggle to gain control of Jackson's arms due to Jackson's resistance, Officer Kirland stunned Jackson a third time, which appeared to be effective in resolving Jackson's continued resistance. ER-167, 169 171, ECF No. 53-8 at 2, 4, 8; Video Recording, TI 2:35-45. After Officer Brown gained positive control of Jackson's right hand, and Officer Kleer was able to gain control of Jackson's left wrist, they were able to secure the wrist restraints. ER-171-72, ECF No. 53-8 at 6-7; Video Recording, TI 2:38-3:06. Securing the wrist restraints can be heard in the video of the incident, after which Jackson indicates "that thing hurts." Video Recording, TI 3:03-3:06. Officer Main was then able to gain control of Jackson's right leg, and Officers Main and Davis applied leg restraints. ER-168-70, ECF No. 53-8 at 3-5. The leg restraints can be seen in the

---

[3] Defendants-Appellants dispute that Officer Davis ever hit Jackson at all, much less in the eyes and temple. Officer Davis was not near Jackson's head as he was assigned to restrain Jackson's legs and was doing so. ER-168, ECF No. 53-8 at 3; Video Recording, TI 0:22-0:40. For purposes of this appeal only, however, the facts should be construed as establishing that Officer Davis hit Jackson's eyes and temple.

8

video of the incident, and then securing the leg restraints can be heard. Video Recording, TI 3:10-3:15.

Due to Jackson's hostility and aggressiveness, a spit mask was placed over Jackson's head. ER-169, ECF No. 53-8 at 4. After Jackson was fully restrained, Officer Brown ordered the team to move Jackson to the shower to conduct an unclothed body search. ER-169, 171, ECF No. 53-8 at 4, 6; Video Recording, TI 3:40-3:54. Jackson was then assisted to his feet, placed in a modified escort, and taken to the shower. ER-169, ECF No. 53-8 at 4; Video Recording, TI 3:45-4:18. Despite Jackson's refusal to follow orders and his active resistance, the extraction took less than 1 minute and 50 seconds. Video Recording, TI 2:12-3:58.

During the strip search, officers informed Jackson that they were there to make him safe. Video Recording, TI at 5:33-37. Jackson responded, "if I ever see one of y'all on the streets I'm gonna kill y'all." Video Recording, TI at 5:43-48. After this initial death threat, Jackson continued to make several more death threats to officers promising that he will kill them. Video Recording, TI at 5:48 - 12:20.

When it was time for Jackson to be extracted out of the shower, an officer ordered Jackson to step to the back of the shower. Jackson again continued his pattern and practice of refusing to comply with lawful orders. Video Recording, TI at 8:10 - 8:20. Jackson then threatened,

9

that if he ever saw one of the officers by himself: "I'm gonna beat your ass, beat your ass, and then I gonna stab and beat your ass." Video Recording, TI at 10:05-10:12. Jackson then indicated that he would be out in four months and threatened that officers should watch their backs. Video Recording, TI at 10:20-30. When officers ordered Jackson to put on his shirt, Jackson refused by responding, "I ain't putting on shit." Video Recording, TI at 10:40-45. Jackson, however, finally puts on his shirt. Video Recording, TI at 11:05-10. After approximately eight (8) minutes of denigrating officers, Jackson finally complied with officers' instructions to submit to restraints before exiting the shower. Video Recording, TI at 12:15-20.

Upon being removed from the shower, Jackson was immediately taken to be examined and treated by medical. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 12:20-17:45. The medical examination revealed "epitasix" (a nose blead), described as "minimal," and a "hematoma" (a bad bruise), one inch above the left eyebrow. ER-175, ECF No. 53-9 at 2. The examination also revealed "skin discoloration congruent with early bruising to his right jaw," "redness to the back with no "skin breakdown [(damage to the skin)] or abrasions." ER-175, ECF No. 53-9 at 2; *see also* Video Recording, TI 12:22-26. Jackson's speech was clear, he was able to complete full sentences with ease, and "no signs of reparatory or physical distress." ER-175, ECF No. 53-9 at

10

2. Jackson was instructed to kite medical if he believed he needed additional medical care.  ER-175, ECF No. 53-9 at 2.

Even though Jackson admits he intentionally refused to follow officers' lawful orders to submit to restraints, and even though Jackson's injuries were minor and were direct result of his admitted disobedience, Jackson submitted a complaint to the district court, on October 11, 2023, alleging that Sgt. Stolk and Sgt. Jacobs and Officer Davis and Officer Kirtland violated the Eighth Amendment based on the force employed when Jackson he was extracted from his cell.  ER-290-94, ECF No. 6.  The district court screened Jackson's complaint and allowed a single excessive force claim to proceed against Defendants. ER-281-89, ECF No. 7.

Because Defendants are shielded by qualified immunity and because Jackson did not exhaust his administrative remedies, Defendants moved for summary judgment.  ER-87-269, ECF No. 53. Defendants are shielded by qualified immunity because Jackson, a violent offender with a history of concealing weapons, admits he repeatedly and intentionally disobeyed orders to voluntarily submit to restraints, and because the force applied was reasonable, in a good faith effort to maintain and restore discipline, as the officers did not know whether Jackson was concealing a weapon.  Defendants, therefore, did not violate the Eighth Amendment, much less violate clearly

11

established law required to overcome Defendants' entitlement to qualified immunity.

After the motion was fully briefed (ER-46-84, ECF Nos. 56 & 57), the Magistrate Judge recommended granting summary judgment based on Jackson's failure to exhaust and therefore did not address qualified immunity. ER-38-45, ECF No. 58. Jackson filed an objection to the Report and Recommendation (ER-29-37, ECF No. 61), to which Defendants opposed (ER-17-28, ECF No. 62).

On October 10, 2025, the district court wrongly rejected the Report and Recommendation, and also wrongly denied Defendants' motion for summary judgment asserting qualified immunity. ER-4-20, ECF No 63. Because the district court erred, Defendants timely filed their notice of appeal on October 29, 2025. ER-295-97, ECF No. 65.

## V. STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). This Court "may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of

12

material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Arpin*, 261 F.3d at 919. In *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained that the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." To meet this burden when "the nonmoving party has the burden of proof at trial, the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). "The moving party need not disprove the other party's case." *Id.* Once the moving party makes this showing, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454 F.3d at 987. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming*

13

*Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI.  SUMMARY OF ARGUMENT

Defendants are entitled to qualified immunity and therefore the district court improperly denied their motion for summary. Defendants did not violate the Eighth Amendment when employing force to extract Jackson from his cell. This use of force was only applied after Jackson, a violent offender who had a history of concealing weapons, repeatedly and intentionally refused to follow NDOC officers' lawful orders to submit to restraints, in an attempt to assert his authority over that of NDOC, which refusal and denial of authority placed NDOC staff and other inmates in danger because Defendants did not know whether Jackson was concealing a weapon. Defendants did not violate the Eighth Amendment because the use of force was a good faith effort to restore discipline, after Jackson repeatedly and intentionally disobeyed officers' orders, and therefore was not used maliciously and sadistically for the purpose of causing harm. By properly employing the use of

14

force, Defendants were able to extract Jackson from his cell in less than two minutes, with minimal injury.

Defendants are entitled to qualified immunity because Defendants did not violate the Eighth Amendment, much less violate a right clearly established beyond debate. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant Defendants' motion because Defendants are shielded by qualified immunity.

## VII. ARGUMENT

### A. Defendants Are Entitled to Qualified Immunity Under Established Precedent

Defendants are shielded by qualified immunity. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743. In *Reichle v. Howards*, 566 U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear "that every 'reasonable official would have understood that what he is doing violates that right.'" The "right allegedly violated

15

must be established, not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* at 665. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 664. "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id.*

In *Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024), this Court recognized "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *Id.* at 660–61, quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful."

16

*Id*. Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 105. Accordingly, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 104.

Recently, in *Zorn v. Linton*, Case No. 25–297, 2026 WL 795469 at *2 (U.S. Mar. 23, 2026), the Supreme Court reaffirmed that to "find that a right is clearly established," required to overcome qualified, courts "need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." "The relevant precedent must define the right with a ***high degree of specificity***, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (emphasis added). Officials "receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'known' that it proscribed their specific conduct." *Id.*

This Court should reverse the district court's denial of Defendants' motion for summary judgment because Jackson cannot point to evidence that would be admissible at trial establishing a violation of the

17

Eighth Amendment, much less a violation of a clearly established right, beyond debate, required to overcome qualified immunity.

### B. Defendants did _NOT_ Use Excessive Force Against Jackson in Violation of the Eighth Amendment

Jackson failed to point to any evidence establishing the required elements necessary to succeed on an excessive force claim in violation of the Eighth Amendment. In _Rodriguez v. County of Los Angeles_, 891 F.3d 776, 795 (9th Cir. 2018), this Court held to establish an excessive force claim under the Eighth Amendment, the plaintiff must establish: (1) the defendant "used excessive and unnecessary force under all of the circumstances;" (2) defendant "acted maliciously and sadistically for the purpose of causing harm;" and (3) "the acts of the [defendant] caused harm to the [plaintiff]." _See also Hoard v. Hartman_, 904 F.3d 780, 788 & n.9 (9th Cir. 2018) (same). In _Bearchild v. Cobban_, 947 F.3d 1130, 1140 (9th Cir. 2020), this Court identified both subjective and objective components to these elements.

The "subjective inquiry for excessive force claims 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" _Id._ at 1140 _quoting Hudson v. McMillian_, 503 U.S. 1, 6-7 (1992). The objective component requires the prisoner to "objectively show that he was deprived of something sufficiently serious."

18

*Bearchild*, 947 F.3d at 1140 (citation and internal quotation omitted). Because the use of force relates to the prison official's legitimate interest in maintaining security and order, courts must be deferential when reviewing the necessity of using force. *Whitley v. Albers,* 475 U.S. 312, 321-22 (1986); *see also Norwood v. Vance*, 591 F.3d 1062, 1066-67 (9th Cir. 2010).

### 1. Sgt. Stolk Had No Personal Involvement in Jackson's Cell Extraction and Therefore Did and *NOT* Violate the Eighth Amendment

Jackson must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). To "be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original). "In order to prevail and recover damages against any of the named prison officials," Jackson "must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and

19

(2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id*. at 634.

In *Farmer v. Brennan*, 511 U.S. 825, 828, 832, 837 (1994), the Supreme Court held "deliberate indifference" can only be established if the prison official "knowingly and unreasonably disregard[s] an objectively intolerable risk of harm." "[D]eliberate indifference entails something more than mere negligence." *Id*. at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838.

The district court's sole basis for finding that Sgt. Stolk violated the Eighth Amendment was Jackson's cursory allegation in his complaint that Sgt. Stolk was present but did not stop the other officers. ER-6, ECF No. 63 at 3, citing ER-293, ECF No. 6 at 4. The district court, however, ignored conclusive video evidence establishing that Sgt. Stolk was not a part of the cell extraction team, and could neither know what force was applied, nor had any ability to alter the force applied.

In *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court held that an assertion that is "blatantly contradicted by the record, so

20

that no reasonable jury could believe it" will not create a genuine dispute of material fact at summary judgment. Jackson's allegation that Sgt. Stolk's was involved in the cell extraction "is blatantly contradicted" by the video recording, "so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380-81.

The video conclusively establishes that Sgt. Stolk was not a member of the cell extraction team and was not involved in the cell extraction. Instead, the team consisted of Sgt. Jacobs and Officers Davis, Brown, Kleer, Main and Kirtland. Video Recording, Time Index (TI) 0:01-0:48; ER-167-73, ECF No. 53-8 at 2-8. The video establishes that these six (6) officers were the only ones involved in Jackson's cell extraction. Video Recording, Time Index (TI) 1:38-4:00; ER-167-73, ECF No. 53-8 at 2-8. The only other officers present were Officer Mathew Noriega, who was video recording the incident (ER-169-70, ECF No. 53-8 at 4-5), and another unidentified officer that was briefly in the video. Video Recording, Time Index (TI) 2:18-4:00. The video establishes, however, that neither of these officers could see the force that was applied as their view was blocked by the cell extraction team. With no view of the force applied, Sgt. Stolk could not possibly have known that the force applied was excessive in any respect.

Moreover, Sgt. Jacobs, not Sgt. Stolk, was leading the cell extraction team. Sgt. Stolk, therefore, had no control over the

21

extraction team, and therefore could not be the cause of any Eighth Amendment violation. *See Leer*, 844 F.2d at 633-34; *see also Peralta v. Dillard*, 744 F.3d 1087, 1083-84, 1086-88 (9th Cir. 2014) (holding, *en banc*, that prison officials could not be held liable for constitutional violation when they had "no control" over the requested resources and therefore the relief requested was "impossible to provide"). The district court erred because a court cannot impute wrongdoing on the part of Sgt. Stolk because he "himself has committed no wrong." *Id.* at 1084.

As Jackson concedes that Sgt. Stolk did not employ any force and cannot establish that Sgt. Stolk had any involvement in Jackson's cell extraction or had any ability to prevent the alleged excessive force, Sgt. Stolk did not violate the Eighth Amendment.

### 2. The Cell Extraction Team's Use of Force Was Necessary and *NOT* Excessive

The force applied by Cell Extraction Team was necessary and not excessive. In *Hudson,* the Supreme Court outlined the following factors to determine "whether the use of force could plausibly have been thought necessary" or "whether the use of force was wanton and unnecessary:" (1) "the extent of injury suffered by an inmate;" (2) "need for application of force;" (3) "the relationship between that need and the amount of force used;" (4) "the threat reasonably perceived by the responsible officials;" and (5) "any efforts made to temper the severity of

22

a forceful response." 503 U.S. at 7. Each of these factors weigh in favor of Defendants.

First, Jackson's injuries were minor as a result of the force employed. In *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), the Court held the "extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." The Court reasoned the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38. For this reason, in *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022), this Court held evidence that a detainee, who "suffered dog bites to his left leg, abrasions to his head and face, and bruising on his upper right thigh," along with "scarring and residual soreness in his left leg," merely established "injuries [that] are relatively minor," and therefore "this factor weigh[ed] slightly in favor of the defendant law enforcement officers."

The injuries sustained by Jackson were far less than those sustained in *Hughes*. The medical examination revealed only minor injuries. ER-175, ECF No. 53-9 at 2. Jackson's speech was clear, he was able to complete full sentences with ease, and "no signs of

23

reparatory or physical distress." ER-175, ECF No. 53-9 at 2. The medical examination revealed "epitasix" (a nose blead), described as "minimal," and "hematoma" (a bad bruise), one inch above the left eyebrow. ER-175, ECF No. 53-9 at 2. The examination also revealed "skin discoloration congruent with early bruising to his right jaw," "redness to the back with no "skin breakdown (damage to the skin) or abrasions." ER-175, ECF No. 53-9 at 2; *see also* Video Recording, TI 12:22-26. Because Jackson's injuries were minor, Jackson was able to return to his cell once the examination was completed. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 17:00-20:30. As Jackson's injuries are far less serious than the injuries sustained in *Hughes*, the first factor weighs in favor of Defendants.

Second, the need for application of force was clear as Jackson, a violent offender with a history of concealing weapons, repeatedly refused to follow officers' lawful orders to come to the front of the cell and submit to restraints through the food slot, despite being warned that force would be applied if he did not comply. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 1:48-1:58. In *Soto v. Dickey*, 744 F.2d 1260, 1266 (7th Cir. 1984), a prison captain and lieutenant "were the victims of milk thrown by" the inmate. The captain ordered [the inmate] to come to the front of the cell so he could be handcuffed." *Id.* When the inmate "refused," force was used so that the inmate "was

24

handcuffed, carried to the strip cage and searched." "After all containers that could be used to throw a liquid were removed from his cell, his cell was cleaned, and he was returned." *Id.* The Seventh Circuit held the "evidence does not establish that the actions and conduct of the institution or its personnel . . . violate[d] the Eighth or Fourteenth Amendments." *Id.* at 1271. The court reasoned the use of force "for failure of the inmate to obey a direct order . . . was a reasonable response to the institution's legitimate security concern" because the prison "has the duty to protect the staff [and inmates] from assaults, whether by physical attack upon them, or whether by the throwing of objects or liquids on them." *Id.* at 1266-71. The Court explained when "an order is given to an inmate there are only so many choices available to the correctional officer" and if "the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force." *Id.* at 1267. The court rejected the suggestion that "rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order and wait him out" because "experience and common sense establish that a prison cannot be operated in such a way." *Id.* at 1267. The court explained that discipline "is essential if the prison is to function and provide for the care, safety and security of the staff and inmates." *Id.* "Orders given must be obeyed." *Id.*

25

"Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Id.* Someone must exercise authority and control" or else "[m]ob rule would take over," and there "would not, and could not, be any protection for staff or inmates." *Id.* The court concluded when "an inmate refused to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials" and such "refusal and denial of authority places the staff and other inmates in danger." *Id.*

This Court has repeatedly reached the same result. In *Howard v. Nunley*, 465 Fed. Appx. 669, 670, 2012 WL 35396, at *1 (9th Cir. 2012), this Court held the district court properly granted judgment in favor of prison officials when the inmate "disobeyed an order to stop pounding on his cell door after he also received a warning that failure to comply would result in the use of [force]." The Court reasoned that Eighth Amendment is not violated when "force is applied in a good faith effort to maintain or restore discipline." *Id.*

Similarly, in *Rodriguez v. Elmore*, 407 Fed. Appx. 124, 125–26, 2010 WL 5393881, at *1 (9th Cir. 2010), this Court held that the district court properly granted judgment in favor of prison officials when officials used force "after [a prisoner] and his cellmate repeatedly refused to comply with orders to exit their cell and be handcuffed so that prison officials could search their cell for a missing metal object."

26

The Court reasoned that such evidence "failed to raise a triable issue as to whether prison officials acted maliciously and sadistically for the very purpose of causing harm" required to establish an Eighth Amendment violation. *Id.*

Likewise, in *Allen v. Bosley*, 253 Fed. Appx. 658, 659, 2007 WL 3244002, at *1 (9th Cir. 2007), this Court held that the district court properly granted judgment in favor of prison officials when using force "in an effort to restore discipline after [an] inmate . . . refused to comply with orders to submit to standard handcuffing procedure and attempted to block a cell extraction team from entering his cell." The Court reasoned that the inmate "failed to raise a triable issue that the defendants possessed malicious and sadistic intent" because they used force "in an effort to restore discipline." *Id.*

Also, in *Eccleston v. Oregon ex rel. Oregon Dept. of Corr.*, 168 Fed. Appx. 760, 761, 2006 WL 390228, at *1 (9th Cir. 2006), this Court held the district court properly granted judgment on an inmate's "claim that the use of [force] during his cell extraction constituted cruel and unusual punishment because the evidence submitted established that [force] was only used after [the inmate] repeatedly did not follow orders to leave his cell." The Court reasoned that such "force does not amount to a constitutional violation" because it was "applied in a good faith

27

effort to restore discipline and order, and not maliciously and sadistically for the very purpose of causing harm." *Id.*

In *Howard*, *Rodriguez, Allen* and *Eccleston,* this Court did not rely on allegations that the inmate was "struggling" as the district court seemed to imply was required before prison officials could exercise their broad discretion to employ force. To the contrary, the dispositive fact was the inmate's refusal to follow orders. Defendants repeatedly attempted to obtain Jackson's compliance to officers' orders to submit to restraints, but Jackson intentionally and repeatedly refused to comply with officers' lawful orders. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 1:48-1:58. Jackson could not be permitted to decide which orders he would obey, and when he would obey them. *LeMaire v. Maass*, 12 F.3d 1444, 1462 (9th Cir. 1993) (holding that to "allow prisoners to choose which jailhouse rules they will obey would result in chaos"). When Jackson refused to obey the repeated proper orders to submit to restraints, he was attempting to assert his authority over NDOC and its officials, which refusal and denial of authority placed NDOC staff and other inmates in danger, especially when officers did not know whether Jackson was concealing a weapon. Accordingly, the use of force for Jackson's repeated and intentional disobedience of direct orders to submit to restraints was a reasonable response to the NDOC's security concern because NDOC has the duty to protect the staff and

28

inmates from assaults, such as throwing urine on staff. As in *Howard, Rodriguez, Allen, Eccleston* and *Soto,* force was the only option left available. Accordingly, the second factor weighs heavily in favor of Defendants.

Third, the amount of force used was reasonable, while the need to use force was necessary because Jackson intentionally, and repeatedly disobeyed officers' orders to submit to restraints. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 1:48-1:58. Even though Jackson alleges that he had his hands behind his back when Officers entered his cell, Jackson was lying on his stomach, and officer could not determine if Jackson had a weapon under his stomach. ER-167, 171-72, ECF No. 53-8 at 2, 6-7. In fact, Jackson had repeatedly been found with prison made weapons, including a blade made from scissors (ER-159-60, ECF No. 53-6 at 10-11), and had no reason to lie on his bunk except to conceal a weapon. As it would only take a fraction of a second for Jackson to reach under his stomach and retrieve any hidden weapon, even with his hands behind his back, Officer Kirtland properly and immediately deployed his taser and stunned Jackson in the lower back. ER-167, 172, ECF No. 53-8 at 2, 7; Video Recording, TI 2:14-2:16. Jackson never disputed that after being tazed, he actively resisted restraints and began to squirm, roll and sporadically move his torso. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 2:14-2:16. Jackson

29

also never disputed that once he was restrained, the use of the taser and physical force ceased. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 2:14-3:15. Despite Jackson's resistance, the entire extraction lasted less than one minute and fifty seconds. Video Recording, TI 2:12-3:58.

In *Jefferson v. Cruse*, 324 Fed. Appx. 599, 2009 WL 1112762, at *1 (9th Cir. 2009), this Court held the use of a taser "to enforce discipline and security" did not violate the Eighth Amendment because it was "not for the sole purpose of punishment or the infliction of pain." *See also Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (holding a policy of allowing use of taser guns on inmate who refuses to submit to a strip search does not constitute cruel and unusual punishment); *Hunter v. Young*, 238 Fed. Appx. 336, 339, 2007 WL 1678060, at *2 (10th Cir. 2007) ("Federal courts have held that the use of a taser or similar stun gun is not per se unconstitutional when used to compel obedience by inmates"); *Camp v. Brennan*, 54 Fed. Appx. 78, 79–80, 2002 WL 31723093, at *1 (3d Cir. 2002) (holding use of a stun gun on inmate did not violate the Eighth Amendment, even though the inmate was in handcuffs, when the inmate's "refusal to walk through the doorway created [a] confrontation").

Similarly, in *Caldwell v. Moore*, 968 F.2d 595, 597, 600-02 (6th Cir. 1992), the Sixth Circuit held that the "defendants' use of a stun

30

gun" "several times" upon "enter[ing] the cell" to place the inmate in a "straightjacket" because the inmate "continue[d] to shout and kick" his cell door, "did not violate the Eighth Amendment," even though the inmate "alleged that he suffered chest pains and burns from the stun gun." The Sixth Circuit reasoned it is "not unreasonable for the jail officials to conclude that the use of a stun gun is less dangerous for all involved than a hand to hand confrontation." *Id.* at 601. The Court continued "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them" because "[s]omeone must exercise authority and control." *Id.* Just as this Court in *Jefferson*, the Sixth Circuit refused to find an Eighth Amendment violation because the "stun gun and straitjacket were employed in a good-faith effort to restore discipline and order in the jail and not for the sole purpose of causing the plaintiff harm." *Caldwell*, 968 F.2d at 601.

In *Whitley*, the Supreme Court explained because prison official "are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the obligation to take reasonable measures to guarantee the safety of the inmates themselves," courts should be "hesitan[t] to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." 475 U.S. at 320. The Court instructed that prison officials "should be accorded wide-ranging

31

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 321–22. The Court continued: "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id*. at 322.

As already set forth, force was necessary because Jackson repeatedly refused to comply with orders to submit to restraints. Upon entering the cell, officers were required to make split second decisions with respect to how to respond to Jackson's apparent attempt to conceal a weapon under his belly, and how to secure Jackson in restraints, upon resisting efforts to place his wrists and legs in restraints. Jackson does not allege that any officer tazed or struck Jackson after the restraints were applied. An officer does not violate the Eighth Amendment by employing force in a dangerous situation, in haste and under pressure, which in hindsight, under calm reflection, may have been unnecessary, because such is "hardly behavior from which a wanton willingness to inflict unjustified suffering on respondent can be inferred." *Whitley*, 475 U.S. at 321–25.

As the Supreme Court in *Whitley* held, the "infliction of pain in the course of a prison security measure, therefore, does not amount to

32

cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." 475 U.S. at 319. This is especially true here, when Jackson's intentional choice to disobey prison officials' repeated orders to submit to restraints was the sole reason for the need to use force in the first place, which Jackson could have avoided by simply taking one of the repeated chances to comply with officers' orders.

In *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005), "after [the inmate] threw food, officers decided to move him to a different cell, but [the inmate] refused to extend his hands through the slot in the door so that handcuffs could be applied prior to the move." "After warnings, the extraction team sprayed a non-lethal chemical irritant (derived from cayenne pepper) into the cell to make [the inmate] exit the cell without direct physical force; but [the inmate] continued to resist, remaining in the cell despite the spray." *Id*. "The move team then entered the cell, pushed [the inmate] to the ground, handcuffed him, and carried him out." *Id*. The inmate asserted that as he was being carried along outside the cell, he was punched in the face and his eyes, ears, neck and throat were gouged and raked." *Id*. "A medical report from [the] Hospital prepared two days later said that [the inmate] suffered from a sore shoulder, wrist abrasions and blunt

33

trauma to his eyes, but had no evidence of injury to his head and would be treated with Tylenol." *Id.*

The First Circuit, nevertheless, held that on "this evidence, no reasonable jury could find that [the inmate's] injury, such as it was, resulted from cruelty or deliberate infliction of pain." *Id.* at 489. The court reasoned that the "chaos . . . is wholly of [the inmate's] making" and such evidence did not establish that the inmate was "harmed through deliberate or wanton force unnecessary to his removal." *Id.* at 488-89.

Similarly, the one-minute and fifty seconds of chaos that occurred during the cell extraction was of Jackson's own making, due to his intentional refusal to follow orders and submit to restraints through the food slot. Just as in *Skinner*, even though Jackson alleges that he was stuck in the eyes and temple while lying on his bed, such facts do not establish that Jackson was harmed through deliberate or wanton force unnecessary to his removal, required to establish an Eighth Amendment violation. Due to Defendants' actions, Jackson's injuries were treated immediately by medical staff, which further establishes his minor injuries did not result from cruelty or deliberate infliction of pain.

Accordingly, the third factor also weighs heavily in favor of Defendants. *See Howard,* 465 Fed. Appx. at 670 (holding the use of

34

force was proper when an inmate "disobeyed an order" because force was "applied in a good faith effort to maintain or restore discipline"); *Allen*, 253 Fed. Appx. at 659 (holding administering force was a proper "effort to restore discipline after [an] inmate . . . refused to comply with orders").

Fourth, as already set forth, Defendants reasonably perceived Jackson's disobedience as a threat to discipline, safety, security and order, as he had a history of violence and concealing weapons. Jackson's extraction was also necessary in order to search his cell and person, to discover and remove any property which could be used propel in future—of particular importance here given the report that the fluid propelled smelled like urine. ER-152, ECF No. 53-6 at 3. Due to Jackson's propelling and disobedience, along with Jackson's long history of disobedience and violence (ER-152-63, ECF No. 53-6 at 3-14), Defendants were required to assume that Jackson was dangerous, as officers entering the cell had no way of knowing whether Jackson was concealing a weapon. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (indicating that a "detention facility is a unique place fraught with serious security dangers" due to smuggling of money, drugs, weapons, and other contraband," which "is all too common an occurrence"); *Soto*, 744 F.2d at 1267 (indicating that cell extractions are inherently dangerous because inmates that disobey rules are "unpredictable—

35

passive at one time and aggressive the next moment," and "injuries occur to the staff even when they enter the cell in the ERU [Emergency Response Unit] gear" because inmates may have concealed weapons). Jackson's actions therefore were reasonably perceived as a threat to safety and security by Defendants. Here, the threat to officer safety was particularly apparent because Jackson had repeatedly been found with prison made weapons, including a blade made from scissors (ER-159-60, ECF No. 53-6 at 10-11), and had no reason to lie on his bunk if not to conceal a weapon (ER-167, 171-72, ECF No. 53-8 at 2, 6-7).

Accordingly, the fourth factor also weighs heavily in Defendants' favor.

Fifth, Defendants repeatedly made efforts to temper the severity of the forceful response. Jackson was repeatedly provided the chance to comply with orders to submit to restraints without the need for force. ER-167-72, ECF No. 53-8 at 2-7; Video Recording, TI 0:40-1:58. Before employing force, NDOC officials considered alternatives to hands-on force. ER-167-72, ECF No. 53-8 at 2-7. They determined that because Jackson was on the desensitized list, that chemical uses of force could not be used, and therefore electronic or hands-on force were the only viable options that could be used to extract Jackson. ER-167-72, ECF No. 53-8 at 2-7.

36

Sgt. Jacobs both instructed officers as to their duties with respect to the use of force and ensured that medical would be present in the event of injury. ER-168, ECF No. 53-8 at 3; Video Recording, TI 0:01-0:40, 12:20-17:45. After lining up officers, in full CERT gear, in front of the window on Jackson's cell door, Sgt. Jacobs gave Jackson one last chance to voluntarily comply to restraints, and warned that force would be used if Jackson did not comply. ER-168, ECF No. 53-8 at 3; Video Recording, TI 0:40-1:58. After the less than one minute and fifty seconds it took to extract Jackson from his cell, Jackson was examined by medical within minutes. ER-175, ECF No. 53-9 at 2, Video Recording, TI 12:20-17:45. Upon examination, Jackson's injuries were so minor that Jackson was able to be returned to his cell. ER-167-73, ECF No. 53-8 at 2-8; Video Recording, TI 17:00-20:30. Defendants therefore made substantial efforts to temper the severity of their response, but to no avail. Jackson simply and intentionally refused to follow Defendants' orders. *See Bearchild*, 947 F.3d at 1142 (recognizing that "providing a prior warning or giving an order to comply" establishes that "efforts [were] made to temper the severity of a forceful response," as set forth in Ninth Circuit Model Jury Instructions); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (holding "giving [inmate] medical treatment" establishes the tempering "factor favors the officers"); *Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir.

37

2007) (holding the "fact that [the two officers] immediately summoned medical assistance for [inmate] tempered the severity of the forceful response, . . . and makes it less likely that either of them was acting sadistically instead of in good faith"); *Washington v. Ondrejka*, 822 Fed. Appx. 104, 107, 2020 WL 4700885 (3d Cir. 2020) (holding efforts taken to temper the severity of the response include instruction on how to prevent injury to the inmate).

In *Stenzel v. Ellis*, 916 F.2d 423, 427 (8th Cir. 1990), the Eighth Circuit asked the inmate "three times to uncover while sleeping [as covers prevented jailer's from determining whether inmate was present] and [the inmate] finally unequivocally refused, making it necessary for the jailers to move him forcefully." The jailers forcibly removed [the inmate] from his bunk, pulled him by his hair, and shoved him to the floor." *Id.* at 425. "While [the inmate] was face down on the floor, [the officer] pulled back a finger of [the inmate's] left hand and [another officer] had his knee in the small of [the inmate's] back." *Id.* The inmate was then "pulled to his feet" and "was smashed into the bars on the way out." *Id.* The Eighth Circuit held that although "the conduct [the inmate] allege[d] may have given rise to a state law cause of action for battery, it does not rise to the level of a constitutional violation." *Id.* at 427. The court reasoned that '[h]ad the jailers simply wanted to

38

assault [the inmate], there was no reason to make three passes by the cell and then warn him of the consequences of his behavior." *Id.*

Similarly, had Defendants wanted to use force for the purpose of maliciously and sadistically causing harm, there was no reason for Defendants to repeatedly request Jackson to comply with their order to submit to restraints, or for Defendants to consider alternatives to hands on force, or for Defendants to request medical to be present. Instead, these efforts to temper the severity of the force applied establish that Defendants applied force in a good faith effort to maintain and restore discipline.

Accordingly, the fifth factor also weighs heavily in favor of Defendants. *See Howard*, 465 Fed. Appx. at 670 (holding prison officials did not violate the Eighth Amendment by using force when an inmate "disobeyed an order" because "force [was] "applied in a good faith effort to maintain or restore discipline"); *Eccleston*, 168 Fed. Appx. at 761 (holding prison officials did not violate the Eighth Amendment when force "was only used after [the inmate] repeatedly did not follow orders to leave his cell").

As all factors favor Defendants, the use of force by Defendants was necessary and **_not_** excessive. Accordingly, Defendants did not violate the Eighth Amendment, and the district court erred when denying Defendants' motion for summary judgment.

39

### 3. Jackson Failed to Establish a Sadistic or Malicious Purpose for the Force Applied

Jackson offered no evidence establishing that any Defendant had a sadistic or malicious purpose for the force applied. Jackson does not allege any reason for the use of force other than his own misconduct, and continued refusal to comply with officers' orders submit to restraints. In *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001), this Court held to meet this subjective element, a plaintiff "must put forward specific, nonconclusory fact[s] . . . that establish improper motive causing cognizable injury." Jackson, however, offers no such evidence because Jackson concedes that he intentionally and repeatedly disobeyed orders to submit to restraints, which was the sole cause for the use of force. *See Wilkins*, 559 U.S. at 40 (explaining that plaintiff "will ultimately have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'"); *Jeffers*, 267 F.3d at 911 (holding inmate failed to establish the use of force "was malicious or sadistic" when the facts are "not necessarily inconsistent" with a "good-faith attempt to bring the disturbance under control"); *Allen*, 253 Fed. Appx. at 659 (holding prisoner "failed to raise a triable issue that the defendants possessed malicious and sadistic intent" when defendants employed force "in an

40

effort to restore discipline"); *Rodriguez,* 407 Fed. Appx. at 125–26 (same).

Defendants did not violate the Eighth Amendment because the force applied was necessary due to Jackson's repeated intentional refusal to obey orders to submit to restraints, and Jackson failed to point to any evidence in the record establishing a sadistic or malicious purpose for the force applied. *See Keller v. Trefz,* 66 Fed. Appx. 44, 46, 2003 WL 1870718, at *1 (7th Cir. 2003) (holding inmate failed to establish that officers violated the Eighth Amendment, by asserting that officers "gratuitously slammed [inmate's] head against the floor and, using a wrist restraint, violently and repeatedly yanked his body against the cell door," which "resulted in pain, abrasions, scars, scratches, and soreness" because the inmate did "not dispute that he failed to comply with lawful orders and resisted the officers," and "no evidence has been submitted to suggest that the amount of force used by [the officers] was other than a good faith effort to restore discipline").

### 4. Jackson Failed to Establish that Sgt. Jacobs Personally Employed Any Force, Much Less Excessive Force

Jackson does not assert that Sgt. Jacob's personally employed any force at all. Instead, the district court found Sgt. Jacob's violated the Eighth Amendment merely because he was present and failed to intervene. ER-6, ECF No. 63 at 3. As Sgt. Jacobs entered last, behind

41

an officer with the shield and four other officers, there is no evidence that he saw Jackson with his hands behind his back. Sgt. Jacobs affirmed that he did not know whether Jackson had a weapon concealed under his belly which could harm officers. ER-169, ECF 53-9 at 4. Sgt. Jacobs also affirmed that he did not view any tasing or strikes after Jackson stopped resisting and was restrained. ER-6, ECF No. 63 at 3, citing ER-293, ECF No. 6 at 4. Sgt. Jacobs therefore had no reason to intervene, much less an opportunity to do so.

The district court merely speculates that Sgt. Jacobs knew that Jackson was not concealing a weapon and then speculate that Sgt. Jacobs knew that Jackson was no longer a threat when Jackson was subject to the taser and strikes, which is insufficient to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 838 (holding a prison "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish an Eighth Amendment violation); *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) (holding that "conclusion [that] was merely speculative" could not establish that a defendant "disregarded [a] serious and known risks," because the witness "lacked any insight into [defendant's] subjective knowledge").

*Hughes* establishes that Sgt. Jacobs did ___**not**___ violate the Eighth Amendment. In *Hughes*, this Court held that officers, who admittedly

42

did not punch an escapee, did not violate the Eighth Amendment, even though they were present. 31 F.4th at 1123. Just as in *Hughes*, Jackson's "excessive force claims" against Sgt. Jacobs "fail as a matter of law" because the acts of Sgt. Jacobs "took place during the rapidly unfolding chaos of the physical struggle" to restrain Jackson, and therefore Sgt. Jacobs "cannot be held liable for fleeting acts which [he] did not commit, came without warning, and could not have prevented." *Id.*

As Jackson concedes that Sgt. Jacobs did not employ any force, and Jackson failed to establish that Sgt. Jacobs knew excessive force was to be employed or had any ability to prevent the alleged excessive force in the rapidly unfolding chaos, Sgt. Jacobs did not violate the Eighth Amendment.

### C. Jackson Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law

Neither Jackson, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish a violation of the Eighth Amendment. To the contrary, the district court repeatedly and improperly imposed the burden on Defendants to establish that they did not violate the Eighth Amendment. *See* ER-12, 15-16, ECF No. 63 at 9:14-15, 12:12-14, 12:26-13:2. In *Cunningham v. Gates*, 229 F.3d 1271,

43

1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. Jackson, however, cannot point to any established precedent establishing that he meets each element of his Eighth Amendment claim.

*Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 990 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), the only authority relied upon by the district court, does not come close to establishing a violation of clearly established law, beyond debate. ER-15, ECF No. 63 at 12. In *Rodriguez*, the district court unremarkably held that prison official violated the Eighth Amendment by "using Tasers on sensitive body parts and on unconscious individuals." 96 F. Supp. 3d at 1001. On appeal, this Court detailed the "extreme brutality with which [prisoners] were beaten and tazed." *Rodriguez*, 891 F.3d at 793. The evidence produced at trial included: (1) beating a prisoner until he blacked out from the pain, resulting in fractured cheek bones requiring surgery and two metal plates, (2) dragging a prisoner out of his cell unconscious and in handcuffs, and then kicking the prisoner his face, pulling down his pants and repeatedly tasing him on his buttocks enough time to create burn marks, (3) beating and tasing a prisoner

44

after he was handcuffed, resulting in the his back being broken in several places and causing unconsciousness, and (4) handcuffing a prisoner and then beating and tasing the prisoner's testicles. *Rodriguez*, 891 F.3d at 784-87, 793.

Apparently realizing the facts in *Rodriguez* do not resemble the facts in this case at all, the district court cited *Rodriguez* for the general principle that "'officers have been on notice since 1992 that intentionally harming a prisoner without a permissible purpose violates the Eighth Amendment.'" ER-15, ECF No. 63 at 12, quoting *Rodriguez*, 96 F. Supp. 3d at 1002. *Zorn* forecloses any argument that such a general principle could overcome Defendants' entitlement to qualified immunity.

In *Zorn*, the Supreme Court rejected the conclusion that circuit authority, which established the general principle 'that the gratuitous use of pain compliance techniques—such as a rear-wristlock—on a protestor who is passively resisting arrest constitutes excessive force,'" could overcome qualified immunity because it did not "obviously resolve whether using a rear wristlock to move a noncompliant protester after repeated warnings violates the Fourth Amendment, . . . as it fails to specify which circumstances make the use of force 'gratuitous.'" 2026 WL 795469, at *3. Similarly, the general principle that an offender has an Eighth Amendment right not to be intentionally harmed without a

45

permissible purpose does not overcome Defendants entitlement qualified immunity because it does not consider, much less "obviously resolve," what is a "permissible purpose" or how much force may be used when the offender intentionally refuses to follow orders, especially when the offender has a history of violence and aggression, and has been known to conceal weapons.

No court has held that employing force to extract an offender from his cell after an offender repeatedly and intentionally refuses to follow direct orders to submit to restraints violates the Eighth Amendment, especially when the force was necessary and reasonably applied in a good faith effort to maintain or restore discipline and the officers did not know whether the violent offender was concealing a weapon. To the contrary, as set forth above, this Court and other circuit courts have repeatedly held that refusal to follow orders justifies the use of force, especially when officers do not know whether the violent offender was concealing a weapon.

Jackson simply fails to point to facts showing that Defendants use of force was "excessive and unnecessary," or that Defendants "acted maliciously and sadistically," both of which are required to establish an Eighth Amendment violation. Jackson also failed to meet his burden, required by *Wilkins* and *Jeffers*, to put forth specific, nonconclusory facts establishing that each Defendant personally "acted maliciously

46

and sadistically," which also required to establish a violation of the Eighth Amendment. Jackson therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation").

Accordingly, Defendants are shielded by qualified immunity, and the district court erred when denying Defendants' motion for summary judgment. This Court should therefore reverse the district court's judgment and order the district court to grant Defendants' motion because they are shielded by qualified immunity.

## VIII. CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment denying Defendants' motion for summary judgment,

///

///

///

///

and remand with instruction to grant Defendants' motion because Defendants are entitled to qualified immunity.

47

Respectfully submitted April 13, 2026,

AARON D. FORD
Attorney General

By:  /s/ Chris Davis
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

48

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 10,759 words.

Respectfully submitted April 13, 2026,

AARON D. FORD
Attorney General

By: */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' OPENING BRIEF & DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on April 13, 2026.

Participants in the case who are registered users will be served by the appellate electronic filing system to:

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue, NW, No. 26152
Washington, DC 2000
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee*

/s/ Kimalee Goldstein
An employee of the Office of the
Nevada Attorney General

50