25-6898

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TARONTAE D. JACKSON,
Plaintiff-Appellee,

v.

STOLK, et al.,
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00247-MMD-CSD

## DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Seth Davis, Daniel Jacobs,*
*Dent Kirkland and Michael Stolk*

# VOLUME I

| Date | Title | Bates No. | Vol. | Pages |
|---|---|---|---|---|
| 10/03/25 | Order Rejecting Magistrate Judge's Report & Recommendations and Denying Defendants' Motion for Summary Judgment, ECF 63 | ER004-ER016 | I | 13 |
| 08/27/25 | Defendants' Opposition to Plaintiff's Objection to Magistrate Judge's Report and Recommendations, ECF 62 | ER017-ER028 | I | 12 |
| 08/13/25 | Plaintiff's Objection to Magistrate Judge's Report and Recommendations, ECF 61 | ER029-ER037 | I | 9 |
| 07/17/25 | Report & Recommendation of United States Magistrate Judge, ECF 58 | ER038-ER045 | I | 8 |
| 06/05/25 | Defendants' Reply in Support of Motion for Summary Judgment, ECF 57 | ER046-ER053 | I | 8 |
| 05/23/25 | Plaintiff's Opposition to Defendants' Motion for Summary Judgment, ECF 56 | ER054-ER084 | I | 31 |
| 05/05/25 | Notice of Manual Filing, ECF 54 | ER085-ER086 | I | 2 |

| 05/05/25 | Defendants' Motion for Summary Judgment, ECF 53 | ER087-ER269 | I | 183 |
|---|---|---|---|---|
| 05/31/24 | Defendant's Answer to Plaintiff's Civil Rights Complaint, ECF 28 | ER270-ER280 | I | 11 |
| 12/06/23 | Screening Order, ECF 7 | ER281-ER289 | I | 9 |
| 10/16/23 | Complaint, ECF 6 | ER290-ER294 | I | 5 |
| 10/29/25 | Notice of Appeal, ECF 65 | ER295-ER297 | I | 3 |
|  | Current Docket Sheet | ER298-ER300 | I | 3 |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TARONTAE JACKSON,

                      Plaintiff,

v.

STOLK, *et al.*,

                      Defendants.

Case No. 3:23-cv-00247-MMD-CSD

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Tarontae Jackson, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this civil rights action under 42 U.S.C. § 1983, arising from events that took place while Jackson was housed at Ely State Prison ("ESP"). Before the Court is United States Magistrate Judge Craig S. Denney's Report and Recommendation (ECF No. 58 ("R&R")), recommending that the Court grant Defendants' motion for summary judgment (ECF No. 53 ("Motion"))[1] on Defendants' argument that Jackson failed to exhaust his available administrative remedies.[2] Because the Court finds that Defendants have not met their burden to demonstrate the absence of genuine issues of material fact and for the reasons discussed below, the Court rejects the R&R's recommendation to grant summary judgment on Defendants' exhaustion argument. The Court considers Defendants' other arguments and finds genuine issues of material fact exist to preclude summary judgment and denies the Motion.

---

[1]Jackson responded to Defendants' Motion (ECF No. 56 ("Response")) and Defendants replied (ECF No. 57 ("Reply")). Jackson filed a motion to extend time to file an objection to the R&R (ECF No. 59), which the Court granted (ECF No. 60). Jackson then timely filed an objection (ECF No. 61) to the R&R and Defendants responded (ECF No. 62).

[2]Because the Magistrate Judge recommended granting summary judgment on this ground, he did not address Defendants' other arguments.

## II.    RELEVANT BACKGROUND

### A.    Jackson's Allegations

The Court previously screened Plaintiff's First Amended Complaint ("Complaint") and permitted Plaintiff to proceed on an Eighth Amendment claim for excessive use of force against Defendants Stolk, Brown, Jacobs, Davis and Kirkland. (ECF No. 7.) The Court reiterates the following facts taken from the Court's screening order and adapted from the Complaint. (*Id.* at 3-4.)

On December 15, 2022, Jackson was sent to ESP because he had been charged with a work stoppage and battery and placed on "HRP." (ECF No. 6 at 3.) Early the next morning, he asked Sergeant Stolk for his personal property, and said that it had been over 72 hours since he last showered. (*Id.*) Stolk made a "smart remark," and Jackson responded by calling him a bitch. (*Id.*) Stolk and Corrections Officer Brown approached Jackson's door and said they were "gonna have fun beating [his] ass." (*Id.*)

On December 19 or 20, 2022, during Jackson's HRP hearing, the warden stated that Jackson had been grabbing corrections officers and holding the food flap on his cell's door, and ordered officers to get Jackson out of his face. (*Id.*) Later in the sally port, Stolk said that if Jackson grabbed officers and held the food flap at ESP, then officers would "beat [Jackson's] ass." (*Id.*) Jackson laughed and asked for his property. (*Id.*) Stolk said that it would be a while considering he liked to assault staff. (*Id.*)

On December 21, 2022, Stolk did not give Jackson his breakfast tray, claiming that Jackson had "propelled on him[.]" But the cell's design prevented Jackson from being able to throw anything outside it. (*Id.*) Jackson suspects that Stolk made up the incident to justify entering Jackson's cell with other officers to beat him up. (*Id.*) Later that same day, corrections officers came to Jackson's cell door and ordered him to cuff up. (*Id.* at 4.) Jackson refused because officers had previously cuffed him too tightly. (*Id.*) Jackson went to lie down on his bed with his hands behind his back. (*Id.*)

Corrections Officer Kirkland then entered Jackson's cell and tased him in the back. (*Id.*) Corrections Officer Brown and Sergeant Davis then hit Jackson in both of his eyes

2

and temple "for no reason." (*Id.*) Stolk and Corrections Officer Jacobs were present but did not stop the other officers. (*Id.*) Jackson has been given at least three extra doses of his depression medication Prozac to help him cope with this experience. (*Id.*) He was allowed to see the nurse later[3], who gave him ice packs with instructions to put them over his eyes. (*Id.* at 3.) Jackson has lost sleep and fears for his life because of this incident. (*Id.*)

### B.   Grievance and Exhaustion

Jackson's disciplinary record shows that on December 21, 2022, he propelled a substance at an officer while morning breakfast was being administered.[4] (ECF No. 53 at 4.) Pursuant to NDOC policy, Jackson was extracted from his cell later that day so that his cell could be searched. (*Id.* at 3-4.) Jackson sustained facial bruising and a hematoma. (ECF No. 53-9.) The next day, December 22, 2022, Jackson filed an informal level grievance, and he filed a first level grievance on March 29, 2023, because he had not received a response to his informal level grievance. (ECF No. 53 at 18.)

### C.   R&R

In his R&R, Judge Denney recommends granting Defendants' Motion because Jackson did not exhaust his available administrative remedies. Jackson's informal level grievance was partially granted on December 27, 2022, and submitted to the Inspector General's (IG) office for further investigation under the case number IN-2023-0049. (ECF No. 58 at 5-6.) On January 4, 2023, a use of force incident review was conducted and concluded, finding that the use of force was justified, authorized, necessary and limited. (*Id.* at 6.) However, the results of this investigation were not conveyed to Jackson, so Jackson initiated a first level grievance on March 29, 2023. (*Id.*) In response to this first

---

[3]The Screening Order erroneously states that Jackson saw the nurse three days later, based on an error in interpreting Jackson's handwriting. (ECF Nos. 6 at 3; 7 at 7). The Court notes that Jackson received medical attention on the same day he was extracted. (ECF Nos. 53 at 6; 53-9).

[4]As discussed below, Jackson disputes that he did so and contends Defendant manufactured a reason to conduct the cell extraction to inflict harm on him as they had threatened.

3

ER006                            ER006                            ER006

level grievance, Jackson received an improper grievance memorandum from Tasheena Cooke that rejected Jackson's first level grievance as untimely and noted that his case had been referred to the IG's office. This memorandum instructed Jackson he could not proceed to the next level. (*Id.*)

Judge Denney found that on May 9, 2023, Jackson received another first level grievance denial advising him that his allegation of excessive force was unsubstantiated and denied. (*Id.*) Because Jackson did not appeal this subsequent denial to the next grievance level, Judge Denney found that Jackson did not exhaust his administrative remedies. (*Id*. at 7.) Judge Denney thus recommended granting Defendants' Motion on the ground of exhaustion and did not address Defendants' remaining arguments as to qualified immunity and reasonable use of force. (*Id.* at 7-8.)

## III.    DISCUSSION

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's Report and Recommendation, the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus de novo because Jackson filed his Objection. The Court will first address Defendants' exhaustion argument and rejects Judge Denney's recommendation to grant summary judgment. The Court will then address Defendants' arguments as to the merits of Plaintiff's claim and as to qualified immunity.

### A.    Exhaustion

Defendants argue in their Motion that Jackson failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (ECF No. 53 at 17-18.) Defendants claim that Jackson filed one grievance in grievance no. 2006-31-46909 ("grievance no. 909"). (ECF No. 53 at 18.) He filed an informal level grievance on December 22, 2022, the day after he was extracted from his cell. On March 29, 2023, Jackson filed a first level grievance because he had not received a response to his

4

ER007                          ER007                          ER007

informal grievance. (*Id.*) NDOC rejected Jackson's first level grievance on May 9, 2023, and there is no record that Jackson appealed the grievance to the second level nor that Jackson was prevented from appealing his grievance, thus he did not exhaust his administrative remedies. (*Id.*)

Jackson argues in his Response that further administrative remedies were unavailable to him because he received an improper grievance memorandum from Cooke that marked his first level grievance as untimely and prevented him from appealing his grievance to the next level. (ECF No. 56 at 6.) Citing to the record, Defendants counter in their Reply that on April 25, 2023, Jackson's first level grievance was rejected but the form informed him that "*he may refile his first level grievance at the same level after correcting the deficiencies in his grievance.*" (ECF No. 57 at 5 (emphasis in original).)

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in Administrative Regulation (AR) 740, and they must complete three levels of a grievance: informal, first, and second. (ECF No. 53-10.)

However, "[p]risoners need only exhaust 'available' administrative remedies; remedies are not considered 'available' if, for example, prison officials do not provide the required forms to the prisoner." *Draper v. Rosario*, 836 F.3d 1072 (9th Cir. 2016); *see also Albino*, 747 F.3d at 1172-73. "[A]n administrative remedy is not available if 'prison officials inform the prisoner that he cannot file a grievance.'" *Williams v. Paramo*, 775 F.3d 1182, 1192 (9th Cir. 2015) (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)). Information provided to the prisoner may inform a court's determination of whether relief was available. *See Brown*, 422 F.3d at 937.

As a preliminary matter, the Court notes that it may consider portions of Jackson's sworn *pro se* Complaint as competent summary judgment evidence in this action. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (finding that a *pro se* litigant may present motions and pleadings as summary judgment evidence to the extent the contents of those documents are based on personal knowledge, set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct). Moreover, the Ninth Circuit liberally construes the filings and motions of pro se inmates in a civil suit.[5] *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have. . . held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly.").

Turning to the record, the Court finds that Defendants fail to meet their burden of proving their affirmative defense that there was an available remedy that Jackson failed to exhaust. The parties do not dispute that Jackson did not file a second level grievance, but they dispute the reason for that failure. Defendants acknowledge that Jackson's first level grievance was rejected twice. (ECF Nos. 53 at 18; 57 at 5-6.) According to Defendants, citing to ECF No. 53-11 at 32, Jackson was informed that he could refile his first grievance after remedying deficiencies. (ECF No. 57 at 5.) However, Defendants appear to be citing to a different grievance in Jackson's record, not grievance no. 909. Defendants' argument that further remedy was available in an unrelated appeal is a "virtual non-sequitur" because it does not rebut Jackson's claim that further remedy was unavailable. *See Williams*, 775 F.3d at 1192.

In contrast, Jackson claims that he was unable to file a second level grievance because he was informed that he could not, and that he had no other option but to file his complaint before the Court. (ECF No. 56 at 6.) The undisputed records show that Jackson

---

[5]Under this requirement to liberally construe Jackson's pleadings, the Court considers some of the general factual allegations pled in the Complaint (ECF No. 6) in support of Jackson's First Amendment claim, which was dismissed at the screening stage (ECF No. 7).

ER009                            ER009                            ER009

received an improper grievance memorandum from Cooke that instructed Jackson that his grievance was not accepted as untimely, and the form stated that "the grievance may NOT proceed to the next level." (ECF No. 53-12 at 33 (emphasis in original).) Accordingly, the court finds that Jackson had no remaining available administrative remedies based on this response from Cooke. *See Williams*, 775 F.3d at 1192; *Albino*, 747 F.3d at 1170 ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge.").

Viewing the facts in the light most favorable to Plaintiff[6], a rational trier of fact could find that Defendants failed to prove the affirmative defense of non-exhaustion. *See Albino*, 747 F.3d at 1166, 1176 (noting defendants' initial burden to prove the affirmative defense). The Court therefore rejects Judge Denney's R&R and denies Defendants' Motion as to administrative exhaustion. The Court turns to Defendants' remaining arguments below.

### B.    Eighth Amendment—Excessive Force

Defendants argue in their Motion that they used reasonable force when extracting Jackson from his cell therefore they did not violate Jackson's Eighth Amendment rights. (ECF No. 53 at 15.) Citing to the *Kingsley* factors, Defendants argue that the force used in Jackson's cell extraction crossed no constitutional line. (*Id.* at 10-15.) Defendants argue that force was proportional because they were required to extract Jackson from his cell per NDOC policy and Jackson refused officers' orders to voluntarily submit to restraints by laying on his bunk with his hands under his stomach, initially did not give up his hands, and that officers reported that he "was putting up a struggle and resisting." (*Id.* at 10-12.) Defendants additionally insist that Jackson sustained no serious injuries (*id.* at 13), and that all use of force was applied in a good-faith effort to extract Jackson from his cell (*id.* at 15).

---

[6]In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

ER010                    ER010                    ER010

Jackson disputes Defendants' allegations. Jackson alleges that Stolk falsely claimed that Jackson had propelled on him on December 21, 2022, to create a reason to enter his cell and beat him up. (ECF No. 6 at 3.) He claims that he did not propel any substance from his cell, nor could he have, because of the design of his cell and because there was a red box placed over his food flap. (*Id.*) Jackson admits that when officers came to his cell and demanded that he submit to restraints, Jackson refused because on prior occasions he had suffered from excessive force while in restraints. (*Id.* at 4.) He alleges that he laid down on his bunk with his hands on his back. While he was laying down with his hands behind his back, Defendants tased him, hit him in both eyes, and hit him repeatedly in the temple. (*Id.*) Jackson alleges that this occurred "for no reason." (ECF No. 56 at 2.)

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). When a prison official is accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective requirement in an excessive force context is always met where a prison official maliciously and sadistically uses force to cause harm, whether or not significant injury is evident. *Hudson*, 503 U.S. at 9. If this was not true, the Eighth Amendment "would permit any physical punishment… inflicting less than some arbitrary quantity of injury." *Id.* The extent of injury suffered by an inmate is one factor that may

8

suggest whether the use of force was plausibly thought necessary, and more than a *de minimis* use of physical force is required. *Id.* at 7-10. However, an inmate does not "lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) (reversing lower courts' dismissal based on a finding that plaintiff's injury was *de minimis*).

The subjective requirement is met where the claimant shows that "officials used force maliciously and sadistically for the very purpose of causing harm." *Farmer*, 511 U.S. at 835. To determine whether the force was malicious and sadistic in an excessive force claim brought under the Eighth Amendment, the Court considers the five *Hudson* factors: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022).[7]

Turning to the record, the Court finds that Defendants have not met their burden on summary judgment. Upon its review of the video of the cell extraction, the Court notes that Jackson's cell has a sealed pane over the window and the food flap appears to be obstructed by a red apparatus. (ECF No. 53-7 at 2:00-15.) Jackson's sworn Complaint alleges that he was unable to propel substances from his cell because there was a red box covering his food flap. (ECF No. 6 at 3.) A reasonable jury, viewing this evidence and drawing all inferences in the light most favorable to Jackson, could find that Jackson had not propelled and thus that Defendants employed force maliciously to harm Jackson, rather than in good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 7.

---

[7]The Court notes that Defendants' Motion analyzes the *Kingsley* factors. *Kingsley v. Hendrickson,* 576 U.S. 389 (2015) concerns the Fourteenth Amendment rights of pre-trial detainees, not the Eighth Amendment rights of inmates. The Court discusses the *Hudson* factors as in *Hughes*, 31 F.4th at 1221, but notes that many of the *Kingsley* and *Hudson* factors overlap, and the Ninth Circuit has held that "our cases do not distinguish among pretrial and post-conviction detainees for the purposes of excessive force." *Shorter v. Baca*, 895 F.3d 1176, 1182 n.4 (9th Cir. 2018).

ER012                    ER012                    ER012

The Court turns now to the *Hudson* factors. As to the extent of Jackson's injury, parties do not appear to dispute that Jackson's injuries are relatively modest. According to his medical record taken shortly after the incident, Jackson sustained epistaxis, hematoma above his left eyebrow, and early signs of bruising on his jaw. (ECF No. 53-9 at 2.) Jackson additionally alleges that the incident left him with two black eyes and that he has suffered from fear and sleeplessness that required treatment with medications. (ECF No. 6 at 3.) However, the lack of a significant injury is not a bar to Eighth Amendment claims, and the Court finds that the injuries Jackson has alleged are not *de minimis* for the purposes of his Eighth Amendment claim. *See Hudson*, 503 U.S. at 9. That Jackson's alleged injuries are moderate may limit his recoverable damages, but it is not a reason to dismiss his complaint at this stage. *See Wilkins*, 559 U.S. at 38.

As to the remaining *Hudson* factors—which address the proportionality of force to need and efforts to temper the severity of the response—Defendants' arguments hinge largely upon their assertion that Jackson was lying on his bed with his hands concealed under his body. For example, Defendants allege that "[b]ecause Jackson's hands were tucked under his body Officer Kirkland was unsure whether Jackson had a weapon on him that could be used to harm officers. As such, for the safety of the officers Officer Kirkland stunned Jackson with a taser until Jackson's hands were secured." (ECF No. 53 at 11.) Defendants provide evidence in the form of officer reports indicating that Jackson was lying down with his hands concealed. (ECF No. 53-8.) Jackson alleges that he was lying face down with his hands behind his back and was tased for no reason. (ECF Nos. 6 at 4; 56 at 2.) The video footage of Jackson's extraction does not show how Jackson was positioned when officers enter his cell, nor is Jackson's body clearly visible in the video. (ECF No. 53-7.) No sign of struggle is apparent. The video shows that within seconds of Defendants entering the cell, the taser is deployed. (*Id.* at 2:12-16.) The taser can be heard being deployed four times while Jackson screams. (*Id.* at 2:12-2:52.) Officers repeatedly instruct Jackson, "Give us your hands" to which Jackson repeatedly screams both "My hands are behind my back" and "You've got my hands." (*Id.* at 2:39-

10

2:54.) Defendants additionally argue that Jackson threatened officers after his extraction took place, and these threats verify that officers perceived a threat when entering Jackson's cell. (ECF No. 53 at 15.) The Court does not follow how statements Jackson made *after* he was extracted—post-strip search, from the inside of a locked and barred shower—is probative of how Defendants had perceived a threat from Jackson *prior* to his extraction.

Lastly, Defendants assert that prison administrators must be accorded deference in maintaining institutional security, *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). Nonetheless, in evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp.*, 793 F.2d at 1103. Viewing the evidence in the light most favorable to Jackson, the Court cannot find that Defendants have shown an absence of a dispute of material fact as to the objective and subjective components of Jackson's Eighth Amendment claim. Because a reasonable jury could find that Defendants used excessive force in violation of Jackson's Eighth Amendment rights while extracting him from his cell, the Court denies Defendants' Motion as to the excessive force claim.

### C.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because they did not extract Jackson from his cell for any malicious purpose. (ECF No. 53 at 16.) They argue that because Jackson had propelled an unknown liquid on NDOC staff, he must be extracted so that his cell could be searched, and he did not submit to restraints. (*Id.*) Defendants argue that they did not violate establish clearly established law because all four *Kingsley* factors favor them. (*Id.*) Jackson counters that Defendants are not entitled to qualified immunity because Defendants violated clearly established law and his Eighth Amendment rights. (ECF No. 56 at 5.)

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public

11

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson* 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

Regarding the first prong, as discussed above, Defendants have not shown an absence of a dispute of material fact as to whether they used excessive physical force in violation of Jackson's Eighth Amendment rights.

Regarding the second prong, here too, Defendants have not met their burden on summary judgment. Defendants' argument that the force was reasonable under *Kingsley* is unavailing. (ECF No. 53 at 16.) For the second prong of a qualified immunity analysis, the proper inquiry is whether a reasonable official would have understood that his actions were violating Jackson's rights. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). A reasonable jury could find that Defendants had falsely accused Jackson of propelling to beat him as he alleges. This would clearly violate a constitutional right because "[o]fficers have been on notice since at least 1992 that intentionally harming a prisoner without a permissible purpose violates the Eighth Amendment." *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 990, 1002 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (citing *Hudson*, 503 U.S. at 6).

Viewing all evidence in the light most favorable to Jackson, the Court finds that Defendants are not entitled to qualified immunity because Defendants have not shown the absence of a dispute of material fact as to whether Defendants violated Jackson's

ER015                        ER015                        ER015

Eighth Amendment rights and whether Jackson's rights were clearly established at the time of violation.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Judge Denney's report and recommendation (ECF No. 58) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 53) is denied.

The Court refers this case to Judge Denney to conduct a settlement conference. The proposed joint pretrial order is due 30 days from the settlement conference.

DATED THIS 3rd Day of October 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

AARON D. FORD
 Attorney General
RUDOLF M. D'SILVA (Bar No. 16227)
 Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3375 (phone)
(702) 486-3768 (fax)
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants*
*Seth Davis, Daniel Jacobs,*
*Michael Stolk and Dent Kirkland*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TARONTAE JACKSON,<br><br>    Plaintiff,<br><br> v.<br><br>STOLK, *et al.*,<br><br>    Defendants. | Case No. 3:23-cv-00247-MMD-CSD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS [ECF NO. 61]** |

Defendants Seth Davis, Daniel Jacobs, Michael Stolk, and Dent Kirkland by and through Aaron D. Ford, Attorney General for the State of Nevada, and Rudolf M. D'Silva, Deputy Attorney General, hereby oppose Plaintiff's Objection to the Magistrate Judge's Reports and Recommendations to grant Defendants' Motion for Summary Judgment [ECF No. 61].

## I. BACKGROUND

This is a civil rights lawsuit under 42 U.S.C. § 1983 brought by Plaintiff Tarontae Jackson (Jackson). ECF No. 6 at 1. Jackson is currently in the custody of the Nevada Department of Corrections (NDOC) at High Desert State Prison (HDSP). ECF No. 53-1 – Historical Bed Assignment at 3. Following mandatory screening under 28 U.S.C. § 1915A, this Court allowed Jackson to proceed on an Eighth Amendment excessive force claim against Seth Davis, Daniel Jacobs, Michael Stolk and Dent Kirkland. ECF No. 7 at 8:26-

27. Specifically, Jackson alleges Defendants used excessive force on him while conducting a cell extraction. ECF No. 6 at 4.

Defendants filed a Motion for Summary Judgment (MSJ) arguing Jackson cannot establish a genuine dispute of material fact because he failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA).[1] ECF No. 53 at 2:1-5, 17:1-18:27. Jackson opposed Defendants MSJ (Opposition), arguing he was prevented from proceeding with the grievance process, when his first level grievance was not accepted and his rejection form instructed him he could not proceed to the next level. ECF No. 56 at 5:16-6:20. Defendants filed a Reply to Jackson's Opposition (Reply) indicating Jackson was not prevented from appealing his first level grievance because soon after receiving his rejection form he received a denial of his first level grievance that according to AR 740 he could have appealed to a higher level, which Jackson failed to do. ECF No. 57 at 5:26-6:22.

The Magistrate Judge issued a Report and Recommendation to the District Judge recommending that Defendants' MSJ be granted because Jackson did not properly exhaust his administrative remedies. *See* ECF No. 58. Jackson objected to the Magistrate Judge's Report and Recommendation claiming that the rejection form he received for his first level grievance prevented him from proceeding with the grievance process. ECF No. 61.

The District Judge should reject Jackson's objection because the Magistrate Judge correctly concluded that because Jackson received a denial of his first level grievance shortly after he received a rejection form, and since Jackson did not appeal his first level denial to the second level prior to filing this lawsuit, Jackson did not properly exhaust his administrative remedies.

---

[1] In their MSJ, Defendants also argue that (1) Defendants did not use excess force on Jackson given the circumstances in which force was used, and (2) Defendants are entitled to qualified immunity. ECF No. 53 at 2:1-5. However, because the Magistrate Judge recommended that Defendants' MSJ be granted based on their exhaustion argument and Jackson has objected to the Magistrate Judge's recommendation that Defendants' MSJ be granted due to his failure to exhaust, Defendants will only focus on their exhaustion argument as it relates to the procedural posture of this lawsuit. *See* ECF No. 58; *See also* ECF No. 61. It is also worth noting that the Magistrate Judge indicated in his Report and Recommendation that in light of his conclusion in finding Hobson failed to exhaust, there was no need for the Magistrate Judge to reach Defendants' remaining arguments. ECF No. 58 at 7:22-23.

## II.   LEGAL STANDARD

### A.   Standard for Objections to Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's findings and recommendations, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003) (*quoting* 28 U.S.C. § 636(b)(1)(C) and also citing to Fed. R. Civ. P. 72. The district court judge "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate." *Id*. De novo review means that the reviewing court does not defer to lower court's ruling but freely considers matter anew, as if no decision had been rendered below. *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009).

### B.   Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

Summary judgment allows courts to avoid unnecessary trials when there is no dispute as to the facts. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The purpose of summary judgment is to isolate and then terminate claims that are factually unsupported. *Id*. at 323–24. A moving party is not required to disprove the non-moving party's claims. *Id*. Instead, the moving party is simply required to point out the absence of evidence supporting the non-moving party's claims. *Id*.

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does indeed exist. *Matsushita*, 475 U.S. at 586. Material facts are facts that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should not consider disputes concerning irrelevant or unnecessary facts. *Id.* at 248.

The opposing party is not permitted to merely rely upon its pleadings; it must tender evidence of specific facts which create a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11; *Anderson,* 477 U.S. at 255. The opposing party is not required to establish a material issue of fact conclusively as it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). The evidence of the non-moving party is to be believed, and all reasonable inferences must be drawn in favor of the opposing party. *Matsushita*, 475 U.S. at 587 (citations omitted); *Anderson*, 477 U.S. at 255.

However, reasonable inferences are not drawn out of the air; it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E. D. Cal. 1985), *aff'd,* 810 F.2d 898, 902 (9th Cir. 1987). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *T.W. Elec. Serv.*, 809 F.2d at 631. The court is concerned with establishing the existence of genuine issues, and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The facts are only "viewed in the light most favorable to the nonmoving party if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.,* (quoting *Matsushita*, 475 U.S. at 586–87). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### C.    Exhaustion Standard

In the context of a summary judgment raising exhaustion, the court, rather than a jury, resolves any disputed facts. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Consistent with Supreme Court precedent, the Ninth Circuit clarified that § 1997e(a) requires the complete exhaustion of administrative remedies before a civil complaint is filed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). "Exhaustion subsequent to the filing of suit will not suffice." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).[2]

Exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007). That means, "a prisoner must complete the [prison] review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Exhaustion of administrative remedies requires an inmate to use "all steps the agency holds out and doing so *properly*." *Id.* at 90 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedures because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

Nonetheless, exhaustion protects an administrative agency's authority; it "gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the

---

[2] *But see Saddozai v. Davis,* 35 F.4th 705, 708 (9th Cir. 2022) (*citing Jackson*, 870 F.3d 928), where the Ninth Circuit has suggested *McKinney* may not, despite clear precedent in *Booth,* require full exhaustion prior to the filing of the initial complaint.

agency's] procedures.'" *Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). The PLRA's administrative exhaustion requirement also promotes judicial economy by "reduc[ing] the quantity and improv[ing] the quality of prisoner suits." *Id.* at 93 (*quoting Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Ultimately, a federal court may not hear a prisoner's claim if a prisoner failed to comply with those "critical procedural rules" that "impos[e] some orderly structure on the course of ... proceedings." *Id.* at 90–91.

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (*quoting Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology or legal theories" as its "primary purpose…is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation." *Griffin*, 557 F.3d at 1120. Parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment. *Perttu v. Richards*, 605 U.S. 460, 145 S.Ct. 1793, 1807 (2025).

## III. LEGAL ANALYSIS

### A. Administrative Regulation 740

AR 740 is the NDOC regulation offenders must use to resolve addressable grievances and exhaust their administrative remedies. ECF No. 53-10 – Administrative Regulation 740 – Offender Grievance Procedure at 1. Only offenders' claims arising out of, or relating to, issues within the authority and control of the NDOC may be submitted for review and resolution. *Id.* at 4 (740.03(4)). If an offender files a grievance as listed in section 2, the Grievance Coordinator shall return the original improper grievance with a Form DOC-3098, improper grievance memorandum, noting the specific violation. *Id.* (740.04(3)(A)).

The offender must state the action or remedy that will satisfy the claim in the grievance. *Id.* at 4 (740.03(1)). If the offender does not factually demonstrate a harm or loss and does not state the remedy that will satisfy the claim in the grievance, the grievance will not be accepted and will be returned with an explanation as to what is missing for the grievance to be processed. *Id.* (740.03(1)(A)). A grievance will not be used as an inmate

request form DOC-3012 to advise staff of actions or conditions they do not like but which caused the offender no harm or loss. *Id.* (740.03(1)(B)).

AR 740 contains three levels of grievance procedures an offender must use to exhaust the administrative remedy; that is, the informal level, a first level appeal, and a second level appeal. *Id.* at 10-15 (740.08 – 740.10). An offender whose grievance is denied in its entirety may appeal the grievance to the next level if that inmate is not satisfied with the result. *Id.* at 6 (740.03(6)).

An overdue grievance response at any level is not an automatic finding for the offender. *Id.* (740.03(8)). The response must be completed, even if it is overdue, and the offender can proceed to the next grievance level without waiting for the response. *Id.* (740.03(8)(A)&(B)). An overdue response does not count against the offender's timeframe for filing an appeal. *Id.* (740.03(8)(C)).

At the informal level, the offender begins the process by filing form DOC-3091 after failing to resolve the matter by other means, such as discussion with staff or submitting an offender request form. *Id.* at 10 (740.08(1)). Informal grievances should be reviewed, investigated, and responded to by the Department supervisor that has responsibility for the issue that is being grieved. *Id.*at 10 (740.08(2)). The response to the grievance should be substantial, referring to any policies or procedures that support finding against the offender. *Id.* at 11 (740.08(3)). The informal level grievance shall be filed within six (6) months for most claims, including personal injury or property damage loss. *Id.* (740.08(4)(A)). The time limit for a response to the informal level grievance is forty-five (45) calendar days from the date it is received by the grievance coordinator. *Id.* at 12 (740.08(12)).

Special rules exist for grievance issues that go directly to the Warden, such as a disciplinary appeal which requires the offender to file an informal level grievance that states "for tracking purposes" at the same time as a first level grievance outlining the basis for the disciplinary appeal. *Id.* (740.08(10)). There are also specific time limits for

disciplinary appeals which must be filed within ten (10) days. ECF No. 61-5 at 11 (740.08(4)(B)).

The time limit to file the appeal to the next level begins to run from the date the offender receives the response they want to appeal. *Id.* at 6 (740.03(7)). To proceed with an appeal of a denial at the informal level, an offender must file the first level grievance within five (5) calendar days of receipt of the denial. *Id.* at 12 (740.08(12)(A)).

A first level grievance should be reviewed and investigated by the Warden at the institution, or staff they designate to respond to the claim. *Id.* (740.09(1)(A)). The offender is responsible for providing justification to continue to the first level. *Id.* at 13 (740.09(3)). A first level grievance that does not comply with procedural guidelines shall be returned to the inmate with instructions using Form DOC-3098. *Id.* (740.09(4)). The time limit to respond to the first level grievance is forty-five (45) calendar days from the date it is received by the grievance coordinator. *Id.* at 14 (740.09(5)). The offender must appeal within five (5) calendar days of receipt of the response to proceed to the second level. *Id.* (740.09(5)(A)).

A second level grievance should be responded to by the Deputy Director of Operations for facility custody or security operations. *Id.* (740.10(1)(A)). The time limit for a response to the offender for the second level grievance is sixty (60) calendar days from the date the grievance is received by the grievance coordinator. *Id.* at 15 (740.10(3)).

### B.    Grievance Number 2006-31-46909

A review of Jackson's grievance history shows that Jackson filed one grievance in grievance no. 2006-31-46909 (grievance no. 909) regarding the incident in which officers were required to use force to extract him from his cell. ECF No. 53-11 – Grievance History Report at 15. On December 22, 2022, Jackson filed grievance no. 909, the day after he was extracted from his cell, claiming that excessive force was used on him because he refused to cuff up. 53-12 at 1-3. On December 27, 2022, Jackson's grievance was partially granted because his grievance alleging use of excessive force was referred to the inspector general's office under IN-2023-49 for further investigation. *Id.* at 8-9.

On March 29, 2023, Jackson filed a first level grievance because he had not received a response to his informal grievance. *Id.* at 29. On April 25, 2023, Jackson's first level grievance was rejected. *Id.* at 32. The rejection form informed Jackson that his first level grievance was rejected, *but he may refile his first level grievance at the same level after correcting the deficiencies in his grievance. Id.* The rejection form also stated that if the grievance was not accepted due to any of the reasons in the box, the grievance may not proceed to the next level. *Id.* One of the boxes checked was the box checked for other specify which indicated that Jackson's grievance had been referred to the IG's office. *Id.*

On May 9, 2023, NDOC denied Jackson's first level grievance informing him that the incident was fully investigated by the inspector general's office under IN-2023-49 and it was determined that Jackson's allegations for excessive force were unsubstantiated. *Id.* at 33. There is no record that Jackson appealed the denial of this first level grievance to the second level. *See* ECF No. 53-11 at 15; *See generally* ECF No. 53-12. Furthermore, there is no record indicating that Jackson was prevented from appealing the denial of his first level grievance to the second level. *Id.*

### C.  The District Judge Should Adopt the Report and Recommendation of the Magistrate Judge and Deny Jackson's Objection

In his Objection, Jackson argues that NDOC officials instructed him not to proceed to the next grievance level after they rejected his first level grievance, effectively preventing him from continuing with the grievance process. ECF No. 61 at 1-2. As outlined above, on December 22, 2022, Jackson filed an informal grievance in grievance number 2006-31-46909 (grievance no. 909), the day after he was extracted from his cell, claiming that excessive force was used on him because he refused to cuff up. ECF No. 53-12 at 1-3. On December 27, 2022, Jackson's grievance was partially granted because his grievance alleging use of excessive force was referred to the inspector general's office under IN-2023-49 for further investigation. *Id.* at 8-9.

On March 29, 2023, Jackson filed a first level grievance because he had not received a response to his informal grievance. *Id.* at 29. On April 25, 2023, Jackson's first level

grievance was rejected. *Id*. at 32. The rejection form informed Jackson that his first level grievance was rejected, *but he may refile his first level grievance at the same level after correcting the deficiencies in his grievance. Id*. The rejection form also stated that if the grievance was not accepted due to any of the reasons in the box, the grievance may not proceed to the next level. *Id*. One of the boxes checked was the box checked for other specify which indicated that Jackson's grievance had been referred to the IG's office. *Id*. As such, Jackson was informed that since the IG's office had not yet completed its investigation of his excessive force claims filed in his informal grievance, he could not appeal to the next level. However, Jackson's rejection form did not prevent him from appealing once the IG's office completed its investigation. *Id*.

As of May 9, 2023, the IG's office completed its investigation of Jackson's use of force claim. Upon determining that Jackson's excessive force claim was unsubstantiated Jackson's first level grievance was denied. *Id*. at 33. Because the IG investigation of Jackson's claim was complete as of May 9, 2023, the deficiency in Jackson's first level grievance was corrected. Additionally, as emphasized by the Magistrate Judge in the Report and Recommendation, AR 740 requires offenders to appeal the denial of a first level grievance to the next level in order for the grievance process to be considered complete and for the administrative remedies to be exhausted. ECF No. 53-10 at 740.09(6). If an offender fails to appeal to a higher level, the grievance is considered abandoned or withdrawn. *Id*. at 740.03(7)(D). Here, Jackson did not appeal his first level grievance to a higher level, as required by AR 740 to exhaust his administrative remedies. Also, there was nothing on the form denying Jackson's first level grievance that would have led him to believe he could not appeal to a higher level. ECF No. 53-12 at 33.

Courts "measure exhaustion at the time the action is filed." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017). As noted by the Magistrate Judge, as of June 6, 2023, when Jackson filed this action, the subsequent decision denying Plaintiff's first level grievance had been issued. Under AR 740, Jackson was required to proceed with his second level grievance appeal of that denial. However, Jackson failed to do so. As such, Jackson did not

**ER026**                                                           **ER026**

exhaust his administrative remedies prior to filing this action. Thus, the District Judge should deny Jackson's Objection and adopt the Magistrate Judge's Report and Recommendation.

## IV. CONCLUSION

The District Judge should deny Jackson's Objection and adopt the Magistrate Judge's Reports and Recommendations because Jackson received a denial of his first level grievance shortly after he received a rejection form, and since Jackson did not appeal his first level denial to the second level prior to filing this lawsuit, Jackson did not properly exhaust his administrative remedies.

DATED this 27th day of August, 2025.

AARON D. FORD
Attorney General

By: /s/ Rudolf M. D'Silva
RUDOLF M. D'SILVA (Bar No. 16227)
Deputy Attorney General

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on August 27, 2025, I electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS [ECF NO. 61]** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

> Tarontae Jackson #1186781
> High Desert State Prison
> P.O. Box 650
> Indian Springs, NV 89070
> *Plaintiff, Pro Se*

/s/ Jamile Vazquez
Jamile Vazquez, an employee of the
Office of the Nevada Attorney General

ER028

ER028

ER028

U.S. District state District Court

# District of Nevada

Tarontae Jackson | case No: 3:23-cv-00247-MMD-CSD
Plaintiff
v
Stolk
Defendants

motion Re "Objections to Received the
Judges Report and Recommendation
(ECF 58)

FILED          RECEIVED
ENTERED        SERVED ON
COUNSEL/PARTIES OF RECORD

AUG 13 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                    DEPUTY

Comes Now Plaintiff Tarontae P Jackson objecting to
The magistrate Judge recommendation to grant Defendant
Summary Judgement motion (ECF) NO 58. once
a denfendant shows The plaintiff did not exhaust
Available administrative remedies. The Burden shifts to
the plaintiff to come Forward with evidence showing
That there was Something in his particular case that
made the existing and generally available administrative
remedies effectively unavailable to him. Citing Hilao v.
estate of marcos. 103 F.3d 767, 778 n.5 (9th cir 1996) (ECF 58-0)
States Plaintiff did Not properly exhaust administra
tive remedies before filing his complaint. Plaintiff here
object to granting Defendants because Plaintiff Can show
with evidence showing he did to thru The proper
step of AR740. as seen in (ECF) NO. 58-5 @ 20 plaintiff
initiated an informal grievance 2006314690 9 on Dec 22,
2022 regarding the alleged use of force.
Plaintiff again initiated a First level grievances
stating that NDOC had not responded to my informal
grievance within 90 days as stated in AR740
However in my response to defendants
Summary Judgement (ECF NO. 56-19 on the improper
grievance memo NOT Accepted the grievance may
not Proceed to the next level which

Prevented me from moving forward with my grievance. And left me no other choice but to proceed to court. Further plaintiff submitt the improper grievance to show the grievance instructed me not to proceed to the next level along with other filed grievance that cleary show NDOC officals told plaintiff he can not proceed to the next levels please see EXHIBIT A. of Attachment Therefore the honorable Miranda M. Du should deny the magistrate Judge recommedation to grant Defendants summary Judgement Because plaintiff has showing there was something in his Particular case that Prevent him from moving Forward with the grievance process because NDOC instructed him not to moved forward AR740 (ECF No. 56-22 @ 6 also states follow the instructions of the improper grievance memo

Based on my personal knowledge under penalty of PreJury everything is true and correct

Dated 7-25-2025
Terrintal Jackson
#1186781
H.D.S.P
P.O. Box 650
Indian Springs
NV 89070

# Exhibit A

# Nevada Department of Corrections
## Improper Grievance Memo

| | |
|---|---|
| **TO:** | Jackson, Tarontae  [0001186781]          9A 1 |
| **FROM:** | Tasheena Cooke, Associate Warden - Ely State Prison |
| **DATE:** | April 25, 2023 |
| **RE: Improper Grievance #** | 2006.31.4699, Untimely |

The attached grievance is being returned to you for the following reason(s):

**REJECTED** - After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level unless specified. Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

☐ Missing documents
☐ No harm/loss, action, or remedy
☐ Not a KITE
☐ Missing inmate personal property claim form
☐ Alterations
☐ Missing administrative claim form
☐ Continuation forms
☐ Other specify:

☐ More than one issue
☐ Improper submission
☐ Not signed or dated
☐ Disciplinary appeal process/directly to warden
☐ Failure to correct deficiencies
☐ Wrong form
☐ Staff misconduct (IG Review Submitted)

**NOT ACCEPTED** - If not accepted due to any of the reasons in this box, the grievance may NOT proceed to the next level Per AR 740.03,5 and 740.04,G.

☐ Non-grievable issues:
  ☐ State and federal court decisions
  ☐ State, federal and local laws and regulations
☒ Untimely submission
☐ Inmate elected NOT to sign and date any grievance form
☐ Grievance was granted
☐ Abuse of Inmate Grievance Procedure
  ☐ A threat of serious bodily injury to a specific individual
  ☐ Specific claims or incidents previously filed by the same inmate
☒ Other specify: Inmate Jackson, your grievance has been referred to the IG's office.

  ☐ Parole Board actions and/or decisions
  ☐ Lacks standing

  ☐ Obscene, profane and derogatory language
  ☐ More than one (1) grievance per week, Monday through Sunday

| | | | |
|---|---|---|---|
| **Witness Signature** | 5/12/23 **Date** | **Inmate Signature** | 5-12-23 **Date** |

cc: Original – Inmate
    Copy - Grievance File

DOC-3098 (12/2021)

NDOC000095

ER032          ER032          ER032

Log Number 2006-31-44909

**NEVADA DEPARTMENT OF CORRECTIONS**
**FIRST LEVEL GRIEVANCE**

NAME: Tarontae Jackson    I.D. NUMBER: 1186781

INSTITUTION: ELY    UNIT: 9-A-30

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 200631446909 , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Tarontae Jackson    DATE: 3-29-23

WHY DISAGREE: No response after 90 days i need the high level officals to review remedy stay the same All good time work time back that i lost And a tv. with cable cord. 500 dollars on my books.

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 4/3/23

FIRST LEVEL RESPONSE: _____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 4/27/23

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison

APR 05 2023

Grievance Coordinator

DOC 3093 (12/01)

NDOC000096

ER033    ER033    ER033

*12 C6*

# Nevada Department of Corrections
# Improper Grievance Memo

| | |
|---|---|
| TO: | Jackson, Tarontae [0001186781] |
| FROM: | Gabriela Najera, Associate Warden - High Desert State Prison |
| DATE: | July 29, 2025 |
| RE: Improper Grievance # | 20063180499 - 2nd Rejection, Informal |

*get this*
*due 5th of*
*Aug. 2025*

The attached grievance is being returned to you for the following reason(s):

**REJECTED - After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level unless specified.** Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

| | | | |
|---|---|---|---|
| ☐ | Missing documents | ☐ | More than one issue |
| ☐ | No harm/loss, action, or remedy | ☒ | Improper submission |
| ☐ | Not a KITE | ☐ | Not signed or dated |
| ☐ | Missing inmate personal property claim form | ☐ | Disciplinary appeal process/directly to warden |
| ☐ | Alterations | ☐ | Failure to correct deficiencies |
| ☐ | Missing administrative claim form | ☐ | Untimely submission |
| ☐ | Continuation forms | ☐ | Staff misconduct (IG Review Submitted) |

☒ Other specify: **IMPROPER SUBMISSION:** The initial grievance process begins with the submission, receiving and accepting of a DOC 3091 Informal Grievance. **You cannot proceed to the First Level or Second Level if the Informal Grievance has not been accepted.** A DOC 3098 Improper Grievance Memo is a rejection notice. This grievance was submitted out of turn.
**Instructions:** Please correct and resubmit within 5 days of receipt of this memo on a new **Grievance** form restating the factual harm and/or loss, the action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance log number, and attach supporting documents so that this can be fully researched.

**NOT ACCEPTED - If not accepted due to any of the reasons in this box, the grievance may NOT proceed to the next level Per AR 740.03,5 and 740.04,G.**

☐ Non-grievable issues:
  ☐ State and federal court decisions          ☐ Parole Board actions and/or decisions
  ☐ State, federal and local laws and regulations   ☐ Lacks standing

☐ Untimely submission

☐ Inmate elected NOT to sign and date any grievance form

☐ Grievance was granted

☐ Abuse of Inmate Grievance Procedure
  ☐ A threat of serious bodily injury to a specific individual   ☐ Obscene, profane and derogatory language
  ☐ Specific claims or incidents previously filed by the same inmate   ☐ More than one (1) grievance per week, Monday through Sunday

cc: Original – Inmate
Copy - Grievance File

DOC-3098 (12/2021)

**ER034**          **ER034**          **ER034**



# State of Nevada
# Department of Corrections
## Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 09/20/2022 | IF | | , |

Proposed Response: 9/16

The reason it took me so long to grieve is because staff at SCC told me this wasnt a grievable issue which mislead me to timely grieve my issue. Also, AR 740.08.4C states when a grievance cannot be filed because of circumstances beyond the inmate's control the time will (cont...) ...[CTUPAZELIZE, 11/17/2022 11:44:11] 11/1 - ok so on 9/16/22 I was told I was missing 3098 and to resubmit at 1st level with all attachments. I did everything I was told. Today Nov 1st make the 45 day for yall to respond. However yall failed to do so (cont...)

Official Response: 3098 11/17 2ND



Offender Jackson, you cannot appeal to the next level if your grievance was not accepted at the previous levels. Additionally,  Your grievance has been reviewed and rejected four times for multiple 3098s. This grievance can no longer be responded to as it has been rejected four times for being improper.  You were given multiple opportunities to correct these errors. This constitutes abandonment of your claim, as you have exhausted the grievance process. THIS GRIEVANCE CANNOT BE RESUBMITTED.

3098 11/02/22 1ST
This issue has been considered abandoned and has been submitted multiple times creating duplicates. Be advised that this issue cannot be resubmitted. Along with GRV# 20063139434. See 3098 dated 07/05/22. FUTURE SUBMISSIONS WILL BE RETAINED IN YOUR GRIEVANCE FILE.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063139365 | 06/16/2022 | GRIEVANCE | GRIEVANCES |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/16/2022 | IF | DENIED | , |

Proposed Response:

Official Response: This is not an emergency grievance per AR740.  Kite your caseworker.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/16/2022 | IF | | , |

Proposed Response: 06/16

States none of his grievances have been answered and none of them are in NOTIS.

Official Response:

# DECLARATION UNDER PENALTY OF PERJURY

I, the undersigned, understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury.

I declare, under the penalty of perjury under the laws of the United States of America, that the above information is accurate, correct and true to the best of knowledge executed within the terms of NRS 171.102 and NRS 208.165. See U.S.C. Title 28 Chapter 115 Sec. 1746 and U.S.C. Title18 Chapter 79 sec.1621.

Dated this 25ᵗʰ day of July , 20 25 .

Signature Twonte # 1186281

Print Name Tarontae Jackson

High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070

NRS 171.102(1) Oath before a magistrate or a notary public; or (2) Declaration made subject to penalty of perjury.

NRS 208.165 A prisoner may execute any instrument by signing his name immediately following a declaration "under penalty of perjury" with the same legal effect as if he had acknowledged it or sworn to its truth before a person authorized to administer oaths. As used in this section, "prisoner" means a person confined in any jail or prison, or any facility for the detention of juvenile offenders, in this state.

U. S. C. Title 28 Chapter 115 sec. 1746.  Unsworn declarations under penalty of perjury
Wherever, under any law of the United Stated or under any rule, regulation, order, or requirement made pursuant to law, any matter or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification. Certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, or proved by the sworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
  (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
        Executed on (date)                                      (Signature)".
  (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.
        Executed on (date)                                      (Signature)".

U. S. C. Title 18 Chapter 79 sec. 1621   Perjury generally
Whoever---
  (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
  (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

**ER036**                         **ER036**                         **ER036**

Tarantae Jacksen
#1186481
H.D.S.P
P.O. Box 650
Indian Springs
NV 89070

___FILED       ___RECEIVED
___ENTERED     ___SERVED ON
   COUNSEL/PARTIES OF RECORD

   AUG 1 3 2025

CLERK US DISTRICT COURT
   DISTRICT OF NEVADA

BY: _____ DEPUTY

Federal courts
Clerk of the court
333. south Las vegas
Blvd. Room 1334
Las vegas

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TARONTAE JACKSON,

    Plaintiff

v.

STOLK, et al.,

    Defendants

Case No.: 3:23-cv-00247-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 53

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos.53, 53-1 to 53-12.) Plaintiff filed a response. (ECF No. 56.) Defendants filed a reply. (ECF No. 57.)

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).

The court screened Plaintiff's amended complaint, and allowed him to proceed with a single claim for excessive force under the Eighth Amendment against defendants Dent Kirkland, Shane Brown, Seth Davis, Michael Stolk, and Daniel Jacobs.

Defendants move for summary judgment, arguing: (1) Defendants did not use excessive force under the circumstances; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to exhaust administrative remedies before filing this action.

**ER038**          **ER038**          **ER038**

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the nonmoving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

2

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

**ER040**          **ER040**          **ER040**

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion"). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id*.

Once a defendant shows the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff

4

**ER041**        **ER041**        **ER041**

did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)).

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

To exhaust administrative remedies within NDOC, inmates must follow the procedures outlined in Administrative Regulation (AR) 740, and they must complete three levels of a grievance: informal, first, and second. (ECF No. 53-10.)

The court has reviewed the relevant version of AR 740 submitted by Defendants, as well as the grievance documentation related to this claim, and concludes that Plaintiff did not properly exhaust administrative remedies before filing this action.

Plaintiff initiated an informal level grievance 20063146909 on December 22, 2022, regarding the alleged use of excessive force. (ECF No. 53-12 at 21-27.)

J. Underwood responded on December 27, 2022, that the grievance was "partially granted" as the matter was referred to the Inspector General's (IG) office for further

ER042                    ER042                    ER042

investigation. (ECF No. 53-12 at 28.) There is another grievance report transaction dated December 27, 2022, noting that IN-2023-0049 was opened for this investigation. (*Id*. at 29.)

According to AR 740, when grievances alleging staff misconduct are referred to the IG, the IG must respond to the allegation within 90 days. (ECF No 53-10 at 13.) AR 740 also provides that if a response to a grievance is overdue, the inmate may proceed to the next level. (ECF No. 53-10 at 6.)

A memorandum dated January 4, 2023, indicates that a use of force incident review was conducted on January 4, 2023, and concluded that the use of force was justified, authorized, necessary and was limited; however, it does not appear the results of the investigation were conveyed to Plaintiff at that time. (ECF No. 53-12 at 11-13.)

Plaintiff initiated a first level grievance on March 29, 2023, stating it had been 90 days and he had not received a response (from the IG). (ECF No. 53-12 at 30.) Tasheena Cooke responded with an improper grievance memorandum dated April 25, 2023. The memorandum indicates that the first level grievance was "not accepted" because it was an "untimely submission." There is also a notation stating Plaintiff's grievance was referred to the IG's office." (ECF No. 53-12 at 33.)

Nevertheless, Plaintiff was given another first level grievance response dated May 9, 2023, advising Plaintiff that the incident was fully investigated, and it was determined that Plaintiff's allegations of excessive force were unsubstantiated. As such, Plaintiff's first level grievance was denied. (ECF No. 53-12 at 34.)

Plaintiff did not file a second level grievance. (ECF Nos. 53-11, 53-12.)

Defendants argue that because Plaintiff did not pursue grievance 20063146909 through the second level, he did not properly exhaust administrative remedies before filing this action.

6

**ER043**　　　　　　　　**ER043**　　　　　　　　**ER043**

Plaintiff, on the other hand, argues that administrative remedies were unavailable to him because the improper grievance memorandum from Tasheena Cooke in response to his first level grievance indicates the first level grievance was "not accepted," and the form instructed Plaintiff that he could not proceed to the next grievance level. Plaintiff argues that he had no other choice but to proceed with filing his complaint.

Within a short period of time, however, Plaintiff was given another response to his first level grievance, advising him of the adverse outcome of the IG investigation and denying his first level grievance. While he may have been instructed that he could not proceed to the next level in response to the improper grievance memorandum from Cooke, AR 740 states that when the claim is "not accepted," the inmate "may not appeal *that* decision to the next procedural level." (ECF No. 53-10 at 6.) When Plaintiff received the subsequent denial of his first level grievance, AR 740 required that he appeal the denial to the next grievance level in order for the grievance process to be considered complete and for administrative remedies to be exhausted. If the inmate fails to do so, the grievance is considered abandoned or withdrawn. (*Id*.)

Courts "measure exhaustion at the time the action is filed." *Andres v.* Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017). As of June 6, 2023, when Plaintiff filed this action, the subsequent decision denying Plaintiff's first level grievance had been issued. Under AR 740, Plaintiff was required to proceed with his second level grievance appeal of that denial. He failed to do so, and therefore, he did not exhaust administrative remedies prior to filing this action. If Plaintiff had not received the subsequent denial of his first level grievance, the outcome of this motion might be different. Under the circumstances, however, administrative remedies were "capable of use" when Plaintiff filed this lawsuit. In light of this conclusion, the court need not reach Defendants' remaining arguments.

ER044                                 ER044                                 ER044

In conclusion, Defendants' motion for summary judgment should be granted, and this action should be dismissed. The dismissal should be without prejudice. However, it is likely that the provisions of AR 740 preclude Plaintiff from continuing the exhaustion process and re-filing this action.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 53).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 17, 2025

_____
Craig S. Denney
United States Magistrate Judge

8

ER045                    ER045                    ER045

AARON D. FORD
 Attorney General
RUDOLF M. D'SILVA (Bar No. 16227)
 Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3375 (phone)
(702) 486-3768 (fax)
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants*
*Seth Davis, Daniel Jacobs,*
*Michael Stolk and Dent Kirkland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TARONTAE JACKSON, | Case No. 3:23-cv-00247-MMD-CSD |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [ECF NO. 53]** |
| STOLK, *et al.*, | |
| Defendants. | |

Defendants Seth Davis, Daniel Jacobs, Michael Stolk, and Dent Kirkland by and through Aaron D. Ford, Attorney General for the State of Nevada, and Rudolf M. D'Silva, Deputy Attorney General, hereby submit their reply in support of motion for summary judgment [ECF No. 53].

## I.    INTRODUCTION

Defendants filed a Motion for Summary Judgment (MSJ) on May 5, 2025. ECF No. 53. Plaintiff Tarontae Jackson (Jackson) filed an Opposition to Defendant's Motion for Summary Judgment (Opposition) arguing: (1) officers used excessive force on him when extracting him from his cell; (2) Defendants violated clearly established law; and (3) Jackosn was prevented from exhausting his administrative remedies. *See generally* ECF No. 56.

This Court should grant Defendants MSJ because: (1) Jackson has failed to support his claim that Defendants used excessive force on him when extracting him from his cell;

(2) Jackson has not established that Defendants violated clearly established law; and (3) Jackson failed to show he was prevented from proceeding with NDOC's grievance process.

## II.    DISCUSSION[1]

### A.    Jackson Failed to Show the Force Used on Him Was Excessive[2]

In his Opposition, Jackson claims the force used against him by officers, when extracting him from his cell was excessive. ECF No. 56. To support this claim Jackson alleges that when officers entered his cell he was lying on his bunk with his hands behind his back. *Id.* at 2:22-24. The video of Jackson's cell extraction shows when CERT officers arrived at Jackson's cell, he was instructed to submit to restraints which he refused to do. ECF No. 53-7 at 1:50-55. Jackson was specifically instructed to turn around, back up to the cell door, and put his hand through the red slot in the door, so officers could apply restraints on him. ECF No. 53-7 at 1:50-55. Because Jackson did not do this, officers were authorized to enter his cell and use force to restrain him. The fact that Jackson claims he was lying on his bunk when officers entered his cell, shows he disregarded officers' orders to submit to restraints.

Upon entering Jackson's cell, officers can be heard instructing him to give them his hands. *Id.* at 2:05-15. Five of the officers who partook in extracting Jackson from his cell reported that upon entering the cell, Jackson was lying face down on his bunk with his hands under his stomach. *See* ECF No. 53-8. Because Jackson's hands were under his stomach, officers were unsure whether Jackson had a weapon on him. Therefore, the use of the taser was not excessive in order to gain control of Jackson's hands. *See Beaver v. City of Fed. Way,* 301 F.App'x 704, 705 (9th Cir. 2008) (tasing an arrestee who was suspected of committing a daytime burglary was not excessive where the arrestee was attempting to flee, ignored commands, and remained non-compliant).

---

[1] Defendants incorporate the summary judgment standard from their MSJ into this Reply. *See* ECF No. 53 at 6:25-8:14.

[2] Defendants incorporate the qualified immunity and excessive force standard from their MSJ into this Reply. *See* ECF No. 53 at 8:15-15:18.

Additionally, after Jackson was removed from his cell, he made several remarks showing his intent to make it as difficult as possible for officers to remove him from his cell. For example, while in the shower cell, Jackson was instructed to go to the back of the cell. *Id.* at 8:10-30. Instead of complying, Jackson refused to listen to this order, then called the officers "bitches." *Id.* Jackson then informs officers they would have to kill him. *Id.* 9:15-35. Later Jackson is asked to put on his shirt, to which Jackson responded, "I ain't putting on shit." *Id.* at 10:40-45. Jackson then states that to take him out of the shower cell they would have to drag him out, beat him up and kill him. *Id.* at 10:40-50. Jackson doubles down on this statement saying he means what he is saying. *Id.* at 10:50-53. This behavior and language from Jackson after his cell extraction shows that Jackson intended to make it as difficult as possible for officers to restrain him when they entered his cell, which includes keeping his hands under his stomach while lying face down on his bunk when officers entered his cell.

In his Opposition, Jackson also alleges he received two black eyes and a cut above his eyes. ECF No. 56 at 2:24-25; 5:1-3. Although the video of Jackson's cell extraction shows he had a laceration above his right eye, it does not show he sustained any black eyes. ECF No. 53-7 at 12:24. Additionally, the medical report on Jackson's cell extraction does not indicate he received bruising above his eyes. ECF No. 53-9. Nonetheless, as discussed in Defendants MSJ, the injuries sustained by Jackson during his cell extraction were reasonable under the circumstances. ECF No. 53 at 9:7-15:18.

In his Opposition, Jackson alleges he was tased for no reason. ECF No. 56 at 2:26-28. As discussed in Defendants MSJ, Jackson was tased because he refused to submit to restraints, and when officers entered his cell, he was lying on his bunk with his hands under his stomach. This posed a potential life-threatening risk in which officers had to make a split-second decision to use force necessary for their own safety. *Jordan Gardener,* 986 F.2d 1521, 1528 (9th Cir. 1993). Because officers were unsure whether Jackson had a weapon on him, officers used a taser in an effort to gain control of his arms. Once restraints were put on Jackson, force ceased to be used. ECF No. 53-7 at 3:52. As such, Jackson was

tased because he did not comply with officers' orders, and because officers were unsure if Jackson had a weapon on him that could be used against officers under his stomach.

In his Opposition, Jackson claims officers told him they were going to beat him up. ECF No. 56 at 3:14-19. A review of the video of Jackson's cell extraction shows the only person who made threats to harm the safety and wellbeing of anyone was Jackson when he threatened to kill the officers after they conducted their job duties. ECF No. 53-7 at 5:35-6:00, 10:00-10:30. Accordingly, for the reasons outlined in Defendants MSJ, and in this response to Jackson's Opposition, Defendants did not use excessive force on Jackson. Thus, this Court should grant Defendants MSJ.

**B.     Jackson Failed to Cite Any Law That Would Have Clearly Put Officers on Notice That the Force They Used Given the Circumstances Was Excessive[3]**

In his Opposition, Jackson alleges Defendants violated clearly established law under the Eighth Amendment. ECF No. 56 at 5:8-10. In support of this claim, Jackson cites to *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982),[4] and *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). ECF No. 56 at 5:8-12. However, Jackson fails to provide an explanation as to how the case law in these cases show the law is clearly established that Defendants use of force was excessive when they extracted Jackson from his cell.

Jackson also cites *Peason v. Callahan*, 555 U.S. 223, 232 (2009), indicating that this case states that lower courts can decide clearly established law questions. ECF No. 56 at 5:12-14. However, this does not provide any explanation as to how Defendants were on notice that their actions violated clearly established law. As such, Jackson has failed to establish that Defendants have violated clearly established law. Accordingly, for the reasons outlined in Defendants' MSJ, and in this reply to Jackson's Opposition, this court should grant Defendants MSJ.

---

[3] Defendants incorporate the law regarding clearly established law from their MSJ into this Reply. ECF No. 53 at 15:20-16:18.

[4] In his Opposition, Jackson cites this case as being dated in 1992. Defendants believe this was a typo as the citation does not exist for the year 1992 but does exist for the year 1982.

**C.    Jackson Fails to Show That He Was Prevented from Proceeding with NDOC's Grievance Process**

In his Opposition, Jackson alleges he was prevented from proceeding with the grievance process, when his first level grievance was rejected. ECF No. 56 at 5:16-6:20. Administrative Regulation 740, is the regulation NDOC offenders must use to resolve addressable grievances and claims. ECF No. 53-10. AR 740 provides in relevant part:

> "In the event an offender's claim is NOT ACCEPTED or not within the intended scope of this Administrative Regulation, the offender may not appeal that decision to the next procedural level. ***Instead, the offender must correct the issues that led to the rejection of the grievance, and follow the instructions provided on the Improper Grievance Memorandum DOC 3098, that the offender will receive at the time the rejected or NOT ACCEPTED grievance is returned.***"

*Id.* at 740.03(6) (emphasis added).

As outlined in Defendants MSJ, on December 22, 2022, Jackson filed an informal grievance in grievance number 2006-31-46909 (grievance no. 909), the day after he was extracted from his cell, claiming that excessive force was used on him because he refused to cuff up. ECF No. 53-11 at 1-3. On December 27, 2022, Jackson's grievance was partially granted because his grievance alleging use of excessive force was referred to the inspector general's office under IN-2023-49 for further investigation. *Id.* at 8-9.

On March 29, 2023, Jackson filed a first level grievance because he had not received a response to his informal grievance. *Id.* at 29. On April 25, 2023, Jackson's first level grievance was rejected. *Id.* at 32. The rejection form informed Jackson that his first level grievance was rejected, *but he may refile his first level grievance at the same level after correcting the deficiencies in his grievance. Id.* The rejection form also stated that if the grievance was not accepted due to any of the reasons in the box, the grievance may not proceed to the next level. *Id.* One of the boxes checked was the box checked for other specify which indicated that Jackson's grievance had been referred to the IG's office. *Id.* As such, Jackson was informed that since the IG's office had not yet completed its investigation of his excessive force claims filed in his informal grievance, he could not appeal to the next

level. However, Jackson's rejection form did not prevent him from appealing once the IG's office completed its investigation. *Id*.

As of May 9, 2023, the IG's office completed its investigation of Jackson's use of force claim. Upon determining that Jackson's excessive force claim was unsubstantiated Jackson's first level grievance was denied. *Id*. at 33. Because the IG investigation of Jackson's claim was complete as of May 9, 2023, the deficiency in Jackson's first level grievance was corrected. As such, Jackson could have appealed the denial of his first level grievance to the second level. However, Jackson never filed this appeal. Because Jackson did not file the denial of his first level grievance to the second level, he effectively abandoned this grievance. Accordingly, Jackson's grievance was not exhausted. Thus, this court should grant Defendants MSJ.

On April 25, 2023, Jackson's first level grievance was also rejected for being untimely. *Id*. at 32. This is true because the IG's Office had not yet completed its investigation into Jackson's claim as of April 25, 2023. Because Jackson's first level appeal was contingent on the response of the IG Offices investigations his first level grievance was premature. Thus, it was untimely.

On May 9, 2023, Jackson's first level grievance was denied. *Id*. at 33. AR 740 provides that an offender must file an appeal to the first level grievance within five calendar days of receipt of the first level response using a second level grievance to proceed to the next level. Again, Jackson never filed a second level grievance. As such, Jackson had an opportunity to appeal his first level grievance to the second level and failed to do so. Accordingly, Jackson has failed to exhaust his claim. Thus, this Court should grant Defendants' MSJ.

## III.    CONCLUSION

For the forgoing reasons, Jackson is unable to show how Defendants' MSJ fails to meet the burden for showing this matter should be dismissed under Fed. R. Civ. Pro. 56. (1) Jackson has failed to show the force used by officers in extracting him from his cell was excessive; (2) Jackson has failed to cite any law that would have clearly put Officers on

notice that the force they used, given the circumstances, was excessive; and (3) Jackson fails to show how he was prevented from proceeding with NDOC's grievance process. Based on the arguments presented hereto, and incorporating the arguments made in Defendants' MSJ (ECF No 53), this Court should grant the motion and dismiss this entire care.

DATED this 5th day of June, 2025.

AARON D. FORD
Attorney General

By: /s/ Rudolf M. D'Silva
RUDOLF M. D'SILVA (Bar No. 16227)
Deputy Attorney General
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on June 5, 2025, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [ECF NO.53]** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

Tarontae Jackson #1186781
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
*Plaintiff, Pro Se*

/s/ Jamile Vazquez
Jamile Vazquez, an employee of the
Office of the Nevada Attorney General



Tarantae Jackson
Plaintiff

v

Stolk

Defendants

United States
District court
District of Nevada

Case No: 3-2?-CV-0247-MMD CSD

FILED/ENTERED
RECEIVED/SERVED ON
COUNSEL/PARTIES OF RECORD
MAY 23 2025
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                    DEPUTY

Declaration in opposition to Defendants motion for summary Judgement:

I am The Plaintiff in the above-entitled case. I make

This declaration in opposition to defendants motion for summary Judgement on my claim of concerning excessive force against me by defendants seth Davis, Daniel Jacobs, Michael Stolk, Dent Kirkland And Shane Brown.

INTRODUCTION

This is a civil Rights lawsuit under 42 U.S.C. 1983 brought by Plaintiff, Tarontae Jackson (Plaintiff) ECF No 6 following mandatory screening under 28 U.S.C. 1915A This court allowed Jackson to Proceed on an 8th Amendment excessive force claim against the Aboved Name Defendants. ECF NO 7 @ 8.26.27. Specifically, Plaintiff Alleges Defendants used excessive force on him while conducting a cell extraction. ECF NO 6 @ 4.

Plaintiff Statement of Disputed Factual Issues: defendants have moved for summary Judgement on the Plaintiff Claim concerning The Excessive use of force. Pursuant to local Rule of this court. Plaintiff submits The following list of Genuine issues of material fact that require the denial of The defendants motion.

# Plaintiff Brief in opposition TO defendants summary Judgement Motion.

## Statement of The case

This is a 1983 Action filed by a prisoner @ ELY state Prison. seek damages. Base on the Excessive Force. Defendants have filed a motion For summary Judgement as to the Plaintiff's excessive Force claim against defendants, Davis, Jaccos, stolk, Kirkland and Brown. Arguing that Jackson cannot establish a genuine dispute of material facts as to the elements of his 8th Amendment. excessive Force claim because (1) Defendants did Not use excessive Force on Jackson given the circumstances in which force was used against him (2) Defendants are entitled to Qualified immunity And (3) Jackson failed to exhaust his administrative remedies Pursbant to The P.L.R.A. see. 42 U.S.C. 1997e(a)

## Statement of facts:

The Plaintiff declaration submitted in response to the defendants motion states that on the morning of Dec 21st 2022 officer stolk fasely accussed me of propelling on him at Breastfast which officers order me to cuff up and i refused. officers Than entered my cell while I was laying down on my Bunk with my hands behind my Back. Hit me in Both my eyes and temple leaving Both my eyes Black with a cut above my left eye Both officer Brown And Davis did this to me For No reason they also Tased me For No reason Not only did they violate my civil rights but also violated their use of Force Policy. E.C.F. 6

ER055                    ER055                    ER055

# ARGUMENT POINT

## 1

There are Genuine issue of material facts That preclude summary Judgement FOR The defendants on The Plaintiff's Use of force claim. ECF. NO 6 summary Judgement is To be granted only if the record before the court shows "That there is No Genuine issue as to any material fact and That the moving party is entitled to a Judgement as a matter of Law RULe 56(c), Fed.R.Civ.P. A "material" fact is one that "might affect the outcome of the suit under the governing Law". Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). The declarations of the Plaintiff and the defendant are squarely contradictory as to why The use of Force was used against an inmate who was locked in cell refused to cuff up because officers had already told him they was going to beat him up. The allegations in the Plaintiffs declaration portray a completely needless use of force, against me. The defendants by contrast, claims That they did not use excessive Force given the Circumstances in which force was used on me @ E.C.F. 53-2 @ 2. There is clearly a genuine issue of fact. The factual dispute is also material. under the governing law, whether the use of force by prison staff & violate the 8th Amendment defends on whether it was "Applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. see, Hudson v. McMillian, 503 U.S. 1, 5-6 112 S.ct 995

(1992); whitley v.Albers, 475 U.S. 312,320-21, 106 S.ct 1078 (1986) The fact that Force was used when unnecessary, or in a manner excessive to any need is in itself evidence that the defendants were acting "maliciously and sadistically to cause harm. see, Miller v. leathers, 913 F.2d 1085, 1088 (4th cir 1990); oliver v. collins, 914 F.2d. 56, 59 (5th cir 1990 or wat. v. maloney, 360. F.Supp. 2d 146, 153-54 (D. Mass. 2005). A reasonable Jury could find For the Plaintiff based on the facts in the Plaintiff's declaration and summary Judgement Must there For be denied See. Anderson v. Liberty Lobby, inc. 477 U.S. 242, 248, 106 S.ct 2505 (1986). Also There's a case Law Stating that Justification For use of Force May not be used to punish or retaliate against or abuse inmates See case Law: Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th cir) 2002: Also Striking a Prisoner with fists violated The 8th Amendment. See case law. Evans. v. hennessy, 934 F.Supp. 127, 133 (D.Del 1996. Also case Law Brooks. v. Kyler, 204, F.3d 102. 108-09 (3d cir. 2000 says Jury could Find an 8th Amendment violation based on superficial lacerations and abrasions

ER057              ER057              ER057

# ☆ Plaintiff Disputed Facts ☆

① 

Defendant did use Excessive Force on Plaintiff And According To medical report that Jackson had a cut above the left eye and skin discoloration From my eyes being Black. See, Exhibit C. Senior Jacobs even stated that "Brown" gave straight strikes to my upper Body. See, Exhibit A Page 2 of the use of Force incident report. No matter The circumstances of what happened Excessive Force should not have been used

② Defendants Are not entitled to qualified immunity Because the Named defendant did violate clearly established Law and Rights under the 8t Admendment. see case Law Harlow v. Fitzgerald, 457. u.s. 800, 818. (1992) Also see Hudson v. McMillian. 503. u.s. 1-6-7. 112 S.ct 995 (1992) The supreme courts said the Lower courts can decide clearly established Law questions. see Pearson v. callahan u.s. 555 u.s. 223, 232, (2009) "NDOC AR" 405 use of Force policy H.B states Force shall not be use to Abuse inmates

③ Finally as to defendant saying i failed to exhaust Administrative remedies Please See Exhibit B Grievances☆ thats Attached to Plaintiffs opposition motion. According to the NDOC Admin And thats clearly on the 1st level improper grievance memo were it says "Not Accepted due to any reason in this Box the grievance may not proceed to the Next level And Marked untimely And that my grievance was referred To the IGIS office which the IG offile

ER058          ER058          ER058

Clearly responded and said my grievance was investigated and was unsubstantiated and that my grievance was denied also AR 740.6 says The same as TO inmate grievances not to proceed after not being accepted. Also to state in fact of the grievance process Plaintiff moved to the 1st level as outlined in AR 740.08. @ #18 Timelimit to move to The Next level from an informal grievance is 45 i filed my 1st level grievance 3-29-23 and my informal grievance 12-22-22 as you can see as attached to Plaintiff (Exhibit B) however my 1st level grievance was marked untimely as it is noted on the improper grievance memo IF NOT ACCEPTED THE GRIEVANCE MAY NOT PROCEED TO THE NEXT LEVEL which leave me no other reason but to file my complaint with the curt. Furthermore Plaintiff Attach (Exhibit C) medical reports To shows he was ABused And (Exhibit D) as to The NDOC AR 405.3.B Thats under lined That staff are not to Abuse inmates. Base on my Personal knowledge in my sworn declaration under penalty or PreJury everything is True and correct

☆ CONCLUSION☆

FOR the Foregoing reason, The defendants motion FOR Summary Judgement should be denied

Dated 5-9-25

Taventae Jackson #1186781

H.D.S.P, P.O Box 650

Indian springs NV 89070

# Exhibits

# # 1 - A

Memorandum use of Force incident Review
completed on Jan 4.2023 by L.T. curtis Rigney
And A.W. David Drummond

And The investigation Report. From All involed
officers.

**ER060**            **ER060**            **ER060**



Steve Sisolak
*Governor*

William A Gittere
*Acting Director*

William Reubart
*Warden, Ely State Prison*

Northern Administration
5500 Snyder Ave.
Carson City, NV 89701
(775) 977-5500

Southern Administration
3955 W. Russell Rd.
Las Vegas, NV 89118
(725) 216-6000

## STATE OF NEVADA
### Department of Corrections

# MEMORANDUM

Date:    January 4, 2023

To:    Calvin Johnson, Acting Deputy Director
         William Reubart, Warden, ESP

From:    Curtis L. Rigney, Lieutenant, ESP
           David Drummond, Associate Warden, ESP

Subject: Use of Force Incident Review Report – IR-2022-ESP-002698

A Use of Force Incident Review was completed on January 4, 2023, by Lieutenant Curtis L. Rigney and Associate Warden David Drummond.

Incident Date:    December 21, 2022
Time:                  12:45
Location:            Unit 2 Cell# 2B-36
Type of Force:    Hands on/electronic

Inmate(s):    Jackson, Tarontae NDOC# 1186781

Staff members involved in reported Use of Force: Senior Correctional Officer S. Davis, Senior Correctional Officer S. Brown, Correctional Officer D. Kirkland, Correctional Officer M. Kleer and Correctional Officer A. Main

Staff member's witness to the reported Use of Force: Correctional Sergeant D. Jacobs

Incident Summary: On December 21, 2022, at approximately 12:46 hours, a planned-use-of-force team consisting of C.E.R.T. Senior Officers (SC/O) S. Davis, S. Brown, C.E.R.T. Officers M. Kleer, A. Main, D. Kirkland, and lead by C.E.R.T. Sergeant (Sgt.) D. Jacobs was assembled in the Unit 2 Hallway. The planned-use-of-force was authorized on Inmate Jackson #1186781, housed in cell 2-B-36 for refusing to comply with coming out of his house to have his property removed, because he had propelled on a Sergeant during the breakfast meal. The C.E.R.T. Team briefed in the unit hallway for team assignments on entry into the cell. It was noted by medical staff that Inmate Jackson is on the desensitized list and chemical agents could not be used. Once

1

NDOC000107

ER061                              ER061                              ER061

the brief was completed, the team entered the unit and approached cell 2-B-36. Sgt. Jacobs gave Inmate Jackson one last directive to be restrained through the food slot. Inmate Jackson refused. Once authorization was given by the Associate Warden, the signal was given to open the cell door and entry was made. Inmate Jackson had retreated to the back of his cell and had lain on his bunk, on his stomach, with his hands underneath him. It was unknown at this time if Inmate Jackson had a weapon on him or something similar that could harm officers. Inmate Jackson was refusing to comply with being restrained after being given multiple orders. CERT Officer Kirkland deployed his state-issued TASER to drive stun him in the lower back with no effect. CERT SC/O Brown began giving straight strikes to Inmate Jackson's upper extremities to attempt to gain positive control of Inmate Jackson's arm. Inmate Jackson was still able to keep his hands tucked underneath him.

Officer Kirkland gave several orders to Inmate Jackson to give up his hands, he still was refusing. Officer Kirkland administered a second drive stun to Inmate Jackson, but it seemed to be ineffective due to Inmate Jackson rolling and sporadically moving his torso away affecting the contact with the drive stun.

Officer Kirkland observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. Officer Kirkland gave Inmate Jackson one last verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. Officer Kirkland drive stunned him a third time which seemed to be effective as it was allowing the restraining officer to safely place wrist restraints on. CERT SC/O Brown was able to gain positive control of Inmate Jackson's arm, while Officer Kirkland was able to gain control of his other arm. CERT SC/O Davis and Officer Main were able to gain control of Inmate Jackson's lower extremities and apply leg restraints. Because of Inmate Jackson's aggressiveness and hostility, a spit mask was placed over his head. Inmate Jackson was assisted to his feet and placed into a modified escort and taken to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked by medical. Medical noted miner abrasions and cuts. Inmate Jackson was released by medical back to his cell. He was then escorted back to 2-B-36 without further incident.

Use of Force was justified: Yes, minimal amount of force was used to compel orders and gain control and compliance of Inmate Jackson NDOC# 1186781

Use of Force was authorized: Yes. Per AR 405.03 "Force may be used to compel an inmate's compliance with orders, force may be used if no alternative method of persuasion is effective." Inmate Jackson NDOC# 1186781 failed to comply with Officers orders.

Use of Force was necessary: Yes. Inmate Jackson NDOC# 1051868 was refusing the Officers orders to submit to restraints and be removed from his cell for the safety of the inmate.

Use of Force was limited: Yes. Per AR 405.03(2) "Force shall be proportionate to the threat exhibited by the inmate, and the force shall decrease as the threat is lessened."

Disciplinary Action: None at this time.

Case Law= Brooks v. Kyler, 204 F.3d 102, 108-09 (3d Cir. 2000) says Jury could Find Eight Amendment[2] violation based on superficial lacerations and abrasions

NDOC000108



Exhibit

# B

Inmate Grievance report that was
Denied And copy of the improper Grievance
memo That clearly shows were it says
if Not Accepted due to Any of the Reason
in this Box The Grievance may Not proceed
To the Next level

**ER063**                    **ER063**                    **ER063**

Log Number 2006-31-46909

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: Tavontae Jackson          I.D. NUMBER: 1186781

INSTITUTION: Ely          UNIT: 2B 36

GRIEVANT'S STATEMENT: Dec. 21st officers used use of force becau i refused to cuff up after that i went to lay down on my Bed with my hands behind my Back officers Then came inside hit me in my Face Mouth til i started to Bleed and Both eyes where Black durrin all this officers Tased me for No

**SWORN DECLARATION UNDER PENALTY OF PERJURY**

INMATE SIGNATURE: Tavontae Jackson          DATE: 12-27-22   TIME: 8am

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: 12/27/22   TIME: 1:52 pm

GRIEVANCE RESPONSE: See attached

CASEWORKER SIGNATURE: _____          DATE: 12/29/22

✓ partially GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____  DATE: 12/29/22

____ INMATE AGREES ____ INMATE DISAGREES

INMATE SIGNATURE: Tavontae          DATE: 1-13-23

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:      To inmate when complete, or attached to formal grievance
Canary:        To Grievance Coordinator
Pink:          Inmate's receipt when formal grievance filed
Gold:          Inmate's initial receipt

**Ely State Prison**

DEC 27 2022

**Grievance Coordinator**

DOC 3091 (12 / 01)

NDOC000087

ER064          ER064          ER064

## NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Tarantie Jackson    I.D. NUMBER: 1186781

INSTITUTION: Ely    UNIT #: 2B-36

GRIEVANCE #: _____    GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1 OF 2

reason 2 times they did all this. After i was sent to
The shavers as you will see on the unit 2B video footage
i had no shirt on Blue levi Jeans and All white Shoes
my family got me from the clothe package officers made
me strip out handcuff me and send me down to see
medical like you will also see on video they took
everything out my cell and never gave me my clothes or
shoes Back. AR 405 use of force clearly states
officers shall not use fist knees elbows Nor are
They suppose to Punish or abuse inmates which they
clearly did do i also spit Blood on the officers sheild
as you will see in the video. im sick of officers
abusing me over and over i want to go home i dont
feel safe in NDOC's custody whats so ever they
Not only violate their own AR's But also violated
my 8th amendment rights my remedy for all this

Ely State Prison    Original:    Attached to Grievance
Pink:    Inmate's Copy

DEC 2 7 2022

Grievance Coordinator

DOC – 3097 (01/02)

NDOC000089

ER065                ER065                ER065

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Tarantue Jackson    I.D. NUMBER: 1186781

INSTITUTION: Ely    UNIT #: 2B 36

GRIEVANCE #: _____    GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION:    PG. 2 OF 2

I want All good time work time i lost Back during
This Prison Bid my P.E.X.D is 5/22/23 right Now
Yall could either let me go home before the end of
Jan 2023 or we can go to federal court. IM
sick of officers Abusing me NDOC
I want a t.v. and cable cord As soon as this get
look'd at while im waiting to go home i also want
500 dollars on my Books for Pain and Suffering
and for officers using excessive force abusing
me and punishing me I will be Appealing when its
Time to. Please be advised this the 4th excessive
force officers has used on me this years. Also be
Advised im really in Fear for my life
while doing time in NDOC Because of their
officers and they Bused my left Pinky Finge
I tried to reserve with officer and said Fuck me so there

Original:    Attached to Grievance
Pink:    Inmate's Copy

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

DOC – 3097 (01/02)

NDOC000090

ER066            ER066            ER066

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322,
209.243 AND ADMINISTRATIVE REGULATION 740

DO **NOT** SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE,
BOARD OF EXAMINERS, OR DIRECTOR

This form is to be attached to your grievance form for any injuries or any other
claim (except property) arising out of a tort alleged to have occurred during your
incarceration as a result of an act or omission of the Department of Corrections or
any of its agents, former officers, employees or contractors.

The following information is necessary to fairly evaluate your claim. Please provide complete
information. If you need more space, attach a separate sheet of paper. You may submit
additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $ _500_ is hereby made against the Department of
Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | | 2. I.D. # | 3. INSTITUTION |
|---|---|---|---|
| Towntae Jackson | | 1186781 | Ely |
| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | | 6. TIME (a.m. or p.m.) |
| 500 | 12-21-22 Afternoon | | 12:00 PM |
| 7. PLACE OF OCCURRENCE | | | |
| Unit 2B RM 36 | | | |

DOC 3095 (12/01)

Ely State Prison

DEC 2 7 2022

Grievance Coordinator                Page 1 of 3

NDOC000091

ER067                     ER067                     ER067

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

officers used excessive force punish and abused me which not only violate NDOC's AR's But Also violate my civil Rights 8th Amendment

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

warden, LT, sgt and sert officers who hit me with closed fist, and the whole U2B see my eyes and it was sert officer Brown who hit me and blackd my eyes

10. Other pertinent information:

Ely State Prison

DEC 2 7 2022

Grievance Coordinator                    Page 2 of 3

NDOC000092

ER068                    ER068                    ER068

STATE OF __Nevada__ )
                                        ) SS
COUNTY OF __Clark__ )

I, __Tarantae Jackson__, do hereby swear under penalty of perjury that I am the claimant named above, that I have read the foregoing claim and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those maters, I believe them to be true, and that THIS IS MY ENTIRE CLAIM AGAINST THE STATE OF NEVADA/DEPARTMENT OF CORRECTIONS.

I FULLY UNDERSTAND THAT I WILL HAVE TO SIGN A GENERAL RELEASE OF ALL CLAIMS IN THE PRESENCE OF A NOTARY PUBLIC FOR THE EXACT AMOUNT I AM CLAIMING BEFORE ANY PAYMENT WILL BE OFFERED TO ME.  THIS GENERAL RELEASE WILL BECOME EFFECTIVE ONLY UPON ACTUAL PAYMENT OF THE CLAIM BY THE STATE OF NEVADA.

DATED this __22nd__ day of __Dec__, 20__22__

_Tarantae_
Signature of Claimant

## NOTICE

NEVADA REVISED STATUTE 197.160 provides that every person who knowingly presents a false or fraudulent claim is guilty of a gross misdemeanor, and is subject to criminal penalties of imprisonment of up to one year, and a fine of up to $2,000.00.

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

DOC - 3095 (12/01)

Page 3 of 3

NDOC000093

ER069          ER069          ER069

## NEVADA DEPARTMENT OF CORRECTIONS

## ADMINISTRATIVE CLAIM RELEASE AGREEMENT

I, _Toronbe Jackson_, NDOC # _1186781_ as claimant, did on the _22nd_ day of _DEC_, _2022_, file against and deliver to the Department of Corrections, via the Warden of _Ely state prison_, an institution/facility of the Department of Corrections, an Inmate Grievance No. _verbal_, alleging personal injuries or any other claim arising out of a tort alleged to have occurred during my incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees, or contractors described as _excessive use of force_ .

I acknowledge that $ _500_ will be deposited into my account as payment in full, for the above claim and hereby release the State of Nevada, the Nevada Department of Corrections and any and all agents, servants and/or employees of the state and agency from all liability of any kind whatsoever from any further claim for items identified on this grievance.

I UNDERSTAND THIS RELEASE WILL BECOME EFFECTIVE ONLY UPON THE APPROVAL OF MY CLAIM BY THE STATE OF NEVADA AND/OR THE NEVADA DEPARTMENT OF CORRECTIONS.

DATED this _22nd_ day of _Dec_, _2022_

SIGNED: _Toronbe_                     SOCIAL SECURITY # _530-775867_
          Signature of Claimant

WITNESS:_____          TITLE:_____

Ely State Prison

DEC 27 2022

Grievance ____

DOC-3096 (2/02)

NDOC000094

ER070                    ER070                    ER070



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063146909

**ISSUE LOC:** ESP

**ISSUE DATE:** 12/27/2022

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | IG_RESP | UOF | BSHIELDS |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 1 | 05/09/2023 | | Denied | BSHIELDS | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Inmate Jackson, I am in receipt of your grievance. This incident was fully investigated under case number IN-2023-49. The result of the investigation determined that your allegations of excessive force were unsubstantiated. This was based on a review of the Officers? reports and an attempted interview with you. You could not be interviewed because you got into a use of force situation during the escort. Video surveillance footage was reviewed but does not show the use of force. Grievance denied.

GRIEVANCE RESPONDER

Report Name: NVRIGR

Run Date:     MAY-09-23 09:02 AM

Ely State Prison

Page 1 of 5

MAY 1 8 2023

Associate Warden
Programs

NDOC000105

ER071                    ER071                    ER071

# Nevada Department of Corrections
## Improper Grievance Memo

| | |
|---|---|
| TO: | Jackson, Tarontae  [0001186781]          9A 1 |
| FROM: | Tasheena Cooke, Associate Warden - Ely State Prison |
| DATE: | April 25, 2023 |
| RE: Improper Grievance # | 2006.31.~~4699~~, Untimely |
| | 46909 |

The attached grievance is being returned to you for the following reason(s):

**REJECTED** - After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level unless specified. Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

☐ Missing documents                              ☐ More than one issue

☐ No harm/loss, action, or remedy                ☐ Improper submission

☐ Not a KITE                                     ☐ Not signed or dated

☐ Missing inmate personal property claim form    ☐ Disciplinary appeal process/directly to warden

☐ Alterations                                    ☐ Failure to correct deficiencies

☐ Missing administrative claim form              ☐ Wrong form

☐ Continuation forms                             ☐ Staff misconduct (IG Review Submitted)

☐ Other specify:

**NOT ACCEPTED** - If not accepted due to any of the reasons in this box, the grievance may **NOT** proceed to the next level Per AR 740.03,5 and 740.04,G.

☐ Non-grievable issues:

    ☐ State and federal court decisions              ☐ Parole Board actions and/or decisions

    ☐ State, federal and local laws and regulations  ☐ Lacks standing

☒ Untimely submission

☐ Inmate elected NOT to sign and date any grievance form

☐ Grievance was granted

☐ Abuse of Inmate Grievance Procedure

    ☐ A threat of serious bodily injury to a specific individual   ☐ Obscene, profane and derogatory language

    ☐ Specific claims or incidents previously filed by the        ☐ More than one (1) grievance per week,
        same inmate                                                     Monday through Sunday

    ☒ Other specify: Inmate Jackson, your grievance has been referred to the IG's office.

| Witness Signature | Date 5/12/23 | Inmate Signature | Date 5-12-23 |

Log Number 2006 31 46909

# NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Tarontae Jackson    I.D. NUMBER: 1186781

INSTITUTION: ELY    UNIT: 9-A-30

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 200631 46909 , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Tarontae Jackson    DATE: 3-29-23

WHY DISAGREE: No response after 90 days i Need the high level officals to review remedy stay the same All 3000 time work time Back that i lost And a t.v. with cable cord, 500 dollars on my Books

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 4/3/23

FIRST LEVEL RESPONSE: _____

_____

_____

_____

_____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE:_____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE:_____ DATE: 4/27/23

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE:_____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:    To inmate when complete, or attached to formal grievance
Canary:    To Grievance Coordinator
Pink:    Inmate's receipt when formal grievance filed
Gold:    Inmate's initial receipt

**Ely State Prison**

APR 05 2023

**Grievance Coordinator**

DOC 3093 (12/01)

NDOC000096

ER073                    ER073                    ER073



**NEVADA DEPARTMENT OF CORRECTIONS**
**ADMINISTRATIVE REGULATION**

## OFFENDER GRIEVANCE PROCEDURE
## ADMINISTRATIVE REGULATION – 740

**SUPERSEDES:** AR 740 (02/12/10); AR 740 (Temporary 06/16/14); AR 740 (09/16/14); AR 740 (Temporary 01/03/17); AR 740 (03/07/17); AR 740 (08/30/17); AR 740 (Temporary 11/20/18); AR 740 (Temporary 04/15/22)

**EFFECTIVE DATE:** April 28, 2022

**AUTHORITY:** NRS 209.131; NRS 209.243; NRS 41.031; NRS 41.0322; NRS 41.0375; 34 U.S.C. § 30301, et seq., and Federal Register 28, Code of Federal Regulation (CFR) Part 115

### PURPOSE

The purpose of this Administrative Regulation (AR) is to set forth the requirements and procedures of the administrative process that Nevada Department of Corrections (NDOC and Department) offenders must utilize to resolve addressable grievances and claims including, but not limited to, claims for personal property, property damage, disciplinary appeals, personal injuries, and any other tort or civil rights claims relating to conditions of confinement. Offenders may use the Offender Grievance Procedure to resolve addressable offender claims only if the offender can factually demonstrate a loss or harm. This procedure describes the formal grievance process and will guide NDOC employees in the administration, investigation, response, and resolution of offender grievances.

The provisions of this AR are not retroactive and do not apply to incidents and/or claims that occurred prior to the effective date of this AR. Only offender claims arising out of, or relating to, issues within the authority and control of the NDOC, may be submitted for review and resolution by way of the grievance process. A good faith effort will be made to resolve legitimate offender claims without requiring the offender to file a formal grievance. This AR does not create any right, liberty, or property interest, or establish the basis for any cause of action against the State of Nevada, its political subdivisions, agencies, boards, commissions, departments, officers, or employees.

### RESPONSIBILITY

The Director, through the Deputy Directors, shall be responsible for establishing and supervising the offender grievance process that provides an appropriate response to an offender's claim, as well as an administrative means for prompt and fair resolution of offender problems and concerns.

NDOC 000257

**ER074**  **ER074**  **ER074**

D.  The inclusion of more than one grievance issue per form; and

E.  Grievances that have the same issue in a previously filed grievance, even if the requested action or remedy is different on the subsequent grievance.

6.  In the event an offender's claim is NOT ACCEPTED or not within the intended scope of this Administrative Regulation, the offender may not appeal that decision to the next procedural level. Instead, the offender must correct the issues that led to the rejection of the grievance, and follow the instructions provided on the Improper Grievance Memorandum DOC 3098, that the offender will receive at the time the rejected or NOT ACCEPTED grievance is returned.

7.  An offender whose grievance is denied in its entirety, may appeal the grievance to the next level, within the substantive and procedural requirements outlined herein, unless the action requested has already been granted at a lower level.

   A.  Administrators or employees of the institution shall automatically allow appeals, without interference, unless the grievance is GRANTED.

   B.  An offender's refusal to sign and date any grievance form, at any level, shall constitute abandonment of the claim.

   C.  If the grievance is GRANTED or resolved by SETTLEMENT at any level, the grievance process is considered complete, the offender's administrative remedies exhausted, and the offender cannot appeal the decision to a higher level.

   D.  If the grievance is PARTIALLY GRANTED, DENIED, or RESOLVED at any level, the offender must appeal the response to the next grievance level in order for the grievance process to be considered complete and for the offender's administrative remedies considered to be exhausted. If the offender does not timely appeal the grievance to the next level, it will be considered ABANDONED or WITHDRAWN.

8.  Time limits shall begin from the date an offender receives a response.

9.  An overdue grievance response at any level, is not an automatic finding for the offender.

   A.  The response must be completed, even if it is overdue.

   B.  The offender may proceed to the next grievance level if a response is overdue.

   C.  The overdue response does not count against the offender's timeframe for an appeal if he or she waits for the response before initiating the appeal.

10. The offender shall file an Informal Grievance (DOC 3091) that states "for tracking purposes" when an issue goes directly to the Warden (first level) for a decision such as disciplinary appeals, denied visits, any allegation of sexual abuse, or mail censorship.

11. Grievances alleging staff misconduct pursuant to Administrative Regulation 339 Code of Ethics Employee Conduct, will be reviewed by the Warden, and if deemed appropriate, will be forwarded to the IG through NOTIS.

    A. The Informal Response will reflect initiation of the action.

    B. The IG must respond to this allegation within 90 days.

12. The time limit for a response to the Informal Grievance is 45-calendar days from the date the grievance is received by the Grievance Coordinator to the date returned to the offender. The time limit for a response to the Informal Grievance related to disability discrimination is 14-calendar days from the date the grievance is received by the ADA Facility Coordinator to the date it is returned to the offender.

    A. The offender must file an appeal within 5-calendar days of receipt of the Informal Grievance response to proceed to the next grievance level.

    B. If the offender has relocated to another facility from where the incident occurred, transmission of the grievance to another institution may result in exceeding the 5-day timeframe.

## 740.09  FIRST LEVEL GRIEVANCE

1. A First Level Grievance (DOC 3093) should be reviewed, investigated, and responded to by the Warden at the institution where the incident being grieved occurred, even if the Warden is the subject of the grievance.

    A. The Warden may utilize any staff in the development of a grievance response. The grievance will be responded to by a supervisor that has authority over the issue claimed in the grievance.

    B. First Level medical/dental issues should be responded to by the highest level of nursing administration at the institution, the Director of Nursing.

    C. First Level mental health issues should be responded to by the Psychologist IV or the highest-ranking Psychologist at the institution.

    D. First Level property issues should be responded to by the Associate Warden Operations.

ER076                    ER076                    ER076



Exhibit

# C

medical record

And that I was ABused

Case: 25-6898, 04/13/2026, DktEntry: 15.1, Page 78 of 300
Case 3:23-cv-00247-MMD-CSD    Document 56    Filed 05/23/25    Page 25 of 31
Case 3:23-cv-00247-MMD-CSD    Document 53-9    Filed 05/05/25    Page 2 of 2

## MEDICAL REPORT OF INCIDENT, INJURY OR UNUSUAL OCCURRENCE

Institution: ESP       Housing Location: 2B-36

1. Occurrence:   Place: 2B-36    Date: 12/21/22    Time: 1243

2. Medical Notified:   Date: 12/21/22    Time: 1243

3. Medical Arrived:   Date: 12/21/22    Time: 1243

4. Check boxes that apply:   ☐ Mandown   ☒ Non-Man Down   ☐ Altercation   ☐ Recreational   ☐ Self-Inflicted

5. AB389 occurrence   ☒ Yes   ☐ No    ☐ Release of Liability - if needed

6. Evaluation/Assessment Completed   Date: 12/21/22   Time: 1243

**7a. Subjective:** Brief description of the injury or unusual occurrence. (Include patient's own words, if possible):

Offender propelled on staff and captured food slot, offender refused to follow custody commands and was ~~tears~~ extracted from cell, force was used, and offender was drive stunned with tazer x3. During escort to hallway to be medically evaluated Off was spitting at staff.

**7b.** Names of witnesses, summaries of their stories, insofar as available to medical officer attending case. and description of points of difference between their version and that of #7a above.

AW Drummond   Cert Kler   RN Barajas
Cert Sgt J.a.cobs   Cert Kirkland   CNA Snow
Senior Brown   Cert Main
Senior Davis   RN Garcia

**8. Objective:** (Description and extent of injury)

T.P.R., BP 138/90 111 98% 16     Last Tetanus: _____

Allergies: _____

Epitaxis noted, minimal, hematoma ~1inch above the (R) eyebrow. Skin discoloration congruent with early bruising to the (L) jaw. redness to the back with o skin breakdowns or abrasions at this time., gait is steady, clear speech

**9. Assessment:** able to complete full sentences with ease and made needs known. face is symmetrical, mucous membranes moist, skin colour tev ethincity, no signs of respiratory or physical distress.

**10. Plan:** (Include treatment regimen, follow-up visits, disposition).

Instructed to use medical if needed.

PROVIDER SIGNATURE: [signature]    TITLE: [signature]    DATE: 12/24/22

NEVADA DEPARTMENT OF CORRECTIONS

## UNUSUAL OCCURRENCE REPORT

NAME: Jackson, Tavonake
    Last        First       MI

ID# 1176781    UNIT# 2B-36

Reference Medical Directive #412          DOC 2514 (02/22)

ER078          ER078          ER078

# Exhibit

# #D

AR 405 use of force regulation and @ page 4. section B where it clearly states Force shall Not be used to punish, harass or Abuse inmate

ER079            ER079            ER079



AR 405

# ADMINISTRATIVE REGULATION
# 405

## USE OF FORCE

**Supersedes:**   AR 405 (Temporary 6/23/11) AR 405 (Temporary, 03/03/16)
AR 405 (Temporary 5/25/16) AR 405 8/16/16,
AR 405 (Temporary 11/3/16)
**Effective Date:**   11/16/16

**AUTHORITY:** NRS 209.131, 209.161, 212.090 and 212.190

## RESPONSIBILITY

1.  The Warden/Division Head is responsible for the overall execution of this regulation. Direct supervision of this regulation is the responsibility of the Shift Supervisor (institutions/facilities) and/or the Transportation Lieutenant/Sergeant in regards to Central Transportation Division. The Inspector General in regards to the Inspector General's Office.

2.  The Warden at each institution, Central Transportation Lieutenant, the Inspector General; shall ensure that all assigned staff is trained and have signed an acknowledgement statement that they have read, know and understand this regulation. A copy of their acknowledgement shall be maintained in each staff member's training file.

3.  It is the responsibility of all employees who may be required to use force as part of their duties to understand and comply with the Use of Force policy, related procedures, use of equipment and attend and understand relevant use of force training.

## DEFINITIONS

<u>Authorized Personnel</u> – A person who has received the prescribed NDOC training in the application of Use of Force equipment or tactics, and whose qualifications are up-to-date. Any person who volunteers, is contracted by or is employed by the NDOC is authorized to defend themselves or others from attack. A Correctional Officer Trainee or Correctional Officer who has not completed the Basic Academy and has not passed the Peace Officers Standards and Training (POST) certification exam are authorized to defend themselves and others from attack. Only certified Peace Officers who are current on their qualifications shall be authorized to utilize force tactics, tools, devices, weapons or other methods authorized by the Department Director.

<u>Lethal Force</u> –

Great Bodily Injury - Great bodily injury is any bodily injury that creates a substantial risk of death, such as but not limited to, stab wounds that cause substantial bleeding strike vital organs or repeated blows to the head with kicks or with a blunt instrument.

## 405.01 USE OF FORCE GENERAL PROVISIONS

The NDOC shall operate under this use of force policy that defines staff responsibilities and limitations concerning the use of force while still allowing discretion in the appropriate application of force. The policy provides staff with the appropriate guidance on the permissible Use of Force. It ensures discipline is imposed for violations of the Use of Force policy, procedures or training.

It is the policy of the NDOC to authorize the use of physical force when and only to the extent that is reasonably believed to be necessary as specified in these rules. Staff is authorized to use that amount of force that is objectively reasonable to overcome a threat thereby minimizing the risk of injury to the officer, the threat and the public.

At no time are staff permitted to use force for punishment, retaliation, or discipline.

Force shall be used only when reasonably necessary to subdue an attacker, overcome resistance, affect custody, or to gain compliance with a lawful order. It is the policy of the NDOC to accomplish the educational, treatment and supervision functions with minimal reliance on the use of force. Staff may use reasonable force as required in the performance of their duties, but unnecessary or excessive force shall not be used. If staff, at any point, determines the situation can be resolved without any further use of force, staff shall terminate the use of force.

All the facility Operational Procedures must conform to the provisions in this Administrative Regulation.

## 405.02 STAFF TRAINING INVOLVING USE OF FORCE

1.  All personnel shall receive training and be qualified prior to being assigned to a position involving possible Use of Force and being authorized to use any force related equipment such as physical restraints, firearms, projectile launchers, chemical agents (CS/OC), taser or similar technology or batons. A staff member employed in positions that are authorized to use force-related equipment shall receive annual refresher and semi-annual firearms qualification training in the correct use of all equipment to maintain their established proficiency levels.

2.  The application of force when using any authorized equipment must be consistent with training. For example; intentional strikes to the head or neck are <u>not</u> consistent with training for the side handle baton. Shots to the head with 40 mm launcher are <u>not</u> consistent with training. The use of carotid or choke holds is not authorized.

3.  Training shall include:

A. Techniques/strategies known as Passive Compliance Measures (De-escalation) used by staff to gain compliance/control of an inmate without forcible physical contact such as: communications, videotaping of inmate(s), show of force.

B. Staff is expected to know the Continuum of Force and be able to apply the proper level and type of force needed to control an inmate's behavior. Minimum harm to staff, the public and inmates is the goal, but the overall objective is to gain compliance, control, and facility order. Force shall be limited to the minimum amount necessary to control the situation. Force shall not be used to punish, harass, or abuse inmates.

## 405.03 WHEN FORCE MAY BE USED

1. A staff member may use force to protect himself or any other individual from physical harm by an inmate. Alternative methods of persuasion such as communications, videotaping of inmate(s), and/or show of force shall be utilized prior to using force whenever possible.

2. Force shall be proportionate to the threat exhibited by the inmate, and the force shall decrease as the threat is lessened. Any staff witnessing a Use of Force that is either excessive or unnecessary is required to immediately report their observations to the shift supervisor both verbally, and subsequent to the incident, in a written report.

4. To prevent the escape of an inmate, staff may use reasonable force to prevent the escape if no alternative method of persuasion is effective.

5. To prevent destruction of state property.

   A. Staff may use force to prevent state property from substantial damage by an inmate if no alternative method of persuasion is effective.

   B. Nevada Revised Statute (NRS) 212.190 states that damaging prison property is at least a gross misdemeanor.

6. To compel an inmate's compliance with orders, force may be used if no alternative method of persuasion is effective or where the circumstances require urgency.

7. To prevent or quell a disturbance, disperse or apprehend inmates whose conduct is creating a risk of death or serious physical injury to others.

8. To stop inmate self-injurious behavior when time does not permit the arrival of a supervisor or the assembly of a planned use of force team and sufficient back-up is available.

9. Use of Force Options in the Use of Force Continuum:

# DECLARATION UNDER PENALTY OF PERJURY

I, the undersigned, understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury.

I declare, under the penalty of perjury under the laws of the United States of America, that the above information is accurate, correct and true to the best of knowledge executed within the terms of NRS 171.102 and NRS 208.165. See U.S.C. Title 28 Chapter 115 Sec. 1746 and U.S.C. Title18 Chapter 79 sec.1621.

Dated this __9th__ day of __MAY__, 20_25_.

Signature _Twentee_ #_1186781_

Print Name _Towentue Jackson_

High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070

NRS 171.102(1) Oath before a magistrate or a notary public; or (2) Declaration made subject to penalty of perjury.

NRS 208.165 A prisoner may execute any instrument by signing his name immediately following a declaration "under penalty of perjury" with the same legal effect as if he had acknowledged it or sworn to its truth before a person authorized to administer oaths. As used in this section, "prisoner" means a person confined in any jail or prison, or any facility for the detention of juvenile offenders, in this state.

U. S. C. Title 28 Chapter 115 sec. 1746.   Unsworn declarations under penalty of perjury
Wherever, under any law of the United Stated or under any rule, regulation, order, or requirement made pursuant to law, any matter or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification. Certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, or proved by the sworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
  (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)                                               (Signature)".
  (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)                                               (Signature)".

U. S. C. Title 18 Chapter 79 sec. 1621    Perjury generally
Whoever---
  (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
  (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

**ER083**          **ER083**          **ER083**

Case 3:23-cv-00247-MMD-CSD   Document 56   Filed 05/23/25   Page 31 of 31
Case 25-6898, 04/13/2026, DktEntry: 15.1, Page 284 of 300

Tarontae Jackson
#1186781

H D S P
P.O Box 650
Indian springs
NV 89070

ER084

Las Vegas P&DC 89199
WED 21 MAY 2025 PM

Clerk of th
Court
333 Las vegas
South Room 133(
Las vegas, NV 8
Federal Court

ER084

FILED _____   RECEIVED _____
ENTERED _____   SERVED ON _____
COUNSEL/PARTIES OF RECORD

MAY 23 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____

ER084

AARON D. FORD
 Attorney General
RUDOLF M. D'SILVA (Bar No. 16227)
 Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, Nevada 89119
(702) 486-3375 (phone)
(702) 486-3768 (fax)
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants
Seth Davis, Daniel Jacobs,
Michael Stolk and Dent Kirkland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TARONTAE JACKSON, | Case No. 3:23-cv-00247-MMD-CSD |
| Plaintiff, | |
| v. | **NOTICE OF MANUAL FILING** |
| STOLK, *et al.*, | |
| Defendants. | |

Defendants, Seth Davis, Daniel Jacobs, Michael Stolk, and Dent Kirkland, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Rudolf M. D'Silva, Deputy Attorney General, of the State of Nevada, Office of the Attorney General, hereby gives notice that Exhibits E and G of Defendants' Motion for Summary Judgment are being submitted to the clerk for manual filing. Exhibit E is an Operations Procedure which for safety and security purposes cannot be viewed by offenders. Exhibit G is a video of a cell extraction as discussed in Defendant's Motion. A copy of this video will be made available to Plaintiff in the Warden's office of the institution where he is currently housed.

DATED this 5th day of May, 2025.

AARON D. FORD
Attorney General

By: /s/ Rudolf M. D'Silva
RUDOLF M. D'SILVA (Bar No. 16227)
Deputy Attorney General
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on May 5, 2025, I electronically filed the foregoing **NOTICE OF MANUAL FILING** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

Donyell Jackson #1246362
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
*Plaintiff, Pro Se*

/s/ Jamile Vazquez
Jamile Vazquez, an employee of the
Office of the Nevada Attorney General

AARON D. FORD
 Attorney General
RUDOLF M. D'SILVA (Bar No. 16227)
 Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3375 (phone)
(702) 486-3768 (fax)
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants*
*Seth Davis, Daniel Jacobs,*
*Michael Stolk and Dent Kirkland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TARONTAE JACKSON, | Case No. 3:23-cv-00247-MMD-CSD |
| Plaintiff, | |
| v. | **MOTION FOR SUMMARY JUDGMENT** |
| STOLK, *et al.*, | |
| Defendants. | |

Defendants Seth Davis, Daniel Jacobs, Michael Stolk, and Dent Kirkland by and through Aaron D. Ford, Attorney General for the State of Nevada, and Rudolf M. D'Silva, Deputy Attorney General, hereby submit Defendants' Motion for Summary Judgment.

## I.    INTRODUCTION

This is a civil rights lawsuit under 42 U.S.C. § 1983 brought by Plaintiff Tarontae Jackson (Jackson). ECF No. 6 at 1. Jackson is currently in the custody of the Nevada Department of Corrections (NDOC) at High Desert State Prison (HDSP). Exhibit A – Historical Bed Assignment at 3. Following mandatory screening under 28 U.S.C. § 1915A, this Court allowed Jackson to proceed on an Eighth Amendment excessive force claim against Seth Davis, Daniel Jacobs, Michael Stolk and Dent Kirkland. ECF No. 7 at 8:26-27. Specifically, Jackson alleges Defendants used excessive force on him while conducting a cell extraction. ECF No. 6 at 4.

Jackson cannot establish a genuine dispute of material fact as to the elements of his Eighth Amendment excessive force claim because: (1) Defendants did not use excessive force on Jackson given the circumstances in which force was used on him; (2) Defendants are entitled to qualified immunity; and (3) Jackson failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a).

## II.    UNDISPUTED FACTS

### A.    NDOC and ESP Policy on Search and Escort

#### 1.    NDOC Administrative Regulation on Use of Force

NDOC's regulations provide that staff shall use force only when reasonably necessary to subdue an attacker, overcome resistance, affect custody, or gain compliance with a lawful order. Exhibit B – Administration Regulation 405 – Use of Force at 405.01. Use of force is defined as the application of progressive levels of force to gain control of an inmate up to and including lethal force. *Id.* at 2. Force may be used to compel an inmate's compliance with orders if no alternative method of persuasion is effective. *Id.* at 405.03(6). Use of force shall be limited to the minimal amount of force necessary to control the situation. *Id.* Staff members are allowed to use force to protect themselves or any other individual from physical harm by an offender. *Id.* at 405.03(1). Force shall be proportionate to the threat exhibited by an offender. *Id.* 405.03(2).

Generally, if an inmate propels an unknown liquid from their cell at any NDOC staff member, they are extracted from their cell. Exhibit C – Declaration of Associate Warden David Drummond at 3:22-23. Cell extractions are not disciplinary actions but are conducted to maintain security in the prison and prevent escalation of a situation. *Id.* at 3:24-25. Having an inmate extracted from his cell allows officers to search and properly identify what liquids were propelled out of the cell. *Id.* at 3:26-27. It also allows prison staff to assess whether such liquids are hazardous or pose a health risk. *Id.* at 4:1-2. The purpose of extracting offenders from their cell prior to conducting such a search is to mitigate the risk of confrontation and for officer safety. *Id.* at 4:3-4. If an offender does not voluntarily exit his cell when instructed to do so, the prison will have the CERT team extract the offender

from his cell using what force is required to do so. *Id.* at 4:5-7. Because extracting noncompliant offender from a cell poses significant risk of physical injury to officers, NDOC generally opts to conduct a planned use of force when extracting a noncompliant offender from a cell to mitigate risk of harm to officers and the offenders. *Id.* at 4:5-7.

NDOC defines a planned use force as a time when circumstances allow for the opportunity to plan, consult and obtain the approval of the Warden or administrator on duty to take forceful action. Ex. B. at 2. The department may use force to extract an offender from a cell who is not cooperating with officers' lawful orders. *Id.* at 405.03(10)(A). Reasonable force is defined as force which is objectively reasonable based on the totality of the circumstances and the facts known to officers at the time to subdue an attacker, overcome resistance, affect custody, or gain compliance with a lawful order. *Id.* at 2. NDOC mandates that whenever a use of force incident occurs to restrain an offender, such offender must receive a medical evaluation. *Id.* at 405.11(1). Offenders cannot refuse to be assessed by medical but may refuse treatment of any injuries sustained. *Id.*

Propelling any substances towards any one with the intent to strike that person is classified as a major violation. Exhibit D – Administrative Regulation 707 – Offender Disciplinary Process at 10 (MJ40).

### 2. ESP Operational Procedures on Use of Force

ESP policies provide that the institution complies with all provisions of NDOC's use of force regulations outlined in administrative regulation 405. Exhibit E – ESP Operational Procedure 405 – Use of Force at 405.01(1). Generally, when an offender propels an unknown liquid onto NDOC staff, staff at ESP are required to move all objects and personal away from that offender's cell, inform shift command and await guidance on how to proceed with the situation from shift command. *Id.* at 405.3(B).

### B. Records Illustrating Why Search and Escort Was Called to Extract Jackson from His Cell

Jackson's disciplinary history report indicates that on December 21, 2022, while morning chow was being administered to offenders in Jackson's unit, Jackson was told to

uncover his cell window and turn his light on for feeding. Exhibit F – Disciplinary Report at 2. Jackson stared at the officer and did nothing. *Id*. The officer gave Jackson the same order two more times. *Id*. Since Jackson did not respond to him the officer moved on to feed the next cell. *Id*. At this time Jackson propelled an unknown liquid substance, which smelled like urine, out of the side of his door striking the officer. *Id*. The officer turned around and Jackson told the officer "fuck you bitch, I'll show you just like I showed them." *Id*.

### C.    Jackson's Cell Extraction

A review of the video footage taken of Jackson's cell extraction shows that on December 21, 2022, CERT Officers received authorization to use force to extract Jackson from his cell for propelling an unknown liquid on officers. Exhibit G – Video Footage of Jackson's Cell Extraction at 0:00-0:15. Authorization was provided to use a taser on Jackson should he not comply with officers' orders. *Id*. at 0:15-0:20.

Upon arriving at Jackson's cell, he was advised to turn around and present his arms through the slot in his cell door so that officers could apply restraints on him. *Id*. at 1:45-55. The officer advised Jackson that if he did not comply with this order, force would be used to extract him. *Id*. Officer Jacob and several other officers state in their reports, regarding Jackson's cell extraction, that Jackson refused to comply with this order. Ex. G at 1:55-2:00; *See generally* Exhibit H – IR-2022-ESP-002698. When it was apparent that Jackson refused to peacefully submit to restraints, Officer Jacobs informed the Associate Warden, who then gave the officers permission to enter Jackson's cell and use force to extract him from his cell. Ex. G at 2:00-05; *See also* Ex. H at 2. Officers Jacob, Dent Kirkland, Shane Brown, and Kleer Macelen, who were all part of the CERT Team assigned to extract Jackson from his cell, stated in their report that upon Jackson's cell doors being opened, Jackson went to the back of the cell, laid facedown on his bunk with his hands tucked underneath his stomach. Ex. H. Upon entering Jackson's cell, CERT Officers can be heard instructing Jackson to give them his hands. Ex. G at 2:10-2:15.

Officer Kirkland notes in his report that upon entering the cell Jackson refused to comply with officers' instructions to give them his hands. Ex. H at 1. Because Jackson's hands were tucked underneath his body, Officer Kirkland was unsure whether Jackson possessed a weapon that he could have been used against the officers. *Id.* Officer Kirkland indicates in his report that because of this uncertainty and to mitigate any risk to officer safety he tased Jackson when he failed to comply with officers' orders to give them his hands. *Id.* Officer Kirkland also notes that once officers gained control of Jackson's hands, he stopped using the taser. *Id.*

Officer Kirkland, along with several other officers' reports, stated that Jackson was squirming, moving around, and resisted being restrained. *See generally Id.* Officer Kirkland noted that it was a struggle for officers to apply restraints on Jackosn. *Id.* The video of Jackson's cell extraction shows him vigorously moving while officers attempt to apply restraints on him. Ex. G at 2:20-3:00. It can be heard in the video the moment officers secure restraints on Jackson[1], at which point all excessive movement from both officers and Jackson cease. *Id.* at 3:05. It took officers approximately one minute and forty seconds to enter Jackson's cell and properly restrain him. *Id.* at 2:12-3:52.

After being extracted from his cell, Jackson was temporarily relocated to the shower cell, where officers conducted a strip search on him. *Id.* 3:05-4:10. While in the shower cell officers can be heard informing Jackson that they are there for his safety. *Id.* at 5:33-37. Jackson responds to this by stating, "if I ever see one of y'all on the streets I'm gonna kill y'all." *Id.* at 5:43-47. After this initial death threat Jackson continues to make several more death threats to officers promising that he will kill them. *Id.* at 5:4312:20. Jackson can also be heard telling officers that they would have to kill him to have him shut up. *Id.* 6:12-15.

When it was time for Jackson to be extracted out of the shower cell an officer can be heard instructing Jackson to step to the back of the cell, to which Jackson replied, "for what" before refusing and proceeding to calling the officers "bitches." *Id.* at 8:00-35. Jackson

---

[1] When listening closely to the audio in the video of Jackson's cell extraction, it can be heard when the cuffs being used to secure Jackson are applied as an audible click noise can be heard. Ex. G at 3:05.

continued to spend several minutes using explicative against officers and again telling officers that they would have to kill him along with other expletives. *Id.* at 8:35-10:10. Jackson specifically tells one of the officers that if he ever saw him alone, he would beat that officer up and stab him. *Id.* at 10:05-10:20. Jackson proceeds to threaten officers by informing them he would be out in four months and that once he was out the officers better watch their backs. *Id.* 10:20-30. When officers asked Jackson to put on his shirt Jackson responded "I ain't putting on shit." *Id.* at 10:40-45. Jackson then alludes to the fact that to take him out of his cell they would have to drag him out, beat him up and kill him. *Id.* at 10:40-50. Jackson then doubles down stating that he means what he is saying. *Id.* at 10:50-53.

After approximately eight minutes of denigrating officers, Jackson complies with officers' instructions to submit to restraints before exiting the shower cell. *Id.* at 12:15-20. At this point the camera shows a clear view of Jackson's face in which it can be seen that Jackson had suffered bruising above his right eye and what seems like blood coming out of his left nostril. *Id.* at 12:25. Upon being removed from the shower cell Jackson was immediately taken to be evaluated and treated by medical. *Id.* at 12:25-13:45.

### D.   Medical Records

The report pertaining to Jackson's medical evaluation after being extracted from his cell indicates he had a one-inch hematoma above his left brow. Exhibit I – Medical Record. Jackson also suffered from skin discoloration congruent with bruising to his right jaw. *Id.* The medical report indicates Jackson had redness to his back with skin breakdowns. *Id.* It was observed that Jackson's speech was clear, and he was able to formulate sentences with ease. *Id.* Jackson was instructed to kite medical if he believed he needed additional medical care. *Id.*

### III.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to pierce the

pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

Summary judgment allows courts to avoid unnecessary trials when there is no dispute as to the facts. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The purpose of summary judgment is to isolate and then terminate claims that are factually unsupported. *Id.* at 323–24. A moving party is not required to disprove the non-moving party's claims. *Id.* Instead, the moving party is simply required to point out the absence of evidence supporting the non-moving party's claims. *Id.*

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does indeed exist. *Matsushita*, 475 U.S. at 586. Material facts are facts that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should not consider disputes concerning irrelevant or unnecessary facts. *Id.* at 248.

The opposing party is not permitted to merely rely upon its pleadings; it must tender evidence of specific facts which create a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11; *Anderson,* 477 U.S. at 255. The opposing party is not required to establish a material issue of fact conclusively as it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). The evidence of the non-moving party is to be believed, and all reasonable inferences must be drawn in favor of the opposing party. *Matsushita*, 475 U.S. at 587 (citations omitted); *Anderson*, 477 U.S. at 255.

However, reasonable inferences are not drawn out of the air; it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898,

902 (9th Cir. 1987). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *T.W. Elec. Serv.*, 809 F.2d at 631. The court is concerned with establishing the existence of genuine issues, and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The facts are only "viewed in the light most favorable to the nonmoving party if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.,* (quoting *Matsushita*, 475 U.S. at 586–87). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## IV.   LEGAL ARGUMENT

### A.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 6 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743, 131 (2011)).

When the defense of qualified immunity is raised, courts employ a two-part inquiry: (1) Jackosn must have alleged sufficient facts to show a constitutional violation; and (2) the right at issue must have been "clearly established" at the time of the alleged violation. *Pearson*, 555 U.S. at 224. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified

immunity." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), overruled on other grounds by *Pearson*, 555 U.S. 223. Or "if the law did not put the [official] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202.

**B.    Jackson Failed to Exhaust His Administrative Remedies Required By the PLRA**

**1.    Defendants used reasonable force when extracting Jackson from his cell**

The conditions of confinement in a prison are subject to scrutiny under Eighth Amendment standards. *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir.1985). The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (*quoting Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). To prove the use of excessive force in violation of the Eighth Amendment, an inmate must show the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 4–5, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (*quoting Whitley*, 475 U.S. at 320–21, 106 S.Ct. at 1084); *LeMaire v. Maass*, 12 F.3d 1444, 1452–53 (9th Cir. 1993).

Prison administrators must be accorded deference in the execution of practices that in their judgment are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). "Whether in the context of a prison-wide disturbance or an individual confrontation between an officer and a prisoner, corrections officers often must act immediately and emphatically to defuse a potentially explosive situation." *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993).

In determining whether intentional force "crosse[s]" the "constitutional line," a court should look to factors such as (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; and (4) whether force was applied in good faith to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Kingsley v. Hendrickson*, 576 U.S. 389, 402, 135 S.Ct. 2466, 2475-76, 192 L.Ed.2d 416 (2015).

### a.    Need for force

Correctional officers may be required to use some measure of force if an inmate refuses a valid order. *Whitley v. Albers*, 475 U.S. at 320, 106 S.Ct. at 1084–85; *LeMaire v. Maass*, 12 F.3d at 1451; *Michenfelder v. Sumner*, 860 F.2d 328, 335 (9th Cir. 1988). The appropriateness of the use of force must be determined by the facts and circumstances of each case. *Id.*, 860 F.2d at 336. In *Hart v. Celaya*, the court did not find correctional officers used excessive force in violation of the Eighth Amendment when officers released pepper-spray into a prisoner's holding cell after he refused to submit to an unclothed body search. 548 F.Supp.2d 789, 803 (N.D. Cal. 2008). In *Jones v. Las Vegas Metro. Police Dep't*, the Ninth Circuit held it was reasonable for officers to use a taser on a suspect who ran from a traffic stop when he had neither threatened nor committed a serious offense. 873 F.3d 1123, 1130 (9th Cir. 2017). *See also Beaver v. City of Fed. Way,* 301 F.App'x 704, 705 (9th Cir. 2008) (tasing an arrestee who was suspected of committing a daytime burglary was not excessive where the arrestee was attempting to flee, ignored commands, and remained non-compliant).

Here, it was necessary for officers to use force to extract Jackson from his cell. It was reported earlier in the day that Jackson had propelled an unknown liquid on officers. Ex. F at 2. Because Jackson propelled an unknown liquid on NDOC staff, it was required by NDOC policy, for Jackson to be extracted from his cell so that officers could search his cell. Ex. C at 3:22-23. As such, there was a need to have Jackson extracted from his cell.

When the CERT team arrived to extract Jackson from his cell, Jackson was told to voluntarily submit to restraints. Ex. G at 1:45-55. Had Jackson voluntarily submitted to

restraints, no force would have been required to extract him from his cell. Instead, Jackson refused to comply with officers' orders, went to the back of his cell, and laid on his bunk face down with his hands tucked under his stomach. Ex. H at 2. Because Jackson refused to listen to officers' orders to voluntarily submit to restraints, force was required to extract Jackson out of his cell.

Upon entering Jackson's cell Officers ordered Jackson to give them his hands which Jackson refused to do. Ex. G at 2:10-15. Because Jackson's hands were tucked under his body Officer Kirkland was unsure whether Jackson had a weapon on him that could be used to harm officers. Ex. H at 2. As such, for the safety of the officers Officer Kirkland stunned Jackson with a taser until Jackson's hands were secured. *Id*. Additionally, several of the officers who were present during Jackson's cell extracting reported that Jackson put up a struggle to resist being put in restraints. *Id*. at 1-7. The video of Jackson's cell extraction shows he was squirming and moving around frantically prior to being cuffed. Ex. G at 2:20-3:00. Upon being restrained Jackson stopped squirming. *Id*. at 3:05. This further indicates Jackson was resisting being restrained, and officers needed to apply force to do so. Once restraints were secured on Jackson, the only force officers used on Jackson was helping him to his feet and escorting him out of the cell.

Accordingly, officers were required to use force to extract Jackson out of his cell because he refused to voluntarily submit to restraints and attempted to resist being restrained once officers entered his cell. Thus, this factor favors Defendants.

### b.    Relationship between need and amount of force used

The force officers used to extract Jackson from his cell was proportional in relationship to the need to use force. In *Bell v. Williams*, the Ninth Circuit noted that force may not be used against a compliant detainee even if the detainee initially disobeyed orders. *Piazza v. Jefferson County.*, 923 F.3d 947, 953 (11th Cir. 2019) ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." (internal quotations omitted)); *Rowell v. Board of County Comm'rs of Muskogee County*, 978 F.3d 1165, 1173–74 (10th Cir. 2020) (holding that jail

official did not use excessive force, but only after recognizing in a parenthetical that "the level of force necessary to gain compliance, but no more, is justified" (internal quotations omitted)); cf. *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020) (holding that under Eighth Amendment, "when a prison inmate engages in willful misconduct, a prison guard may use reasonable force to restrain him—but after the inmate submits, there is no need, and thus no justification, for the further use of force"). *See Bell v. Williams*, 108 F.4th 809, 822 (9th Cir. 2024).

As discussed above, force was required to extract Jackson from his cell because earlier in the day Jackson propelled an unknown liquid on NDOC staff and refused to voluntarily submit to restraints when asked to exit his cell. Upon entering Jackson's cell, a taser can be heard being used to stun Jackson. The reason this taser was being used on Jackson was because upon entering Jackson's cell, Jackson was laying on his bunk facedown with his hands under his stomach. Ex. H at 2. Officers ordered Jackson several times upon entering his cell to give up his hands which it was reported that Jackson refused to do. Ex. G at 2:10-15; Ex. H at 2. Unsure whether Jackson had a weapon on him Officer Kirkland tased Jackson in an effort to get him to comply to ensure the safety of the officers in the room. Ex. H at 2. Because Officer Kirkland reasonably could not have known if Jackson had a weapon on him the use of the taser was reasonably required for officer safety. It is also important to note upon extracting Jackson from his cell Jackson made several death threats to officer. Ex. G at 5:43-12:20. As such, Officers may have been reason to believe that Jackson posed a substantial risk to their safety based on behavior similar to this.

Additionally, officers' reports indicate that Jackson was putting up a struggle and did not initially give up his hands. Ex. H at 1-7. Because Jackson was laying facedown with his hands under his stomach, officers were required to lift Jackson up, pull his hand out from under his stomach, gain control of Jackson's, put Jackson's hands behind his back, and cuff them, all while Jackson was putting up a struggle and resisting. Ex. G at 2:20-

3:00; *See also* Ex. H. Such actions certainly required the use of force in order to properly restrain Jackson.

Furthermore, the threats Jackson makes to officers after he was extracted from his cell is indicative of Jackson's mindset and the struggle he put up against officers when they were trying to restrain him. For example, when it was time for Jackson to be extracted from the shower cell, Jackson was asked to go to the back of the cell. Ex. G at 8:00-35. Jackson responded by aggressively saying, "for what." *Id.* When officers asked Jackson to put on his shirt, Jackson replied "I ain't putting on shit." *Id.* at 10:40-45. Jackson also indicates to the officers that to take him out of his cell they would have to drag him out, beat him up and kill him." *Id.* at 10:40-50. Jackson then doubles down on these statements saying that he really means what he is saying. *Id.* at 10:50-53. These statements made by Jackson indicate that he intentionally put up a struggle and did what he could to resist being put in restraints. Considering these facts the relationship between the force used on Jackson and the force that was required, officers used an appropriate amount of force to restrain and extract Jackson from his cell. As such, this factor weighs in favor of Defendants.

### c.    Extent of injuries

"[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Whitley*, 475 U.S. at 321. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Given the circumstances in which Jackson was extracted from his cell, injuries Jackson sustained were proportional to the force required to extract him from his cell. The video of Jackson's cell extraction shows that Jackson was bleeding and had bruising to his face, seemingly as a result of the force that was applied to him. Ex. G at 12:25. The medical evaluation report regarding Jackson's cell extractions indicates Jackson received hematomas and bruising to his face. Ex. I.

When officers entered Jackson's cell, he was laying facedown on his bunk with his hands under his stomach. Ex. H. Officers ordered Jackson to give them his hands, which Jackson refused. *Id*. In order to gain control of Jackson's hands officer were required to mount Jackson, potentially attempt to lift his body, pull his hands out from under his stomach, put Jackson's hands behind his back and apply cuffs. This occurred while Jackson was adamantly squirming around and actively resisting officers. Considering Jackson's statements that officers would have to beat him, drag him out of the cell, and kill him to get him to comply with them, it is reasonable to conclude that Jackson intentionally put up a struggle which required officers to use more force than normally applied to gain control of the situation. When applying such force on a suspect who is actively attempting to resist being restrained, injuries such as the ones sustained by Jackson are common and not excessive given the circumstances. As such, given the circumstances of Jackson's cell extraction, Jackson's injuries do not show that officers used excessive force.

### d.    Good faith v. malicious intent

In excessive force cases brought under the Eighth Amendment, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Whitley*, 475 U.S. at 320–21, 106 S.Ct. 1078). This Court applies a five-factor test to determine whether the use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace*, 705 F.3d at 1028 (9th Cir. 2013) (quotation omitted).

As discussed above, the injuries sustained by Jackson during his cell extraction were proportional to the force that was required to be used to extract him from his cell given the totality of the circumstances. When officers arrived at Jackson's cell to extract him officers made an effort to temper the severity of a forceful response because they told Jackson to

voluntarily submit to restraints and that if he refused force would be used. Ex. G at 1:45-55. Jackson refused to comply with this order. *Id.*

Furthermore, officers perceived a reasonable threat when confronting Jackson. Officers were called to Jackson's cell to extract him because he had propelled an unknown liquid on NDOC staff, indicating a level of disregard from Jackson. The reason Jackson had to be extracted from his cell was so officers could search Jackson's cell after the propelling incident to verify that there were no hazardous liquids in his cell that could pose a risk to officer safety. When officers arrived at Jackson's cell, he refused to comply with officers' orders to voluntarily submit to restraints. When officers entered Jackson's cell, they were unsure if Jackson had a weapon that could be used on them because Jackson was laying face down on his bunk with his hands under his stomach and refused to comply with officers' orders to give up his hands. The threat perceived by the officers entering Jackson's cell is verified when Jackson proceeds to make several death threats to officers after being extracted from his cell. As such, the force officers used to extract Jackson from his cell was used in good faith and was not used with malicious intent. Accordingly, all the *Kingsley* factors favor Defendants. Thus, Defendants did not use excessive force when extracting Jackson from his cell. Therefore, Defendants did not violate Jackson's Eighth Amendment rights and this Court should grant Defendants MSJ.

### 2.    Defendants have not violated clearly established law

It is not sufficient for the district court to conclude that the plaintiff has proven a constitutional injury, or that there are material facts in dispute that, if proven, would establish a constitutional violation. *Carley v. Aranas*, 23-15271, 2024 WL 2808823, at *5 (9th Cir. June 3, 2024). The court must proceed to the second step to decide whether the violation was "clearly established at the time of the violation." *Id.* (citing *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (internal quotation marks and citation omitted)). In other words, "[f]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, 142 S.Ct. 4, 211 L.Ed.2d 164 (2021)

(per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam)). The "constitutional question [must have been] beyond debate." *Id.* (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation omitted); *see Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "in the light of pre-existing law the unlawfulness [of the challenged action] must be apparent" (citation omitted)); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

Qualified immunity is not available to an official "when it would be clear to a reasonable officer that his conduct was unlawful in the situation he was confronted." *Hope v. Pelzer*, 536 U.S. 730, 746 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, overturned in part on different grounds by *Pearson*, 555 U.S. 223). Additionally, qualified immunity "would be defeated [only] if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Malley v. Briggs*, 475 U.S. 335, 349 (1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)) (internal quotation and emphasis omitted). The burden of proof rests with the Plaintiff. *Carley*, 23-15271, 2024 WL 2808823, at *5 (citing *Simmons v. G. Arnett*, 47 F.4th 927, 934–35 (9th Cir. 2022)).

As discussed above, Defendants did not extract Jackson from his cell for any malicious purpose. Rather, Jackson was required to be extracted from his cell because he propelled an unknown liquid on NDOC staff, and pursuant to policy was required to be extracted from his cell so that his cell could be searched. Jackson was given an opportunity to voluntarily submit to restraints which he refused to do. Also, the force used to extract Jackson out of his cell was appropriate given the circumstances of Jackson's cell extraction. Because all four *Kingsley* factors favor Defendants, the law clearly establishes that Defendants used reasonable force rather than excessive force to extract Jackson from his cell. As such, here the clearly established law provides that Defendants did not use excessive force on Jackson. Therefore, this Court should grant Defendants' MSJ.

**B.    Jackson Failed to Exhaust His Administrative Remedies Pursuant to the PLRA**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Ninth Circuit has clarified that § 1997e(a) requires complete exhaustion of administrative remedies before a civil complaint is filed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). "Exhaustion subsequent to the filing of suit will not suffice." *Id.* (citing *Booth*, 532 U.S. at 738). Further, "[u]nder the PLRA, all inmates must exhaust all available remedies; exhaustion is no longer left to the discretion of the district court." *See Ross v. Blake*, 578 U.S. 632, 640 (2016).

Exhaustion of administrative remedies requires an inmate to use "all steps the agency holds out and [to do] so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedures because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

**1.    Administrative Regulation 740**

Administrative Regulation 740, is the regulation NDOC offenders must use to resolve addressable grievances and claims. Exhibit J – Administrative Regulation 740 – Offender Grievance Procedure. An offender must complete the grievance procedures set forth therein, which include an informal grievance, AR 740.08, a first-level grievance, AR 740.09, and a second-level grievance, AR 740.10. *see Id*. Offenders must await a timely response before proceeding to the next level; if a response from the institution is overdue, then the inmate may proceed to the next grievance level. *Id*. at 740.03(8); 740.08(12); 740.09(6). The agency has sixty (60) calendar days to respond to a second level appeal from

the date the appeal is received by the grievance coordinator. *Id.* at 14, 740.10(3). If the second-level grievance is not responded to within 60-calendar days, the offender must submit an offender request to the individual responsible for providing the response to the second-level grievance. *Id.* at 740.10(4). If the individual does not respond within 60 days of receipt of such request, the offender will have exhausted the administrative remedy process. *Id.*

### 2.    Grievance No. 2006-31-46909

A review of Jackson's grievance history shows that Jackson filed one grievance in grievance no. 2006-31-46909 (grievance no. 909) regarding the incident in which officers were required to use force to extract him from his cell. Exhibit K – Grievance History Report at 15. On December 22, 2022, Jackson filed grievance no. 909, the day after he was extracted from his cell, claiming that excessive force was used on him because he refused to cuff up. *Id.* at 1-3. On December 27, 2022, Jackson's grievance was partially granted because his grievance alleging use of excessive force was referred to the inspector general's office under IN-2023-49 for further investigation. *Id.* at 8-9.

On March 29, 2023, Jackson filed a first level grievance because he had not received a response to his informal grievance. *Id.* at 29. On May 9, 2023, NDOC denied Jackson's first level grievance informing him that the incident was fully investigated by the inspector general's office under IN-2023-49 and it was determined that Jackson's allegations for excessive force were unsubstantiated. *Id.* at 33. There is no record that Jackson appealed the denial of this first level grievance to the second level. *See* Ex. K at 15; *See generally* Ex. L. Furthermore, there is no record indicating that Jackson was prevented from appealing the denial of his first level grievance to the second level. *Id.* Because Jackson did not appeal his first level grievance to the second level, he effectively abandoned his grievance and did not exhaust his administrative remedies. As such, Jackson is procedurally barred from filing this lawsuit. Thus, this Court should grant Defendants' MSJ for Jackson's failure to exhaust his administrative remedies pursuant to the PLRA.

///

## V.    CONCLUSION

This Court should grant Defendants' Motion for Summary Judgment because: (1) Defendants did not use excessive force on Jackson given the circumstances in which force was used on him; (2) Defendants are entitled to qualified immunity; and (3) Jackson failed to exhaust his administrative remedies pursuant to the PLRA. *See* 42 U.S.C. § 1997e(a).

DATED this 5th day of May, 2025.

AARON D. FORD
Attorney General

By: /s/ Rudolf M. D'Silva
RUDOLF M. D'SILVA (Bar No. 16227)
Deputy Attorney General
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on May 5, 2025, I electronically filed the foregoing **MOTION FOR SUMMARY JUDGMENT** via this Court's electronic filing system.  Parties who are registered with this Court's electronic filing system will be served electronically.

Tarontae Jackson #1186781
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
*Plaintiff, Pro Se*

/s/ Jamile Vazquez
Jamile Vazquez, an employee of the
Office of the Nevada Attorney General

# EXHIBIT A

BED HISTORY REPORT

# EXHIBIT A

**ER107**               **ER107**               **ER107**



# State of Nevada
# Department of Corrections

Historical Bed Assignments

**Offender Name:** JACKSON, TARONTAE
**NDOC ID:** 1186781
**Booking No:** 2017-089093

**Status:** INACTIVE-DSCHREL
**Booking Begin Date:** 10/24/2017
**Booking End Date:** 02/01/2019

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| HDSP-RC | 10/24/2017 | 10/24/2017 |
| HDSP-U1-C-38-B | 10/24/2017 | 11/28/2017 |
| HDSP-U2-B-28-A | 11/28/2017 | 01/18/2018 |
| HDSP-U5-A-39-A | 01/18/2018 | 01/23/2018 |
| SDCC-RC | 01/23/2018 | 01/23/2018 |
| SDCC-U6-A-7-B | 01/23/2018 | 04/03/2018 |
| SDCC-U11-B-5-P | 04/03/2018 | 04/18/2018 |
| PCC-U1-B-1-L | 04/18/2018 | 05/06/2018 |
| PCC-U1-C-5-J | 05/06/2018 | 05/22/2018 |
| ESP-RC | 05/22/2018 | 05/22/2018 |
| ESP-U9-A-9-A | 05/22/2018 | 05/24/2018 |
| ESP-U7-A-17-A | 05/24/2018 | 05/30/2018 |
| ESP-U10-HA | 05/30/2018 | 05/31/2018 |
| WCC-U1-C-2-G | 05/31/2018 | 06/18/2018 |
| WCC-U1-C-2-F | 06/18/2018 | 06/24/2018 |
| WCC-U1-C-6-A | 06/24/2018 | 06/24/2018 |
| ESP-RC | 06/24/2018 | 06/24/2018 |
| ESP-U7-A-43-A | 06/24/2018 | 06/25/2018 |
| ESP-U7-A-33-B | 06/25/2018 | 07/05/2018 |
| ESP-U7-A-30-A | 07/05/2018 | 08/23/2018 |
| ECC-RC | 08/23/2018 | 08/23/2018 |
| ECC-U1-A-3-B | 08/23/2018 | 09/13/2018 |
| ISCC-U3-A-12-A | 09/13/2018 | 09/14/2018 |
| ISCC-U3-B-17-A | 09/14/2018 | 12/06/2018 |
| ISCC-U3-B-6-A | 12/06/2018 | 12/30/2018 |
| ISCC-U3-B-21-A | 12/30/2018 | 02/01/2019 |

**Offender Name:** JACKSON, TARONTAE
**NDOC ID:** 1186781
**Booking No:** 2020-101720

**Status:** INACTIVE-DSCHREL
**Booking Begin Date:** 07/14/2020
**Booking End Date:** 01/24/2024

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| HDSP-RC | 07/14/2020 | 07/14/2020 |
| HDSP-U1-C-6-A | 07/14/2020 | 08/13/2020 |
| HDSP-U2-A-8-A | 08/13/2020 | 09/10/2020 |
| SCC-RC | 09/10/2020 | 09/10/2020 |
| NNCC-RC | 09/10/2020 | 09/10/2020 |
| NNCC-U5-B-4-A | 09/10/2020 | 10/02/2020 |
| NNCC-U2-A-3-J | 10/02/2020 | 10/15/2020 |
| SCC-U1-A-2-D | 10/15/2020 | 11/09/2020 |
| SCC-U5-A-1-B | 11/09/2020 | 11/30/2020 |
| SCC-U5-A-1-A | 11/30/2020 | 02/17/2021 |

Report Name: OMDHBA
Run Date: APR-25-25 04:07 PM

Page 1 of 3

Housing information in red indicates relation to invalid external movement

**ER108**  **ER108**  **ER108**



# State of Nevada
# Department of Corrections

Historical Bed Assignments

**Offender Name:** JACKSON, TARONTAE
**NDOC ID:** 1186781
**Booking No:** 2020-101720

**Status:** INACTIVE-DSCHREL
**Booking Begin Date:** 07/14/2020
**Booking End Date:** 01/24/2024

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| NNCC-RC | 02/17/2021 | 02/17/2021 |
| NNCC-U5-B-9-A | 02/17/2021 | 02/18/2021 |
| NNCC-U2-B-2-C | 02/18/2021 | 03/05/2021 |
| NNCC-U2-C-2-C | 03/05/2021 | 03/09/2021 |
| NNCC-U4-B-5-B | 03/09/2021 | 03/18/2021 |
| NNCC-U7-B-24-A | 03/18/2021 | 05/11/2021 |
| NNCC-U2-C-2-C | 05/11/2021 | 05/21/2021 |
| WSCC-RC | 05/21/2021 | 05/21/2021 |
| WSCC-U4-B-57-B | 05/21/2021 | 05/26/2021 |
| WSCC-RC | 05/26/2021 | 05/26/2021 |
| WSCC-U2-B-14-A | 05/26/2021 | 06/03/2021 |
| WSCC-U2-B-8-B | 06/03/2021 | 06/04/2021 |
| WSCC-RC | 06/04/2021 | 06/04/2021 |
| WSCC-U2-B-14-A | 06/04/2021 | 06/23/2021 |
| WSCC-U4-B-2-A | 06/23/2021 | 06/25/2021 |
| WSCC-U4-B-47-A | 06/25/2021 | 07/02/2021 |
| WSCC-U4-A-4-B | 07/02/2021 | 07/09/2021 |
| WSCC-U4-B-48-A | 07/09/2021 | 10/21/2021 |
| WSCC-U4-B-48-B | 10/21/2021 | 11/19/2021 |
| LCC-RC | 11/19/2021 | 11/19/2021 |
| LCC-U4-A-1-A | 11/19/2021 | 11/30/2021 |
| LCC-U4-B-3-B | 11/30/2021 | 12/01/2021 |
| LCC-RC | 12/01/2021 | 12/01/2021 |
| LCC-U4-B-26-B | 12/01/2021 | 12/29/2021 |
| LCC-U4-A-8-A | 12/29/2021 | 01/04/2022 |
| ESP-RC | 01/04/2022 | 01/04/2022 |
| ESP-U5-A-41-B | 01/04/2022 | 01/05/2022 |
| ESP-RC | 01/05/2022 | 01/05/2022 |
| SDCC-RC | 01/05/2022 | 01/05/2022 |
| SDCC-U11-B-5-P | 01/05/2022 | 01/19/2022 |
| SDCC-U11-B-5-O | 01/19/2022 | 03/23/2022 |
| SDCC-U8-C-28-A | 03/23/2022 | 03/23/2022 |
| SDCC-U7-A-8-B | 03/23/2022 | 03/23/2022 |
| SDCC-U8-C-28-A | 03/23/2022 | 03/24/2022 |
| SDCC-U7-A-8-B | 03/24/2022 | 03/30/2022 |
| SDCC-U7-A-16-B | 03/30/2022 | 06/20/2022 |
| SDCC-U1-C-11-B | 06/20/2022 | 08/19/2022 |
| SDCC-U1-B-11-B | 08/19/2022 | 09/04/2022 |
| SDCC-U6-C-20-B | 09/04/2022 | 09/06/2022 |
| SDCC-U6-C-6-A | 09/06/2022 | 09/12/2022 |
| SDCC-U8-A-16-A | 09/12/2022 | 12/15/2022 |
| ESP-RC | 12/15/2022 | 12/15/2022 |

Report Name: OMDHBA
Run Date:  APR-25-25 04:07 PM

Page 2 of 3

**Housing information in red indicates relation to invalid external movement**

**ER109**                **ER109**                **ER109**



# State of Nevada
# Department of Corrections

Historical Bed Assignments

**Offender Name:** JACKSON, TARONTAE      **Status:** INACTIVE-DSCHREL
**NDOC ID:** 1186781      **Booking Begin Date:** 07/14/2020
**Booking No:** 2020-101720      **Booking End Date:** 01/24/2024

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| ESP-U2-B-36-B | 12/15/2022 | 01/31/2023 |
| ESP-U5-B-36-B | 01/31/2023 | 02/22/2023 |
| ESP-U9-A-30-A | 02/22/2023 | 04/01/2023 |
| ESP-U9-A-13-A | 04/01/2023 | 04/06/2023 |
| ESP-U9-A-1-A | 04/06/2023 | 06/14/2023 |
| ESP-U5-A-45-B | 06/14/2023 | 07/18/2023 |
| ESP-U9-A-27-A | 07/18/2023 | 09/15/2023 |
| ESP-U9-A-6-A | 09/15/2023 | 11/08/2023 |
| ESP-U9-A-13-A | 11/08/2023 | 01/06/2024 |
| ESP-U9-A-14-A | 01/06/2024 | 01/10/2024 |
| HDSP-RC | 01/10/2024 | 01/10/2024 |
| HDSP-U4-B-5-A | 01/10/2024 | 01/10/2024 |
| HDSP-U4-B-3-A | 01/10/2024 | 01/24/2024 |

**Offender Name:** JACKSON, TARONTAE      **Status:** ACTIVE-IN
**NDOC ID:** 1186781      **Booking Begin Date:** 12/18/2024
**Booking No:** 2024-116341      **Booking End Date:**

| Location | Assignment Begin Date | Assignment End Date |
|---|---|---|
| HDSP-RC | 12/18/2024 | 12/18/2024 |
| HDSP-U1-D-12-A | 12/18/2024 | 01/17/2025 |
| HDSP-U6-A-30-A | 01/17/2025 | 03/10/2025 |
| HDSP-U6-A-22-B | 03/10/2025 | 03/19/2025 |
| HDSP-U3-C-31-B | 03/19/2025 | 03/20/2025 |
| HDSP-U3-C-31-A | 03/20/2025 | 03/28/2025 |
| HDSP-U5-C-32-A | 03/28/2025 | 04/17/2025 |
| HDSP-U12-A-8-B | 04/17/2025 | Offenders Current Location |

Report Name: OMDHBA
Run Date: APR-25-25 04:07 PM

**Housing information in red indicates relation to invalid external movement**

**ER110**      **ER110**      **ER110**

# EXHIBIT B

AR 405 USE OF FORCE FINAL 11-16-16

# EXHIBIT B

ER111 ER111 ER111

# ADMINISTRATIVE REGULATION
## 405

# USE OF FORCE

**Supersedes:**    AR 405 (Temporary 6/23/11) AR 405 (Temporary, 03/03/16)
AR 405 (Temporary 5/25/16) AR 405 8/16/16,
AR 405 (Temporary 11/3/16)
**Effective Date:**    11/16/16

**AUTHORITY:** NRS 209.131, 209.161, 212.090 and 212.190

## RESPONSIBILITY

1. The Warden/Division Head is responsible for the overall execution of this regulation. Direct supervision of this regulation is the responsibility of the Shift Supervisor (institutions/facilities) and/or the Transportation Lieutenant/Sergeant in regards to Central Transportation Division. The Inspector General in regards to the Inspector General's Office.

2. The Warden at each institution, Central Transportation Lieutenant, the Inspector General; shall ensure that all assigned staff is trained and have signed an acknowledgement statement that they have read, know and understand this regulation. A copy of their acknowledgement shall be maintained in each staff member's training file.

3. It is the responsibility of all employees who may be required to use force as part of their duties to understand and comply with the Use of Force policy, related procedures, use of equipment and attend and understand relevant use of force training.

## DEFINITIONS

Authorized Personnel – A person who has received the prescribed NDOC training in the application of Use of Force equipment or tactics, and whose qualifications are up-to-date. Any person who volunteers, is contracted by or is employed by the NDOC is authorized to defend themselves or others from attack. A Correctional Officer Trainee or Correctional Officer who has not completed the Basic Academy and has not passed the Peace Officers Standards and Training (POST) certification exam are authorized to defend themselves and others from attack. Only certified Peace Officers who are current on their qualifications shall be authorized to utilize force tactics, tools, devices, weapons or other methods authorized by the Department Director.

Lethal Force –

AR 405                           Page 1 of 18

**ER112**                        **ER112**                        **ER112**

Any force which carries a substantial risk that may result in death or serious or great bodily injury.

Excessive Force – The use of more force than an objective trained and competent correctional peace officer faced with similar facts and circumstances would use to subdue an attacker, overcome resistance, affect custody or gain compliance with a lawful order.

Force – Any violence, compulsion, or constraint physically exerted by any means upon or against a person.

Less Lethal Force – any force that is neither intended nor likely to cause death or serious or great bodily injury (NRS 0.060).

Passive Compliance Measures (De-escalation) – Techniques/strategies used by staff to gain compliance/control of an inmate without forcible physical contact.

Planned Use of Force – The Use of Force when time and circumstances allow the opportunity for planning and consultation and approval of the Warden or Administrator On Duty (AOD)

Physical Force – The use of hands, other parts of the body, objects, instruments, chemical devices, firearms, or other physical methods for the purpose of overcoming the resistance to lawful authority.

Reasonable Force – That force which is objectively reasonable based on the totality of the circumstances and the facts known to the officer at the time to subdue an attacker, overcome resistance, affect custody, or gain compliance with a lawful order.

Show of Force – Movement of additional staff and/or equipment/weapon to an incident site for the purpose of convincing an inmate that adequate staff and measures are available and may be used to successfully resolve the situation.

Spontaneous Use of Force – Force used in an immediate situation or in response to a threat or emergency situation to dissuade or quell a course of action by an inmate(s).

Use of Force – The application of progressive levels of force to gain control of an inmate up to and including lethal force. This does not include those situations in which security restraints are used in a standard manner for arrest, escort or transport. (Use of Force shall be limited to the minimal amount of force necessary to control the situation.)

Serious Bodily Injury - Serious bodily injury means but is not limited to a serious impairment of a physical condition such as loss of consciousness, concussion, bone fracture, loss of a function of any bodily member or organ, a wound requiring extensive suturing or a disfigurement.

**ER113**                          **ER113**                          **ER113**

<u>Great Bodily Injury</u> - Great bodily injury is any bodily injury that creates a substantial risk of death, such as but not limited to, stab wounds that cause substantial bleeding strike vital organs or repeated blows to the head with kicks or with a blunt instrument.

## 405.01 USE OF FORCE GENERAL PROVISIONS

The NDOC shall operate under this use of force policy that defines staff responsibilities and limitations concerning the use of force while still allowing discretion in the appropriate application of force. The policy provides staff with the appropriate guidance on the permissible Use of Force. It ensures discipline is imposed for violations of the Use of Force policy, procedures or training.

It is the policy of the NDOC to authorize the use of physical force when and only to the extent that is reasonably believed to be necessary as specified in these rules. Staff is authorized to use that amount of force that is objectively reasonable to overcome a threat thereby minimizing the risk of injury to the officer, the threat and the public.

At no time are staff permitted to use force for punishment, retaliation, or discipline.

Force shall be used only when reasonably necessary to subdue an attacker, overcome resistance, affect custody, or to gain compliance with a lawful order. It is the policy of the NDOC to accomplish the educational, treatment and supervision functions with minimal reliance on the use of force. Staff may use reasonable force as required in the performance of their duties, but unnecessary or excessive force shall not be used. If staff, at any point, determines the situation can be resolved without any further use of force, staff shall terminate the use of force.

All the facility Operational Procedures must conform to the provisions in this Administrative Regulation.

## 405.02 STAFF TRAINING INVOLVING USE OF FORCE

1. All personnel shall receive training and be qualified prior to being assigned to a position involving possible Use of Force and being authorized to use any force related equipment such as physical restraints, firearms, projectile launchers, chemical agents (CS/OC), taser or similar technology or batons. A staff member employed in positions that are authorized to use force-related equipment shall receive annual refresher and semi-annual firearms qualification training in the correct use of all equipment to maintain their established proficiency levels.

2. The application of force when using any authorized equipment must be consistent with training. For example; intentional strikes to the head or neck are <u>not</u> consistent with training for the side handle baton. Shots to the head with 40 mm launcher are <u>not</u> consistent with training. The use of carotid or choke holds is not authorized.

3. Training shall include:

A.  Techniques/strategies known as Passive Compliance Measures (De-escalation) used by staff to gain compliance/control of an inmate without forcible physical contact such as: communications, videotaping of inmate(s), show of force.

B.  Staff is expected to know the Continuum of Force and be able to apply the proper level and type of force needed to control an inmate's behavior. Minimum harm to staff, the public and inmates is the goal, but the overall objective is to gain compliance, control, and facility order. Force shall be limited to the minimum amount necessary to control the situation. Force shall not be used to punish, harass, or abuse inmates.

## 405.03 WHEN FORCE MAY BE USED

1.  A staff member may use force to protect himself or any other individual from physical harm by an inmate. Alternative methods of persuasion such as communications, videotaping of inmate(s), and/or show of force shall be utilized prior to using force whenever possible.

2.  Force shall be proportionate to the threat exhibited by the inmate, and the force shall decrease as the threat is lessened. Any staff witnessing a Use of Force that is either excessive or unnecessary is required to immediately report their observations to the shift supervisor both verbally, and subsequent to the incident, in a written report.

4.  To prevent the escape of an inmate, staff may use reasonable force to prevent the escape if no alternative method of persuasion is effective.

5.  To prevent destruction of state property.

    A.  Staff may use force to prevent state property from substantial damage by an inmate if no alternative method of persuasion is effective.

    B.  Nevada Revised Statute (NRS) 212.190 states that damaging prison property is at least a gross misdemeanor.

6.  To compel an inmate's compliance with orders, force may be used if no alternative method of persuasion is effective or where the circumstances require urgency.

7.  To prevent or quell a disturbance, disperse or apprehend inmates whose conduct is creating a risk of death or serious physical injury to others.

8.  To stop inmate self-injurious behavior when time does not permit the arrival of a supervisor or the assembly of a planned use of force team and sufficient back-up is available.

9.  Use of Force Options in the Use of Force Continuum:

- Physical Force – includes the use of physical strength and holds (strikes i.e. Hand, elbow, knee and locks i.e. Wrist locks) except that choke holds and other types of physical holds that prevent the person from breathing, swallowing or cutting off blood supply to the brain are not authorized.
- Chemical Agents – use of departmentally authorized chemical agents
- Hand-held Batons – departmentally approved batons.
- Less-lethal weapons – departmentally approved projectile launchers that are not likely to cause death.
- Lethal weapons – firearms capable of firing lethal rounds/projectiles.

10. Levels of Force:

A. Planned use of force can be used at any level in the use of force continuum. Planned use of force incidents must be videotaped as outlined in this AR. Healthcare staff shall be consulted to determine if there are any contra-indicating factors such as but not limited to the use of O/C for asthmatics or tasers on inmates with other health problems or heart pacemakers prior to the planned use of force and documented. Staff involved in these incidents shall utilize protective equipment. An example of planned use of force is a cell extraction. Staff are to be reminded to use universal precautions equipment such as latex gloves in addition to their other equipment.

a. In a planned use of force, the Incident Commander in charge shall assign a staff member to be in charge of recording the entire planned use of force. If time permits and a second camera is available, one staff member shall video-record the inmate at the cell front during staff's attempts to gain the inmate's compliance through verbal persuasion efforts and the other video-recording is taping the planned use of force team introductions and plan by the incident commander.

b. The staff member assigned to recording shall ensure, prior to the start of the use of force, that the recording equipment has sufficient batteries and sufficient blank recording space, such that technical issues with recording shall be minimized once recording begins. The recorder shall begin all video recording stating his/her name, date, time, location and inmate name.

- The incident commander shall describe the nature of the incident that requires the planned use of force and the attempts to resolve the issue without the use of force.
- Prior to the use of force, healthcare staff shall be contacted to determine if there are is medical or mental health condition that would preclude the use of any chemical agent or taser. Record on video the comments by healthcare staff, stating his/her name. If unavailable for video, Incident Commander shall identify name of healthcare staff and the comment made by the healthcare staff member on the recording.

AR 405                                              Page 5 of 18

**ER116**                    **ER116**                    **ER116**

- Each staff member shall identify themselves by name, rank and state their responsibility such as the shield person, right side, left side or what type of equipment they shall employ such as handcuffs or leg restraints.

c. The staff member assigned to recording shall not be expected to participate in the use of force and shall not do so, such that they may dedicate their full attention to recording. The recording staff member shall refrain from engaging in verbal comments during the recording, as staff comments may obscure the sounds being recorded.

d. The recording staff member must record in such a manner that the inmate is in focus as much as possible, and adjust their positions should a staff member's body position be obscuring a visual of the inmate. Prior to the planed use of force the recording staff member must record the notice given to the inmate giving him/her a last chance warning or chemical agent shall be utilized.

e. For any breaks in recording, the recording staff member must sign back on with his/her name, the date, time and reason for the break in recording.

f. All recordings of a planned use of force shall be kept in a manner and location that is easily retrievable in the event review is needed. The recording must be maintained for no less than three years from the date force was used.

B. Spontaneous use of force may be used by staff to respond to an emergency or immediate threat when there is not time to formulate a plan or notify an immediate supervisor, and the situation constitutes a serious threat to the safety of staff, public, inmates and/or institutional security. Immediate use of force shall be employed in a manner that poses the least risk to staff, the public and inmates.

a. Where force was used spontaneously, regardless of injuries reported contemporaneous with the event, the area supervisor/incident commander shall immediately review, if available, any unit video surveillance that may have captured the use of force.

b. If the use of force was captured on video, from any angle on any camera, the area supervisor/incident commander shall be responsible for preserving that recording in a manner and location that is easily retrievable in the event review is needed. The video must be maintained for no less than three years from the date force was used.

c. If no cameras were operational in that unit or no cameras captured the use of force, the area supervisor/incident commander shall make a notice of same in the Use of Force Incident Report.

AR 405                                                    Page 6 of 18

**ER117**                    **ER117**                    **ER117**

d. In addition to and apart from any surveillance footage from stationary cameras that may exist, video footage shall also be recorded via a hand-held camera, as follows:

- As soon as the shift supervisor becomes aware that force is being used or has been used, a staff member shall be directed to immediately obtain a handheld video camera and shall be ordered to the scene where force has been used.

- Immediately upon arrival to the scene, the staff video recorder shall begin recording, noting the time and date the recording begins and identify himself/herself as video recorder.  The staff video recorder shall continue to take footage until the area supervisor/incident commander decides the incident is over and instructs the staff video recorder to cease recording.

- For any breaks in recording, the recording staff member must sign back on with the date, time and reason for the break in recording.

If the Use of Force is still occurring when the staff video recorder arrives, the incidents shall be recorded to capture the unfolding events while waiting for a response team, even if through windows, fences, bars, or even if far away, etc.  Staff shall not place themselves in any danger to capture the events.

C. The Warden/Division head shall ensure that Use of Force Operational Procedures are specific on the process for the recording of Use of Force incidents and storage of the video recordings.

**405.04 AUTHORIZATION FOR THE USE OF LESS LETHAL FORCE**

"Less lethal force" may be used in the following situations:

1. Self-defense;

2. Defense of others;

3. Prevention of self-injurious behavior;

4. Maintaining order and control in a facility, including prevention of damage to state property;

5. Prevention of escape from any security level;

6. Prevention of the commission of a felony by an inmate;

**405.05   LESS LETHAL FORCE**

1. The use of less lethal force projectile launchers may be used but not limited to stopping or preventing serious or great bodily injury to staff, inmates or the public which includes visitors. This is also listed under the use of lethal force.

2. Where situations allow, a loud and clear verbal warning and instructions shall be given before any less lethal force is used and before each less lethal munition is discharged. Verbal warnings and instructions shall continue to be given throughout the use of less lethal force. The following approved less lethal tools are authorized for use in Nevada Department of Corrections facilities/institutions:

   A. Physical Force (Hands On) – Physical force may be used to subdue or control unruly inmates, to separate inmates fighting, and in defense of self or others. It may also be employed to move inmates who fail to comply with lawful orders. Includes certain self-defense and inmate control techniques or strikes to areas of the body unlikely to result in serious physical injury.

   B. Chemical / Inflammatory agents may be deployed only by trained and qualified Authorized Personnel. Chemical agents items such as listed below are designed to temporarily immobilize or incapacitate the inmate through temporary discomfort caused by a chemical action.

      • CS - Ortho-chlorobenzalmalononitrile – commonly known as tear gas or mace

      • OC - Oleoresin Capsicum – commonly known as pepper spray

   C. Electronic Control Weapon (ECW) to include items such as a Taser, Remote Access Custody Control (RACC) Belt or Vest, or (NOVA) electronic shield, are designated to temporarily immobilize or incapacitate an inmate by delivering a non-lethal electronic charge. An ECW may only be deployed by trained and qualified Authorized Personnel. ECW's are not authorized at women's facilities.

   D. Specialty Impact Devices (SID) Expandable Baton (ASP) or similar equipment designed to temporarily incapacitate an inmate by striking or applying a controlled take down of the inmate. These SID's may only be used by trained and qualified Authorized Personnel.

   E. Less-Lethal Projectile Launchers (40mm) are authorized to compel compliance from noncompliant inmates. Less-lethal launchers shall also be stored in the "operations" area of each institution so that should a response to an area where no coverage is available (housing units with no coverage, chapel, education, gymnasium) these launchers are available for quick deployment.

**ER119**                          **ER119**                          **ER119**

F.   Pepperball or FN 303 less lethal launcher using compressed air to launch direct impact or chemical agents to temporarily incapacitate a threat. These Launchers may only be deployed by trained and qualified Authorized Personnel.

Decontamination - If chemical agents are utilized in a planned use of force or spontaneous use of force, the inmate shall be decontaminated as soon as the inmate is in restraints and the decontamination can be conducted in a safe manner. Inmate(s) affected shall also be seen by medical personnel as soon as practicable upon containment of incident. The decontamination and medical evaluation shall be documented in the Incident Report by Supervisor handling the planned use of force.

Choke or carotid holds is not authorized use of force techniques.  A head lock is not considered a choke or carotid hold.

3.   **Wardens shall ensure through Operational Procedures where and how these tools shall be utilized throughout the institution.**

A loud and clear verbal warning or order shall be given.  Verbal warnings shall be issued before and repeated while less lethal munitions or chemical agents are being deployed.

If the verbal warnings or orders fail to stop the prohibited activity, the Officer may then deploy less lethal force tools to prevent further harm of another person or property. Verbal warnings shall be repeated continuously while less lethal munitions or chemical agents are being deployed. Force shall cease immediately upon gaining compliance.

The use of less than lethal force are never to be used to stop verbal abuse or other non-threatening behavior

## 405.06  AUTHORIZATION FOR USE OF LETHAL FORCE

Staff has the obligation and responsibility to exercise discipline, caution, restraint and good judgment when using potentially lethal force. Lethal force may be used upon the reasonable belief that staff life or safety, or the life or safety of another, is in imminent jeopardy of death or substantial bodily harm given the totality of the circumstances known to the officer at the time of his/her action. Staff must keep in mind that the use of potentially lethal force presents a danger to the subject and to innocent parties. Only trained and qualified staff are authorized to use lethal force, and only as a last resort. Officers shall consider other reasonable means of control before resorting to the use of deadly force as time and circumstances safely permit.

Lethal force is any force which carries a substantial risk that it may result in death or serious or great bodily injury. Lethal force may be used only when imminent jeopardy exists regarding the following situations:

1. To prevent death or serious physical injury to self, other staff, inmates, or other persons who are threatened;

2. To prevent the taking of hostages;

3. To prevent the escape of any prisoner who is actively attempting to flee custody from a medium or maximum security correctional institution including while being transported or being housed in the community;

4. To prevent destruction or injury to property or person(s), major damage during a disturbance within a correctional institution, if it is reasonably believed that the damage may cause death or serious physical injury to any person.

5. To prevent inmates from unlocking other inmates (seizure of keys or door controls).

6. If lethal force is to be used, staff shall take reasonable actions under the following guideline - Time permitting a clear, verbal warning order, "**Stop or I will shoot**," shall be given before each shot is discharged.

7. When the use of lethal force is warranted, if time and circumstances permit, a warning shot shall be discharged.

   A. In any life-threatening situation where the inmate does possess a deadly weapon or serious physical injury and/or death is imminent, the policy shall be to "shoot to stop" by **shooting center mass** of the target presented.

   B. Every effort shall be made to direct the round into the aggressor and not the victim.

   C. If doubt exists in the officer's mind as to whether he/she should discharge the firearm under the circumstances that have been outlined above, the officer shall conclude that he/she SHALL NOT discharge the firearm.

## 405.07  LETHAL FORCE

1. Mini 14 .223 caliber rifle loaded with 55grain soft point rounds. <u>May only be used by trained and qualified Authorized Personnel.</u>

2. .40 caliber Glock semi-automatic hand gun loaded with hollow point 165 to 180 grain round – approved through FBI protocols/specifications. <u>May only be used by trained and qualified Authorized Personnel.</u>

3. Specialized weapons may be authorized for emergency situations with approval from the Director/designee. <u>May only be used by trained and qualified Authorized Personnel.</u>

**ER121**                    **ER121**                    **ER121**

## 405.08  EMERGENCY RESPONSE

The Nevada Department of Correction shall utilize a "plain English" notification system. This statewide universal approach shall initiate first responders. Followed by the secondary responders, based on initial reports. Some examples for each level are as following:

1. Level 1, mutual combat between two inmates, isolated and contained physical plant failure or compromise, or a single disruptive inmate

2. Level 2, multiple inmate fight, weapons present, staff assault, evidence of escape, or larger scale physical plant failure or compromise

3. Level 3, Escape, homicide, officer-involved lethal force or complete physical plant failure or compromise.

The Warden at each institution shall ensure the development of an Operational Procedure that shall identify responders/position, the systematic lockdown, and equipment deployed for each level. This Operational Procedure shall also include response to rural camps and Transitional Housing facilities.

## 405.09  ESCAPE FROM SECURED PERIMETER

1. If possible, prior to using firearms, an alert to the institution shall be broadcast by radio, attempts shall be made to apprehend or physically restrain an escapee or an attempted escapee.

2. If an officer observes an inmate located within the "No Man's Land," an immediate alarm shall be sounded to initiate a response then the following command in a loud and firm voice, shall be given, "Stop or I will shoot." A second alert to the institution shall be broadcast by radio, time permitting, to alert responding staff of the possible discharge of the weapon. If the inmate fails to stop and no other means of stopping the inmate is available, then the officer may fire a warning shot as outlined in this procedure.

3. If the inmate continues toward the inner perimeter fence, after verbal warnings and a warning shot has been discharged, additional warning shots may be discharged near the escaping inmate in an effort to gain compliance. The officer must exercise care to prevent a possible ricochet of the warning shots. (Wardens shall designate in operational procedures where warning shots will be discharged.)

4. Once an inmate has begun going over, under, or through the inner perimeter fence, (that is, feet have left the ground or crawling under or through), the following shall be done:

A. The officer, after firing a warning shot, shall "shoot to stop."

B. The officer shall choose to use a firearm based on distance and conditions surrounding the incident. The perimeter towers have .223 Mini-14 rifles designed for greater distance and accuracy.

- Effective range:
  - .223 caliber round - up to 1000 yards

C. In the event the Institution does not have perimeter towers, or perimeter towers are shut down, at a minimum, one armed Perimeter Officer is required. (More armed perimeter officers may be placed at larger institutions or as needed for security) This position shall be armed with both lethal and less lethal tools such as the 40 caliber Glock semi-automatic hand gun, chemical agent, and/or baton. The perimeter position shall be assigned a perimeter vehicle to assist with patrolling the perimeter and responding to threats.

5. Should the situation arise in which the inmate attempting to escape is not noticed until after clearing the inner perimeter fence, the officer shall fire one (1) warning shot if, in their opinion, there is still sufficient time to be able to "shoot to stop" before the inmate could clear the outer perimeter fence. If there is not enough time for a warning shot after the inmate has cleared the inner fence, then shots may be discharged directly at the escaping inmates to shoot to stop.

6. If the officer chooses not to shoot, the officer shall continue to report the direction of the inmate, description of escapee, and any relevant information relevant to the incident.

## 405.10  USE OF FORCE IN THE COMMUNITY

1. There are numerous situations that call for Department personnel to provide escort and security functions in the community. Inmates may be transported to outside medical facilities, between institutions/facilities, into courtrooms for judicial proceedings or to a variety of other locations. Use of Force in the community calls for exercising extreme caution and for making careful judgments. The level of force utilized in any particular situation MUST be based largely on, the threat, physical surroundings and the proximity of civilians.

2. The physical surroundings and proximity to civilians MUST be considered when an inmate is escaping during transport in an outside setting and if lethal force is necessary to prevent the inmate from escaping. If, in the best judgment of the transporting officer(s), it is deemed necessary to fire shots at the inmate escaping into the community, all shots shall be directed at the inmates' torso with the intent to completely stop the escape. If the use of firearms becomes necessary in a confined

area, such as within a building, it would be inappropriate to use warning shots. Verbal commands shall be substituted.

3. Transportation Officers shall be armed with both lethal and less lethal tools in the event of the physical surroundings and the proximity of civilians would prevent the use of lethal tools.

4. Officers are required to cooperate with local law enforcement officials in any unusual or emergency situation involving inmates under the custody of the Department of Corrections.

**405.11  MEDICAL CARE AFTER USE OF FORCE**

1. Medical care which includes medical treatment and examinations shall be conducted by institutional medical staff when a Use of Force incident has occurred. When order has been restored, the inmate(s) who has been subjected to any Use of Force shall be examined by medical staff and provided medical care proportionate to the individual's injuries sustained. This examination shall be documented utilizing the Unusual Occurrence Report form DOC 2514. Inmates cannot refuse to be assessed, but can refuse treatment of any injuries sustained. All refusals of medical treatment shall be documented and included in the Use of Force incident files utilizing the Refusal of Medical Treatment form DOC 2523. Decontamination from chemical agents shall also be completed as soon as practical after the use of force. Refusal for decontamination shall be documented on NDOC form 2523 – Refusal of Medical Treatment. Photographs of the Inmate shall be completed on all Inmates who had force used upon them regardless of injuries. Copies of these photos shall be uploaded into NOTIS and placed in the Use of Force Incident File.

2. Any staff member involved in the Use of Force sustaining injuries shall be examined by NDOC medical staff and shall provide emergency medical care proportionate to the individual's injuries prior to transport to an appropriate healthcare facility. This examination shall be documented utilizing the Unusual Occurrence Report form DOC 2514.

**405.12  REPORTING OF USE OF FORCE**

In all cases the reporting of Uses of Force MUST be accomplished as soon as practical after the incident and before leaving the institution or going off duty. Any Use of Force shall be reported to the shift supervisors who shall ensure, once order has been restored and the involved inmate(s) are placed in secure housing, that written reports from all staff involved are completed. This includes custody officers, institutional staff, medical staff, volunteers or any persons that witnessed the Use of Force.

1. These reports shall be entered into the Nevada Offender Tracking Information System (NOTIS) for review by the appropriate supervisors.

ER124                          ER124                          ER124

A. All relevant and supporting documentation and information associated with the Use of Force shall be contained within the NOTIS Incident Report (IR).

B. All relevant incident questions, inmate involvement questions, and staff involvement questions shall be completed within NOTIS.

2. Verbal notification of the Use of Force shall be made via the chain of command to the Warden. The Warden shall notify the Deputy Director of Operations (DDO).

3. An email shall be generated by the shift supervisor, notifying institutional/facility administration, the Deputy Director of Operations, and the Inspector General of the IR number and Use of Force for instances that involved, (the below referenced list includes but is not limited to the following uses of force that must be reported):

A. Discharge of a firearm for any reason other than training;

B. Any Use of Force that results in an injury to staff or an inmate;

C. Any Use of Force that results in an allegation or grievance claiming an injury;

D. Any complaint, grievance or indication of an unnecessary or excessive Use of Force; or

E. Planned Use of Force that results in any of the above.

## 405.13  USE OF FORCE INCIDENT REVIEWS

1. Any Use of Force suspected to be excessive or unnecessary shall be immediately referred to and assigned to the Inspector General for investigation. In these circumstances the Use of Force Incident Review will not be completed.

2. Any use of less lethal force shall result in a Use of Force Review panel convening within ten (10) days from the Use of Force. To ensure a fair and impartial review, the review panel shall be comprised of staff not directly involved in the incident to ensure a fair and impartial review.

3. At a minimum the review panel shall consist of:

A. An Associate Warden from the institution involved.

B. An institutional Command Staff at the level of authority of a Correctional Lieutenant or above, from the institution involved.

4. The review panel shall review all information, reports, all video footage, and any other pertinent information or document that is or shall become available.

5. The review panel shall review the actions of all staff members and inmate(s) involved in the Use of Force incident, including those actions leading up to the Use of Force, taking into account any NOTIS incident reports surrounding the time frame of the Use of Force, especially involving the staff member that used the force and the inmate that had the force used upon their person.

6. The review panel shall conduct in person, recorded interviews of all staff and inmate(s) involved in the Use of Force. Should the panel, as part of the review, desire to question/interview an employee involved in the use of force, the panel shall conduct all interviews in accordance with department procedures, as well as relevant provisions of NRS chapter 284 and 289. The panel does not have the authority to recommend discipline.

7. The review panel shall evaluate the Use of Force incident and prepare a written report on its evaluation and determination to the Warden, the Deputy Director of Operations and Inspector General within ten (10) days from commencement of the Use of Force review, to include:

   A. Was the Use of Force justified;

   B. Was the Use of Force within policy, procedures and training of the Department;

   C. Could the Use of Force have been prevented;

   D. Could this type of Use of Force be prevented in the future;

   E. Any referral for investigation for possible disciplinary action for staff member(s) involved in the Use of Force.

   F. Any recommended corrective action for staff member(s) involved in the use of force.

   G. Any recommendation for any staff member that acted with distinction in the Use of Force; and

   H. Any recommended changes or enhancements to policy, procedure, or training related to this Use of Force.

   I. Any recommended changes or enhancements to the physical structure of the area related to this use of force

**405.13 SERIOUS USE OF FORCE INCIDENT REVIEWS**

1. Any Use of Force suspected to be excessive or unnecessary shall be immediately referred to and assigned to the Inspector General for investigation. In these circumstances the Use of Force Incident Review will not be completed.

ER126              ER126              ER126

2. Any use of deadly force or less lethal force causing serious physical injury shall result in convening a Serious Incident Review Panel within fifteen (15) days from the Use of Force. The review panel shall be comprised of staff not directly involved in the incident to ensure a fair and impartial review.

3. At a minimum the review panel shall consist of:

    A. A Warden and/or an Associate Warden from an institution where the Use of Force did not occur;

    B. An Investigator or Supervisory Investigator from the Inspector General's Office;

    C. An institutional Command Staff at a level of authority of a Correctional Lieutenant or above, from an institution where the Use of Force did not occur.

4. The review panel shall review all information, reports, all video footage, and any other pertinent information or document that is or shall become available.

5. The review panel shall review the actions of all staff members and inmate(s) involved in the Use of Force incident, to include those actions leading up to the use of force. The panel shall also take into account any NOTIS incident reports surrounding the time frame of the Use of Force, especially involving the staff member that used the force and the inmate that had the force used upon their person.

6. The review panel shall conduct in person, recorded interviews of all staff and inmate(s) involved in the Use of Force. When the panel, questions/interviews a staff member involved in the Use of Force the panel shall conduct all interviews in accordance with department procedures, as well as relevant provisions of NRS chapter 284 and 289. The panel does not have the authority to recommend discipline.

    A. The written notice shall provide the names of the assigned staff members to the review panel;

    B. The written notice shall identify the NOTIS Incident Number for the Use of Force incident;

    C. The written notice shall identify the date, time and location of the interview;

    D. The review panel shall ask questions and gather information related to the specific Use of Force, the inmate(s) involvement and any historical information related to the interaction between the involved staff member and the involved inmate(s);

    E. The written notice shall provide the Notice of Confidentiality applied to the Use of Force Review.

AR 405                                                    Page 16 of 18

**ER127**                    **ER127**                    **ER127**

7. The review panel shall evaluate the Use of Force incident and prepare a written report on its evaluation and determination to the Director and the Deputy Director of Operations within thirty (30) days from commencement of the Use of Force review, to include:

    A. Was the Use of Force justified;

    B. Was the Use of Force within policy, procedures and training of the Department;

    C. Could the Use of Force have been prevented;

    D. Could this type of Use of Force be prevented in the future;

    E. Any referral for investigation for possible disciplinary action for staff member(s) involved in the Use of Force.

    F. Any referral for investigation for possible corrective action for staff member(s) involved in the Use of Force.

    G. Any recommendation for any staff member that acted with distinction in the Use of Force; and

    H. Any recommended changes or enhancements to policy, procedure, or training related to this Use of Force.

    I. Any recommended changes or enhancements to the physical structure of the area related to this use of force.

8. Any recommended corrective action being applied to a staff member shall be reported to the appointing authority via a memorandum that outlines the reason for the corrective action. A corrective action is not deemed a discipline.

9. Any findings that recommend disciplinary action be taken against a staff member shall be referred to the Inspector General and Director for their review and appropriate response; response may include, but not be limited to official assignment for Administrative Investigation.

10. Any findings that recommend a change or enhancement to a policy, procedure, or training shall be sent to the Director and Deputy Director of Operations.

11. Any findings that identifies that a staff member acted with distinction in the Use of Force shall be sent to the Director and Deputy Director of Operations.

12. The review panel report and its contents are confidential and not subject to dissemination except by order of the Director, Inspector General, or lawful court order.

ER128       ER128       ER128

13. The Inspector General's Office shall track all Use of Force reviews to insure timely completeness. The Inspector General's Office shall prepare and submit to the Director's executive team, an annual report that details the number of Uses of Force that were reviewed and the total of the outcomes for each of the categories reviewed

**405.14    OFFICER INVOLVED SHOOTING INVESTIGATIONS**

1. All uses of force that involve the discharge of a firearm, excluding blank rounds, shall result in an Officer Involved Shooting (OIS) investigation being done by an investigator(s) of the Inspector General's Office (IG) unless;

   A. A death occurs as the result of the discharged round, at which time an outside law enforcement investigating body shall be called in for response and investigation;

   B. Director or Inspector General determines that the matter is or may be a conflict of interest to the Department.

2. The processes, procedures and format used in conjunction with an OIS investigation and the subsequent report are contained within the confidential I.G. manual.

3. All OIS investigations are confidential and not subject to dissemination without the authorization of the Director, Inspector General, and Board of Prison Commissioner's or in conjunction with lawfully issued court order.

4. The OIS report shall be e-mailed to the Director, Deputy Director of Operations and the Inspector General/designee. Once approved, this report shall be made available to the Use of Force Review Panels.

**APPLICABILITY**

1. An Operational Procedure is required within thirty (30) days of this regulation's effective date.

2. This AR requires an audit.

**REFERENCES**

ACA Standards: 4-4206, 4-4204, 4-4203, 4-4202, 4-4201, and 4-4191.

_____     11/16/16
James Dzurenda, Director              Date

# EXHIBIT C

## DECLARATION OF DAVID DRUMMOND

# EXHIBIT C

**ER130**                 **ER130**                 **ER130**

AARON D. FORD
  Attorney General
RUDOLF M. D'SILVA (Bar No. 16227)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-3375 (phone)
(702) 486-3768 (fax)
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants
Seth Davis, Daniel Jacobs,
Michael Stolk and Dent Kirkland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TARONTAE JACKSON,<br><br>         Plaintiff,<br><br>v.<br><br>STOLK, *et al.*,<br><br>         Defendants. | Case No. 3:23-cv-00247-MMD-CSD<br><br>**DECLARATION OF ASSOCIATE<br>WARDEN DAVID DRUMMOND** |

I, DAVID DRUMMOND, being first duly sworn, under penalty of perjury under the laws of the United States deposes and says:

1.     I am employed as an Associate Warden at Ely State Prison (ESP) a correctional facility within the statewide prison system operated by the Nevada Department of Corrections ("NDOC"), having my place of employment in Ely, Nevada.

2.     In my capacity as an Associate Warden at ESP, I have knowledge of the processes by which inmate institutional grievances, disciplinary history reports, IR-Reports, and historical bed assignments are received, indexed, stored, maintained, archived, and subsequently searched and retrieved within the NDOC and NNCC, whether in electronic form or paper form, in the ordinary course of the operations of prison administration.

3.     In my capacity as Associate Warden at ESP, I have knowledge and familiarity with the "hard copy," paper files in which the original, hand-written copies of Inmate

Institutional Grievances, and electronically stored disciplinary history reports, IR-Reports, and Historical Bed Assignments accessed through NOTIS which are maintained in the ordinary course of the operations of prison administration and also have knowledge and familiarity of video footage taken as part of planned uses of force within the institution.

4. Accordingly, I am a custodian of records for Inmate Institutional Grievance Files, Disciplinary History Reports, IR-Reports, Historical Bed Assignments of all inmates who currently reside at ESP, and I have personal knowledge of the matters asserted herein and am competent to testify thereto, save for those matters asserted on information and belief, and for those matters, I am informed and believe them to be true.

6. In connection with the filing of this declaration, I was contacted by the Nevada Attorney General's Office, who, on information and belief, represents the defendants in the matter entitled *Tarontae Jackson v. Stolk, et al.,* now proceeding in the United States District Court, District of Nevada, as Case No. 3:23-cv-00247-MMD-CSD. It was requested that I provide truthful and accurate information regarding the authentication of certain documents in support of a motion that Defendants intend to file with the Court and for other proper purposes.

7. In my capacity as Associate Warden I also have been designated by NDOC as a custodian of record, wherein I maintain custody over the Administrative Regulations (AR), which paper copies are maintained in file cabinets in a controlled area within the NDOC in the ordinary course of business. Therefore, I have personal knowledge of the matters asserted herein and am competent to testify thereto, save for those matters asserted on information and belief, and for those matters, I am informed and believe them to be true.

8. I hereby certify that attached hereto as Exhibit A, is a true and correct copy of the Historical Bed Assignment of inmate Tarontae Jackson #1186781 ("Jackson").

9. I hereby certify that attached hereto as Exhibit B, is a true and correct copy of Nevada Department of Corrections Administrative Regulation 405 – Use of Force, effective date November 16, 2016.

10. I hereby certify that attached hereto as Exhibit D, is a true and correct copy of Nevada Department of Corrections Administrative Regulation 707 – Offender Disciplinary Process, effective date April 28, 2022.

11. I hereby certify that attached hereto as Exhibit E, is a true and correct copy of Ely State Prison Operational Procedure 405 – Use of Force, effective date November 10, 2021.

12. I hereby certify that attached hereto as Exhibit F, is a true and correct copy of the Disciplinary History Report of inmate Jackson.

13. I hereby certify that attached hereto as Exhibit G, is a true and correct copy of the planned use of force video taken of Jackson's cell extraction on December 21, 2022.

14. I hereby certify that attached hereto as Exhibit H, is a true and correct copy of IR-2022-ESP-002698, which is maintained in NDOCs NOTIS regarding inmate Jackson.

15. I hereby certify that attached hereto as Exhibit J, is a true and correct copy of Nevada Department of Corrections Administrative Regulation 740 – Offender Grievance Procedures, effective date April 28, 2022.

16. I hereby certify that attached hereto as Exhibit K, is a true and correct copy of the Grievance History Report of inmate Jackson.

17. I hereby certify that attached hereto as Exhibit L, is a true and correct copy of Grievance No. 2006-31-46909 of inmate Jackson.

18. Associate Warden of ESP I also have personal knowledge as to the institution's policies and procedures as to when and why cell extractions are conducted.

19. Generally, if an inmate propels an unknown liquid from their cell at any NDOC staff member, they are required to be extracted from their cell.

20. Cell extraction is not a disciplinary action but is conducted to maintain security in the prison and prevent escalation of a situation.

21. Having an inmate extracted from his cell allows officers to search and properly identify what liquids were propelled out of the cell.

22. It also allows prison staff to assess whether such liquids are hazardous or pose a health risk.

23. The purpose of extracting offenders from their cell prior to conducting such a search is to mitigate the risk of confrontation and for officer safety.

24. If an offender does not voluntarily exit his cell when instructed to do so, the prison will have the CERT team extract the offender from his cell using what force is required to do so.

25. Because extracting noncompliant offender from a cell poses significant risk of physical injury to officers, NDOC generally opts to conduct a planned use of force when extracting a noncompliant offender from a cell to mitigate risk of harm to officers and the offenders.

FURTHER I declare under penalty of perjury pursuant to 28 U.S.C § 1746 that the foregoing is true and correct.

EXECUTED this 5th day of May, 2025.

Associate Warden David Drummond

# EXHIBIT D

## AR 707-OFFENDER DISCIPLINARY PROCESS FINAL (04/28/2022)

# EXHIBIT D

ER135                    ER135                    ER135



## NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE REGULATION

## OFFENDER DISCIPLINARY PROCESS
## ADMINISTRATIVE REGULATION – 707

**SUPERSEDES:** AR 707 (Temporary 11/23/09); AR 707 (02/12/10); AR 707 (Temporary 02/13/17); AR 707 (Temporary 04/25/17); AR 707 (05/16/17); AR 707 (Temporary 04/14/22)

**EFFECTIVE DATE:** April 28, 2022

**AUTHORITY:** NRS 209.131; NRS 209.246; NRS 209.361

**RESPONSIBILITY**

The Director of the Nevada Department of Corrections is responsible, through the respective Deputy Directors, for the implementation of the offender disciplinary process.

The Warden is responsible for ensuring compliance and the overall management of the offender disciplinary process, at their respective institution or facility, through the institution or facility's Operational Procedures.

The Associate Warden(s), under the direction of the Warden, are responsible for the compliance of the offender disciplinary process with the institution staff.

All staff and offenders are responsible to have knowledge of, and comply with, the offender disciplinary regulations and procedures.

**PURPOSE**

To ensure the Nevada Department of Corrections (NDOC and Department) has established rules of conduct, as well as sanctions and procedures for addressing violations defined in writing and communicated to all staff and offenders.

**707.01  DEPARTMENT POLICY**

1. All offenders committed to the Department, including Safe Keepers, shall be subject to disciplinary action for violations of the Department's rules and regulations.

2. Disciplinary action should be taken as soon as is practical following the misconduct.

**ER136**                    **ER136**                    **ER136**

3. Discipline shall be applied in an impartial and consistent manner.

4. Corporal punishment or inhumane treatment is prohibited.

5. Disciplinary proceedings are an administrative process, unrelated to and not bound by the rules for criminal procedures, civil trials, administrative codes, or procedures.

6. Offenders shall be informed that they can file an appeal on any portion of their discipline related to due process and/or sanction imposed as a result of the hearing, through the grievance procedure, unless a bargained plea or a guilty plea has been rendered.

7. Offenders sanctioned to Disciplinary Segregation shall be advised they can petition the Warden for a release from segregation, by the utilization of the Offender Request Form (DOC 3012) referred to as a kite, prior to the completion of the imposed sanction as a result of demonstrated good conduct, after serving one-half of their imposed sanction. Bargained pleas are exempt from early release.

8. Upon commitment to the Department, all offenders shall be issued and required to sign for a copy of the Offender Disciplinary Manual and Administrative Regulation 707 Offender Disciplinary Process.

    A. Signed acknowledgments will be maintained in the offender's I-File.

    B. When literacy and/or language problems prevent an offender from understanding the manual, a staff member and/or translator will assist the offender in understanding the rules.

9. The manual will be available to all offenders. A copy is kept in the institutional law library and/or in the housing units.

10. The offender disciplinary process includes the following procedures.

    A. A Notice of Charges Form (DOC 3017) with all charges supported by "some evidence."

    B. The findings of the hearing shall not be arbitrary or capricious, and the findings can be supported by the hearing officer's review of the evidence. Only the most serious Code violation that is be supported by "some evidence" shall be sanctioned.

    C. Additional Penalties or Enhancement charges supported by "some evidence," may also be sanctioned, in addition to a Major Violation. Imposition of said sanctions are contingent upon the finding of the prescribed fact. Limits on imposed Disciplinary Segregation time shall not be infringed.

    D. If at any stage during the hearing process, whether at the Preliminary Hearing or at the Hearing Officer stage, it is known or suspected that the offender's mental health or medical condition was a substantial cause of the misconduct and/or that the

offender is assigned to the Mental Health Program, or has already been diagnosed with a Serious Mental Illness (SMI), the offender shall be referred for a psychological evaluation prior to the disciplinary hearing.

E.   The psychological evaluation must state whether the misconduct was a result of the offender's mental health and/or whether mental illness contributed to the misconduct. This evaluation will be included in the written documentation for consideration by the Hearing Officer when determining the sanctions to be imposed pursuant to Disciplinary Sanctions in the Offender Disciplinary Manual Administrative Regulation 707.01.

F.   If during the psychological evaluation, the staff conducting the evaluation suspects the misconduct may have been a result of a medical condition, such as but not limited to, Dementia, Alzheimer's, and/or any other condition, such as a Traumatic Brain Injury (TBI), the staff person shall refer the offender to medical staff for their review and recommendation.

G.   If it is determined that the offender's misconduct was a result of their mental health status or that the offender is assigned to the Mental Health Program, the offender shall be given reasonable and appropriate accommodations in preparation for the hearing, and the offender may be provided with assistance during the hearing.

H.   If an offender is diagnosed with an SMI, or has a medical condition, as determined by mental health and/or medical staff that may have affected the offender's behavior which resulted in the Notice of Charges, the Hearing Officer may mitigate the sanction pursuant to Disciplinary Sanctions in the Offender Disciplinary Manual Administrative Regulation 707.01.

I.   The offender's misconduct shall be documented, and the finding may include a finding of guilt. However, the sanction for an offender who is diagnosed as SMI or has a medical condition that directly affects the offender's conduct, shall not include Disciplinary Segregation or Disciplinary Detention.

J.   If an offender's mental health or medical condition is a threat to self or others or is disruptive to the orderly operation of the facility or institution, the offender may be placed in Administrative Segregation. The placement in Administrative Segregation shall not be considered part of the disciplinary action taken. The placement in Administrative Segregation shall be temporary until a more suitable placement is identified or the condition is treated.

K.   If, after the sanction has been mitigated, it is determined that the offender was not SMI or that there were no medical conditions that should have affected the behavior and the outcome of the hearing, the information relative to the offender's manipulation shall be documented and the documentation shall be used to process disciplinary action against the offender.

L. The Preliminary Hearing Officer has the authority to "amend" a charge, as appropriate, and cannot add any additional charges.

M. A Hearing Officer may reduce the severity of sanctions for a violation if the offender pleads guilty to the charge. Offenders cannot appeal a guilty plea.

N. A Hearing Officer may reduce the actual sanction for an offender in a transitional center. This would include but is not limited to, tobacco or other violations that do not include new charges of violations of existing statutes.

O. The designated Preliminary Hearing Officer shall serve notice:

  1) Within 15-calendar days of the date of discovery of the violation;

  2) Within 15-calendar days of the completion of investigative work concerning the incident; or

  3) In the case of an escapee, within 15-calendar days after the escapee's return to NDOC custody.

P. If the offender chooses not to waive the NDOC's disciplinary hearing process, a hearing shall be conducted and the offender's decision not to waive the hearing shall be documented on the disciplinary hearing documents for the offender's signature.

Q. At least 24 hours prior to any formal hearing before a Disciplinary Hearing Officer, the Notice of Charges shall be served to the offender. An offender shall have an opportunity to call witnesses with substantive knowledge of the issues. The witnesses may be present during the hearing, at the discretion of the Hearing Officer, and may provide documentary evidence germane to the Notice of Charges.

R. An offender shall be provided with a written statement by the Disciplinary Hearing Officer as to the evidence relied on, provided that to do so would not jeopardize institutional safety, security, or safety of others.

S. A finding of guilt shall be based on "some" evidence. The finding will not be arbitrary or capricious and the finding can be supported by the Disciplinary Hearing Officer's review of the evidence.

11. Reliance on any published standard, the use of mandatory language, if such exists, or the creation of procedures related to the conduct of the disciplinary process, including, but not limited to, timeframes, witnesses, or appeals, is solely for the purpose of providing guidance for employees and shall be considered representative of the manner in which the Department has chosen to exercise the Department's discretion in such matters. The failure of any employee of the Department to follow any procedure shall not result in any mandatory outcome (e.g., dismissal of charges), but shall be one of many factors to be considered in exercising discretion as to the outcome of any violation. A rehearing may be ordered by the Warden if warranted.

12. Any disciplinary case may be continued to allow the Preliminary Hearing Officer or Disciplinary Hearing Officer to obtain guidance from the Office of the Attorney General concerning any matter in the offender disciplinary process.

    A. Offenders do not have any right or privilege to request or participate in obtaining guidance from the Office of the Attorney General.

    B. The Department may seek guidance in writing and/or verbally.

    C. The Department's request for guidance shall only be made if there is confusion as to the application of the guidelines set forth in this Code.

    D. The Office of the Attorney General shall not be asked to render an opinion as to the guilt or innocence of an offender facing disciplinary charges.

## 707.02  DISCIPLINARY OFFENSES
*(Note: Infractions removed from regulation will not lead to the renumbering of charges.)*

1. All offenses listed below in Section 707.02.4 through 7, shall also include an attempt or conspiracy to commit that violation.

2. Work Release violations may only be charged if the offender has minimum or community trusty status.

3. Additional Penalties or Enhancement: This section does not create a separate offense but provides an additional penalty for the primary offense, whose imposition is contingent upon the finding of the prescribed fact.

4. Minor Infractions (All Class E Violations):

   - M1 – Purchasing, selling, trading, giving, receiving, or possessing any item of property, with a value less than $50.00, in a manner other than that which is authorized by Administrative Regulation 711.

   - M3 – Possession of unauthorized items with a combined value of less than $25.00.

   - M4 – Roughhouse or horseplay.

   - M5 – Failure to keep one's person or assigned area neat and clean.

   - M6 – Failure to perform work as instructed or a failure to attend work, school or other assignment.

   - M7 – Unauthorized use of institutional supplies, tools, equipment, or machinery.

- M10 – Failure to produce offender identification card upon the request of correctional employee.

5. General Violations (All Class D Infractions):

- G1 – Disobedience of an order from any correctional employee or anyone who has the authority to supervise offenders in work or other special assignments.

- G2 – Unauthorized contact with any on- or off-duty correctional employee or member of the correctional employee's family; or any unwanted contact with any private citizen, not amounting to harassment or threats.

- G3 – Organizing, participating in, operating any gambling game or betting pool, or possessing any equipment used for gambling or betting purposes.

- G4 – Intentionally destroying, altering or damaging property of another, or state property which has a combined replacement value of less than $50.00.

- G5 – Self mutilation.

- G6 – Fighting or challenging another to fight.

- G7 – Issuing a brass slip with knowledge that it is not covered by sufficient funds.

- G8 – Possession of another offender's identification card.

- G9 – Abusive language or actions toward another person.

- G10 – Tampering with evidence or influencing a witness involved in any disciplinary process, not amounting to threats.

- G12 – Failure to appear at the proper time and place for the count or interfering with the count.

- G13 – Cutting in line.

- G14 – Failure to follow any Department's rules and regulations.

- G15 – Presence in areas identified as off-limits to offenders by posted regulations or signs that identify areas that are restricted, not amounting to an attempted escape.

- G18 – Delaying, hindering, or interfering with a correctional employee in the performance of their duties.

- G20 – Preparing, soliciting, or giving false or misleading information to or about a staff member and representing the statement as fact.
  *NOTE: G20 cannot be plea-bargained or sanction bargained.*

- G21 – Possession of gang materials including, but not limited to, jewelry, stationary, emblems, and patches.

- G24 – Possession of prescribed medication that is not a controlled substance without the approval of the proper authority.

- G25 – Purchasing, selling, trading, giving, receiving, or possessing any item of property, with a combined value equal to or greater than $50.00, in a manner other than that which is authorized by Administrative Regulation 711.

- G27 – Abuse of offender grievance process.
  *NOTE: 1) This notice of violation may be charged by the Warden, Director, or any Deputy Director, and 2) G27 cannot be plea-bargained or sanction bargained.*

6.  Major Violations:

- MJ1 – Arson: Setting a fire with the potential of causing damage or injury to persons or property. (Class A)

- MJ2 – Assault: Unlawful attempt coupled with present ability to commit a violent injury on the person of another. (Class A)

- MJ3 – Battery: Any willful use of force or violence upon the person of another. (Class A)

- MJ4 – Burglary: The entering of a building, structure, or vehicle with the intent to commit a crime therein. (Class B)

- MJ5 – Embezzlement: The fraudulent conversion of the property of another by one who is already in lawful possession of it. (Class B)

- MJ6 – Escape: The departure or absence from custody of a person who is imprisoned, before he/she is entitled to his/her liberty by the process of law. This violation shall be charged in cases of walk-a-ways from assignments of minimum- or community-custody where no weapons, force, or injury to others was involved. (Class B)

- MJ7 – Extortion: The obtaining of property or money from another by wrongful use of actual or threatened force, violence, or fear. (Class A)

- MJ8 – False Imprisonment: The unlawful violation of the personal liberty of another, which consists of confinement or detention without sufficient legal authority. (Class A)

- MJ9 – False Pretenses: A false representation of a material present or past fact, which causes the victim to pass title to his property to the wrongdoer who knows his/her representation to be false and intends thereby to defraud the victim. (Class B)

- MJ10 – Security Threat Group (STG) Activities: A validated Security Threat Group member who has engaged or is engaging in criminal activities, threatens the order and security of the institution, and/or promotes racism. (Class A).
  *NOTE: 1) Only an Associate Warden or above may charge the offender with a MJ10 violation, and 2) MJ10 Cannot be plea-bargained or sanction bargained.*

- MJ11 – Kidnapping: The unlawful taking, holding, and carrying away of a human being by force or against his/her will. (Class A)

- MJ12 – Larceny: The trespasser taking and carrying away of personal property of another with intent to steal it. (Class C)

- MJ13 – Larceny by Trick: Obtaining possession of another's property by falsehood with the intent to convert it for his/her use. (Class C)

- MJ14 – Manslaughter: The unlawful killing of another human being without malice either expressed or implied. It may be either voluntarily, in the heat of passion, or involuntarily. (Class A)

- MJ15 – Mayhem: The infliction of an injury, which disfigures, disables, or dismembers another. (Class A)

- MJ16 – Murder: The unlawful killing of another human being with malice aforethought, either expressed or implied, and all lesser included offenses. (Class A)

- MJ17 – Receiving Stolen Property: One must receive stolen property, know it is stolen, and intend to deprive the owner of it. (Class C)

- MJ18 – Robbery: A larceny where the taking of the property must be from the person of the victim or in his/her presence and the taking must be by means of violence or intimidation. (Class A)

- MJ19 – Sexual Assault/Sexual Abuse: Subjecting another person to any sexual act or sexual abuse, if the victim does not consent, is coerced into such act by over or implied threats of violence, is unable to consent or

---

refuse, is against their will and/or understanding. Sexual Assault/Sexual Abuse includes any other intentional touching, either directly or through the clothing. (Class A)

- MJ21 – Theft: The taking of property without the owner's consent. (Class C)

- MJ22 – Tampering with any locking device. (Class B)

- MJ23 – Intentionally destroying, altering, or damaging the property of another or state property with a combined replacement value equal to or greater than $50.00. (Class C)

- MJ24 – Adulteration of any food or drink. (Class A)

- MJ25 – Threats: Issuing a threat, either verbally, by gesture, or in a written statement to or about any person. (Class B)

- MJ26 – Possession of contraband, including items that present a threat to the safety and security of the institution, excluding drugs or drug paraphernalia. (Class A)

- MJ27 – Rioting or inciting others to riot. (Class A)

- MJ28 – Organizing, encouraging, or participating in a work stoppage or other disruptive demonstration or practice. (Class B)

- MJ29 – Charging or collecting a fee or favors for services as a counsel-substitute, legal assistant, or "writ writer." (Class C)

- MJ30 – Sexually stimulating activities, including but not limited to, caressing, kissing, or fondling, clothed or unclothed, between consensual sexual and/or amorous relationships between offenders. (Class A)

- MJ31 – The unauthorized or inappropriate use of telephone, mail, computer, state equipment, or supplies. (Class A)

- MJ32 – Being in an unauthorized area, hiding on the prison grounds, or hiding at a place of assignment or classification. (Class B)

- MJ33 – Bribery: Giving or offering a bribe to any person. (Class B)

- MJ34 – Trading, bartering, lending, or otherwise engaging in any personal transactions when such transaction has not been specifically authorized. (Class C)

- MJ35 – Counterfeiting, forging, or making an unauthorized reproduction of any document. (Class B)

- MJ39 – Running from a correctional employee when ordered to halt. (Class C)

- MJ40 – Propelling any substance toward any person that strikes them or has the potential to strike them. (Class A)

- MJ41 – Gathering around, blocking, or impeding any correctional employee or visitor, in a threatening or intimidating manner, and exhibiting conduct that causes the person to fear for his safety. (Class A)

- MJ42 – Unauthorized contact, including harassment, of any on-duty or off-duty correctional employee, their family member(s), or private citizen. (Class A)

- MJ44 – Testing positive for an unauthorized or illicit substance; failure to submit to a drug and/or alcohol screening; submission of an adulterated, diluted, or insufficient sample; or failure to provide a testable sample. (Class A)
  ***NOTE: 1) Cannot be plea-bargained, sanction bargained, or sanction reduced.***

- MJ46 – The possession or use of a recording device. (Class C)

- MJ47 – Escape: The departure or absence from custody of a person who is imprisoned before he is entitled to his liberty by the process of law. This violation shall be charged in cases of escape from assignment of medium custody or above, or escapes from any custody where weapons, force, violence, the taking of hostages, or injury to others was involved. (Class A)

- MJ48 – Any violation of the Rules of Court, contempt of court, submission of forged or otherwise false documents, submissions of false statements, violations of Rules of Civil Procedure, Criminal Procedure or Appellate Procedure, and/or receiving sanctions and/or warnings for any such actions from any court. Although not necessary for disciplinary purposes, any Order from any court detailing such action shall be sufficient evidence for disciplinary purposes. (Class C)

- MJ49 – Possession of any confidential prison regulation. Any prison regulation, which is not specifically delineated as accessible to offenders, is considered confidential. A prison regulation includes, but is not limited to, Administrative Regulations, Institutional Procedures, Emergency Response Regulations, Post Orders, and Confidential Medical Information. (Class A)

- MJ50 – Sexual Harassment: Conduct that is sexually abusive or offensive to any person and that may include, but is not limited to, unwelcome sexual

---

advances, requests for sexual favors, or verbal comments, suggestive language, gestures, or actions of a derogatory or offensive sexual nature by one offender directed to another, or as an aside; unwanted or inappropriate touching; exposing one's self; performing a sex act with knowledge that it will be observed by another; displaying sexually provocative or explicit materials/drawings. (Class A)

- MJ51 – Compromising Staff, Volunteer or Vendor: Conduct that includes, but is not limited to, bribery, extortion, sexual conduct, or any other behavior designed to violate the safety and security of an institution and/or obtain favorable treatment. (Class A)

- MJ52 – Refusal to complete or participate in a mandatory, structured program. (Class C)

- MJ53 – Possession, introduction, or sales of any narcotics, drugs, alcohol, or other intoxicants or possession of materials/items suitable for such manufacture and/or use. (Class A)

- MJ54 – Possession and/or use of any narcotics, drugs, alcohol, or other intoxicants. (Class B)

- MJ55 – Possession, introduction, or sales of any tobacco product, or possession of materials/items suitable for such manufacture and/or use. (Class B)

- MJ56 – Tattooing: Tattooing and/or body piercing oneself or another, or possession of tattooing and/or body piercing equipment. (Class C)

- MJ57 – Failure or refusing to cell as assigned. (Class C)

- MJ58 – False Reporting: Charge should be applicable for offenders who file false reports against staff and/or other offenders (Class A). Reporting a felony, misdemeanor, or violation of any Department regulation has been committed, to include but not limited to, the knowledge that the information reported, conveyed, or circulated is false, circulating a false report or warning of an alleged occurrence or impending occurrence knowing that the false report is likely to cause the agency to conduct an unwarranted criminal or internal investigation. For the purpose of disciplinary action, a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred, shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation.

- MJ59 – Resisting: Physically struggling to free oneself from being restrained or escorted or pulling away from staff. (Class C)

- MJ60 – Barricading: Shutting oneself into place by blocking avenues of ingress or visual inspection. (Class C)

7. Work Release Violations (All Class C):

- W1 – Failure to comply with travel arrangements outside the facility.

- W2 – Failure to report to the work assignment contacts in the community as specified and agreed upon in the release plan.

- W3 – Failure to remain in the particular area designated in the release plan.

- W4 – Operation of a motor vehicle, unless such operation is a condition of the job and prior Department authorization was approved.

- W7 – Failure to return to the facility on or before the time specified in the schedule of the release plan. This includes leaving or hiding from supervision or custody.

- W8 – Failure to report an incident that delays the offender's return to the facility.

- W9 – Failure to complete or participate in a structured program.

- W10 – Performing work for private persons that are not authorized by the Department.

- W11 – Any violation or attempt to violate rules or conditions of the work program contract.

- W13 – Possession of coin, currency, checks, money orders or other negotiable instruments in excess of the amount authorized by regulation.

8. Additional Penalties or Enhancement Charges:

- EC1 – Violation was committed against a person 60 years of age or older, or against a vulnerable person (Suffers from a condition of physical or mental incapacitation because of a developmental disability, organic brain damage, or mental illness).

- EC2 – Violation was committed involving the use of a weapon.

- EC3 – Violation was committed to promote the activities of a Security Threat Group (Must have prior Security Threat Group Validation).

- EC4 – Violation was committed based on the certain actual or perceived characteristics of the victim (Hate Crime).

## 707.03   OFFENDER TRANSFERS

1.  When conduct requires an offender be transferred from one institution or facility to another, any pending disciplinary cases should be completed prior to the transfer. All offender transfers must be handled by approved regulatory procedures through the Offender Management Division.

    A.  Should the transfer need to proceed prior to completion of the disciplinary process, the sending institution shall prepare the Notice of Charges and the receiving institution shall complete the disciplinary process.

    B.  The receiving institution will review the offender's status within three (3) working days of receipt.

    C.  Copies of the completed disciplinary file will be returned to the sending institution.

2.  An Associate Warden and/or designee at the sending institution or facility is responsible to ensure the pending case is properly transferred within 7 to 14 days, from the date of transfer.

## APPLICABILITY

1.  This Administrative Regulation requires an Operational Procedure for the Department and all institutions and facilities.

2.  This Administrative Regulation requires an annual audit.

**REFERENCES:** ACA Standards 5th Edition 5-ACI-3C-01 – 23, 5-ACI-3D-08

_____                _____4-28-2022_____
Charles Daniels, Director                        Date

# EXHIBIT E

## UNDER SEAL

## OP 405 USE OF FORCE 11-10-21

## UNDER SEAL

# EXHIBIT E

**ER149**                    **ER149**                    **ER149**

# EXHIBIT F

## DICIPLINARY HISTORY REPORT

# EXHIBIT F

**ER150**                    **ER150**                    **ER150**

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | | Cur. Loc: ESP |
|---|---|---|---|

| OIC Date: 07/17/2023 | OIC Loc: ESP - Unit 5 | IR #: IR-2023-ESP-001195 | OIC #: 522674 |
|---|---|---|---|

**IR:** On July 17, 2023, at approximately 0940 hours, Inmate Jackson #1186781, housed in 5-A-45, was yelling out of his cell door threatening staff and inciting inmates.

**NOC:** On July 17, 2023, at approximately 0940 hours, Inmate Jackson #1186781, housed in 5-A-45, was yelling out of his door threatening staff and inciting inmates.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ25: Threats | Guilty | Verbal Reprimand | 0-mths / 1-days | 10/07/2023 |

| OIC Date: 06/28/2023 | OIC Loc: ESP - Unit 5 | IR #: IR-2023-ESP-001093 | OIC #: 521914 |
|---|---|---|---|

**IR:** Inmate Tarontae Jackson NDOC #1186781 (house in Unit 5A cell 45) did have an inmate made curtain up duiring count / ADSeg check. Inmate Tarantae Jackson NDOC #1186781 was told that the curtain / sheet needs to come down. Inmate Tarontae Jackson NDOC #1186781 stated that the sheet was not coming down...<TRUNCATED>

**NOC:** Inmate Tarontae Jackson NDOC #1186781 (house in Unit 5A cell 45) did have an inmate made curtain up duiring count / ADSeg check. Inmate Tarantae Jackson NDOC #1186781 was told that the curtain / sheet needs to come down. Inmate Tarontae Jackson NDOC #1186781 stated that the sheet was not coming down and to get away from the door. This is in violation of OP 511.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ32: In Unauthorized area / Hiding | Guilty | Verbal Reprimand | 0-mths / 0-days | 07/30/2023 |

| OIC Date: 04/06/2023 | OIC Loc: ESP - Building 9 | IR #: IR-2023-ESP-000607 | OIC #: 518801 |
|---|---|---|---|

**IR:** Inmate Jackson, Tarontae #1186791 of 9A13 did make threats toward staff.

**NOC:** I, Correctional Sergeant E. Maurer was called to the infirmary to speak with an irate inmate. Inmate Jackson, Tarontae #1186791had a telephonic conference call with Inspector Generals office. Search and Escort Officers went to get inmate Jackson for his call. Inmate Jackson had broken the unit phone and was making threats to use pieces of the phone to harm staff. I went to the infirmary to speak with inmate Jackson and he was very irate about a write up that he had received earlier in the day. Inmate Jackson made several threats toward myself and other staff that were present. Jackson was refused his phone call based on his behavior. Inmate Jackson stated that ?I am going to kill you on my mama.? He repeated these threats over and over to all staff present. Inmate Jackson also punched the cell window repeatedly. Caseworker S. Mollett then tried to speak with inmate Jackson and he then stripped off his shirt as a show that he was ready to fight. Lt. Jones the shift commander was notified of the situation. Lt. Jones then went to speak with inmate Jackson with the same results. While CERT Officer Milke was in the Infirmary Inmate Jackson made threats towards him saying ?I get out in 11 months, and you guys better be ready for me start saving your energy now all you fucks have one coming?.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ25: Threats | Guilty | Verbal Reprimand | 0-mths / 0-days | 04/20/2023 |

| OIC Date: 04/06/2023 | OIC Loc: ESP - Building 9 | IR #: IR-2023-ESP-000606 | OIC #: 518798 |
|---|---|---|---|

**IR:** On April 06, 2023 at approximately 0530. Inmate Jackson, Tarontae #1186781 did make threats towards staff.

**NOC:** On April 6, 2023 I, Correctional Officer D. Halsey was working my assigned post of Infirmary back Officer at Ely State Prison when the following incident did occur. At approximately 5:30am I asked inmate Jackson, T. #1186781 who is currently housed in cell 9A-13, for the unit phone back. Inmate Jackson then replied ? Bitch ass white boy, turn this phone on or ima kill you and your whole family!? Due to his threats and extremely agitated state I ceased the attempt to retrieve the phone, that inmate Jackson has had refused to surrender for two days. During the course of the morning operations, Inmate Jackson has continued to make threats towards myself and my family. Shift command was notified. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ25: Threats | Guilty | Verbal Reprimand | 0-mths / 0-days | 04/20/2023 |

| OIC Date: 12/21/2022 | OIC Loc: ESP - Unit 2 | IR #: IR-2022-ESP-002698 | OIC #: 515379 |
|---|---|---|---|

**ER151**    **ER151**    **ER151**

# State of Nevada
# Department of Corrections

### Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | | **Cur. Loc:** ESP |
|---|---|---|---|

---

| **OIC Date:** 12/21/2022 | **OIC Loc:** ESP - Unit 2 | **IR #:** IR-2022-ESP-002698 | **OIC #:** 515379 |
|---|---|---|---|

**IR:** On December 21, 2022, at approximately 1245, a planned use of force was conducted involving Inmate Tarontae JACKSON 1186781, housed in cell 2B36. ...[TSANDOVAL, 12/27/2022 16:42:50] I/M submitted a grievance alleging excessive UOF. Grievance referred to the IG for review.

**NOC:** On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by medical. He was then escorted back to 2B36 without further incident. EOR

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Loss Of Canteen Privilege | 0-mths / 30-days | 04/20/2023 |
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Loss Of Phone Privilege | 0-mths / 30-days | 04/20/2023 |
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Stat Loss Referral | 0-mths / 15-days | 04/20/2023 |

---

| **OIC Date:** 12/21/2022 | **OIC Loc:** ESP - Unit 2 | **IR #:** IR-2022-ESP-002692 | **OIC #:** 515365 |
|---|---|---|---|

**IR:** On December 21, 2022, at approximately 0605, Inmate Tarontae JACKSON 1186781, housed in cell 2B36, propelled an unknown liquid on staff during feeding.

**NOC:** On December 21, 2022, at approximately 0608 I was feeding in unit 2. When I approached inmate JACKSON, 1186781 housded in 2B 36 he had half of his front cell window covered. I told JACKSON to uncover his cell window and turn his light on for feeding. Jackson stared at me and did nothing, I gave the order 2 more times with no response so I moved on to feed the next cell. At this time JACKSON propelled an unknown liquid substance (smelling like urine) out of the side of his door strikeing my left side back. At this time I turned around and JACKSON stated "fuck you bitch, I'll show you just like I showed them". End of Report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ40: Propelling | Guilty | Loss Of Phone Privilege | 0-mths / 90-days | 01/05/2023 |
| MJ40: Propelling | Guilty | Loss Of Canteen Privilege | 0-mths / 90-days | 01/05/2023 |
| MJ40: Propelling | Guilty | Loss Of  ACCESS Packages Privilege | 0-mths / 0-days | 01/05/2023 |
| MJ40: Propelling | Guilty | Stat Loss Referral | 0-mths / 60-days | 01/05/2023 |

---

| **OIC Date:** 12/20/2022 | **OIC Loc:** ESP - Building 9 | **IR #:** IR-2022-ESP-002686 | **OIC #:** 515362 |
|---|---|---|---|

**IR:** inmate Tarontae Jackson NDOC #1186781, housed in unit 2B36 did have his window covered foor the 23:00 institutional count.

**NOC:** On call AW Drummond notified

inmate Tarontae Jackson NDOC #1186781, housed in unit 2B36 did have his window covered foor the 23:00 institutional count. This caused a response team to be gathered at his cell door. Inmate Taronte Jackson NDOC #1186781 finally did respond to the banging on his cell door at approximately 23:41 then threatened to harm staff by stabbing them.

---

**ER152**                    **ER152**                    **ER152**

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | | **Cur. Loc:** ESP |
|---|---|---|---|

| **OIC Date:** 12/20/2022 | **OIC Loc:** ESP - Building 9 | **IR #:** IR-2022-ESP-002686 | **OIC #:** 515362 |
|---|---|---|---|

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ32: In Unauthorized area / Hiding | Guilty | Verbal Reprimand | 0-mths / 0-days | 01/05/2023 |

| **OIC Date:** 12/16/2022 | **OIC Loc:** ESP - Unit 2 | **IR #:** IR-2022-ESP-002633 | **OIC #:** 515225 |
|---|---|---|---|

**IR:** On December 15, 2022. Inmate Jackson, Tarontae #1186781 had his cell window covered for counts and Segregation checks.

**NOC:** On December 16, 2022, I Correctional Officer M. Gamberg was working my assigned post on S&E at Ely state Prison. During the 1am institutional count inmate Jackson NDOC# 1156781 housed in cell 2B36 had paper coving most of his window obstructing my view into his cell. I told inmate Jackson to uncover his window per OP 511, inmate Jackson refused to comply with orders. Shift Command was notified.
End of report

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ32: In Unauthorized area / Hiding | Guilty | Verbal Reprimand | 0-mths / 0-days | 01/05/2023 |

| **OIC Date:** 12/11/2022 | **OIC Loc:** SDCC - Unit 8 GP Housing | **IR #:** IR-2022-SDCC-004514 | **OIC #:** 515084 |
|---|---|---|---|

**IR:** Spontaneouse use of force, (hands on only) in unit 8 with inmate Jackson #1186781, after inmate was reaching from captured food flap and grabbing Officer Paniagua's uniform and belt. Officer suffered minor injuries to hand, ripped uniform and inmate minor injuries to hands.

**NOC:** On December 11, 2022, I , Senior Officer L. Martinez was assigned as the Unit 8 Officer during the hours of 0500 and 1300 hours at Southern Desert Correctional Center. At approximately 0910 hours I was walking back to the Unit 8 bubble when I observed Inmate Jackson 321321 capturing his food flap. Officer Martinez-Delgado and Officer Paniagua were in front of his cell giving Inmate Jackson a direct order to put his hands in so they could secure the food flap. I then asked Jackson why he was capturing his food flap to which he responded ?I want my MP3 plugged in.? I then responded by telling him that we cannot plug his MP3 as it would be considered as abandoning our post. Inmate Jackson then replied, ?then I?m not letting the flap go.? At this time, I observed Jackson reach out and grab Officer?s Paniagua?s shirt and hold on to it with a close fist. At this time Officer?s Paniagua, Martinez-Delgado and I L. Martinez attempted to grab Jackson?s hand to free it from holding on to Paniagua?s shirt. During this time all officer?s repeatedly instructed Jackson to put his hands back on so we could secure the food flap. Jackson continued to hold on to Paniagua?s shirt and disobey orders. At this time, we feared for Paniagua?s safety as it appeared Jackson was beginning to pull in Officer Paniagua. I L. Martinez began to grab his left arm as it was hanging outside his food flap and attempted to use the least amount of force and pushed it back into his cell. We were then able to get Jackson?s hand off of Paniagua?s shirt and get the food flap halfway close when he began pushing the food flap open again. At this time, I attempted to call a use of force over the radio but was unable to as the Institution was doing a institutional radio check and it would not let us get any radio traffic out. At this time, we stepped away from the area and walked back to the bubble to notify shift command via landline. Shift command was notified of the event.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Refer to DH | | 0-mths / 0-days | |
| MJ3: Battery | Guilty | Stat Loss Referral | 0-mths / 60-days | 02/20/2023 |
| MJ3: Battery | Guilty | Disciplinary Segregation | 0-mths / 180-days | 02/20/2023 |

| **OIC Date:** 12/01/2022 | **OIC Loc:** SDCC - Unit 8 GP Housing | **IR #:** IR-2022-SDCC-004353 | **OIC #:** 514818 |
|---|---|---|---|

**IR:** I/M Jackson, Tarontae #1186781 (U8A16A), attempted to assault custody staff resulting in Spontaneous Use of Force.

**NOC:** I Correctional Officer Lauer assigned to unit 8 segregation on December 1, 2022, at Southern Desert Correctional Center. At Approximately 0620 Officer Jackson was escorting inmate Jackson, Tarontae #1186781 who is housed in unit 8-A-16. At approximately 0622 inmate Jackson was being escorted to B-wing shower when inmate Jackson began using verbally abusive language towards me. Inmate Jackson stated , ?You a bitch, I?m going to kill you, you a mark ass.? I approached inmate Jackson and stated get into the shower and stop using abusive language, He then began to

---

| Report Name: NVRDHR | Page 3 of 14 |
|---|---|
| Run Date: DEC-28-23 09:51 AM | Ordered by OIC #, Offense Date, Effective Date |

**ER153**              **ER153**              **ER153**

# State of Nevada
## Department of Corrections

### Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | **Cur. Loc:** ESP |
|---|---|---|

**OIC Date:** 12/01/2022   **OIC Loc:** SDCC - Unit 8 GP Housing   **IR #:** IR-2022-SDCC-004353   **OIC #:** 514818

approach me in an aggressive manner. I then gave verbal commands to inmate Jackson to get back and to step into the shower. He refused my commands and kept using abusive language stating, ?You a Bitch? multiple times. I then assisted Officer Jackson with a hands-on escort to attempt to put inmate Jackson in the shower. Inmate Jackson resisted and pulled away from Officer Jackson and Myself, I gave Inmate Jackson another verbal command to get into the shower. Inmate Jackson refused again and continued to become more aggressive. At this time, I used my left foot to trip the inmate to get him on the ground to control the situation as Officer Jackson stood watched and did not provide assistance. While on the ground I segmented inmate Jackson by placing my left leg across his belt line. Inmate Jackson was continuing to be aggressive and resisting on the ground at this time Officer Gusmano came to assist in controlling the inmate and segmented his legs.
Search and Escort arrived on scene in unit 8, Officer Sami relieved me of the situation to begin writing my report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ2: Assault | Not Guilty | | 0-mths / 0-days | |
| MJ25: Threats | Guilty | Stat Loss Referral | 0-mths / 30-days | 12/06/2022 |

**OIC Date:** 11/24/2022   **OIC Loc:** SDCC - Unit 8 GP Housing   **IR #:** IR-2022-SDCC-004244   **OIC #:** 514636

**IR:** Inmate Jackson, T. #1186781 housed in 8A-16 captured his food flap while pill call nurse was delivering his pills. Inmate complained about not receiving the right pills. Nurse advised inmate that he would receive the correct medication later today. Jackson had captured the food flap multiple times o...<TRUNCATED>

**NOC:**

On Thursday, November 24th, 2022, I, Officer Coovert, was assigned to Southern Desert Infirmary from 0500 hrs to 1300 hrs. At approximately 0910 hrs while Conducting pill call in unit 8 myself and nurse John went down A-Wing to cell 16 housing inmate Jackson, Tarontae # 1186781. At approximately 0915 hrs Inmate Jackson, Tarontae # 1186781 began to argue with the nurse over his medication he did not receive and refused to sign for the medication that was brought to him. At this time nurse John told inmate Jackson, Tarontae # 1186781 that he would go and check to see why his medication was not filled. At this time as I was trying to secure inmate Jackson, Tarontae # 1186781 food flap he captured the food flap and stated, ?You better bring me all my medication within an hour?. I then secured the lock inside the unit and notified Sargent Navarrete. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Stat Loss Referral | 0-mths / 30-days | 12/06/2022 |

**OIC Date:** 11/22/2022   **OIC Loc:** SDCC - Unit 8 GP Housing   **IR #:** IR-2022-SDCC-004224   **OIC #:** 514604

**IR:** Inmate Jackson, Tarontae #1186781 housed in Unit 8 incited other inmates to captured their food flaps. Inmates Watson, Andre #1215814, Butler, Zyon #1252000 captured their food flaps.

**NOC:**

On November 22, 2022 I SC/O Asher was assigned to work in Unit 8 from 13:00 hours to 21:00 hours. At approximately 1730 inmate Jackson, Tarontae #1186781 was inciting other inmates to join him and capture their food flaps by saying "Fuck this fucking bitch. This fat ass bitch. You ugly ass bitch. Just watch. Stupid ass bitch." He repeated this over and over yelling unintelligible slurs to me to rile up the other inmates to join him by capturing their food flap as well. Inmate Watson, Andre #1215814 housed in U8-A-37 and Butler, Zyon #1252000 housed in U8-A-59 joined him and captured their food flap once they received their tray. Inmate Jackson continued to use abusive language towards me until I left the wing when I finished chow.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Not Guilty | | 0-mths / 0-days | |
| G9: Abusive Language | Guilty | Loss Of Phone Privilege | 0-mths / 0-days | 12/02/2022 |
| MJ27: Rioting or inciting others to riot | Guilty | Stat Loss Referral | 0-mths / 60-days | 01/02/2023 |

**OIC Date:** 11/22/2022   **OIC Loc:** SDCC - Unit 8 GP Housing   **IR #:** IR-2022-SDCC-004220   **OIC #:** 514590

**IR:** Inmate Jackson, T. #1186781 housed in 8A-16 captured the flap. Inmate wants to talk to someone about being placed

**ER154**     **ER154**     **ER154**

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | Cur. Loc: ESP |
|---|---|---|

**OIC Date:** 11/22/2022  **OIC Loc:** SDCC - Unit 8 GP Housing  **IR #:** IR-2022-SDCC-004220  **OIC #:** 514590

**NOC:** on peanut allergy diet. Inmate was told to kite medical and culinary was notified and asked if inmate was on peanut allergy, in which he was not on peanut allergy diet. Inmate Jackson th...<TRUNCATED>

I, Senior Correctional Officer Kelley was assigned as the Unit 8 Senior on November 22, 2022. At approximately 1100 hours, inmate Jackson, T. #1186781 housed in 8A-16 captured the flap while CO Macias who is working at SDCC on overtime from FMWCC was collecting trays from earlier chow. Inmate stated that he wants to talk to someone about being placed on peanut allergy diet. Inmate was told to kite medical and culinary was notified and asked if inmate was on peanut allergy, in which he was not on peanut allergy diet. Inmate Jackson then refused the regular sack lunch. Sgt. Navarette was made aware of the issue. The inmate has captured the flap multiple times for different reason everytime. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G1: Disobedience | Guilty | Loss Of Yard Privilege | 0-mths / 7-days | 12/07/2022 |

**OIC Date:** 11/17/2022  **OIC Loc:** SDCC - Unit 8 GP Housing  **IR #:** IR-2022-SDCC-004134  **OIC #:** 514394

**IR:** Inmate Jackson, T. #1186781 housed in 8A-16 decided to capture the flap while COT Locher was feeding chow. Food flap was secured 30 mins later. Inmate will receive a notice of charges.

**NOC:** On November 17th 2022 I Officer Locher was assigned to Southern Dessert Correctional Center in unit 8. At approximately 0750 during serving morning breakfast inmate Jackson, Tarontae #1186781 in cell SDCC-U8-16-A Decided to capture his cell door flap by sticking is arm out. This action had prevented me from closing the cell flap. Inmate Jackson, Tarontae #1186781 handed me a copy of an emergency grievance from 4 days ago stating he was allergic to peanut butter and that if he was not on a diet tray without peanut butter, he was going to file a lawsuit. When inmate captured his flap, he was stating that no one cares about his health and that the officers are bitches who do not know how to do his job. Inmate Jackson, Tarontae #1186781 also stated he does not care if the goon squad comes in to get him, all he wants is the warden to come down. Inmate Jackson, tarontae #1186781 stated that he is not going to shower, does not care about the phone and that everyday he is going to stick his arm out of the flap and capture it. I was able to finish serving breakfast chow to the rest of A wing in unit 8 at southern dessert correctional center.  End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Stat Loss Referral | 0-mths / 30-days | 01/02/2023 |

**OIC Date:** 11/11/2022  **OIC Loc:** SDCC - Unit 8 GP Housing  **IR #:** IR-2022-SDCC-004017  **OIC #:** 514220

**IR:** While feeding chow inmate Jackson, T. #1186781 housed in 8A-16 captured the flap. Jackson demanded that CO Kapp plug in his MP3. Jackson will recieve a notice of charges. ...[CJDAY, 11/11/2022 16:40:44] Food flap has been recovered

**NOC:** without force or injuries.

On Friday, November 11th, 2022, I, Officer Kapp was assigned to Unit 8 as the D officer from 0500-1300 at Southern Desert Correctional Center. At approximately 0755 while feeding chow, Inmate Jackson, T. [1186781] housed in U8-A-16-A stuck his arm through the food flap and "captured", stating " I'm not giving up the flap till yall plug in my mp3". U8 officers do not plug in inmates mp3 players and do not have a kiosk to do so. Inmate also stated "I'm gonna take the flap everyday till you plug in my mp3." This is an attempt to disrupt U8 operations and cause a work stoppage/ hinder officer duties. Morning chow was completed without any other incidents. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Stat Loss Referral | 0-mths / 30-days | 12/03/2022 |
| MJ28: Org. Work Stoppage / Demonstration | Guilty | Disciplinary Segregation | 0-mths / 20-days | 11/11/2022 |

**OIC Date:** 11/10/2022  **OIC Loc:** SDCC - Unit 8 GP Housing  **IR #:** IR-2022-SDCC-003999  **OIC #:** 514198

**IR:** Inmate Jackson, Tarontae #1186781 disrupting operations in unit 8. ...[CJDAY, 11/11/2022 11:39:59] food flap was closed and secured without force or inmate injury.

**NOC:** On November 10th, 2022, I Correctional Officer P. Sami assigned at Southern Desert Correctional Center (SDCC) from the hours of 13:00-21:00 hours in Unit 8 as the B officer. At approximately 14:15 I instructed inmate Jackson Tarontae #1186781 in cell A-16 to let go of the food flap as he was obstructing with normal operations of the unit.  He then said ?

ER155                    ER155                    ER155

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | | Cur. Loc: ESP |
|---|---|---|---|

| OIC Date: 11/10/2022 | OIC Loc: SDCC - Unit 8 GP Housing | IR #: IR-2022-SDCC-003999 | OIC #: 514198 |
|---|---|---|---|

Bitch Ass Motherfucker you aren't closing anything". Jackson then pushed the food flap and held it down. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ28: Org. Work Stoppage / Demonstration | Not Guilty | | 0-mths / 0-days | |
| G9: Abusive Language | Guilty | Loss Of Canteen Privilege | 0-mths / 15-days | 12/06/2022 |

| OIC Date: 11/08/2022 | OIC Loc: SDCC - Unit 8 GP Housing | IR #: IR-2022-SDCC-003971 | OIC #: 514150 |
|---|---|---|---|

**IR:** Inmate Jackson, Tarontae #1186781 abusive language

**NOC:** On November 8th, 2022, I Senior Officer Dante was assigned to Southern Desert Correctional Center in unit 8 from 1300-2100 hours. At approximately 1830 hours inmate Jackson, Tarontae #1186781 was constantly kicking the door and yelling "give me the fucking phone! "where the fucking phone at?!" I told this inmate several times the week before that the phone is a privilege and his attitude and constantt archaic language towards myself and other officers is unacceptable. Inmate Jackson will not be receiving the telephone but a Notice of Chagres instead. End report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G9: Abusive Language | Guilty | Loss Of Phone Privilege | 0-mths / 10-days | 11/21/2022 |

| OIC Date: 10/28/2022 | OIC Loc: SDCC - Unit 8 GP Housing | IR #: IR-2022-SDCC-003798 | OIC #: 513817 |
|---|---|---|---|

**IR:** Inmate JACKSON,TARONTAE #1186781 used abusive language towards staff.

**NOC:** On October 28th 2022, I, Officer Morer was assigned to SDCC from the hours of 1300 through 2100 in Unit 8. At approximately 7:45pm, I was escorting Nurse Scott with pill call in A wing. When we arrived to SDCC-U8-A-16 which houses Jackson, T #1186781, his window was covered with a towel. I knocked and Jackson yelled "ONE!" I replied and said "Pill call." 10 seconds went by and he did not come to the window. I knocked again and Jackson said again, "ONE!!" I responded again and said "PILL CALL." Jackson said, "I don't want my fucking pills." A second later he came to the cell window and moved his covering. Nurse Scott asked asked, "You don't want your KOPs?" At this time Jackson became irate and yelled, "I NEVER SAID THAT I DIDN'T WANT MY FUCKING KOPS MOTHERFUCKER, GIVE ME MY FUCKING PILLS NOW." At this time Nurse Scott decided to not deliver his medication due to the abusive language. As we walked away Jackson continued to verbally abuse the Nurse calling him a "FAGGOT" and to "give me my fuckin pills, bitch!" A few minutes later he said "I'm from Detroit, you messed with the right one!" For the next few minutes, Jackson began kicking his door as hard as he could and was also yelling profanity at us. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G9: Abusive Language | Guilty | Loss Of Yard Privilege | 0-mths / 5-days | 12/03/2022 |

| OIC Date: 10/19/2022 | OIC Loc: SDCC - Unit 8 GP Housing | IR #: IR-2022-SDCC-003655 | OIC #: 513488 |
|---|---|---|---|

**IR:** Inmate jackson #1186781 became verbally disruptive after being escorted to the unit 8 disciplinary hearing Officer Sergeant Day demanding he be found not guilty or else becouse he ain't no punk. Caseworker Bryce was in the office

**NOC:** and witnessed inmate jackson getting overly disruptive even after bein...<TRUNCATED>

October 19, 2022 at approximately 1030 hours I, Sergeant Day was assigned as the SDCC Administrative Segregation Sergeant. While in unit 8, administrative segregation I was conducting disciplinary hearings for unit 8 assigned inmates. I requested unit 8 caseworker Bryce to assist on the committee for the Disciplinary Hearings. I requested inmate Jackson #1186781 to be escorted to the unit administrative office to complete a disciplinary hearing. As soon as inmate Jackson entered the office he began demanding to know where his witness was. I informed inmate Jackson that I will acknowledge the witness will state that Jackson was innocent, but the witness will not be escorted into a administrative segregation housing unit for him to question.

Jackson became louder, raising his voice stating, "you will find me not guilty or else cause I ain't no punk on set!" I told Jackson to settle down until we can get started and Jackson continued to attempt to talk over me demanding he be found not guilty. I called for the unit Officer to escort inmate Jackson back to his cell. When inmate Jackson got out of the office door he began yelling out loud to get the attention of the inmates on the tier. Jackson began yelling out, "you fat racist motherfucker, you better get me my witness before I see you outside."

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|

**ER156**　　　　　　　　**ER156**　　　　　　　　**ER156**

# State of Nevada
## Department of Corrections

### Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | | | Cur. Loc: ESP |
|---|---|---|---|---|

| OIC Date: 10/19/2022 | OIC Loc: SDCC - Unit 8 GP Housing | IR #: IR-2022-SDCC-003655 | OIC #: 513488 |
|---|---|---|---|

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ25: Threats | Guilty | Stat Loss Referral | 0-mths / 30-days | 11/30/2022 |
| MJ25: Threats | Guilty | Disciplinary Segregation | 0-mths / 30-days | 10/19/2022 |

**OIC Date:** 09/04/2022  **OIC Loc:** SDCC - Unit 6 GP Housing  **IR #:** IR-2022-SDCC-003018  **OIC #:** 512118

**IR:** Spontaneous use of force on inmate Jackon, Tarontae #1186781. Inmate attempted to assault staff while being restrained.

**NOC:** On September 4, 2022 I correctional Officer Hanlon was assigned to unit 6 B Officer at Southern Desert Correctional Center. At approximately 1455 inmate Jackson,Tarontae 1186781 was assigned to cell B20 with inmate Williams, Vernon 91706 due to covid.  When Officer Harcourt and I escorted both inmates calmly walked  to their cell and upon opening the cell door Inmate Jackson became verbally aggressive and decided he didn't want to house in that cell. I gave him multiple directives to lock down. He then threatened staff and stated, "Fuck you I'm not locking down, get your bitch ass Sargent down here or we are going have problems. I'm not afraid of that spray or search and escort." I then proceeded to give multiple verbal directives to submit to restraints. He refused and pulled away when I tried to grab his right arm. I reached again and gained control with one restraint on his right arm as he was trying to put his Tv down on the cart. Officer Harcourt pushed Jacksons left shoulder down so I could cuff the left hand as well. At this time Jackson became more combative and pulled away and tried shoulder checking me when I was trying to escort him to the day room. I was forced to push inmate Jackson to the floor on his stomach so I could gain control until search and escort arrived. All use of force stopped once the inmate was on his stomach and I gained control. Spontaneous use of force was called at approximately 1503 and search and escort arrived with medical at 1507. They were in route at 1510 and secured inmate Jackson in the infirmary at 1512. Shift command was notified. end of report

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ2: Assault | Guilty | Stat Loss Referral | 0-mths / 60-days | 10/19/2022 |
| MJ2: Assault | Guilty | Disciplinary Segregation | 0-mths / 60-days | 10/01/2022 |

**OIC Date:** 04/14/2022  **OIC Loc:** SDCC - Unit 11 GP Housing  **IR #:** IR-2022-SDCC-001137  **OIC #:** 507363

**IR:** Inmate Jackson #1186781 sold his TV to inmate Phillips #1171564, then lied to Sergeant Day to get his TV returned to him.

**NOC:** April 14, 2022 at approximately 1030 hours I, Sergeant Day was approached by inmate Jackson who claimed his TV was stolen by inmate Gregory Phillips #1171564 when he was rolled up. After locating the TV, I was informed by Search and Escort that when Jackson was rolled up he had a TV that did not belong to him in the cell that was confiscated by property.

The inmate the TV was found with stated he paid Jackson for the TV because he thought he was leaving. Search and Escort Officers stated that inmate Jackson normally rented out his TV while he was in the units. The TV has been confiscated by Sergeant Day and after being tagged with OIC's from both inmate's stored in property.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G25: Poss. Trade Unauth Prop >$50 | Guilty | Loss Of Phone Privilege | 0-mths / 15-days | 05/05/2022 |
| G25: Poss. Trade Unauth Prop >$50 | Guilty | Loss Of Canteen Privilege | 0-mths / 15-days | 05/05/2022 |

**OIC Date:** 03/29/2022  **OIC Loc:** SDCC - Property  **IR #:** IR-2022-SDCC-000963  **OIC #:** 506799

**IR:** I/M Jackson 1186781 and I/M Jefferson 1245802 in possession of TV sets they did not legally purchase.

**NOC:** The following did occur at Southern Desert Correctional Center on Tuesday March 29, 2022. I, Senior Officer Moran was assigned to work in the property room. While processing properties left in the property room, I discovered I/M Jackson # 1186871 was in possession of a TV Set he did not legally purchase.  I checked NOTIS and he was given a settlement TV set with serial number of STK17381248.  The TV set he was caught with has serial number STK19060666A. The TV set

**ER157**        **ER157**        **ER157**

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | **Cur. Loc:** ESP |
|---|---|---|

| **OIC Date:** 03/29/2022 | **OIC Loc:** SDCC - Property | **IR #:** IR-2022-SDCC-000963 | **OIC #:** 506799 |
|---|---|---|---|

is being held in evidence in the property room. Nothing further, end of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G25: Poss. Trade Unauth Prop >$50 | Guilty | Property Forfeiture | 0-mths / 0-days | 04/07/2022 |
| G25: Poss. Trade Unauth Prop >$50 | Guilty | Loss Of Canteen Privilege | 0-mths / 10-days | 04/07/2022 |

| **OIC Date:** 03/23/2022 | **OIC Loc:** SDCC - Unit 11 GP Housing | **IR #:** IR-2022-SDCC-000898 | **OIC #:** 506596 |
|---|---|---|---|

**IR:** Inmate Jackson #1186781 was failed to follow instruction from staff and refused to house accordingly.

**NOC:** On Wednesday, March 23, 2022, I, Correctional Officer C. Shelley was assigned to Search & Escort from the hours of 0500 ? 1300 at Southern Desert Correctional Center. At approximately 1015 hours while watching Dorm Unit 11A&B come to the Gym for recreational time, I witnessed inmate Jackson, Tarontae #1186781wearing sweatpants and a sweatshirt while conducting a bed move to Unit 7. I ordered inmate Jackson on the wall and asked him why he was improperly dressed. Let it be known that inmate Jackson was told earlier that morning by other officers to change out of his sweatpants and sweatshirt after he had started his bed move. While inmate Jackson was on the wall, I asked inmate Jackson why he had left the unit improperly dressed and he stated ?I ain?t finna do all that fucking shit just for a bed move? in an aggressive tone. At that time, I placed inmate Jackson in mechanical restraints behind his back and escorted him to operations. After the inmate was seen by the lieutenant, it was concluded that he would be moved and housed in Unit 8 after inmate Jackson stated ?I?m not fucking going to 7?. Inmate Jackson was escorted to Unit 8 and was housed by the Unit 8 officers. Shift command notified. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G14: Failure to Follow Rules and Regs | Guilty | Loss Of Canteen Privilege | 0-mths / 15-days | 06/04/2022 |
| G14: Failure to Follow Rules and Regs | Guilty | Loss Of Phone Privilege | 0-mths / 15-days | 06/04/2022 |

| **OIC Date:** 03/19/2022 | **OIC Loc:** SDCC - Unit 11 GP Housing | **IR #:** IR-2022-SDCC-000854 | **OIC #:** 506487 |
|---|---|---|---|

**IR:** Inmate Jackson (1186781) failure to follow housing rules and regulations.

**NOC:** On March 19, 2022, I Correctional Officer L. Green was assigned to Unit 11B at Southern Desert Correctional Center (SDCC) Swing Shift from 1300-2100 hours. At approximately 1440 hours, I was conducting a Unit Tour while inmates were on Small Yard. While I was taking down several inmate manufactured curtains inmate Jackson, Tarontae- 1186781 housed in SDCC-U11-B-5-O was hitting the U11-B front dorm window as hard as he could with his fist. As I approached the front dorm door which was locked, inmate Jackson begin to hit the dorm door as well. Inmate Jackson stated "You're in there talking with another inmate, when I need to take a piss fuck". I then stood there for approximately 30 seconds until inmate Jackson calmed down. As soon as inmate Jackson entered the unit he began to taunt me saying "You're just picking on me fuck that". Inmate Jackson continued to the rear of the dorm to the restroom, while I remained at the entrance of 11B. I then exited out the dorm front door, and returned the officer bubble.

I then observed inmate Jackson return to his bunk, and hang to the sheet that I took down before inmate Jackson returned from Infirmary. I then stepped out onto the officer bubble stairs and advised inmate Jackson if he does not take it down I will "Confiscate it , and write him up". Inmate Jackson stated "I don't give fuck about that". I then radioed for Search & Escort to respond to my unit due to inmate Jackson's irate behavior. At approximately 1445 hours Search & Escort arrived at the unit. Search & Escort officer's then talked with inmate Jackson at his bunk area. Inmate Jackson calmed down as soon as several Search & Escort officers advised him to. Nothing further to report. Shift Command Notified. End of Report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G18: Delaying, Hindering, Inter W/ Staff | Guilty | Loss Of Phone Privilege | 0-mths / 15-days | 05/20/2022 |
| G18: Delaying, Hindering, Inter W/ Staff | Guilty | Loss Of Canteen Privilege | 0-mths / 15-days | 05/20/2022 |

| **OIC Date:** 02/10/2022 | **OIC Loc:** SDCC - Unit 11 GP Housing | **IR #:** IR-2022-SDCC-000408 | **OIC #:** 505126 |
|---|---|---|---|

**IR:** Inmate Jackson (1186781), property contained an item of contraband.

**ER158**                    **ER158**                    **ER158**

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | Cur. Loc: ESP |
|---|---|---|

| OIC Date: 02/10/2022 | OIC Loc: SDCC - Unit 11 GP Housing | IR #: IR-2022-SDCC-000408 | OIC #: 505126 |
|---|---|---|---|

**NOC:** On Thursday February 10, 2022, I Correctional Officer L. Green was assigned to Unit 11B at Southern Desert Correctional Center (SDCC) Swing Shift from 1300-2100 hours. At approximately 1727 hours I Officer L. Green, while inmates were at Dinner , I  conducted a random bunk search of SDCC-U11-B-5-O- housing inmate identified by his Nevada Department of Corrections Identification Card as Jackson, Tarontae-1186781. While conducting my search, I was moving items off of Jacksons gray storage box, which was located underneath a metal shelf to the right of his assigned bunk. I then located a Prison Made Weapon a "Rock". The rock was concealed in an inmate blue beanie, and white sock. The white sock was tied at the end so the rock will not fall out while in a swinging motion. The rock was sharp on all edges. At 1739 hour's inmates returned from Dinner, and Jackson approached the officer bubble stating "Someone put it there, it's not mine". Jackson did not claim ownership of the weapon, and left the area. I advised Jackson I will be issuing him a Notice of Charges. Digital photos taken. Shift Command Notified. End of Report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ26: Possession of contraband | Guilty | Loss Of Phone Privilege | 0-mths / 90-days | 03/22/2022 |
| MJ26: Possession of contraband | Guilty | Loss Of Canteen Privilege | 0-mths / 90-days | 03/22/2022 |

| OIC Date: 02/24/2021 | OIC Loc: NNCC - HOUSING UNIT 2 | IR #: IR-2021-NNCC-000538 | OIC #: 492121 |
|---|---|---|---|

**IR:** Officer Johnson caught inmates tattooing in Unit 2.

**NOC:** On 02/24/2021 I, Correctional Officer Johnson, was working and assigned to unit 2 at Northern Nevada Correctional Center. At approximately 1445 I was advising multiple inmates that they were needed in medical for appointments when I walked into B-wing dorm 6 and observed inmate Adkins #1014265 tattooing inmate Jackson #1186781. I advised inmate Adkins that I needed the tattoo machine and he gave it to me along with a toothpaste cap he was using to hold tattoo ink in. Inmate Jackson was brought up to the unit office and questioned about the tattoo he was receiving. Jackson appears to have a fresh tattoo on his right arm with the skin around the tattoos red and appearing inflamed. Inmate Jackson was sent to medical for tattoo protocol. Pictures were taken of tattoo machine and toothpaste cap and both were disposed of. End of report.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ56: Tattooing or Poss Tat Device | Guilty | Loss Of Phone Privilege | 0-mths / 90-days | 03/17/2021 |
| MJ56: Tattooing or Poss Tat Device | Guilty | Restitution | 0-mths / 0-days | 03/17/2021 |
| MJ56: Tattooing or Poss Tat Device | Guilty | Loss Of Canteen Privilege | 0-mths / 90-days | 03/17/2021 |
| MJ56: Tattooing or Poss Tat Device | Guilty | Stat Loss Referral | 0-mths / 0-days | 03/17/2021 |

| OIC Date: 02/19/2021 | OIC Loc: NNCC - HOUSING UNIT 2 | IR #: IR-2021-NNCC-000488 | OIC #: 491919 |
|---|---|---|---|

**IR:** At approximately 1800, Officer Garrison reports Inmate Adkins #1014265 giving a tattoo to Inmate Jackson #1186781. Inmate Jackson sent to RMF for tattoo protocol. Pictures taken of Prison made tattoo gun and stored into supervisors shared folder.

**NOC:** On February 19, 2021 I C/O (correctional officer) Garrison, N. was assigned to Northern Nevada Correctional Center from 1300 - 2100 in unit 2 as unit officer. At approximately 1630 I entered dorm 6 of B wing in unit 2 to search for Inmate (I/M) Adkins NDOC#1014265 as he was needed by the unit caseworker. When I spotted Adkins, he was in the process of operating a prison made tattoo tool on I/M Jackson NDOC# 1186781 right upper appendage. Tattoo paraphernalia was confiscated and photographed. I/M Jackson was sent to institutional medical for tattoo protocol.
END OF REPORT

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G5: Self Mutilation | Guilty | Restitution | 0-mths / 0-days | 02/20/2021 |

| OIC Date: 02/17/2021 | OIC Loc: SCC - CAMP OFFICE | IR #: IR-2021-SCC-000064 | OIC #: 491833 |
|---|---|---|---|

**IR:** While conducting a unclothed body search of I/M Jackson, Tarontae # 1186781 a prison made weapon was found in the

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | **Cur. Loc:** ESP |
|---|---|---|

---

**OIC Date:** 02/17/2021   **OIC Loc:** SCC - CAMP OFFICE   **IR #:** IR-2021-SCC-000064   **OIC #:** 491833

**NOC:** right leg of I/M Jacksons sweat pants. The weapon appears to be made from scissors with the total length measuring approximately six inches with the blade measuring approximate three inc...<TRUNCATED>

On 2-17-21 at approximately 11:50 AM I "C/O Day" found a pill bottle filled half way with tobacco and a prison made weapon on I/M Jackson, Tarontae # 1186781 while conducting a unclothed body search. The weapon was located in the right leg of I/M Jacksons sweat pants. The weapon appears to be made from scissors with the total length measuring approximately six inches with the blade measuring approximately three inches. The pill bottle with tobacco was located in the right pocket of the sweat pants. I/M Jackson was being transfered to NNCC pending  investigation when the incident took place. Photos of the contraband attached.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ26: Possession of contraband | Guilty | Stat Loss Referral | 0-mths / 60-days | 03/17/2021 |
| MJ26: Possession of contraband | Guilty | Disciplinary Segregation | 0-mths / 60-days | 03/17/2021 |
| MJ26: Possession of contraband | Guilty | Loss Of Canteen Privilege | 0-mths / 90-days | 03/17/2021 |
| MJ26: Possession of contraband | Guilty | Loss Of Phone Privilege | 0-mths / 90-days | 03/17/2021 |

---

**OIC Date:** 02/17/2021   **OIC Loc:** SCC - CAMP OFFICE   **IR #:** IR-2021-SCC-000063   **OIC #:** 491830

**IR:** / **NOC:** While searching incoming mail on 2/17/21 a envelope addressed to I/M Jackson, Tarontae # 1186781 gave red flags for having a berry / fruity odor emitting from a one of the two cards that were inside the envelope. A piece of the card was tested for synthetic cannabinoids reagent using a Narcotics Ana...<TRUNCATED>

On 2-17-21 at approximately 11:00 AM I "C/O Day" while searching the incoming mail opened a envelope addressed to I/M Jackson, Tarontae # 1186781. Immediately after oping the envelope one of the two cards located inside gave of red flags for having a berry / fruity odor emitting from the card, A piece of the card was tested for synthetic cannabinoids reagent using a Narcotics Analysis Reagent Kit "NARK 2", the test indicated positive results for synthetic cannabinoids. photos of the card and test results attached.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ53: Poss. / Sale of Intoxicants | Guilty | Restitution | 0-mths / 0-days | 03/17/2021 |
| MJ53: Poss. / Sale of Intoxicants | Guilty | Loss Of Canteen Privilege | 0-mths / 90-days | 03/17/2021 |
| MJ53: Poss. / Sale of Intoxicants | Guilty | Loss Of Phone Privilege | 0-mths / 90-days | 03/17/2021 |
| MJ53: Poss. / Sale of Intoxicants | Guilty | Stat Loss Referral | 0-mths / 60-days | 03/17/2021 |

---

**OIC Date:** 01/12/2021   **OIC Loc:** SCC - CAMP OFFICE   **IR #:** IR-2021-SCC-000017   **OIC #:** 490399

**IR:** During Random U/A Testing the following Inmate, Jackson, Tarontae #1186781 tested positive for Nicotine /Tobacco

**NOC:** During Random U/A Testing the following Inmate, Jackson, Tarontae #1186781 tested positive for Nicotine /Tobacco

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| MJ55: Poss/Sale/Intro/Manf of Tobacco | Guilty | Loss Of Phone Privilege | 0-mths / 30-days | 03/17/2021 |
| MJ55: Poss/Sale/Intro/Manf of Tobacco | Guilty | Restitution | 0-mths / 0-days | 03/17/2021 |
| MJ55: Poss/Sale/Intro/Manf of Tobacco | Guilty | Loss Of Canteen Privilege | 0-mths / 30-days | 03/17/2021 |

---

**OIC Date:** 12/30/2020   **OIC Loc:** SCC - CAMP OFFICE   **IR #:** IR-2020-SCC-000432   **OIC #:** 489986

**IR:** Inmate found to have his bunk covered and interfered with 0100 count.

**NOC:**

On December 30, 2020, while conducting 0100 count, inmate Jackson, Tarontae #1186781 was found to have his bunk covered by a blanket. Inmate could not be seen without having to enter the cube and moving the blanket to the side. Inmate approached the camp office at approximately 0700 and asked about his blanket. He was counseled about housing rules on covering up his bunk, which he then became argumentative about the situation. Inmate was then informed that he would be receiving a write up. End of Report.

---

**ER160**          **ER160**          **ER160**

# State of Nevada
# Department of Corrections

Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | | Cur. Loc: ESP |
|---|---|---|---|
| OIC Date: 12/30/2020 | OIC Loc: SCC - CAMP OFFICE | IR #: IR-2020-SCC-000432 | OIC #: 489986 |

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G12: Interfering W/ Count | Guilty | Verbal Reprimand | 0-mths / 0-days | 01/03/2021 |

| Offender 1186781 | Incident Count: | 31 |
|---|---|---|

**ER161**                **ER161**                **ER161**

# State of Nevada
# Department of Corrections

Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | | **Cur. Loc:** OUT |
|---|---|---|---|

| **OIC Date:** 09/23/2018 | **OIC Loc:** ISCC - TLVCC UNIT 3 | **IR #:** IR-2018-ISCC-000389 | **OIC #:** 449826 |
|---|---|---|---|

**IR:** Inmate wing crossing

**NOC:** On September 23rd, 2018 at approximately 1100 hours, I, Correctional Officer O. Mora, while working day shift (0500-1300 hours) at Three Lakes Valley Conservation Camp, witnessed inmate Jackson, Tarontae #1186781 in a wing he's not assigned to (also known as wing crossing) during 1100 door call. Knowing this inmate; I knew he was assigned to B-wing in unit three (3). I proceeded tell Jackson that he was wing crossing by being in D wing, he replies "ma bad, I can't do that right? Isn't that like a write up of something"? I advised Jackson that wing crossing was not going to be tolerated, therefore I would be issuing out a write-up for breaking the housing rules. Inmate Jackson complied with providing me with his state ID, for proper identification. LT Willett was notified of this incident. No further information at this time. END OF REPORT.

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G14: Failure to Follow Rules and Regs | Guilty | Verbal Reprimand | 0-mths / 0-days | 10/24/2018 |

| **OIC Date:** 06/23/2018 | **OIC Loc:** WCC - Unit 1 | **IR #:** IR-2018-WCC-000141 | **OIC #:** 445568 |
|---|---|---|---|

**IR:** Inmate Jackson, Tarontae #1186781 was placed in the holding cell for being verbally abusive against staff, inmate is currently being held for transport

**NOC:** During the 17:15 count on 6/23/18, Inmate Jackson, Tarontae #1186781 was disrupting count down C Wing when C/OTT Campbell was conducting count, before count was cleared, C/OTT Campbell called Inmate Jackson up to the office to explain why he was disrupting count. Inmate Jackson was being argumentative about the situation and demanded a grievance, I told Jackson that this type of situation wasn't grievable due to the fact that count hasn't cleared yet. Inmate then gave both of us a rude and snarky gestures so at that time I decided to place Inmate Jackson into the holding cell to calm down and to think over his actions. As soon as I had inmate Jackson in the holding cell, I told inmate to strip down and hand me his clothes, Jackson turned around and walked away and quoted "fuck you C/O, I aint doing that!" At this time I pulled out the gas and ordered Jackson to strip down which he did comply to orders. After I had Jackson stripped down and I closed the gate to the holding cell, Jackson began to become aggressive toward me and saying "fuck you C/O, punk ass bitch, you a bitch, your a faggot, ect." At that time I just closed the door and then the inmate began to kick the door and being verbally abusive. I assisted C/OTT Campbell into searching and locking up his things in the mean time and then to proceed to hand the inmate his blanket for the night and he became more verbally aggressive toward me, I closed the door and then proceeded to help C/OTT Campbell with the rest of the property. At this time I tried to call the Lt. with no luck then realized that the Sgt. is on vacation and the senior is in Reno, so I C/O Allison took it upon myself to call the Sgt in Ely and to see what course of action is needed, in which I was transferred to the Lt, at that time I contacted Warden Gittere about the situation in which route to take action, inmate is being charged with a MJ-28 and CERT coming up the next day. It is noted that dinner was delayed for half an hour

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G14: Failure to Follow Rules and Regs | Guilty | Verbal Reprimand | 0-mths / 0-days | 08/06/2018 |

| **OIC Date:** 05/31/2018 | **OIC Loc:** WCC - Unit 1 | **IR #:** IR-2018-WCC-000133 | **OIC #:** 444501 |
|---|---|---|---|

**IR:** Inmate Jackson, Tarontae #1186781 was off his bunk during 21:00 count

**NOC:** While conducting the 21:00 count, I C/O Allison, Clayton seen Jackson, Taronetae #1186781 off his bunk during count on 5/31/18

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| M10: No ID Card | Guilty | Verbal Reprimand | 0-mths / 0-days | 06/12/2018 |

| **OIC Date:** 12/17/2017 | **OIC Loc:** HDSP - Unit 2 | **IR #:** IR-2017-HDSP-005525 | **OIC #:** 436889 |
|---|---|---|---|

**IR:** On December 17, 2017 at approximately 2130 hrs (9:30 p.m.) C/O Lona reports that approximately 31 inmates refused to perform a health and welfare count as instructed where the inmate must stand at thier window with their identification in hand.

**NOC:** On December 17 2017, I Officer Lona was assigned to unit 2-AB and 2-CD floor Officer Post. At approximately 9:30pm

**ER162**                                    **ER162**                                    **ER162**

# State of Nevada
# Department of Corrections

## Inmate Disciplinary History Report

| NDOC ID: 1186781 | Name: JACKSON, TARONTAE | | Cur. Loc: OUT |
|---|---|---|---|
| OIC Date: 12/17/2017 | OIC Loc: HDSP - Unit 2 | IR #: IR-2017-HDSP-005525 | OIC #: 436889 |

during the health and welfare count, an announcement was made twice over the loudspeaker to stand up for count. Per O.P. 418.03 Section 10 under Duties Of Counting Officers it states: inmates are to stand facing their door with their lights on and present their I.D.'s.  Several attempts have been made to get inmates to uncover themselves during count prior to these write ups with negative results. I advise them not to use curtains and not to cover themselves completely during count. I have banged on their doors to get them to uncover themselves on a daily basis and most of the inmates mentioned below have received verbal warnings with negative results. This is a daily occurrence. The following inmates refused to stand up and refused to present their I.D.'s.

ELLIS 1107067

JACKSON 1186781

COOK 1168448

CULVERSON 1127088

BANKS 89511

HOLMES 1175972

GOVAN 1115019

WEBB 1100116

HOCKLEY 1181431

LANGILL 1186633

SMITH 1186631

BOYKINS 18857

DAVIS 95304

VEGA 1119145

FANCHER 1186063

MONTEJANO 1187297

MENDOZA 1184353

HUMPHREY 1186783

PALMER 1186455

ADAMS 1115625

JORDAN 1085274

HILL 1187677

RYBA 62481

**ER163**                    **ER163**                    **ER163**

# State of Nevada
# Department of Corrections

Inmate Disciplinary History Report

| **NDOC ID:** 1186781 | **Name:** JACKSON, TARONTAE | | **Cur. Loc:** OUT |
|---|---|---|---|

| **OIC Date:** 12/17/2017 | **OIC Loc:** HDSP - Unit 2 | **IR #:** IR-2017-HDSP-005525 | **OIC #:** 436889 |
|---|---|---|---|

PETERSON 1186856

BOYAKINS 53355

SIMS 1180575

MILLON 1185789

BRACY 1176424

HALL 1187720

BOGAN 1063113

THOMPSON 1186710

| Resulting Offense | Finding | Sanction | Duration | Effect Dt. |
|---|---|---|---|---|
| G14: Failure to Follow Rules and Regs | Dismissed | | 0-mths / 0-days | |

| **Offender** | 1186781 | **Incident Count:** | | **4** |
|---|---|---|---|---|

**Incidents on this report:** **35**

**ER164**      **ER164**      **ER164**

# EXHIBIT G

## MANUALLY FILED

## VIDEO OF CELL EXTRACTION

## MANUALLY FILED

# EXHIBIT G

# EXHIBIT H

IR-2022-ESP-002698

# EXHIBIT H

ER166                    ER166                    ER166

# State of Nevada
# Department of Corrections

Investigation Detail Report

## Investigation

| | | | |
|---|---|---|---|
| **Investigator:** | | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | | **IA Number:** | **IA-** |
| **Disposition Date:** | | **IN Number:** | **IN-** |
| | | **Institution:** | ESP |

## Referral

**Referred By:** COOKE, TASHEENA
**Referred Date:** 12/27/2022 16:43
**Referral Detail:** I/M submitted a grievance alleging excessive UOF. Grievance referred to the IG for review.

## Narrative

On December 21, 2022, at approximately 1245, a planned use of force was conducted involving Inmate Tarontae JACKSON 1186781, housed in cell 2B36. ...[TSANDOVAL, 12/27/2022 16:42:50] I/M submitted a grievance alleging excessive UOF. Grievance referred to the IG for review.

## Offender Involvement

| NDOC ID | Offender Name | Participation |
|---|---|---|
| 1186781 | JACKSON, TARONTAE | Suspect |

**Comments:** 2B36

---

Notice of Charges Statement     **Name:** C/O Kirkland     **Date Taken:** 12/21/2022

**Details:** On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by medical. He was then escorted back to 2B36 without further incident. EOR

## Staff Involvement

| Staff Name | Participation |
|---|---|
| | |

---

# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

## Staff Involvement

DAVIS, SETH     Reporting

Comment: CERT SCO

● Reports

| Report Type | Report Detail |
|---|---|
| USEOF | On December 21, 2022, I CERT Senior S. Davis was part of a planned use of force on Inmate Jackson (NDOC#1186781) housed in Unit 2B cell 36. Jackson had propelled on staff and due to him propelling his property needed to be removed from his cell, per my supervisors. I was the 5th man on the planned use of force team. At approximately 12:50 pm the planned use of force team was at Jackson?s cell door. Jackson had been given orders to submit to restraints and come out of the cell and go to the shower for an unclothed body search while his property was removed from his cell. Jackson refused multiple orders to comply with being restrained. Sgt Jacobs then gave the order to make entry (It should be noted that Jackson is on the desensitized list, meaning that we cannot use chemical agents on him). When I made it into the cell Jackson was face down on the bottom bunk faced away from me actively resisting the team. A drive stun from a taser was utilized in an attempt to gain compliance from Jackson. It had no affect and he continued to refuse orders. A second drive stun was delivered allowing me to secure both legs with leg restraints. Once he was fully restrained, we stood him up and moved him to the upper left shower to complete an unclothed body search. Once the search was completed, Jackson was escorted to the Unit 1-2 hallway to be evaluated by medical. After the evaluation was completed, Inmate Jackson was escorted back to his cell in unit 2B cell 36 with no further incident. |

| Staff Name | Participation |
|---|---|
| JACOBS, DANIAL | Reporting |

Comment: CERT Sgt./019

● Reports

| Report Type | Report Detail |
|---|---|
| INC019 | Planned-Use-of-Force ? December 21, 2022, at approximately 12:46 hours, a planned-use-of-force team consisting of C.E.R.T. Senior Officers (SC/O) S. Davis, S. Brown, C.E.R.T. Officers M. Kleer, A. Main, D. Kirkland, and lead by C.E.R.T. Sergeant (Sgt.) D. Jacobs was assembled in the Unit 2 Hallway. The planned-use-of-force was authorized on Inmate Jackson #1186781, housed in cell 2-B-36 for refusing to comply with coming out of his house to have his property removed, because he had propelled on a Sergeant during the breakfast meal. The C.E.R.T. Team briefed in the unit hallway for team assignments on entry into the cell. It was noted by medical staff that Inmate Jackson is on the desensitized list and chemical agents could not be used. Once the brief was completed, the team entered the unit and approached cell 2-B-36. Sgt. Jacobs gave Inmate Jackson one last directive to be restrained through the food slot. Inmate Jackson refused. Once authorization was given by the Associate Warden, the signal was given to open the cell door and entry was made. Inmate Jackson had retreated to the back of his |

**ER168**      **ER168**      **ER168**

# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

## Staff Involvement

● Reports

| Report Type | Report Detail |
|---|---|
| | cell and had lain on his bunk, on his stomach, with his hands underneath him. It was unknown at this time if Inmate Jackson had a weapon on him or something similar that could harm officers. Inmate Jackson was refusing to comply with being restrained after being given multiple orders. CERT Officer Kirkland deployed his state-issued TASER to drive stun him in the lower back, with no effect. CERT SC/O Brown began giving straight strikes to Inmate Jackson's upper extremities to attempt to gain positive control of Inmate Jackson's arm. Inmate Jackson was still able to keep his hands tucked underneath him. |

Officer Kirkland gave several orders to Inmate Jackson to give up his hands, he still was refusing. Officer Kirkland administered a second drive stun to Inmate Jackson, but it seemed to be ineffective due to Inmate Jackson rolling and sporadically moving his torso away affecting the contact with the drive stun.

Officer Kirkland observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. Officer Kirkland gave Inmate Jackson one last verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. Officer Kirkland drive stunned him a third time which seemed to be effective as it was allowing the restraining officer to safely place wrist restraints on. CERT SC/O Brown was able to gain positive control of Inmate Jackson's arm, while Officer Kirkland was able to gain control of his other arm. CERT SC/O Davis and Officer Main were able to gain control of Inmate Jackson's lower extremities and apply leg restraints. Because of Inmate Jackson's aggressiveness and hostility, a spit mask was placed over his head. Inmate Jackson was assisted to his feet and placed into a modified escort and taken to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked by medical. Medical noted miner abrasions and cuts. Inmate Jackson was released by medical back to his cell. He was then escorted back to 2-B-36 without further incident.

| Staff Name | Participation |
|---|---|
| NORIEGA, MATTHEW | Reporting |

**Comment:** Camera

● Reports

| Report Type | Report Detail |
|---|---|
| INC028 | On 12-21-22 I SCO Noriega was working my assigned post as the unit 2 Senior Officer at Ely State Prison. At approximately 12:46 PM I was assigned as the camera man on a planned use of force on inmate Jackson NDOC# 1186781 housed in 2B36. This was due to a previous incident where he propelled on staff and later captured the inner portion of his red box during pill call. This inmate was given an opportunity to be restrained to which he refused. The door was |

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: DEC-21-23 08:44 AM

Page 3 of 7

**ER169**                    **ER169**                    **ER169**

# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | | | |
|---|---|---|---|
| **Investigator:** | | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | | **IA Number:** | **IA-** |
| **Disposition Date:** | | **IN Number:** | **IN-** |
| | | **Institution:** | ESP |

## Staff Involvement

● Reports

**Report Type**  **Report Detail**

ordered open, and the use of force team entered the cell. Once the inmate was restrained, he was hostile escorted to the shower where an unclothed body search was completed. This inmate was making threats during the entire process to everybody stating he is going to kill all of us. This inmate was then escorted to the hallway where he was evaluated by medical and released back to his assigned cell in 2B36. The incident was completed and the team went back to the unit 2 hallway to debrief on the incident.

| Staff Name | Participation |
|---|---|
| MAIN, ADAM | Reporting |

**Comment:** CERT UOF

● Reports

**Report Type**  **Report Detail**

USEOF   On December 21, 2022, I, Correctional Emergency Response Team (CERT) Officer A. Main, was working my scheduled shift at Ely State Prison (ESP). The team was dispatched to cell 2B36 for Inmate Jackson #1186781. I was informed he propelled on an officer and needed to have his property removed from his cell, per my supervisors. I was assigned as the fourth man in a planned use of force team due to Inmate Jackson refusing to submit to restraints and come out of his cell. It is noted that Jackson is on the desensitized list, meaning that we cannot use chemical agents in his cell. The team lined up on the cell door and the order was given to Inmate Jackson to submit to restraints and he refused. At approximately 1245 hours, the order was given to make entrance in the cell. Inmate Jackson was actively resisting officers and would not comply with orders to submit to restraints. I grabbed his right leg and held it down to prevent Inmate Jackson from kicking myself or my partners. I gained control of his right leg and applied leg restraints. The inmate was then moved to the shower for an unclothed body search, then taken to Unit 1 & 2 hallway to be evaluated by medical. Once cleared by medical, and the cell was emptied of property, Inmate Jackson was placed back in his cell at approximately 1304 hours. Throughout this incident, it should be noted that Inmate Jackson threatened myself and other officers stating he ?gets out soon? and would ?come find us? and stated he would kill us. No other force was used. End of report.

| Staff Name | Participation |
|---|---|
| BROWN, SHANE | Reporting |

**Comment:** CERT SCO UOF

● Reports

**Report Type**  **Report Detail**

USEOF   On December 21, 2022, I Senior Correctional Officer Brown was working my assigned post at Ely State Prison. At approximately 1245 Hours I was informed of Inmate Jackson NDOC

---

**ER170**                    **ER170**                    **ER170**

# State of Nevada
# Department of Corrections

Investigation Detail Report

---

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

---

## Staff Involvement

● Reports

| Report Type | Report Detail |
|---|---|
| | 1186781 housed in 2B36 propelled on an officer and needed to have his property removed from his cell, per my supervisors. I was assigned as the third man in a planned use of force team due to Inmate Jackson refusing to submit to restraints and come out of his cell. It is noted that Jackson is on the desensitized list, meaning that we can not use chemical agents into his cell. At approximately 1250 hours I was positioned at his door to make entrance, Jackson was ordered again to come to his door and submit to restraints, in which he refused. At that time, the order was given, and I made entrance into his cell. Jackson had retreated to the back of his cell and went onto his bunk not allowing me to grab his hands because they were tucked underneath his abdominal area. That is when I had not known if Inmate Jackson had a weapon or some type of object under him that could pose a threat to myself or others. I ordered Jackson to give me his hands multiple times and Jackson had refused all orders again. I delivered multiple straight strikes to Jacksons upper extremities until I had positive control of his right hand and he was able to safely be restrained. I then gave the order for the team to move Jackson to the upper left shower to conduct an unclothed body search. Jackson was giving threats to myself and other staff members during the entire search. Once the search was completed, Jackson was escorted to the Unit 1-2 hallway to be evaluated by medical. After the evaluation was completed, Inmate Jackson was escorted back to his cell in unit 2B36. No further incident. End of report. |

| Staff Name | Participation |
|---|---|
| KLEER, MACELEN | Reporting |

**Comment:** CERT UOF

● Reports

| Report Type | Report Detail |
|---|---|
| USEOF | On December 21, 2022 I Correctional Emergency Response Team Officer Kleer Macelen was working CERT my assigned post at Ely State Prison. A Planned Use of Force was authorized on Inmate Jackson #1186781 housed in 2B36, due to him propelling an unknown liquid on a officer earlier in the morning and refusing to come out the cell. Per policy if an Inmate propels on staff the Inmate has to be removed from the cell, and property be taken, and inventoried. Inmate Jackson is also on the desensitize list meaning he cant be gassed. I was assigned one position shield man. Once we arrived at the cell door (2B-36), at approximately 12:46pm, Inmate Jackson was ordered to submit to restraints. Inmate refused and retreated to the back of his cell. The signal was given to the control room to open the cell door. As I made entry inside the cell he was on his stomach with his head off to the right side watching us come inside the cell. I gave verbal orders to him to give us your hands multiple times as I walking to him. Both of his arms were tucked underneath his torso. Due to the possibility of a weapon being sheathed under him I hovered the shield over him and quickly realized he was not giving up his hands, as another officer was trying to pull out his arms free to restrain him and was unsuccessful. I quickly dropped the shield and attempted to gain positive control of his arm. Inmate Jackson was |

---

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: DEC-21-23 08:44 AM

Page 5 of 7

**ER171**                    **ER171**                    **ER171**

# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

## Staff Involvement

● Reports

**Report Type** | **Report Detail**

resisting making it difficult to move his arms from underneath him. Inmate Jackson stopped resisting after a effective dry stun. At this point I was finally able to gain control of his left wrist and place it on his lower back where I was able to safely restrained him. Inmate Jackson was escorted to the upper left shower where I held a shield up Inmate Jackson stated that he was going to kill me and other officers once he got out. After a unclothed body search was conducted he was instructed to submit to restraints to be taken to the hallway where medical could evaluate him. Inmate Jackson stated that he was not going to come out and that we were going to have to come in and get him. Inmate Jackson was passive aggressive and later submitted to being restrained and taken to the hallway where he was evaluated by medical. Inmate Jackson was then escorted back to 2B36 with no further issues. End of Report.

| Staff Name | Participation |
|---|---|
| KIRKLAND, DENT | Reporting |

**Comment:** CERT UOF

● Reports

**Report Type** | **Report Detail**

INC028 | On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: DEC-21-23 08:44 AM

**ER172**      **ER172**      **ER172**

# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

## Staff Involvement

● Reports

| Report Type | Report Detail |
|---|---|
| | medical. He was then escorted back to 2B36 without further incident. EOR |
| USEOF | On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by medical. He was then escorted back to 2B36 without further incident. EOR |

# EXHIBIT I

## MEDICAL REPORT ON CELL EXTRACTION

# EXHIBIT I

**ER174**               **ER174**               **ER174**

## MEDICAL REPORT OF INCIDENT, INJURY OR UNUSUAL OCCURRENCE

Institution: ESP                    Housing Location: 2B-36

1. Occurrence:    Place: 2B-36        Date: 12/21/22    Time: 1243

2. Medical Notified:  Date: 12/21/22      Time: 1243

3. Medical Arrived:   Date: 12/21/22      Time: 1243

4. Check boxes that apply:  ☐ Mandown  ☒ Non-Man Down  ☐ Altercation  ☐ Recreational  ☐ Self-Inflicted

5. AB389 occurrence      ☒ Yes    ☐ No      ☐ Release of Liability - if needed

6. Evaluation/Assessment Completed    Date: 12/21/22  Time: 1243

7a. Subjective: Brief description of the injury or unusual occurrence. (Include patient's own words, if possible):

Offender propelled on staff and captured food slot, offender refused to follow custody commands and was cons. extracted from cell, force was used, and offender was drive stunned with tazer x3. During escort to hallway to be medically evaluated Off was spitting at staff.

7b. Names of witnesses, summaries of their stories, insofar as available to medical officer attending case. and description of points of difference between their version and that of #7a above.

AW Drummond    Cert Kleer      RN Barajas
Cert Sgt Jacobs  Cert Kirkland    CNA Snow
Senior Brown     Cert Main
Senior Davis     RN Garcia

8. Objective: (Description and extent of injury)

T.P.R., BP 138/90  111  98%  16        Last Tetanus: _____

Allergies: _____

Epitaxis noted, Minimal, hematoma w/ 1inch above the (L) eyebrow. Skin discoloration congruent with early bruising to the (R) jaw redness to the back with o skin breakdowns or abrasions at this time., gait is steady, clear speech

9. Assessment: able to complete full sentences with ease and pulse needs known, face is symmetrical, mucus membranes moist, skin color for ethnicity, no signs of respiratory or physical distress.

10. Plan: (Include treatment regimen, follow-up visits, disposition).

instructed to kite medical if needed.

PROVIDER SIGNATURE: _____    TITLE: n    DATE: 12/21/22

NEVADA DEPARTMENT OF CORRECTIONS

## UNUSUAL OCCURRENCE
## REPORT

NAME: Jackson, Tavonake
        Last        First        MI

ID# 1176701    UNIT# 2B-36

Reference Medical Directive #412                    DOC 2514 (02/22)

**ER175**                **ER175**                **ER175**

# EXHIBIT J

## AR 740 EFF 2022-04-28 (FINAL)

# EXHIBIT J

ER176                              ER176                              ER176



## NEVADA DEPARTMENT OF CORRECTIONS
### ADMINISTRATIVE REGULATION

## OFFENDER GRIEVANCE PROCEDURE
## ADMINISTRATIVE REGULATION – 740

**SUPERSEDES:** AR 740 (02/12/10); AR 740 (Temporary 06/16/14); AR 740 (09/16/14); AR 740 (Temporary 01/03/17); AR 740 (03/07/17); AR 740 (08/30/17); AR 740 (Temporary 11/20/18); AR 740 (Temporary 04/15/22)

**EFFECTIVE DATE:** April 28, 2022

**AUTHORITY:** NRS 209.131; NRS 209.243; NRS 41.031; NRS 41.0322; NRS 41.0375; 34 U.S.C. § 30301, et seq., and Federal Register 28, Code of Federal Regulation (CFR) Part 115

### PURPOSE

The purpose of this Administrative Regulation (AR) is to set forth the requirements and procedures of the administrative process that Nevada Department of Corrections (NDOC and Department) offenders must utilize to resolve addressable grievances and claims including, but not limited to, claims for personal property, property damage, disciplinary appeals, personal injuries, and any other tort or civil rights claims relating to conditions of confinement. Offenders may use the Offender Grievance Procedure to resolve addressable offender claims only if the offender can factually demonstrate a loss or harm. This procedure describes the formal grievance process and will guide NDOC employees in the administration, investigation, response, and resolution of offender grievances.

The provisions of this AR are not retroactive and do not apply to incidents and/or claims that occurred prior to the effective date of this AR. Only offender claims arising out of, or relating to, issues within the authority and control of the NDOC, may be submitted for review and resolution by way of the grievance process. A good faith effort will be made to resolve legitimate offender claims without requiring the offender to file a formal grievance. This AR does not create any right, liberty, or property interest, or establish the basis for any cause of action against the State of Nevada, its political subdivisions, agencies, boards, commissions, departments, officers, or employees.

### RESPONSIBILITY

The Director, through the Deputy Directors, shall be responsible for establishing and supervising the offender grievance process that provides an appropriate response to an offender's claim, as well as an administrative means for prompt and fair resolution of offender problems and concerns.

**ER177**  **ER177**  ND<del>OC 000257</del> **ER177**

The Deputy Director and/or designee shall be responsible for Second Level Grievances. The Warden through the Associate Wardens (AW) shall be responsible for managing the grievance process at each institution including any facilities under the control of the parent institution. The AW may designate an Offender Grievance Coordinator to conduct functions required by this regulation under the AW's authority and supervision.

## 740.01   ADMINISTRATION OF OFFENDER GRIEVANCES

1. All grievances will be entered into Nevada Offender Tracking Information System (NOTIS), whether accepted or not.

2. Each institution and/or facility shall establish lockboxes in a location where all offenders have access to submit their grievances directly into the lockbox. The Warden will issue the keys to an AW and/or a designated staff member.

   A. Lockboxes will be maintained in segregation and maximum security housing units in a way the offender will be allowed to have direct access. Designated staff may go cell to cell to pick up grievances in segregation and maximum security housing units, due to security and safety concerns.

   B. Emergency grievances will be hand-delivered to any staff member for immediate processing.

3. Grievances will be treated as legal correspondence and will be gathered daily, Monday through Friday, excluding holidays, by the AW or designated Grievance Coordinator and/or designated staff member.

4. Grievance forms will be kept in housing units and may be accessed through unit staff, the unit Correctional Casework Specialist (CCS), and/or in the Institutional Law Library.

5. Grievances may be GRANTED, DENIED, PARTIALLY GRANTED, ABANDONED, DUPLICATE, NOT ACCEPTED OR GRIEVABLE, RESOLVED, SETTLED, WITHDRAWN; or referred to the Office of the Inspector General (IG) at any level, as deemed appropriate after the claim in the grievance has been investigated. All *Prison Rape Elimination Act* (PREA) grievances must be immediately referred to the IG. Grievance findings or responses will not be titled "Substantiated."

6. The Grievance Coordinator must record receipts, transmittals, actions, and responses on all grievances into NOTIS within three (3) working days of receipt.

   A. The Grievance Coordinator must sign, date, and enter the approximate time, as noted on the Informal Grievance Form (DOC 3091), First Level Grievance Form (DOC 3093), and Second Level Grievance Form (DOC 3094).

   B. The front page of the grievance must be date stamped on the day it is entered into NOTIS.

---

7. Monthly and annual grievance reports, generated by NOTIS, will be reviewed by the DDs, Wardens, and AWs on a quarterly and annual basis.

## 740.02  GRIEVANCE RECORDS

1. Grievance documents shall be stored at the facility and/or institution where the grievance was issued. The result of the grievance shall be input into NOTIS.

   A. Grievance files shall be in separate files for each offender and maintained in alphabetical order.

   B. Grievance copies shall not be placed in an offender's Institutional File (I-File) or Central file, nor shall they be available to employees not involved in the grievance process, unless the employee has a need for the information in the grievance or the responses to the grievance.

2. Grievance files shall be maintained at each institution for a minimum of five (5) years following the final disposition of the grievance.

3. Employees who are participating in the disposition of a grievance shall have access to records essential to the disposition of only the grievance.

4. Offenders will not have access to grievance records unless ordered by a court, as grievance records are considered confidential and may be redacted, if appropriate.

5. Upon completion of each level of the grievance process, the form, and copies of all relevant attachments shall be maintained in the offender's separate grievance file. Originals will be given to the offender.

## 740.03  GRIEVANCE ISSUES

1. Offenders may use the Offender Grievance Procedure to resolve addressable offender claims only if the offender can factually demonstrate a loss or harm. Grievances may be filed to include, but not limited to, personal property, property damage, disciplinary appeals, personal injuries, and any other tort claim or civil rights claim relating to conditions of institutional life. The offender must state the action or remedy that will satisfy the claim in the grievance.

   A. If the offender does not factually demonstrate a loss or harm and does not state the action or remedy that will satisfy the claim in the grievance, the grievance will not be accepted and will be returned to the offender with an explanation as to what was missing for the grievance to be processed.

   B. A grievance will not be used as an Offender Request Form (DOC 3012) to advise staff of issues, actions, or conditions that they do not like, but suffered no harm or loss.

    C. A grievance must be legible, with a clearly defined remedy request.

2. All allegations of offender abuse by Department staff, employees, agents, and/or independent contractors, shall be immediately reported to the Warden, AWs, and the IG, in accordance with investigator guidelines in the NOTIS reporting system.

    A. Any grievance reporting sexual abuse against an offender will be referred to the Warden or designee for entry into the NOTIS reporting system and referral to the IG.

    B. Offenders who allege abuse other than sexual abuse will be interviewed by a supervisor of the staff who allegedly committed the abuse to ascertain if he/she agrees to pursue administrative remedies, which will be documented in the NOTIS system.

3. All allegations of discrimination on the basis of disability shall be forwarded to the Facility ADA Coordinator and Associate Warden of Programs for expedited review and addressed by appropriate action. The time limit for a response to the informal grievance related to disability discrimination is 14-calendar days from the date the grievance is received by the ADA Facility Coordinator to the date returned to the offender.

4. Only offender claims occurring out of, or relating to, issues within the authority and control of the Department may be submitted for review and resolution. Non-grievance issues include:

    A. State and federal court decisions;

    B. State, federal, and local laws and regulations;

    C. Parole Board actions and/or decisions; and

    D. Medical diagnosis, medication, or treatment/care provided by a private/contracted community hospital.

5. Claims for which the offender lacks standing will not be accepted, including, but not limited to:

    A. Filing a grievance on behalf of another offender, unless the offender is so physically or emotionally handicapped and is incapable of filing a grievance, and with the other offender's approval, or in the case(s) of any third-party reporting of sexual abuse;

    B. The offender filing the grievance was not a direct participant in the matter being grieved, except for a third-party allegation of sexual abuse;

    C. An offender may not file more than one grievance per 7-day week, Monday through Sunday. More than one grievance filed during the 7-day week period will not be accepted unless it alleges sexual abuse or it is an emergency grievance that involves health or safety claims;

D. The inclusion of more than one grievance issue per form; and

E. Grievances that have the same issue in a previously filed grievance, even if the requested action or remedy is different on the subsequent grievance.

6. In the event an offender's claim is NOT ACCEPTED or not within the intended scope of this Administrative Regulation, the offender may not appeal that decision to the next procedural level. Instead, the offender must correct the issues that led to the rejection of the grievance, and follow the instructions provided on the Improper Grievance Memorandum DOC 3098, that the offender will receive at the time the rejected or NOT ACCEPTED grievance is returned.

7. An offender whose grievance is denied in its entirety, may appeal the grievance to the next level, within the substantive and procedural requirements outlined herein, unless the action requested has already been granted at a lower level.

A. Administrators or employees of the institution shall automatically allow appeals, without interference, unless the grievance is GRANTED.

B. An offender's refusal to sign and date any grievance form, at any level, shall constitute abandonment of the claim.

C. If the grievance is GRANTED or resolved by SETTLEMENT at any level, the grievance process is considered complete, the offender's administrative remedies exhausted, and the offender cannot appeal the decision to a higher level.

D. If the grievance is PARTIALLY GRANTED, DENIED, or RESOLVED at any level, the offender must appeal the response to the next grievance level in order for the grievance process to be considered complete and for the offender's administrative remedies considered to be exhausted. If the offender does not timely appeal the grievance to the next level, it will be considered ABANDONED or WITHDRAWN.

8. Time limits shall begin from the date an offender receives a response.

9. An overdue grievance response at any level, is not an automatic finding for the offender.

A. The response must be completed, even if it is overdue.

B. The offender may proceed to the next grievance level if a response is overdue.

C. The overdue response does not count against the offender's timeframe for an appeal if he or she waits for the response before initiating the appeal.

---

**AR-740**            **Offender Grievance Procedure**            **Page 5**

    D.  While an overdue grievance at any level is not an automatic finding for the offender, if the Second-Level Grievance response is overdue by more than sixty (60) days, the offender must follow the procedures set forth in Administrative Regulation 740.10.4.

10.  Offenders who participate in and/or utilize the Offender Grievance Procedure shall not be subjected to retaliation (i.e., an assertion that an employee took some adverse action against an offender for filing a grievance).

    A.  Retaliation is a grievance issue.

    B.  An unfounded claim of retaliation will be handled as an abuse of the grievance procedure and disciplinary action may be taken.

11.  Comprehensive responses are required for offender grievances. Statements such as "Your grievance is denied," are not acceptable. An explanation is necessary.

## 740.04   ABUSE OF THE OFFENDER GRIEVANCE PROCEDURE

1.  Offenders are encouraged to use the Offender Grievance Procedure to resolve addressable claims the offender can define a specific loss or harm; however, they are prohibited from abusing the system by knowingly, willfully, or maliciously filing excessive, frivolous, or vexatious grievances, which are considered an abuse of the Offender Grievance Procedure. Any of the below-listed violations will result in the grievance not being accepted and disciplinary action may be taken.

2.  Abuse of the Offender Grievance Procedure is considered when an offender files a grievance that includes but is not limited to:

    A.  A threat of serious bodily injury to a specific individual;

    B.  Specific claims or incidents previously filed by the same offender;

    C.  Filing two (2) or more emergency grievances in a 7-day week period, Monday through Sunday, which are deemed not to be emergencies may result in disciplinary action against the offender for abuse of the grievance system. Disciplinary action may be initiated by the Warden or designee for abuse of the emergency grievance process;

    D.  Obscene, profane, and derogatory language;

    E.  Contains more than one appropriate issue, per grievance;

    F.  The claim or requested remedy changes, or is modified from one level to another;

    G.  More than two Grievant Statement Continuation Forms (DOC 3097) per grievance; and

**ER182**          **ER182**          ND**ER182**

    H.  Alteration of the grievance forms or continuation forms. This includes writing more than one line on each line provided on the grievance form.

3.  If an offender files a grievance as listed in 740.04.2, the Grievance Coordinator shall:

    A.  Return the original, improper grievance with an Improper Grievance Memorandum (DOC 3098), noting the specific violation; and

    B.  Place a copy in the offender's grievance file.

4.  An offender who satisfies the criteria contained in 740.04.2 should be brought to the attention of the Grievance Coordinator as soon as possible.

    A.  The Grievance Coordinator should review all documentation supporting the alleged abuse to determine if abuse has occurred and forward a written recommendation to the Warden;

    B.  If the recommendation is approved, the Warden can assign the appropriate level supervisor or administrator to issue a Notice of Charges (NOC) to the offender;

    C.  The supervisor or administrator will forward the NOC to the Warden for processing through the offender disciplinary process;

    D.  A conduct violation of this nature is not a form of retaliation;

    E.  An offender may not be disciplined for filing a grievance related to alleged sexual abuse unless the Department has demonstrated that the offender filed the grievance in bad faith; and

    F.  NDOC will not respond to an improper grievance that results in an Improper Grievance Memorandum DOC 3098 under AR 740.

## 740.05  REMEDIES TO GRIEVANCES

1.  Grievance remedies should be determined with the goal of appropriately resolving legitimate claims at the lowest level of review possible, considering each institution's particular operational, security, and safety concerns.

2.  Grievance remedies available may include, but are not limited to, the following:

    A.  Resolve unsafe or unsanitary conditions of confinement;

    B.  Address the violation of an offender's constitutional, civil, or statutory rights;

    C.  Protect offenders from criminal or prohibited acts committed by Department

employees or other offenders;

D. Revise, clarify and implement written Departmental and institutional rules or procedures necessary to prevent further violations;

E. Provide an offender with a disability or physical impairment with reasonable accommodation or reasonable modification; and

F. Monetary reimbursement for property loss, damage, personal injury, tort, or civil rights claims arising out of any act or omission of NDOC or any of its agents, former officers, employees, or contractors.

3. The staff person rendering a decision on a grievance for a proposed monetary remedy may submit their findings to the Deputy Director of Support Services, who may award monetary damages at any level of the Offender Grievance Procedure. Once approved:

A. An Administrative Claim Release Agreement (DOC 3096) will be completed and submitted by the offender on all monetary claims, except for personal property damage or loss;

B. A Property Claim Release Agreement (DOC 3027) will be completed and submitted by the offender on all monetary claims for personal property damage or loss; and

C. When property claims are settled informally at an institution, a Property Claim Release Agreement (DOC 3027) will be completed.

4. Compensation for loss of personal property, property damage, personal injury, or any other claim arising out of a tort shall not exceed $500.00.

## 740.06   OFFENDER TRANSFERS

1. Offenders transferred to another institution pending the resolution of a filed grievance shall have the grievance completed at the sending institution at all levels.

A. The receiving institution is responsible for logging in and tracking the grievance through NOTIS.

B. All responses and correspondence shall be conducted via first-class mail to the Grievance Coordinator at the receiving institution.

2. Timeframes do not apply if the offender has been transferred. Grievances shall be processed as soon as practicable, and timeframes shall be adhered to as closely as possible. If an offender's sentence expires and/or they leave the Department on parole, the grievance will be finalized at the current level. No further appeal may occur. It is the responsibility of the

NDOC 000064

offender to provide a forwarding address during the release process to receive a grievance response.

## 740.07  EMERGENCY GRIEVANCE PROCEDURE

1.  An emergency is an issue or situation that is life-threatening for the offender or a safety and security risk for the institution.

2.  An Emergency Grievance (DOC 1564) received by any staff member shall be immediately delivered to the nearest supervisor, no later than is reasonable and necessary, to prevent serious injury or a breach of security. The Emergency Grievance shall be reviewed within 24-hours of receipt and documented in NOTIS.

3.  Any Emergency Grievance alleging that an offender is subject to a substantial risk of imminent sexual abuse, must be immediately forwarded to the highest-ranking staff member on duty so that corrective action may be taken immediately, which may include moving the offender to administrative segregation for protective custody.

    A.  The offender shall receive a response to the emergency grievance within 24-hours, with a final facility decision about whether the offender is at substantial risk of imminent sexual abuse within two (2) regular calendar days.

    B.  The response, final decision, and the action taken in response to the Emergency Grievance will be documented. Action taken may include, but is not limited to:

        1) Refer the information to the IG;

        2) Afford the offender appropriate medical, mental health care; and

        3) Address any safety considerations.

4.  The shift supervisor may consult with the on-duty medical staff, Warden, or AW, to determine whether the grievance constitutes an emergency.

5.  The highest-ranking staff member on duty, with the aid of an authorized Department official, shall immediately take any corrective measures necessary to prevent a substantial risk of injury or breach of security.

6.  The Department official receiving the Emergency Grievance should respond to the filing offender no later than is necessary to prevent serious injury or a breach of security.

7.  In the event the offender requests further review of a claim not deemed an emergency, the offender may file a grievance appeal commencing at the Informal Level.

8.  A copy of the Emergency Grievance will be forwarded to the Grievance Coordinator for entry into NOTIS for processing and tracking purposes.

## 740.08   INFORMAL GRIEVANCE

1.  At the Informal Level, an offender shall file an Informal Grievance (DOC 3091) after failing to resolve the matter by other means, such as discussion with staff or submitting an Offender Request Form (DOC 3012).

2.  Grievances should be reviewed, investigated, and responded to by the Department supervisor that has responsibility for the issue that is being grieved or designated person.

    A.  High-Risk Prisoner (HRP) status. HRP is a high-risk offender that creates a risk to other offenders and staff.

        1)  Informal-level grievances will be responded to by the Warden or designee.

        2)  First-level grievances will be responded to by the Deputy Director or designee.

        3)  Second-level grievances will be responded to by the Director or designee.

    B.  Informal grievances addressing medical or dental issues should be responded to by the Charge Nurse or designee of the Director of Nursing at the institution.

    C.  Informal grievances addressing mental health issues should be responded to by the Psychologist III or Mental Health Supervisor at each facility.

    D.  Informal grievances addressing discrimination based on a disability shall be forwarded to the Facility ADA Coordinator and/or AW Programs for expedited review and addressed by the appropriate action.

    E.  If the person who would normally respond to a grievance is the subject of the grievance, the supervisor over the person should respond to the Informal Grievance.

3.  The response to the grievance should be substantial, referencing all policies, procedures, rationale, and/or circumstances in finding for or against the offender.

4.  The offender must file an Informal Grievance within the following timeframes:

    A.  Within six (6) months, in compliance with NRS 209.243, if the issue involves personal property damage or loss, personal injury, medical claims, or any other tort claims, including civil rights claims.

---

B. Within 10-calendar days if the issue involves any other issues within the authority and control of the Department including, but not limited to, classification, disciplinary, mail and correspondence, religious items, and food.

C. When a grievance cannot be filed because of circumstances beyond the offender's control, the time will begin from the date on which such circumstances cease to exist.

D. Timeframes are waived for allegations of sexual abuse and disability discrimination regardless of when the incident is alleged to have occurred.

5. An offender must use a Grievant Statement Continuation Form (DOC 3097) if unable to present the details of their claim in the space provided; limited to a maximum of two continuation form pages. All documentation and factual allegations available to the offender must be submitted at this level with the grievance.

6. All grievances submitted should also include the remedy sought by the offender to resolve this claim. Failure to submit a proposed remedy will be considered an improper grievance and shall not be accepted.

7. If the offender's remedy to their grievance includes monetary restitution for damages the offender must obtain the following forms from unit staff, unit CCS, or law libraries.

A. Offender Personal Property Claim Form (DOC 3026) must be completed and submitted in addition to the grievance for all property loss or damage claims.

B. Administrative Claim Form (DOC 3095) which shall be completed and submitted in addition to the grievance for all personal injury, tort, or civil rights claims.

8. Failure by the offender to submit a proper Informal Grievance (DOC 3091) form to the Grievance Coordinator or their designee within the timeframe noted in 740.08.4, shall constitute abandonment of the offender's grievance at this and all subsequent levels.

A. When overdue grievances are received, they will be logged in to NOTIS.

B. The Improper Grievance Memorandum (DOC 3098) will note that the offender exceeded the timeframe, and no action will be taken.

9. If the issue raised is not grievable, or the grievance is a duplicate of a prior grievance, the Grievance Coordinator will return the grievance to the offender with an Improper Grievance Memorandum (DOC 3098) noting the reason.

10. The offender shall file an Informal Grievance (DOC 3091) that states "for tracking purposes" when an issue goes directly to the Warden (first level) for a decision such as disciplinary appeals, denied visits, any allegation of sexual abuse, or mail censorship.

11. Grievances alleging staff misconduct pursuant to Administrative Regulation 339 Code of Ethics Employee Conduct, will be reviewed by the Warden, and if deemed appropriate, will be forwarded to the IG through NOTIS.

   A. The Informal Response will reflect initiation of the action.

   B. The IG must respond to this allegation within 90 days.

12. The time limit for a response to the Informal Grievance is 45-calendar days from the date the grievance is received by the Grievance Coordinator to the date returned to the offender. The time limit for a response to the Informal Grievance related to disability discrimination is 14-calendar days from the date the grievance is received by the ADA Facility Coordinator to the date it is returned to the offender.

   A. The offender must file an appeal within 5-calendar days of receipt of the Informal Grievance response to proceed to the next grievance level.

   B. If the offender has relocated to another facility from where the incident occurred, transmission of the grievance to another institution may result in exceeding the 5-day timeframe.

## 740.09   FIRST LEVEL GRIEVANCE

1. A First Level Grievance (DOC 3093) should be reviewed, investigated, and responded to by the Warden at the institution where the incident being grieved occurred, even if the Warden is the subject of the grievance.

   A. The Warden may utilize any staff in the development of a grievance response. The grievance will be responded to by a supervisor that has authority over the issue claimed in the grievance.

   B. First Level medical/dental issues should be responded to by the highest level of nursing administration at the institution, the Director of Nursing.

   C. First Level mental health issues should be responded to by the Psychologist IV or the highest-ranking Psychologist at the institution.

   D. First Level property issues should be responded to by the Associate Warden Operations.

2. All grievances containing allegations of sexual abuse will be referred to the IG for investigation.

   A. Allegations of sexual abuse will not be referred to a staff member who is the subject of the accusation of sexual abuse.

   B. The IG shall make a final decision on the merits of any portion of the sexual abuse grievance within 90-calendar days of the initial filing of the grievance, and if applicable, the matter assigned for an official investigation.

   C. The IG may extend the time required to respond an additional 70-calendar days to respond to a sexual abuse grievance if the time period for response in 740.09.2.B is insufficient to make an appropriate decision.

   D. The IG shall notify the offender in writing of any such extension and provide a date by which a decision will be made.

   E. Upon the completion of the investigation into sexual abuse, the offender shall be informed of the outcome of the investigation by the IG.

3. All grievances containing allegations of disability discrimination will be referred to the statewide ADA Compliance Officer for investigation.

4. The offender shall provide a justification for continuing to the First Level.

5. A First Level Grievance that does not comply with procedural guidelines shall be returned to the offender, with instructions for compliance using the Improper Grievance Memorandum (DOC 3098).

   A. Third parties, including fellow offenders, staff members, family members, attorneys, and outside advocates, shall be permitted to assist offenders in filing a grievance(s) relating to allegations of sexual abuse.

   B. If a third party files on behalf of the offender, the facility may require as a condition of processing the request that the alleged victim agreed to have the request filed on his or her behalf.

   C. If a third party files on behalf of the offender, the facility may also require as a condition of processing the grievance, the alleged victim to personally pursue any subsequent steps in the grievance process.

6. The time limit for a response to the offender for a First Level Grievance is 45-calendar days from the date the grievance is received by the Grievance Coordinator to the date it is returned to the offender.

---

A. The offender must file an appeal within 5-calendar days of receipt of the First Level response using a Second Level Grievance (DOC 3094) to proceed to the next grievance level.

B. If the offender has relocated to another facility from where the incident occurred, transmission of the grievance to another institution may result in exceeding the 5 day timeframe.

## 740.10    SECOND LEVEL GRIEVANCE

1.  A Second Level Grievance (DOC 3094) should be reviewed and responded to by the:

    A. The Deputy Director of Operations for facility custody or security operations that do not include programs;

    B. The Deputy Director of Programs for all program issues such as education, visiting, or religious programming;

    C. The Deputy Director of Support Services for fiscal, property, and telephone issues;

    D. The Offender Management Administrator for classification and timekeeping issues;

    E. The Medical Director for medical/dental issues, including medical co-pays or charges;

    F. The Mental Health Director for mental health issues; and

    G. The offender may appeal the decision related to a sexual abuse grievance response from the IG within 5-calendar days of the grievance. The appeal should be reviewed and responded to by the Deputy Director of Operations or Deputy Director of Programs.

2.  The Grievance Coordinator shall forward copies of all related documents and the appeal to the respective Deputy Director for review and distribution to other Appointing Authorities and Division Heads.

3.  The time limit for a response to the offender for the Second Level Grievance is 60-calendar days, not including transmittal time, from the date the grievance is received by the Grievance Coordinator to the date it is returned to the offender.

4.  If the Second-Level Grievance is not responded to within 60-calendar days, the offender must submit an Offender Request Form (DOC 3012) to the individual responsible for providing the response to the Second Level Grievance. The Offender Request Form must include a copy of the overdue grievance, or alternatively, provide the grievance number so that the individual responsible for providing a response will be able to ascertain which grievance the offender is referencing in the DOC 3012. If the individual does not provide a response to the DOC 3012

seeking a response or to the underlying grievance within 60 days of receipt of the DOC 3012 seeking a response, the offender will have exhausted the administrative remedy process. The response provided to the offender may inform the offender that additional time is necessary to respond as opposed to a response on the merits of the grievance. If the response informs the inmate that additional time is necessary, then the offender must be provided a timeframe in which a response will be provided. If that timeline is not met, the grievance process will be considered exhausted.

5. Administrators shall respond to the Second Level Grievance, specifying the decision and the reasons for the decision, and return it to the Grievance Coordinator.

## APPLICABILITY

1. This Administrative Regulation requires an Operational Procedure for each institution and facility.

2. This Administrative Regulation requires an audit.

**REFERENCES:** ACA Standards, 5th Edition 5-ACI-1F-11, 5-ACI-3D-03, 5-ACI-3D-19, 5-ACI-5E-02, 5-ACI-5E-03, 5-ACI-6A-01, 5-ACI-6B-02, 5-ACI-6C-01, 5-ACI-6D-02

_____
Charles Daniels, Director

_4-28-22_
Date

---

# EXHIBIT K

## GRIEVANCE HISTORY REPORT

# EXHIBIT K

**ER192**               **ER192**               **ER192**

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| INMATE NAME | | NDOC ID | BOOKING ID |
|---|---|---|---|
| **JACKSON, TARONTAE** | | **1186781** | **2020-101720** |
| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
| 20063157979 | 10/09/2023 | GRIEVANCE | MEDICAL |
| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
| 10/09/2023 | IF | | DRUMMOND, DAVID |

Proposed Response: 10-4-23

For the last week medical staff has once again failed to give me my pain meds for my head

remedy: 90,000 for serious medical needs

Official Response: I/M signed-dated 11-3-23
DOC-3098 Missing admin form, and not a kite

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063157264 | 09/22/2023 | GRIEVANCE | PROPERTY |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 09/22/2023 | 1 | | MOSKOFF, STEFFEN |

Proposed Response: 9/14/23

No response has been answered I attached everything I was told to attach that grievance was dated 4/26/23. my informal is attached for review and answer. My remedy is still the same

remedy: all my property retuned or a used working tv.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 09/22/2023 | IF | | MOSKOFF, STEFFEN |

Proposed Response: 4-26-23  (Do not have record of recieving this)

On April 6th, 2023 Cert Officer did a cell extraction cell 9-a-13 they had me strip out of my clothes which was my basketball shorts, blue shirt, thermals top and bottom. And was handed my Blue tshirt and boxes and was placed in cell 9-a-1 cert officer Kirkland gives me an unauthorized form for 1 fire box no name and headphones.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/02/2023 | 1 | DENIED | GITTERE, WILLIAM |

Proposed Response:

Official Response: I/M signed no date
inmate Jackson DOC# 1186781

I am in receipt of your First level grievance log number 2006.31.57264 regarding your claim that ESP lost your property.

Inmate Jackson, as stated in the informal you signed for your property on 4/14/23 and failed to note any discrepancies. Additionally, you have failed to attach any receipts for the items you claim are missing due to these facts your grievance is denied.

Grievance Denied

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/02/2023 | IF | DENIED | MOSKOFF, STEFFEN |

Proposed Response:

Official Response: Inmate Jackson DOC# 1186781

I am in receipt of your informal level grievance log number 2006.31.57264 regarding your claim that ESP lost your property.

Inmate Jackson, you signed for your property on 4/14/23 and noted no discrepancies due to this fact your grievance is denied.

Grievance Denied

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063154367 | 06/30/2023 | GRIEVANCE W/STAFF ISS | PREA STAFF ISSUE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/30/2023 | IF | | SHIELDS, BRYAN |

Proposed Response:

Official Response: This was referred back to the institution not meeting PREA standards.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/30/2023 | IF | | , |

Proposed Response: 6-29-23
June 29th 2023 around 7AM the Nurse gave me my meds i told her she was Beautiful c/o Andrew said something i told him i have Freedon of speech he stated Well How Would You like if i daid i want to Fuck You in Your Ass. im so sick of c/o's dex playing me i have No reason to lie word to God But i am sick of Being sexually harrashedBy NDOC officer its sick mentally since i gotta go to court which i am im requesting 500,000 for sexually harrashment on officer Andrew

Official Response: I/M signed & dated 8/01/23 tb
DOC - 3098 Missing admin claim form - referred to the IG's office.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063152346 | 05/15/2023 | GRIEVANCE | OTHER |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 05/15/2023 | IF | | STOLK, MELINA |

Proposed Response: 5-10-23
Due to all the abuse death threats mistreament being locked up in punitive Seg not being able to talk to kids ans family....ect...
See attached page
Remedy: I'm suing NDOC in the amount of 2.5 million in punitive damages increased in depression meds

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/21/2023 | IF | | DRUMMOND, DAVID |

Proposed Response: 6-18-23
I need the high level to review no response to my Informal

Official Response: DOC - 3098 time remaining on Informal level to be answered.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/18/2023 | IF | DENIED | COOKE, TASHEENA |

Proposed Response:

Official Response: I/M signed & dated 8/01/23 tb
HRP Inmate Jackson, Tarontae #1186781 I am in receipt of your Informal grievance as it relates to the alleged housing in administrative segregation, abuse, mistreatment, and use of force that you have been subject to while in Nevada Department of Correction (NDOC) and the affects that these allegations have had on your mental health.

You are in Administrative Segregation due to the fact you are High Risk Potential (HRP) because of Offense In Custody (OIC) # 515084 in which you were charged for an MJ3: Battery against staff. Per AR 521.01 (2) Maximum custody classification criteria includes the following: (A) Offenders designated as High-Risk-Potential (HRP); and. It should also be noted that you have been found guilty of six Major Disciplinaries and at the time of this response pending a MJ32: In Unauthorized area / Hiding this is the reason for your housing.

You have alleged several things in this grievance but provided no information for investigative purposes.

However, the Use of forces will be addresses. All use of forces are reviewed Per AR 405.13. Furthermore, you are familiar with AR 740 that allows you to Grieve issues or concern within NDOC. AR 740 (11) Grievances alleging staff misconduct pursuant to Administrative Regulation 339 Code of Ethics Employment Conduct, will be reviewed by the Warden, and if deemed appropriate, will be forwarded to the IG through NOTIS.
If you would like to be seen by mental health professionals please contact medical using the medical kite or send a kite to your case worker.

Your remedy is noted and denied. Grievance denied

ER196          ER196          ER196

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063151548 | 04/24/2023 | GRIEVANCE | PROPERTY |
| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
| 04/24/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 4-09-23
Retaliation is the issue April 6, 2023 I was extracted from my cell with no problems however I was later handed an unauthorized form for two items however I never got my property til days later after speaking with Warden and case worker minutes later Cert Sgt. returned some of my property
See attached page
Remedy: My remedy for this is $85,000.00 for punitive damages as to this being the 3rd retaliation this year

Official Response: I/M signed and dated on 5-12-23 ms
DOC - 3098 No claim form  - No U/A form



# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063151384 | 04/19/2023 | GRIEVANCE | FOOD |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/19/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 4-12-23
April 6-20-23 @ 8:00am I had telephonic conference with IG investigator, Mr David Hasley stated since you like writing griecances on my co-workers and getting the IG's involved you snitch I'm not feeding you you shit today tell the IG's on that I tole him that I sure would be, he stated I bet this write up would in before your lawsuit to prove I'm not a liar April 6 2023 you will see on video he did not feed me but fed the whole Unit 9 A theres video and proof I had a visit with the IG's office check the visit logs. NDOC this is the 2nd time your officers has retaliated on me I'm sick of it.
Remedy: Is 75000 for racially disctrimination and reataiation and tell your officers to leace me alone and stop writing me up for false write ups and I will be goingto Federal Court Nothing Less.

Official Response: I/M signed and dated on 5-12-23 ms
DOC - 3098 no claim form

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/05/2023 | IF | | JONES, TIMOTHY |

Proposed Response: 5-12-23
Retaliation is the issue on April 6th 2023 at 8:30am I had a telephoni conference with IG investigator, Mr. David Halsey stated...ect.....See attached pages
Remedy:75,000 in damages...ect.....See attached

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/28/2023 | IF | | DRUMMOND, DAVID |

Proposed Response: 6/26/23
No response i need the high levels to review remedie stay the same 75,000

Official Response: I/M signed & dated 8/01/23 tb
DOC 3098 Per AR 740 you cannot move on to the next level if it hasnt been passed the 45 days.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/26/2023 | IF | DENIED | JONES, TIMOTHY |

Proposed Response:

Official Response: I/M signed & dated 8/01/23 tb
Inmate: Jackson, Tarontae 1186781

I am in receipt of your Informal grievance log number 20063151384 as it relates to your grievance over staff retaliation.

Your grievance is denied, based on hearsay and not enough factual evidence.

Grievance denied.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063150743 | 03/30/2023 | GRIEVANCE | GRIEVANCES |
| **DATE RETURNED** | **LEVEL** | **FINDING** | **ASSIGNED TO** |
| 03/30/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 3/15/23
I need the high level officals to review. This its been well over 45 day.

Official Response: I/M signed and dated on 5-12-23 ms
DOC 3098 Duplicate 2006-31-47811 you received the informal back on 3/29/23.



# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063150070 | 03/17/2023 | GRIEVANCE | DISCIPLINE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/17/2023 | 1 | | RIVERA, RAY |

Proposed Response: 2/27/23 I never did grab any officer during the time they all 3 slammed my arm in the food flap and beat my arm there's also video footage that would prove; I never did grab any officers I also called these CO's as witnesses and other inmates who witnessed the whole situation. See attached page.
Remedy: I'm asking the high level offical to drop this charge and drop all restrickion this my remedy.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/17/2023 | IF | | , |

Proposed Response: 2/27/23
" For tracking purposes only."
Official Response: advanced to 1st level

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 05/24/2023 | 1 | DENIED | GITTERE, WILLIAM |

Proposed Response:

Official Response: I/M signed and dated on 6-14-23 ms
WARDEN?S FINDINGS AND DECISION: On 1/05/2023 you were found guilty of the charge of MJ 40: Propelling. Your appeal was reviewed by me.  Please note that, per AR707, I am to consider three factors when deciding an appeal:
 1 whether there was substantial compliance with requirements of the Inmate Disciplinary Manual,
 2: whether the Disciplinary Hearing Committee?s decision was based on some evidence, and
 3: whether the sanctions imposed are appropriate.
After reviewing the Notice of Charges Statement and available evidence, I have found that there is sufficient evidence to support the findings.  I have found that the policies were followed in relation to the Disciplinary Process and the sanctions imposed are in accordance with the Disciplinary Sanctions outlined in AR 707.  Therefore, I find you were charged appropriately and within the guidelines of The Code of Penal Discipline.
You state that you never grabbed the officer through the food slot, yet the officer?s report indicates that you did in fact grab him to the extent that he suffered injuries as well as his uniform shirt being ripped. Per AR 707.07(A). Any finding of guilt must be based on some evidence, regardless of the amount and the evidence used shall be documented. The officer?s report was taken into consideration when you were found guilty. You go on to argue that you were not allowed to call witnesses. There were in fact witnesses listed in your Disciplinary form both II and III. Furthermore, Per AR 707.01(10)(a) Witnesses at Disciplinary Hearings: The Disciplinary hearing Officer/Full Disciplinary Hearing Committee may deny any witness if it is felt that the testimony would be irrelevant, redundant, hazardous to the security of the institution/facility, or would in any way endanger the safety of any individual, including the witness. You go on to further state that you were not allowed to see the video footage of the incident and that it is unfair. Per OP 400.07 Camera system prohibitions-Due to security reasons no inmates shall be allowed to view any camera footage.
Remedy of dropping charge and give back restrictions in noted and denied. Grievance denied.

Report Name: NVRIGH

Page 8 of 39

Reference Name: NOTIS-RPT-OR-0128.4
Run Date: DEC 20 23 09:41 AM

ER200

ER200

ER200

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063149269 | 03/02/2023 | GRIEVANCE W/STAFF ISS | STAFF PERFORMANCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/02/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 2/15/23

Failure to act on constitutional violations on Warden Cooke grievance coordinator who knew inmates was being assaulted by CERT team officers at Ely prison and did nothing to stop officers using excessive force on inmates there was excessive force used on my friend sean harvell 88268 couple months before i arrived at ely prison along with other inmates.

See attached 1 pg

Official Response: I/M signed and dated on 3-29-23 ms
DOC 3098 You cant not grieve for another inmates

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/14/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 3-29-23

Failure to Act/Train on constitutional violations on Cooke and Drummand who knew inmates was being abused by CERT Team offiers a tEly Prison and did nothingto stip officrs using excessive force on inmates.
See attached page
Remedy: There for my remedy goodtime wortime back during this Prison B/d within 30 days and I want a T.V.  and cable cord. if not I would be proceeding to Federal Court on both Wardens for $25000 each

Official Response: I/M signed and dated on 5-12-23 ms
DOC - 3098 can not grieve for another Inmate

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/05/2023 | IF | | DRUMMOND, DAVID |

Proposed Response: 5-12-23

Grievance coordinator Cooke you have rejected 2 of my Informals for grieving for another inmate. My grievances clearly shows that you and Drummond failed to even act and train yall officers...ect.....See attached page
Remedy: There I'm suing both wardens...ect.....See attached

Official Response: I/M signed and dated on 6-14-23 ms
DOC - 3098 need date and times you were involved

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063147962 | 01/25/2023 | GRIEVANCE | DISCIPLINE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/25/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 1/5/22

For tracking purposes only First level on Jan 5 2023 found guilty of propelling I was never giving any disciplinary form  but there is proceeding record. On Dec 21st 2022 Officer Stolks walks pass and not give me my tray like you will see on video Mr Stolk pull some kind of stunt im in my window i have a red box on my door this door im in do not allow me to throw anything out the side.

See attached I feel so racially discriminated for these punishments.

Official Response: I/M signed & dated 2/7/23 tb
DOC 3098 First level Missing forms I,II

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/27/2023 | 1 | | RIVERA, RAY |

Proposed Response: 2/7/23

Ok everthing resubmitted im asking the high level officials to view this false charge by Sgt. Stolk I never did throw anything at this man whats so ever hes mad because i called him a bitch if you go look at the video it would clearly show i never thow anything at him therfore please drop this charge and give back all restictions.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/27/2023 | IF | | , |

Proposed Response: 2/7/23
For tracking purposes only
Official Response: Advance to first level

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 05/24/2023 | 1 | DENIED | GITTERE, WILLIAM |

Proposed Response:

Official Response: I/M signed and dated on 6-14-23 ms

WARDEN?S FINDINGS AND DECISION: On 1/05/2023 you were found guilty of the charge of MJ 40: Propelling

. Your appeal was reviewed by me.  Please note that, per AR707, I am to consider three factors when deciding an appeal:

1 whether there was substantial compliance with requirements of the Inmate Disciplinary Manual,

2: whether the Disciplinary Hearing Committee?s decision was based on some evidence, and

3: whether the sanctions imposed are appropriate.

After reviewing the Notice of Charges Statement and available evidence, I have found that there is sufficient evidence to support the findings.  I have found that the policies were followed in relation to the Disciplinary Process and the sanctions imposed are in accordance with the Disciplinary Sanctions outlined in AR 707.  Therefore, I find you were charged appropriately and within the guidelines of The Code of Penal Discipline.

You state that you never threw anything on Sergeant Stolk but admit to misconduct by calling him a ?Bitch?. You also state that video evidence would show that you did not propel. Per AR 707.07(A). Any finding of guilt must be based on some evidence, regardless of the amount and the evidence used shall be documented. The officers report was taken into consideration when you were found guilty.

Remedy of dropping charge and give back restrictions in noted and denied. Grievance denied.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063147811 | 01/19/2023 | GRIEVANCE W/STAFF ISS | DISCRIMINATION |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/19/2023 | IF | | JONES, TIMOTHY |

Proposed Response: 1/12/23
Retaliation is the issue Dec 15th 2022 I was sent to Ely for work stopage and battery and was place in the holw Dec 16th 2022 around 8am or 9am Sgt. Stolk gets called to my door I asked him about when could i get my property because its been well over 72 hrs. Since i have not showed Sgt. Stolk made a smart remark i then became upset and called him a bitch Stolk and cert team later came by my door stated we gone have fun beating your ass.

See attached 2 pgs

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/15/2023 | IF | DENIED | DRUMMOND, DAVID |

Proposed Response:

Official Response: I/M signed and dated on 3-29-23 ms
HRP Inmate:Jackson, Tarontae 1186781

I am in receipt of your Informal grievance log number 20063147811 as it relates to your grievance on retaliation.
Inmate Jackson your grievance is denied. PER OP 733.09 any inmate who propels any substance will be subjected to having their property removed from the cell. You refused to exit the cell which led to a planned use of force. At no time was forced used to retaliate against you. Property also handles property in the order it is received they do not go out of their way to complicate their functions.

Grievance denied.

Report Name: NVRIGH
Reference Name: NOTIS-RPT-OR-0128.4
Run Date: DEC 20 23 09:41 AM

**ER204**

**ER204**

Page 12 of 39

**ER204**



# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063147511 | 01/10/2023 | GRIEVANCE | MEDICAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/10/2023 | IF | | COOKE, TASHEENA |

Proposed Response: 12/29/22
Dec 14th I was told to roll up at SDCC I told officers who rolled my property up that i have KOPS including mental health mealsSgt. Dontae told me i couldnt have them on me during transport and he'll just put them in my box. We will see once i got to Ely Dec 15th 2022.

See attached 2 pgs

Official Response: I/M signed & dated 1/13/23 tb
Doc 3098 More than 1 issue

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/25/2023 | IF | | PERKINS, MICHELLE |

Proposed Response: 1/13/23
Ely state prison has failed to give me my mental health meds for 2 days after already been told that i have them and need take them every morning which they failed to follow therefore intentinally interring with treatment once prescribed by a doctor constitutes deliberate indifference to serious medical needs.

See attached 1 pg

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/21/2023 | IF | DENIED | CICILIANO, STEPHANIE |

Proposed Response:

Official Response: I/M signed and dated on 5-12-23 ms
Offender Jackson, Tarontae #1186781, Log Number 2006-31-47511.I am in the receipt of your Informal Grievance. The Chief of complaint that you state is, "you didn't receive your KOP medication once transported to Ely State Prison, and the monetary compensation that your seeking is $90,000.

Offender Jackson, Tarontae #1186781 KOP means keep on person medications. The medications that were prescribed to you were ordered as KOP from SDCC. It is your responsibility to keep your medications on you when being transferred to another facility.

Grievance is Denied and no monetary compensation will be granted.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/06/2023 | 1 | | PERKINS, MICHELLE |

Proposed Response: 5-12-23
I also take medication for my migraine headaches nurs staff knew I take and I also told staff members when rolled my property up that I have KOP's they said I couldn't have them on me. I also informed your medical staff upon arrival that I take and need every morning therefore my remedy remain the same.$90,000 for intentionally interferring with proscribed medication past pain and suffer and punitive damages everything attached.

Official Response:

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/12/2023 | 1 | DENIED | PERKINS, MICHELLE |

| Proposed Response: | |
|---|---|
| Official Response: | I/M signed and dated on 6-14-23 ms |

Offender Jackson, Taronte #1186781, Log number 2006-31-47511. I am in the receipt of your First Level Grievance. The Chief of complaint that you state, "your KOP were not sent with you when you left SDCC." This resulted that you were not able to have your prescribed psychiatric medications.

"You are seeking monetary compensation in the amount of $90,000 for pain and suffering."

Offender Jackson again, it is your responsibility to keep your medications on you while transferring to another facility. Due to your inability to bring your KOP medications with you to ESP on 12/15/23, this resulted a delay on your part. Per pharmacy records the medical staff contacted pharmacy regarding your KOP medications. Per pharmacy the shipment of your KOP medications arrived to ESP in a timely manner.

At ESP facility Per AR 508 when housed within the medical infirmary all KOP medication will become pill line except ADA offenders. I am not in the position to grant monetary compensation.

Grievance is Denied.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063146909 | 12/27/2022 | GRIEVANCE | USE OF FORCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 12/27/2022 | IF | PARTIALLY GRANTED | UNDERWOOD, JAMES |

Proposed Response:

Official Response: I/M signed & dated 1/17/23 tb
Inmate Jackson, I am in receipt of grievance 2006-31- 46909 in regard to your use of force allegations.
Your grievance is partially granted as it has been referred to the IG?s office for further investigation.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 12/27/2022 | IF | | , |

Proposed Response: 12-22-22
Dec. 21st officers used use of force because I refused to cuff up after that I went to lay down on my bed with my hands behind my back. Officers then came insid hit me in my facemouth til, I started to bleed andboth eyes were black. During all this officers tased me for no reason 2 times they did all this.
See attached 2 pages.
I want a TV and cable cord as soon as this get look'd at while i'm waitiny to gi gine, U aksi wabt 599 dikkars ib nt biijs fir oaub abd syfferubg abd fir iffucers ysubg excessuve force abusing me and punching me I will be appealing when it's tome to. etc.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/05/2023 | 1 | | UNDERWOOD, JAMES |

Proposed Response: 3-29-23
No response after 90 days I need the high level officals to review.
Remedy: Stay the same, All good time work time back that I lost and a T.V. with cable cord, 500 dollars on my books.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/25/2023 | 1 | NOT TIMELY | COOKE, TASHEENA |

Proposed Response:

Official Response: I/M signed and dated on 5-12-23 ms
DOC 3098 Out of time frame, Grievance has been referred to the IG's office.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 05/09/2023 | 1 | DENIED | SHIELDS, BRYAN |

Proposed Response:

Official Response: Inmate Jackson, I am in receipt of your grievance. This incident was fully investigated under case number IN-2023-49. The result of the investigation determined that your allegations of excessive force were unsubstantiated. This was based on a review of the Officers? reports and an attempted interview with you. You could not be interviewed because you got into a use of force situation during the escort. Video surveillance footage was reviewed but does not show the use of force. Grievance denied.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063146561 | 12/15/2022 | GRIEVANCE W/STAFF ISS | STAFF PERFORMANCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 12/15/2022 | IF | | , |

Proposed Response: 12/14
On Dec 11, at maybe 8 am they passed out the food I asked if they can plug my MP3 up they said no so i held the flap and told them im not letting them close it til i can get my kids number and messages out (cont..)

Official Response: I/M signed & dated 1/11/23 tb
ESP rcvd from SDCC 1/3/23
SDCC>ESP for signature 12/21/22
3098 12/19 INF
Per AR 707 Number 3D (a) following the finding of guilt an inmate shall be advised that they may appeal this decision to the Warden via the grievance process outlined in AR 740 Inmate Grievance Procedure within 10 calendar days of the finding of guilt. Submit one appeal to the Warden using the inmate grievance processes outlined in AR 740 within 10-calendar days of the finding of guilt. When initially filing a Disciplinary Appeal, Inmates must submit both an Informal Grievance and a First Level Grievance (write "For Tracking Purposes Only" across the front top of the Informal, state your factual harm or loss, action, and the remedy on the First Level Grievance form), attach Disciplinary Forms I, II, and III, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number and attachments. Please correct and resubmit within 5 days of receipt of this memo.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/28/2023 | 1 | | , |

Proposed Response: 04/05/23 IF
No response I need high level officials to remedy stays the same 500,000 for pain pain and suffering and punitive damages.

Official Response: I/M signed and dated on 6-2-23 ms
ESP rcvd from SDCC 5-12-23 sbc
SDCC>>>ESP 5/5/23 FOR SIGNATURE
Grievance not accepted at the previous level. You may not submit a First Level Grievance if the previous level was not accepted. Please correct and resubmit within 5 days of receipt of this memo on a new Informal grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) under this grievance number, and all attachments so that this can be fully researched.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/06/2023 | IF | | DRUMMOND, DAVID |

Proposed Response: 5-20-23
I need to exhaust to proceed to court remedy stay the same $500,000 for past pain and suffering informal level attached.

Official Response: I/M signed & dated 8/01/23 tb
DOC 3098
Time frams stop when transferred to another institution.
You have received the 2nd rejction.

Report Name: NVRIGH
Reference Name: NOTIS-RPT-OR-0128.4
Run Date: DEC 20 23 09:41 AM

**ER208**          **ER208**          **ER208**

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063146562 | 12/08/2022 | GRIEVANCE W/STAFF ISS | STAFF PERFORMANCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 12/15/2022 | IF | | , |

Proposed Response: 12/7
On Dec 1st around 6-630 am officer jackson comes to get me for shower like you will see on video in unit 8 however on my way to shower i see officer lauer who i once wrote a grievance on (cont..)

Official Response: I/M signed & dated 1/11/23 tb
ESP rcvd from SDCC 1/3/23
SDCC>ESP for signature 12/21/22
3098 12/19 INF
Per AR 707 Number 3D (a) following the finding of guilt an inmate shall be advised that they may appeal this decision to the Warden via the grievance process outlined in AR 740 Inmate Grievance Procedure within 10 calendar days of the finding of guilt. Submit one appeal to the Warden using the inmate grievance processes outlined in AR 740 within 10-calendar days of the finding of guilt. When initially filing a Disciplinary Appeal, Inmates must submit both an Informal Grievance and a First Level Grievance (write "For Tracking Purposes Only" across the front top of the Informal, state your factual harm or loss, action, and the remedy on the First Level Grievance form), attach Disciplinary Forms I, II, and III, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number and attachments. Please correct and resubmit within 5 days of receipt of this memo.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/16/2023 | 1 | | , |

Proposed Response: 3-8-23
AR 405.03(9) clearly states physical hold that prevent from breathing are not allowed also AR 405.2.B states force shall not be used to abuse inmates which he did do therefore my remedy stays the same 90,000 and an release AR 407.01 also clearly states restraints will not be used as punishment or causes undo pain which he did.
I/M signed and dated on 3-8-23 ms

Official Response: SDCC>>>>ESP FOR SIGNATURE 03/31/2023
ESP sent to SDCC 3/17/23
3098; 03/29/2023 1st
PROCEED TO NEXT LEVEL WITH TRACKING
Per AR 707 Number 3D (a) following the finding of guilt an inmate shall be advised that they may appeal this decision to the Warden via the grievance process outlined in AR 740 Inmate Grievance Procedure within 10 calendar days of the finding of guilt. Submit one appeal to the Warden using the inmate grievance processes outlined in AR 740 within 10-calendar days of the finding of guilt. When initially filing a Disciplinary Appeal, Inmates must submit both an Informal Grievance and a First Level Grievance (write "For Tracking Purposes Only" across the front top of the Informal, state your factual harm or loss, action, and the remedy on the First Level Grievance form), attach Disciplinary Forms I, II, and III, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number and attachments. Please correct and resubmit within 5 days of receipt of this memo.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/11/2023 | 1 | | CURRIER, KARISSA |

Proposed Response: 3-8-23
AR 405.03(9) clearly states physical hold that prevent from breathing are not allowed also AR 405.2.B states force shall not be used to abuse inmates which he did do therefore my remedy stays the same 90,000 and an release AR 407.01 also clearly states restraints will not be used as punishment or causes undo pain which he did.

Official Response: I/M signed and dated on 5-12-23 ms
ESP rcvd 4/11/23 from SDCC - Rejecting for SDCC as they did not enter the grievance.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/06/2023 | 2 | | DRUMMOND, DAVID |

Proposed Response: 5-12-23
I need hight level officals to review as it appears my grievances keep rejected for disciplinary reasons my informal is for officer using excessive force I appealed to first level 90 days from when IG's had to respond now I need to exhaust. ...[KCURRIER, 06/14/2023 17:40:46] 5-3-23
No response to none of my grievances I need the High levels to review this and to exhaust my Administrative remedys informal, 1st level and now 2nd level attached my remedy stays the same 90,000 and release

Official Response: I/M signed & dated 8/01/23 tb
SDCC>>ESP FOR SIGNATURE 6/14/23 4TH REJECTION
I/M signed and dated on 6-14-23 ms
DOC 3098 Already received 2nd level and sent to SDCC.
DOC-3098 (L2) 06/11/2023
Your grievance has been reviewed and rejected multiple times for 3098s. This grievance can no longer be responded to as it has been rejected multiple times for being improper. THIS GRIEVANCE CANNOT BE RESUBMITTED. If you resubmit this grievance, it will be confiscated and retained in your Inmate Grievance File with no further actions taken. Remedy is not within the scope of NDOC.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063148310 | 11/30/2022 | GRIEVANCE | DISCIPLINE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/04/2023 | IF | | , |

Proposed Response: 11/30/2022 IF
"For tracking purposes Only" On 11-30-22 I wwas called in form my hearing with officer Navarrette everything on proceeding record check it. However he found me guilty of threats yall officers known for lyng..."

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>ESP FOR SIGNATURE 2/6/23 KC
3098 2/4/2022 IF
Per AR 740.03 5(C), An inmate may not file more than one (1) grievance per seven (7) day week, Monday through Sunday. More than one (1) grievance filed during the seven-day week period will not be accepted, unless it alleges sexual abuse, or it is an Emergency Grievance that involves health or safety claims.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063145659 | 11/28/2022 | GRIEVANCE | PREA STAFF ISSUE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/28/2022 | IF | | , |

Proposed Response: 11/25
At about 5:35 pm officer Asher worked unit 8 passing out the food trays during her stay at my door asked why I had the flap open all day I told her my reason she said close the flap and ill suck your dick i feel so disgusted by her remarks. there is video the day of her working unit 8 around this time and also her stay at my door nov 22nd 2022 at 5:35 pm remedy drop all chargers pending or im going to federal court for damages for 100,000 see continuation (no continuation form attached)

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/28/2022 | IF | DENIED | , |

Proposed Response:

Official Response: Per AR 740, not an emergency. You will be afforded a PREA call if you would like.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/11/2023 | IF | | , |

Proposed Response: 11/25/2022 IF
"At about 5:35 PM officer Asher worked unit 8A passing out the food trays during her stay at my door asked why I had the flap open all day i told her my reason she said close the flap and Ill suck your dick...."

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCCCC 2/10/23 tb
SDCC>>>>ESP For Signature 1/31/23
3098 1/11/2023 IF
Per AR 740.03 number 4D, The inclusion of more than one grievance issue, per form will be cause for the grievance to not be accepted. Please correct and resubmit within 5 days of receipt of this memo on a new informal grievance DOC-3091 restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number, and attach supporting documents so that this can be fully researched. Your allegations have been referred to the IG's office for review.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/11/2023 | IF | | STRIPLIN, DEBORAH |

Proposed Response:

Official Response: Forwarded to PREA coordinator for review on 11/28/2022.

Email received from DSTRIPLIN after review as following, "Referred for IG PI. Allegation of possible sexual abuse (request) however, if interpreted by offender as sexual harassment would not meet a violation. My issue is the offenders compliant was filed after a disciplinary and their relief to the compliant is dismissal of charges."

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063147451 | 11/24/2022 | GRIEVANCE | DISCIPLINE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/09/2023 | IF | | , |

Proposed Response: 11/24/2022 IF
"On 11-8-22 officer Dante wrote me up for abusive language however I pela guilty 11-14-22..." Offender grieves phone sanction...

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>>ESP For Signature 1/31/23
3098 1/9/23 IF
Per AR 740.03.1(b), a Grievance will not be used as an inmate request form (DOC 3012) to advise staff of issues, actions or conditions that they do not like but suffered no harm or loss. Please see your Unit Caseworker for assistance.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063151965 | 11/23/2022 | GRIEVANCE | MEDICAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 05/06/2023 | IF | PARTIALLY GRANTED | , |

Proposed Response:

Official Response: 11/23
"Wait for KOP delivery as it was just filled by pharmacy."

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 05/06/2023 | IF | | , |

Proposed Response: 11/23
"My head is hurting I been putting in medical kite after medical kite. I still havent gotten my medication.."

Official Response:

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063147371 | 11/19/2022 | GRIEVANCE | OTHER |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/08/2023 | IF | | , |

Proposed Response: 11/19/22 First Level
"No response to informal within 45 days im calling this to the high level officials attention my remedys remain the same."

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>>ESP 1/25/23 For Signature KC
3098 1/8/23 FIrst
Offender Jackson, be advised the attached emergency grievance was never given to staff, furthermore the attached informal grievance was also never submitted. There is no record of either. You must begin the grievance process at the informal level. Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) under this grievance number, and all attachments so that this can be fully researched.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063150023 | 11/12/2022 | GRIEVANCE | PERSONAL SAFETY |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/16/2023 | IF | DENIED | , |

Proposed Response:

Official Response: 11/12
"You will not be outside the cell while assigned to unit 8 unless you are restrained. Resubmit an informal grievance."

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/16/2023 | IF | | , |

Proposed Response: 11/12
"Due to being in ad-seg all inmates outside their cells should be handcuffed for safety reasons..."

Official Response:

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063150022 | 11/12/2022 | GRIEVANCE | FOOD |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/16/2023 | IF | | , |

Proposed Response: 11/12
"I've told medical before that I was allergic to the state peanut butter as of today im having allergy reactions..."

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 03/16/2023 | IF | PARTIALLY GRANTED | , |

Proposed Response:

Official Response: 11/12
"You will be schedule to be check by provider regarding your allergy."

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063145471 | 11/09/2022 | GRIEVANCE | PROPERTY |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/18/2022 | IF | | , |

Proposed Response: 11/8
Ms. Currier my watch is missing out my room since last week when officers came in and took my hot pot and placed it in property, i already sent you my receipt for my TV and watch when I purchased them at SCC so I can't attach it (cont...)

Official Response: 3098 11/18 INF
AR740 a good faith effort will be made to resolve legitimate inmate claims without requiring the inmate to file a formal grievance.  It is important that the concerns are addressed, however you have provided no evidence that you have attempted to address these issues informally before pursuing the grievance process. You must provide proof of good faith effort.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/30/2022 | IF | | , |

Proposed Response: 11/30/2022 IF
"I did ask the C/O who enter my room and took my hot pot he said he never took it its a fact I had a watch its on my property card and its crazy how soon as he entered my room it came up missing...."

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>ESP FOR SIGNATURE 2/6/23 KC
3098 2/4/2023 IF
Per AR 740.03 5(C), An inmate may not file more than one (1) grievance per seven (7) day week, Monday through Sunday. More than one (1) grievance filed during the seven-day week period will not be accepted, unless it alleges sexual abuse, or it is an Emergency Grievance that involves health or safety claims.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063145426 | 11/03/2022 | GRIEVANCE | DISCIPLINE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/03/2022 | IF | | , |

Proposed Response: 10/28
"For tracking purpose" There's no 1st level grievance, however, I was found guilty of an assault on 10/19/22 however I was never notified unttil 10/28/22 until I talked to Sgt Day. Check the proceeding records (cont...)

Official Response: ESP rcvd from SDCC 2/10/23 tb
3098 11/18/2022 INF
Per AR 740.03.4(C), An inmate may not file more than one (1) grievance per seven (7) day week, Monday through Sunday. More than one (1) grievance filed during the seven-day week period will not be accepted, unless it alleges sexual abuse, or it is an Emergency Grievance that involves health or safety claims.  Reference 20063145422.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/30/2022 | IF | | , |

Proposed Response: 11/30/2022 IF
"AR 740.08 4B states with in (10) calendar days if the issue involves any other issues within any other issues within the authority and control of the department including, but not limted to, classification disciplinary...."

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>ESP FOR SIGNATURE 1/31/23
3098 1/25/23 Second
PROCEED TO NEXT LEVEL WITH TRACKING
Per AR 707 Number 3D (a) following the finding of guilt an inmate shall be advised that they may appeal this decision to the Warden via the grievance process outlined in AR 740 Inmate Grievance Procedure within 10 calendar days of the finding of guilt. Submit one appeal to the Warden using the inmate grievance processes outlined in AR 740 within 10-calendar days of the finding of guilt. When initially filing a Disciplinary Appeal, Inmates must submit both an Informal Grievance and a First Level Grievance (write "For Tracking Purposes Only" across the front top of the Informal, state your factual harm or loss, action, and the remedy on the First Level Grievance form), attach Disciplinary Forms I, II, and III, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number and attachments. Please correct and resubmit within 5 days of receipt of this memo.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/28/2023 | IF | | , |

Proposed Response: 2/22/2023 For tracking purposes only
Official Response: ESP sent to SDCC 3/2/23 tb

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/28/2023 | IF | | CURRIER, KARISSA |

Proposed Response: 02/22/23
As it appears, my grievances were rekected for more than on e grievance per week.
However, if you look at the date on my appeal at the time I put was 10/28/2022 @4:28 pm
which I put in on the last of to appeal the write-up. However, the reference
# for the reaason my appeal was 20063145422 which I am going to attach so y'all could see.

Official Response: I/M signed and dated on 6-2-23 ms
ESP rcvd from SDCC 5-12-23 sbc
SDCC>>>ESP 5/5/23 FOR SIGNATURE
You cannot submit the 1st and 2nd level grievances together. This was your 3rd and final
grievance submission regarding this issue.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063145422 | 11/03/2022 | GRIEVANCE W/STAFF ISS | STAFF PERFORMANCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/03/2022 | IF | | , |

Proposed Response: 10/28
On 10/28/22 and on video when you see whoever that nurse was who was working that night
at around 7:50 p.m. along with CO Moore htey knocked on my door when I was sleep I asked
what they wanted they asked if i (cont...)

Official Response: 3098 11/18 INF
Per AR 740.04 number 2H, "Alteration of the grievance forms or continuation forms. This
includes writing more than one line, on each line provided on the grievance form.?
Addiitionally, you failed to attach an Administrative Claim Form.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/05/2023 | IF | | , |

Proposed Response: 11/30 (Informal)
On 10/28/22 and on video when you see whoever that nurse was who was working that night
at around 7:50 p.m. along with CO Moore htey knocked on my door when I was sleep I asked
what they wanted they asked if i (cont...)

Official Response: ESP rcvd from SDCC 2/10/23 tb
SDCC>>>ESP FOR SIGNATURE 2/6/23 KC
This grievance lacks standing. The allegations were looked into and it was found that your
Fluoxetine is a KOP medicine. The nurse would not provide that to you at pill call.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063144195 | 10/20/2022 | GRIEVANCE W/STAFF ISS | PREA STAFF ISSUE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/20/2022 | 1 | | STRIPLIN, DEBORAH |

Proposed Response:

Official Response: Forwarding to PREA coordinator for review.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/20/2022 | IF | | , |

Proposed Response: 10/19
2018 I was sent to Ely Camp from Ely Prison. My day of Ely Camp I had my own clothes I bring from Ely Prison, however, I was sent to Three Lakes for my medical issues the night I was told to roll my stuff up the officer said the clothes I had on wsa his and to them off I said these are not your clothes I got these from Ely Prison some back and forth went on after I refused the last time the officer unbuttoned my shirt took it off of me and told me to take off my pants I refused and threaten to be taken back to Ely Prison if I didn't take them off I refused again the officer grabs my zipper to my pant while I was doing that I grabbed my manhood unbutton my pants and pulled them off of me. The next mornin before I got on the buss I made a PREA hotline report. Once I got to three lakes some man came to see me about the incident I ended up getting out of prison and lost contact. Now that I'm back and my mental health is stabbled I want to move forward with this (Cont..)

Official Response: DUPLICATE 10/20/2022
Per AR 740.03.4(E), Grievances that grieve the same issue in a previously filed grievance will not be accepted, even if the requested action or remedy is different on the subsequent grievance. Reference 2006.30.72674. Please be advised that this grievance was forwarded to the PREA coordinator and Inspector General's office for review and it was determined that this matter had already been investigated and closed unsubstantiated. Do not resubmit.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063144343 | 10/13/2022 | GRIEVANCE | OTHER |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/20/2022 | IF | | , |

Proposed Response: 10/11
I've been denied the benefits of programs and activities of a public entity and have been subjected to discrimination by such entity under title II of the ADA. My remedys for this is to give me all the credits for all program I applied for and I (cont..)

Official Response: Forwarded to mental health. Per AR 740.03 number 4D, The inclusion of more than one grievance issue, per form will be cause for the grievance to not be accepted. Please correct and resubmit within 5 days of receipt of this memo on a new informal grievance DOC-3091 restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number, and attach supporting documents so that this can be fully researched.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/02/2022 | IF | | , |

Proposed Response: 11/1
Inmate Tarontae Jackson I've been denied the benefits of programs and activities of a public entity and have been subjected to discrimination by such entity under Title III of the ADA my remedies for this is to give me all credits for (cont...)

Official Response: 3098 INF 11/17
Per AR 740.04.2F, it is abuse of the Inmate Grievance Procedure if, ?The claim or requested remedy changes or is modified from one level to another.?

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/30/2022 | IF | | , |

Proposed Response: 11/30/2022 IF
"I inmate Tarantae Jackson, Ive been denied the benefits of programs and activities of a public entity and have been subjected to discrimation by such entity under...."

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>>ESP 2/6/23 For Signature
3098 1/31/23 IF
NRS 209.389, Sec. 4--No offender has a right to be admitted to a program of education, vocational education and training or other rehabilitation programs established pursuant to this section, and it is not intended that the establishment of such programs or the failure to establish such programs creates any right or interest in liberty or property or establishes a basis for any cause of action against the State, its political subdivisions, agencies, boards, commissions, departments officers or employees.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063154265 | 09/28/2022 | GRIEVANCE | DENTAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/29/2023 | IF | DENIED | , |

Proposed Response:

Official Response: 9/28/2022 EM
This is not an emergency per AR 740.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/29/2023 | IF | | , |

Proposed Response: 9/28/2022 EM
Staff did a walk thru couple weeks ago "dental" along with the Warden when asked do I have any dental or medical problems I stated yes my tooth has been killing me..."

Official Response:

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063143464 | 09/15/2022 | GRIEVANCE W/STAFF ISS | STAFF PERFORMANCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/01/2022 | IF | | , |

Proposed Response: 9/15/2022
"Sept 4th 2022 officer hanlon was trying to hand cuff me at the same time bumped my tv out of my hand ever since then my tv has been going in and out to black screen its c/o hanlon fault its having this problem. my remedy for this is to have NDOC replace his mistake."

Official Response: Missing documentation: Proof of Ownership.
Per AR 740.08 number 4D(5), ALL documentation and factual allegations available to the inmate must be submitted at this level with the grievance. Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) under this grievance number, and all attachments so that this can be fully researched.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/25/2022 | IF | | , |

Proposed Response: 10/25/2022 IF
"Ok so I put in a grievance about NDOC replacing my tv and a fan because a C/O messed my tv up. However im attaching everything......

Official Response: 3098 11/14/2022 IF
You did not provide enough information as to why NDOC owes you a t.v. You were instructed to provide this information AND restate your claim and remedy. Per AR 740.08 number 4D(5), ALL documentation and factual allegations available to the inmate must be submitted at this level with the grievance. Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) under this grievance number, and all attachments so that this can be fully researched.

ER219     ER219     ER219

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063143734 | 09/08/2022 | GRIEVANCE W/STAFF ISS | STAFF PERFORMANCE |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/01/2022 | IF | | SHIELDS, BRYAN |

Proposed Response:

Official Response: Forwarding to IG for response.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/01/2022 | IF | | TOBIN, WILLIAM |

Proposed Response: 9/6
Inmate Jackson was sent to unit 6 to quarantine along with my cellmate Williams. I asked staff were we going to be housed together his response was yes i told him according to CDC we not suppose to be housed together during quarantine a lot of bach and forth went on now im told to go to my cell i tell the CO who was working 9/4/22 at maybe 2:30 pm that I needed a sgt to speak to (cont...) Inmate Jackson alleges staff misconduct and excessive force conducted by CO Hanlon. He states that the CO throws him on the ground, pushes down on his neck with his hand and puts his knee on his back. He also states that he tightens his cuffs to the point where the inmate is bleeding.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/25/2022 | IF | | , |

Proposed Response: 10/21/22 1st
"I haven't gotten a response back from my informal grievance so im appealing to the first, however I wrote a grievance on CO Hanlon for using excessive force on me abou tthe handcuffs being too tight....."

Official Response: 3098 10/25/2022 1st

Per AR 740.08 number 4D(5), ALL documentation and factual allegations available to the inmate must be submitted at this level with the grievance. Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) under this grievance number, and all attachments so that this can be fully researched.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 11/01/2022 | IF | | , |

Proposed Response: 11/1/2022 IF
"I havent gotten a response back from my informal grievance so im appealing to the first however I wrote a grievance on C/O Hanlon...."

Official Response: 3098 11/16/2022 1st
Per AR 740.04 number 2H, "Alteration of the grievance forms or continuation forms. This includes writing more than one line, on each line provided on the grievance form.? Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss claim, action, and the remedy, using no more than 2 Continuation Forms, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, and attach the prior Improper Grievance Memo(s) under this grievance number so that this can be fully researched. Be advised that your informal grievance was accepted and will be responded to. However this is your second rejection, it is highly recommended that you wait for your response as you only have 1 more submission before this grievance issue is abandoned due to incorrect submissions.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 01/20/2023 | IF | DENIED | TOBIN, WILLIAM |

Proposed Response:

Official Response: I/M rec & signed 2-17-23 sbc
ESP rcvd from SDCC 2/10/23 tb
SDCC>>>>ESP FOR SIGNATURE 1/25/23 KC
Inmate Jackson, I am in receipt of your Grievance #20063143734 regarding your claim of excessive force by Officer Hanlon. While investigating your claims, Officer Hanlon stated that he never used profanity and you were restrained properly following policies and procedures as outlined in Southern Desert Correctional Center Operational Policy 407 Use of Handcuffs and Restraints. As to your claim of your wrists bleeding from the restraints, the report from medical stated that you had ?superficial skin scrapes to bilateral wrist area.? Be advised this claim has been forwarded to the investigator generals office for review.

Grievance Denied.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/08/2023 | IF | | CURRIER, KARISSA |

Proposed Response: Hasbeen well over 90 days cents the IG's had to responde I need the high level officals to review this so I could proceed to federal court, my remedy stays the same. all pending chares droped and 20,000 in damages. See attached 1 page. ...[TBALTIERRA, 03/24/2023 07:49:32] 2/4/23 rcvd 3/24/23 tb
Its been well over 90 day cents the IG's had to respond i need the high level officals to review this so i could proceed to federal court my remedy stays the same all pending charges dropped and 20,000 in damages.

Official Response: I/M signed & dated 8/01/23 tb
ESP rcvd from SDCC 7-7-23 sbc
SDCC>>ESP 20230623 FOR SIGNATURE JMR

3098 6/17/2023
You have already been informed that altered forms will not be accepted i.e. Informal receipt. Your grievance has been reviewed and rejected for multiple 3098s. This is your 3rd reject rejection. DO NOT RESUBMIT.

I/M signed and dated on 6-2-23 ms
ESP rcvd from SDCC 5-12-23 sbc
SDCC>>>ESP 5/5/23 FOR SIGNATURE
ESP sent L1 to SDCC 4/3/23 tb
Resubmit another L1 3/24/23 tb
ESP sent L1 to SDCC 3/2/23 tb
3098 4/24/23 L1
APPEAL 5 DAYS: Per AR 740.08.12(A), ?The inmate must file an appeal within five (5) calendar days of receipt of the response to proceed to the Grievance level.?

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063142131 | 07/26/2022 | GRIEVANCE | MEDICAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 08/28/2022 | IF | | , |

Proposed Response: 7/26
I am still having pain and suffering from Covid-19 back when I tested positive in 2020 on 11-28-2020.  My remedy for this is I request $350,000 in damages for NDOC's pass failure to provide proper medical care while I fought off Covid-19.

Official Response: UNTIMELY SUBMISSION-Per AR 740.08 number 4A, the inmate shall file an informal grievance within six (6) months if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063141281 | 07/14/2022 | GRIEVANCE | MEDICAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 08/06/2022 | IF | | , |

Proposed Response: 06/09
Inmate Jackson, housed at SCC, tested positive for Covid-19 on 11/28/2020 along with more than half the inmate population. I was refused medicine on several occasion and I was not able to purchase medicine because state shut down the canteen store. I was not evaluated by a doctor. Those of us that tested positive were housed together in Unit 5 and was left to fight Covid-19 on our own.

Official Response: Per AR 740.03.4(E), Grievances that grieve the same issue in a previously filed grievance will not be accepted, even if the requested action or remedy is different on the subsequent grievance. Reference 20063139434 which was returned at the informal Level. Do not resubmit

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 08/19/2022 | IF | | , |

Proposed Response: 08/19/22
"The reason it took me so long to grieve is because staff at SCC told me this wasn't a grieveableissue which mislead me to timeley grieve my issue also AR 740.08 4C states: When a grievance cannot be filed because of circumstances heyond the inmates control the time will......."

Official Response: 3098 9/2/22 Missing DOCS
Missing documents: You have not provided 3098?s for previous rejections. In addition to missing documents, you are filing multiple grievances for the same issue and mixing them in with each other?s submissions causing confusion.
No harm/loss, action, or remedy

You may not proceed to the next level if not accepted at the previous levels. NDOC will not respond to an improper grievance that results in a DOC-3098 under AR 740. Please correct and resubmit within 5 days of receipt of this memo on a new informal grievance DOC-3091 restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number, and attach supporting documents so that this can be fully researched.
Your grievance has been reviewed and rejected for multiple 3098s at the Informal level due to missing documentation and alterations. This is your 2nd reject at the informal Level. You have one final time to correct these errors. If deficiencies are not corrected, this matter will be considered abandoned.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 09/20/2022 | IF | | , |

Proposed Response: 9/16
The reason it took me so long to grieve is because staff at SCC told me this wasnt a grievable issue which mislead me to timely grieve my issue. Also, AR 740.08.4C states when a grievance cannot be filed because of circumstances beyond the inmate's control the time will (cont...) ...[CTUPAZELIZE, 11/17/2022 11:44:11] 11/1 - ok so on 9/16/22 I was told I was missing 3098 and to resubmit at 1st level with all attachments. I did everything I was told. Today Nov 1st make the 45 day for yall to respond. However yall failed to do so (cont...)

Official Response: 3098 11/17 2ND
Offender Jackson, you cannot appeal to the next level if your grievance was not accepted at the previous levels. Additionally,  Your grievance has been reviewed and rejected four times for multiple 3098s. This grievance can no longer be responded to as it has been rejected four times for being improper.  You were given multiple opportunities to correct these errors. This constitutes abandonment of your claim, as you have exhausted the grievance process. THIS GRIEVANCE CANNOT BE RESUBMITTED.

3098 11/02/22 1ST
This issue has been considered abandoned and has been submitted multiple times creating duplicates. Be advised that this issue cannot be resubmitted. Along with GRV# 20063139434. See 3098 dated 07/05/22. FUTURE SUBMISSIONS WILL BE RETAINED IN YOUR GRIEVANCE FILE.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063139365 | 06/16/2022 | GRIEVANCE | GRIEVANCES |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/16/2022 | IF | DENIED | , |

Proposed Response:

Official Response: This is not an emergency grievance per AR740.  Kite your caseworker.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/16/2022 | IF | | , |

Proposed Response: 06/16
States none of his grievances have been answered and none of them are in NOTIS.

Official Response:

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063139043 | 05/18/2022 | GRIEVANCE | SANITATION / LIVING COND |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 06/11/2022 | IF | | MILLER, KYLE |

Proposed Response: 5/15
Inmate grieves and alleges the AC being down in his cell (7A-16).

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 02/26/2023 | IF | RESOLVED | GERMAN, RENE |

Proposed Response:

Official Response: I/M signed and dated on 5-12-23 ms
SDCC>>>>ESP FOR SIGNATURE 03/22/2023

Offender Jackson, T. #1186781, I am responst to your informal grievance alleging the A/C not working in unit 7. Be advised, maintenance did receive 3 work orders during this time for unit 7 in regards to the A/C unit. the only issue found with the A/C was on 05/09/2022 where the fire alarm went off and needed to be reset to turn the A/C back on. This was done and the unit was operational in the same day. The current temperature is 70 degrees which is within NRS 444.335 standards.

Grievance Resolved.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063139541 | 04/25/2022 | GRIEVANCE | MEDICAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/03/2022 | IF | | , |

Proposed Response: 04/25
Inmate Jackson housed at SCC tested positive for Covid on 11/28/2020 along with more than half the inmate population, I was refused medicine on several occasion. I was not able to purchase because staff shut down the canteen. I was not evaluated by a doctor.

Official Response: Per AR 740.03 number 4E, Grievances that grieve the same issue in a previously filed grievance will not be accepted, even if the requested action or remedy is different on the subsequent grievance. Reference 20063139434 and 20063139479. Do not resubmit

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063138950 | 04/08/2022 | GRIEVANCE | PROPERTY |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/11/2022 | IF | | , |

Proposed Response: 04/08
States his television is missing.

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/11/2022 | IF | DENIED | , |

Proposed Response:

Official Response: This is not an emergency grievance per AR740.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/03/2022 | IF | | , |

Proposed Response: 04/17
I was placed in the hole and never got my property. My television is missing somewhere in Unit 11b. I do have a settlement television from NNCC serial #STK17381248.

Official Response: Per AR 740.05 number 7A, if the inmate's remedy to their grievance includes monetary restitution or damages Form DOC-3026, Inmate Property Claim Form, shall be completed and submitted in addition to the grievance for all property loss or damage claims. Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior Improper Grievance Memo(s) under this grievance number, and attach the Inmate Property Claim Form and proof of ownership so that this can be fully researched.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063136448 | 04/04/2022 | GRIEVANCE | OTHER |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/04/2022 | IF | | , |

Proposed Response: Please disregard this grievance log number as it was made in error. Thank you!
-E. Tupaz

Official Response:

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063139479 | 03/31/2022 | GRIEVANCE | MEDICAL |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/02/2022 | IF | | , |

Proposed Response: The SCC medical department and NDOC officials, specifically Dr. Naughton who direct the medical staff in matters of serious medical needs for the inmates while sick with Covid-19. I was refused on numerous attempts. The medicine available by medical staff to relieve pain and help with seeing, I was not able to purchase some of my own because the Canteen store was shut down by staff.

Official Response: UNTIMELY SUBMISSION-Per AR 740.08 number 4A, the inmate shall file an informal grievance within six (6) months if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063136449 | 03/25/2022 | GRIEVANCE | DISCIPLINE |
| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
| 04/04/2022 | IF | | , |

Proposed Response: 3/24
Tracking purposes only

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 04/04/2022 | 1 | | , |

Proposed Response: 3/24
Inmate Jackson is appealing OIC#505126.

Official Response:

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 08/10/2022 | 1 | DENIED | NAJERA, GABRIELA |

Proposed Response:

Official Response: CHARGES AND FINDINGS:  On February 10, 2022, you received a Notice of Charges for MJ26: Possession of contraband; OIC #505126. You entered a plea of not guilty to the Notice of Charges at your preliminary hearing conducted on February 16, 2022.  As a result of your disciplinary hearing conducted on March 21, 2022 you were found guilty of MJ26: Possession of contraband, which resulted in the following disciplinary sanction(s).

Loss Of Phone Privilege  90 Days
Loss Of Canteen Privilege  90 Days


These finding were based off the officer's report and physical evidence.

INMATES BASIS FOR APPEAL:  You state in your appeal that you believe that Correctional Officer Green planted the rock in your property and that there is no reason for you to have a rock in a sock because your last major write up for a prison made weapon was for a knife.


WARDEN'S FINDINGS AND DECISION:
The following Administrative Regulations (ARs) are citied to address this disciplinary appeal.
(AR) 707 & 707.1 Inmate Disciplinary Manual
(AR) 707.1 Disciplinary Hearings Sections 7 Evidence &11 Reaching a Decision
(AR) 707.1Disciplinary Appeals

Your basis for appeal in regards to the disposition of your MJ26: Possession of contraband; have been reviewed and the results are as follows;

By your reasoning, the Officer must have planted the rock in a sock weapon in your property because your prison made weapon of choice is a stabbing device (knife) as indicated by your last MJ26: Possession of contraband; on February 17, 2021.

Conclusion:
Based on all available information, you have not presented any compelling evidence, documentation or testimony that would cast doubt on the validity of your Notice of Charges, Disciplinary Hearing or disposition. I have no justifiable cause to amend or reverse the decision of the Disciplinary Hearing Officer/ committee.

Appeal: Denied
Sanction(s):  Upheld

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 08/12/2022 | 1 | | , |

Proposed Response: 5/31
Inmate is appealing to the second level due to overdue time limit on response.

Official Response: Missing supporting documentation: Level 1 and/or copies were not included.

Per AR 740.08 number 4(5), ALL documentation and factual allegations available to the inmate must be submitted at this level with the grievance. Please correct and resubmit within 5 days of receipt of this memo on a new grievance form restating the factual harm or loss, action, and the remedy, attach ALL previously submitted documents including prior submitted grievance(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) under this grievance number, and all attachments so that this can be fully researched.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063139434 | 03/11/2022 | GRIEVANCE | OTHER |

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/02/2022 | IF | | , |

Proposed Response: 03/11
I was housed at SCC and tested positive for Covid-19 on 11/28/20 along with more than half of the inmate population. I was refused medicine on several occasions. I was not able to purchase medicine because staff shut down the canteen store. I was not evaluated by a doctor.

Official Response: UNTIMELY SUBMISSION-Per AR 740.08 number 4A, the inmate shall file an informal grievance within six (6) months if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims.

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 07/10/2022 | IF | | , |

Proposed Response: 06/09
Inmate Jackson, housed at SCC, tested positive for Covid-19 on 11/28/2020 along with more than half the inmate population. I was refused medicine on several occasion and I was not able to purchase medicine because state shut down the canteen store. I was not evaluated by a doctor. Those of us that tested positive were housed together in Unit 5 and was left to fight Covid-19 on our own.

Official Response: 3098-1st level
UNTIMELY SUBMISSION-Per AR 740.08 number 4A, the inmate shall file an informal grievance within six (6) months if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims.No recored of you filing a grievance about this issue within 6 months.

# State of Nevada
# Department of Corrections
## Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063128936 | 10/07/2021 | GRIEVANCE | HOUSING |
| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
| 10/07/2021 | IF | | BUCHANAN, JOHN |

Proposed Response: Inmate signed 9-29-21: My 4th amendment rights are being violated I been back here for 80 days no write up or anything yes I did tell staff I didn't feel safe on this yard however I've signed a waiver saying I could go back to general population I don't have write up or anything. however I am able to go back to camp I was told to get vaccinated before transport it was something i didn't want to do but I was forced to get vaccinated now that I have my first shot all of a sudden i have to be fully vaccinated pior to transport i been in the hole for 80 days now my 14th amendment is being violated my remedy for this is to get me out this hole and back to Camp ASAP

Official Response:

| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
|---|---|---|---|
| 10/20/2021 | IF | DENIED | BUCHANAN, JOHN |

Proposed Response:

Official Response: Inmate Jackson, we are in receipt of your grievance 20063128936. In it you appear to be grieving that your rights are being violated for being housed in administrative segregation without a write-up. You also complained about having to get vaccinated prior to transport to camp with your remedy being to get out of ad-seg and back to camp. On 7/14/2022, you had your due process hearing where you requested protective segregation. You initially stated you could no longer live with your cell mate. You stated you had been having mental health problems but then later indicated you were okay. You were afforded the opportunity to speak with Psych Rodger. On 08/02/2021 you stated to CCS Barrios you could no longer house GP and people were out to get you. On 8/13/2021 you stated once again that you could not house GP since people were out to get you. On 8/17/2021, you signed a Protective segregation waiver for LCC or TLVCC. You stated you can house there and will not have any issues. You were not eligible for TLVCC at the time due to minimum requirements per AR 521. On 9/21/2021, you were seen in the 4B caseworker's office. You again stated you still couldn't house GP at WSCC since you will have issues. During the course of all of this you were not vaccinated and per the Director only vaccinated inmates were allowed to be transported.  On 9/29/2021, you were reclassified to LCC for GP due to new COVID 19 guidelines. At this time you were not eligible for TLVCC due to all camp inmates needing to be fully vaccinated for COVID 19. We now show you are vaccinated however you are still not eligible for minimum custody per AR 521 due to a Felony hold that has been lodged against you. You will again be reviewed for transfer to LCC for GP. Grievance denied.

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063125587 | 07/28/2021 | GRIEVANCE | MAIL |
| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
| 07/28/2021 | IF | | WIDMAR, KIRK |

Proposed Response: I have not been getting my mail due to staff not paying attentin to whos mail is whos my girl information was taken down and inmates been writing my girl however this is a federal manner and will be taken more action so along with my other legal mail not just her but NNCC as well.

Official Response: Per AR 740, if the inmate does not have a clearly defined remedy the grievance will be ?not accepted?. Please resubmit a new Informal Level grievance restating issue, a remedy; attach a copy of the previous grievance and its response. See your caseworker for help on the grievance process.

# State of Nevada
## Department of Corrections
### Inmate Grievance History

| ISSUE ID | DATE REPORTED | ISSUE TYPE | ISSUE REASON |
|---|---|---|---|
| 20063124895 | 07/16/2021 | GRIEVANCE | PREA INMATE ISSUE |
| DATE RETURNED | LEVEL | FINDING | ASSIGNED TO |
| 07/16/2021 | IF | | WIDMAR, KIRK |

Proposed Response: Ive made at least 2 PREA complains since I been at this prison about this shower its very nasty to look at my window and have to see someone elses manhood ttheir needs to be some more curtains around and in front of them showers

Official Response: :   Per AR 740, if the inmate does not have a clearly defined remedy the grievance will be ?not accepted?. Please resubmit a new Informal Level grievance restating issue, a remedy; attach a copy of the previous grievance and its response. See your caseworker for help on the grievance process. This grievance has been sent to the IGs for review

# EXHIBIT L

## GRIEVANCE NO.2003-31-46909

# EXHIBIT L

ER232                              ER232                              ER232

Log Number 2006-31-46909

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: Tarantae Jackson                    I.D. NUMBER: 1186781

INSTITUTION: Ely                          UNIT: 2B 36

GRIEVANT'S STATEMENT: Dec 21st officers used, use of force because
i refused to cuff up after that i want to lay down on my
Bed with my hands behind my Back officers Then came
inside hit me in my Face mouth til i started to Bleed and Both
eyes where Black durry all this officers Tased me For NO

### SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Tarantae Jackson          DATE: 12-22-22  TIME: 8 AM

GRIEVANCE COORDINATOR SIGNATURE: J Cook    DATE: 12/27/22  TIME: 1:52 pm

GRIEVANCE RESPONSE: _____
_____ See attached _____

CASEWORKER SIGNATURE: _____     DATE: 12/29/22

✓ Partially
GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: J Cook   DATE: 12/29/22

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: Tarentae               DATE: 1-13-23

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Ely State Prison

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

APR 0 5 2023

Ely State Prison
Grievance Coordinator

DEC 2 7 2022

Grievance Coordinator

DOC 3091 (12/01)

ER233            ER233            ER233

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Tarontie Jackson     I.D. NUMBER: 1186751

INSTITUTION: Ely     UNIT #: 2B-36

GRIEVANCE #: _____     GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1 OF 2

reason 2 times they did all this. After i was sent to the shavers as you will see on the unit 2B video footage i had No shirt on Blue levi Jeans and All white shoes my family got me from the clothe package officers made me strip out handcuff me and send me down to see medical like you will also see on video they took everything out my cell and never gave me my clothes or shoes Back. AR 405 use of Force clearly states officers shall Not use fist knees elbows Nor are They suppose to Punish or abuse inmates which they clearly did do i also spit Blood on the officers sheild as you will see in the video. im sick of officers abusing me over and over i want to go home i dont feel safe in NDOC's custidy whats so ever they Not only violate their own AR's But also violated my 8th amendment rights my remedy For all this

Original:   Attached to Grievance
Pink:   Inmate's Copy

Ely State Prison

Ely State Prison
DEC 2 7 2022
Grievance Coordinator

Ely State Prison
APR 0 5 2023
Grievance Coordinator

DOC – 3097 (01/02)

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Tavontae Jackson

I.D. NUMBER: 1186781

INSTITUTION: Ely

UNIT #: 2B 36

GRIEVANCE #:

GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION: PG. 2 OF 2

I want All goodtime worktime i lost Back during
This Prison Bid my P.E.X.D is 5/22/23 right Now
Yall could either let me go home before the end of
Jan 2023 or we can go to federal court. IM
Sick of officers Abusing me NDOC
I want a t.v. and cable cord As soon as this get
look'd at while im waiting to go home i also want
500 dollars on my Books For Pain and suffering
and for officers using excessive force abusing
me and Punishing me I will be Appealing when its
Time to. Please be advised this the 4th excessive
force officers has used on me this Years. Also be
Advised im really in Fear for my life
while doin time in NDOC Because of their
officers and they Bused my left Pinky Finger
I tried to resove with officer they said Fuck me so there

Original:       Attached to Grievance   Ely State Prison
Ely St Pink. Prison  Inmate's Copy

DEC 2 7 2022                APR 0 5 2023

Grievance Coordinator      Grievance Coordinator

DOC – 3097 (01/05)

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322, 209.243 AND ADMINISTRATIVE REGULATION 740

DO **NOT** SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE, BOARD OF EXAMINERS, OR DIRECTOR

This form is to be attached to your grievance form for any injuries or any other claim (except property) arising out of a tort alleged to have occurred during your incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees or contractors.

The following information is necessary to fairly evaluate your claim. Please provide complete information. If you need more space, attach a separate sheet of paper. You may submit additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $___500___ is hereby made against the Department of Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | | 2. I.D. # | 3. INSTITUTION |
|---|---|---|---|
| Tarentae Jackson | | 1186781 | ELY |
| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | 6. TIME (a.m. or p.m.) | |
| 500 | 12-21-22 Afternoon | 12:00 PM | |
| 7. PLACE OF OCCURRENCE | | | |
| Unit 2B RM 36 | | | |

Ely State Prison

APR 0 5 2023

Grievance Coordinator

DOC 3095 (12/01)

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

Page 1 of 3

ER236                    ER236                    ER236

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

officers used excessive force punish and abused me which not only violate NDOC's ARs But Also violate my civil Rights 8th Amendment

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

warden, LT, sgt and sort officers who hit me with closed fist, and the whole u2B see my eyes and it was Sort officer Brown who hit me and Block'd my eyes

10. Other pertinent information:

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

Ely State Prison

APR 0 5 2023

Grievance Coordinator

Page 2 of 3

**ER237**          **ER237**          **ER237**

STATE OF _Nevada_ )
                          ) SS
COUNTY OF _Clark_ )

I, _Tarantae Jackson_ , do hereby swear under penalty of perjury that I am the claimant named above, that I have read the foregoing claim and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those maters, I believe them to be true, and that THIS IS MY ENTIRE CLAIM AGAINST THE STATE OF NEVADA/DEPARTMENT OF CORRECTIONS.

I FULLY UNDERSTAND THAT I WILL HAVE TO SIGN A GENERAL RELEASE OF ALL CLAIMS IN THE PRESENCE OF A NOTARY PUBLIC FOR THE EXACT AMOUNT I AM CLAIMING BEFORE ANY PAYMENT WILL BE OFFERED TO ME. THIS GENERAL RELEASE WILL BECOME EFFECTIVE ONLY UPON ACTUAL PAYMENT OF THE CLAIM BY THE STATE OF NEVADA.

DATED this _22nd_ day of _Dec_ , 20_22_

_Tarantae_
Signature of Claimant

**NOTICE**

NEVADA REVISED STATUTE 197.160 provides that every person who knowingly presents a false or fraudulent claim is guilty of a gross misdemeanor, and is subject to criminal penalties of imprisonment of up to one year, and a fine of up to $2,000.00.

Ely State Prison

APR 0 5 2023

Grievance Coordinator

DOC - 3095 (12/01)

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

Page 3 of 3

ER238                    ER238                    ER238

## NEVADA DEPARTMENT OF CORRECTIONS

## ADMINISTRATIVE CLAIM RELEASE AGREEMENT

I, _Tavontae Jackson_, NDOC # _1186781_ as claimant, did on the _22nd_ day of _Dec_, _2022_, file against and deliver to the Department of Corrections, via the Warden of _Ely State Prison_, an institution/facility of the Department of Corrections, an Inmate Grievance No._informal_, alleging personal injuries or any other claim arising out of a tort alleged to have occurred during my incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees, or contractors described as _excessive_ _use of force_ _____.

I acknowledge that $ _500_ will be deposited into my account as payment in full, for the above claim and hereby release the State of Nevada, the Nevada Department of Corrections and any and all agents, servants and/or employees of the state and agency from all liability of any kind whatsoever from any further claim for items identified on this grievance.

I UNDERSTAND THIS RELEASE WILL BECOME EFFECTIVE ONLY UPON THE APPROVAL OF MY CLAIM BY THE STATE OF NEVADA AND/OR THE NEVADA DEPARTMENT OF CORRECTIONS.

DATED this _22nd_ day of _Dec_, _2022_.

SIGNED: _Tavontae_ _____ SOCIAL SECURITY # _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_
Signature of Claimant

Ely State Prison

WITNESS:_____ APR 0 5 2023 TITLE:_____

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

DOC-3096 (2/02)

ER239    ER239    ER239

# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063146909                **ISSUE DATE:**  12/27/2022

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | RTRN_INF | JUNDERWOOD |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 12/27/2022 | 2 | Partially Granted | SCHILSON | INACTIVE |

| INMATE COMPLAINT |
|---|

| OFFICIAL RESPONSE |
|---|

Inmate Jackson, I am in receipt of grievance 2006-31- 46909 in regard to your use of force allegations.
Your grievance is partially granted as it has been referred to the IG?s office for further investigation.

GRIEVANCE RESPONDER

Ely State Prison

APR 0 5 2023

Grievance Coordinator

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.4
Run Date:  DEC-29-22 02:53 PM

Page 3 of 3

**ER240**                **ER240**                **ER240**

# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**   20063146909

**ISSUE LOC:**  ESP

**ISSUE DATE:**   12/27/2022

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | IG_REVIEW | UOF | JJONES |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 12/27/2022 | | | SCHILSON | INACTIVE |

| INMATE COMPLAINT |
|---|
| Case number IN-2023-0049 was opened for this use of force. |

| OFFICIAL RESPONSE |
|---|
| Referred |

GRIEVANCE RESPONDER

Report Name: NVRIGR

Run Date:      APR-21-23 11:14 AM

Page 4 of 4

**ER241**                    **ER241**                    **ER241**



Steve Sisolak
*Governor*

William A Gittere
*Acting Director*

William Reubart
*Warden, Ely State Prison*

Northern Administration
5500 Snyder Ave.
Carson City, NV 89701
(775) 977-5500

Southern Administration
3955 W. Russell Rd.
Las Vegas, NV 89118
(725) 216-6000

**STATE OF NEVADA**
Department of Corrections

## MEMORANDUM

Date:    January 4, 2023

To:    Calvin Johnson, Acting Deputy Director
William Reubart, Warden, ESP

From:    Curtis L. Rigney, Lieutenant, ESP
David Drummond, Associate Warden, ESP

Subject: Use of Force Incident Review Report – IR-2022-ESP-002698

A Use of Force Incident Review was completed on January 4, 2023, by Lieutenant Curtis L. Rigney and Associate Warden David Drummond.

Incident Date:    December 21, 2022
Time:        12:45
Location:    Unit 2 Cell# 2B-36
Type of Force:    Hands on/electronic

Inmate(s):    Jackson, Tarontae NDOC# 1186781

Staff members involved in reported Use of Force: Senior Correctional Officer S. Davis, Senior Correctional Officer S. Brown, Correctional Officer D. Kirkland, Correctional Officer M. Kleer and Correctional Officer A. Main

Staff member's witness to the reported Use of Force: Correctional Sergeant D. Jacobs

Incident Summary: On December 21, 2022, at approximately 12:46 hours, a planned-use-of-force team consisting of C.E.R.T. Senior Officers (SC/O) S. Davis, S. Brown, C.E.R.T. Officers M. Kleer, A. Main, D. Kirkland, and lead by C.E.R.T. Sergeant (Sgt.) D. Jacobs was assembled in the Unit 2 Hallway. The planned-use-of-force was authorized on Inmate Jackson #1186781, housed in cell 2-B-36 for refusing to comply with coming out of his house to have his property removed, because he had propelled on a Sergeant during the breakfast meal. The C.E.R.T. Team briefed in the unit hallway for team assignments on entry into the cell. It was noted by medical staff that Inmate Jackson is on the desensitized list and chemical agents could not be used. Once

1

**ER242**                    **ER242**                    **ER242**

the brief was completed, the team entered the unit and approached cell 2-B-36. Sgt. Jacobs gave Inmate Jackson one last directive to be restrained through the food slot. Inmate Jackson refused. Once authorization was given by the Associate Warden, the signal was given to open the cell door and entry was made. Inmate Jackson had retreated to the back of his cell and had lain on his bunk, on his stomach, with his hands underneath him. It was unknown at this time if Inmate Jackson had a weapon on him or something similar that could harm officers. Inmate Jackson was refusing to comply with being restrained after being given multiple orders. CERT Officer Kirkland deployed his state-issued TASER to drive stun him in the lower back, with no effect. CERT SC/O Brown began giving straight strikes to Inmate Jackson's upper extremities to attempt to gain positive control of Inmate Jackson's arm. Inmate Jackson was still able to keep his hands tucked underneath him.

Officer Kirkland gave several orders to Inmate Jackson to give up his hands, he still was refusing. Officer Kirkland administered a second drive stun to Inmate Jackson, but it seemed to be ineffective due to Inmate Jackson rolling and sporadically moving his torso away affecting the contact with the drive stun.

Officer Kirkland observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. Officer Kirkland gave Inmate Jackson one last verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. Officer Kirkland drive stunned him a third time which seemed to be effective as it was allowing the restraining officer to safely place wrist restraints on. CERT SC/O Brown was able to gain positive control of Inmate Jackson's arm, while Officer Kirkland was able to gain control of his other arm. CERT SC/O Davis and Officer Main were able to gain control of Inmate Jackson's lower extremities and apply leg restraints. Because of Inmate Jackson's aggressiveness and hostility, a spit mask was placed over his head. Inmate Jackson was assisted to his feet and placed into a modified escort and taken to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked by medical. Medical noted miner abrasions and cuts. Inmate Jackson was released by medical back to his cell. He was then escorted back to 2-B-36 without further incident.

Use of Force was justified: Yes, minimal amount of force was used to compel orders and gain control and compliance of Inmate Jackson NDOC# 1186781

Use of Force was authorized: Yes. Per AR 405.03 "Force may be used to compel an inmate's compliance with orders, force may be used if no alternative method of persuasion is effective." Inmate Jackson NDOC# 1186781 failed to comply with Officers orders.

Use of Force was necessary: Yes. Inmate Jackson NDOC# 1051868 was refusing the Officers orders to submit to restraints and be removed from his cell for the safety of the inmate.

Use of Force was limited: Yes. Per AR 405.03(2) "Force shall be proportionate to the threat exhibited by the inmate, and the force shall decrease as the threat is lessened."

Disciplinary Action: None at this time.

2

ER243    ER243    ER243

Corrective Action: No action required

Changes/Enhancements to policy, regulation and training or physical security improvement related to this Use of Force necessary: No. None recommended

Recommend Letters of Commendation: Not at this Time

David Drummond, Associate Warden
Ely State Prison

cc: file

3

ER244                           ER244                           ER244



# State of Nevada
# Department of Corrections

Investigation Detail Report

## Investigation

| | |
|---|---|
| **Investigator:** | **IR Number:** IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** 12/21/2022 |
| **Report Due Date:** | **IA Number:** IA- |
| **Disposition Date:** | **IN Number:** IN- |
| | **Institution:** ESP |

## Referral

**Referred By:** COOKE, TASHEENA
**Referred Date:** 12/27/2022 16:43
**Referral Detail:** I/M submitted a grievance alleging excessive UOF. Grievance referred to the IG for review.

## Narrative

On December 21, 2022, at approximately 1245, a planned use of force was conducted involving Inmate Tarontae JACKSON 1186781, housed in cell 2B36. ...[TSANDOVAL, 12/27/2022 16:42:50] I/M submitted a grievance alleging excessive UOF. Grievance referred to the IG for review.

## Offender Involvement

| NDOC ID | Offender Name | Participation |
|---|---|---|
| 1186781 | JACKSON, TARONTAE | Suspect |
| | Comments: 2B36 | |

**Notice of Charges Statement**   **Name:** C/O Kirkland   **Date Taken:** 12/21/2022

**Details:** On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by medical. He was then escorted back to 2B36 without further incident. EOR

## Staff Involvement

| Staff Name | Participation |
|---|---|

---

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: APR-07-23 07:42 AM

Page 1 of 7

**ER245**          **ER245**          **ER245**



# State of Nevada
# Department of Corrections

## Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | IA- |
| **Disposition Date:** | **IN Number:** | IN- |
| | **Institution:** | ESP |

## Staff Involvement

**DAVIS, SETH**                                      Reporting
  Comment: CERT SCO

● Reports

| Report Type | Report Detail |
|---|---|
| USEOF | On December 21, 2022, I CERT Senior S. Davis was part of a planned use of force on Inmate Jackson (NDOC#1186781) housed in Unit 2B cell 36. Jackson had propelled on staff and due to him propelling his property needed to be removed from his cell, per my supervisors. I was the 5th man on the planned use of force team. At approximately 12:50 pm the planned use of force team was at Jackson?s cell door. Jackson had been given orders to submit to restraints and come out of the cell and go to the shower for an unclothed body search while his property was removed from his cell. Jackson refused multiple orders to comply with being restrained. Sgt Jacobs then gave the order to make entry (It should be noted that Jackson is on the desensitized list, meaning that we cannot use chemical agents on him). When I made it into the cell Jackson was face down on the bottom bunk faced away from me actively resisting the team. A drive stun from a taser was utilized in an attempt to gain compliance from Jackson. It had no affect and he continued to refuse orders. A second drive stun was delivered allowing me to secure both legs with leg restraints. Once he was fully restrained, we stood him up and moved him to the upper left shower to complete an unclothed body search. Once the search was completed, Jackson was escorted to the Unit 1-2 hallway to be evaluated by medical. After the evaluation was completed, Inmate Jackson was escorted back to his cell in unit 2B cell 36 with no further incident. |

| Staff Name | Participation |
|---|---|
| JACOBS, DANIAL | Reporting |

  Comment: CERT Sgt./019

● Reports

| Report Type | Report Detail |
|---|---|
| INC019 | Planned-Use-of-Force ? December 21, 2022, at approximately 12:46 hours, a planned-use-of-force team consisting of C.E.R.T. Senior Officers (SC/O) S. Davis, S. Brown, C.E.R.T. Officers M. Kleer, A. Main, D. Kirkland, and lead by C.E.R.T. Sergeant (Sgt.) D. Jacobs was assembled in the Unit 2 Hallway. The planned-use-of-force was authorized on Inmate Jackson #1186781, housed in cell 2-B-36 for refusing to comply with coming out of his house to have his property removed, because he had propelled on a Sergeant during the breakfast meal. The C.E.R.T. Team briefed in the unit hallway for team assignments on entry into the cell. It was noted by medical staff that Inmate Jackson is on the desensitized list and chemical agents could not be used. Once the brief was completed, the team entered the unit and approached cell 2-B-36. Sgt. Jacobs gave Inmate Jackson one last directive to be restrained through the food slot. Inmate Jackson refused. Once authorization was given by the Associate Warden, the signal was given to open the cell door and entry was made. Inmate Jackson had retreated to the back of his |



# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | |
|---|---|
| **Investigator:** | **IR Number:** IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** 12/21/2022 |
| **Report Due Date:** | **IA Number:** IA- |
| **Disposition Date:** | **IN Number:** IN- |
| | **Institution:** ESP |

## Staff Involvement

● Reports

**Report Type**    **Report Detail**

cell and had lain on his bunk, on his stomach, with his hands underneath him. It was unknown at this time if Inmate Jackson had a weapon on him or something similar that could harm officers. Inmate Jackson was refusing to comply with being restrained after being given multiple orders. CERT Officer Kirkland deployed his state-issued TASER to drive stun him in the lower back, with no effect. CERT SC/O Brown began giving straight strikes to Inmate Jackson's upper extremities to attempt to gain positive control of Inmate Jackson's arm. Inmate Jackson was still able to keep his hands tucked underneath him.

Officer Kirkland gave several orders to Inmate Jackson to give up his hands, he still was refusing. Officer Kirkland administered a second drive stun to Inmate Jackson, but it seemed to be ineffective due to Inmate Jackson rolling and sporadically moving his torso away affecting the contact with the drive stun.

Officer Kirkland observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. Officer Kirkland gave Inmate Jackson one last verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. Officer Kirkland drive stunned him a third time which seemed to be effective as it was allowing the restraining officer to safely place wrist restraints on. CERT SC/O Brown was able to gain positive control of Inmate Jackson's arm, while Officer Kirkland was able to gain control of his other arm. CERT SC/O Davis and Officer Main were able to gain control of Inmate Jackson's lower extremities and apply leg restraints. Because of Inmate Jackson's aggressiveness and hostility, a spit mask was placed over his head. Inmate Jackson was assisted to his feet and placed into a modified escort and taken to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked by medical. Medical noted miner abrasions and cuts. Inmate Jackson was released by medical back to his cell. He was then escorted back to 2-B-36 without further incident.

| **Staff Name** | **Participation** |
|---|---|
| NORIEGA, MATTHEW | Reporting |
| Comment: Camera | |

● Reports

**Report Type**    **Report Detail**

INC028    On 12-21-22 I SCO Noriega was working my assigned post as the unit 2 Senior Officer at Ely State Prison. At approximately 12:46 PM I was assigned as the camera man on a planned use of force on inmate Jackson NDOC# 1186781 housed in 2B36. This was due to a previous incident where he propelled on staff and later captured the inner portion of his red box during pill call. This inmate was given an opportunity to be restrained to which he refused. The door was

---

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: APR-07-23 07:42 AM

Page 3 of 7

**ER247**        **ER247**        **ER247**



# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | |
|---|---|
| **Investigator:** | **IR Number:** IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** 12/21/2022 |
| **Report Due Date:** | **IA Number:** IA- |
| **Disposition Date:** | **IN Number:** IN- |
| | **Institution:** ESP |

## Staff Involvement

● Reports

**Report Type**   **Report Detail**

ordered open, and the use of force team entered the cell. Once the inmate was restrained, he was hostile escorted to the shower where an unclothed body search was completed. This inmate was making threats during the entire process to everybody stating he is going to kill all of us. This inmate was then escorted to the hallway where he was evaluated by medical and released back to his assigned cell in 2B36. The incident was completed and the team went back to the unit 2 hallway to debrief on the incident.

| Staff Name | Participation |
|---|---|
| MAIN, ADAM | Reporting |

**Comment:** CERT UOF

● Reports

**Report Type**   **Report Detail**

USEOF   On December 21, 2022, I, Correctional Emergency Response Team (CERT) Officer A. Main, was working my scheduled shift at Ely State Prison (ESP). The team was dispatched to cell 2B36 for Inmate Jackson #1186781. I was informed he propelled on an officer and needed to have his property removed from his cell, per my supervisors. I was assigned as the fourth man in a planned use of force team due to Inmate Jackson refusing to submit to restraints and come out of his cell. It is noted that Jackson is on the desensitized list, meaning that we cannot use chemical agents in his cell. The team lined up on the cell door and the order was given to Inmate Jackson to submit to restraints and he refused. At approximately 1245 hours, the order was given to make entrance in the cell. Inmate Jackson was actively resisting officers and would not comply with orders to submit to restraints. I grabbed his right leg and held it down to prevent Inmate Jackson from kicking myself or my partners. I gained control of his right leg and applied leg restraints. The inmate was then moved to the shower for an unclothed body search, then taken to Unit 1 & 2 hallway to be evaluated by medical. Once cleared by medical, and the cell was emptied of property, Inmate Jackson was placed back in his cell at approximately 1304 hours. Throughout this incident, it should be noted that Inmate Jackson threatened myself and other officers stating he ?gets out soon? and would ?come find us? and stated he would kill us. No other force was used. End of report.

| Staff Name | Participation |
|---|---|
| BROWN, SHANE | Reporting |

**Comment:** CERT SCO UOF

● Reports

**Report Type**   **Report Detail**

USEOF   On December 21, 2022, I Senior Correctional Officer Brown was working my assigned post at Ely State Prison. At approximately 1245 Hours I was informed of Inmate Jackson NDOC

---

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: APR-07-23 07:42 AM

Page 4 of 7

**ER248**          **ER248**          **ER248**

# State of Nevada
# Department of Corrections

Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

## Staff Involvement

● Reports

**Report Type**  **Report Detail**

1186781 housed in 2B36 propelled on an officer and needed to have his property removed from his cell, per my supervisors.  I was assigned as the third man in a planned use of force team due to Inmate Jackson refusing to submit to restraints and come out of his cell. It is noted that Jackson is on the desensitized list, meaning that we can not use chemical agents into his cell. At approximately 1250 hours I was positioned at his door to make entrance, Jackson was ordered again to come to his door and submit to restraints, in which he refused. At that time, the order was given, and I made entrance into his cell. Jackson had retreated to the back of his cell and went onto his bunk not allowing me to grab his hands because they were tucked underneath his abdominal area. That is when I had not known if Inmate Jackson had a weapon or some type of object under him that could pose a threat to myself or others. I ordered Jackson to give me his hands multiple times and Jackson had refused all orders again. I delivered multiple straight strikes to Jacksons upper extremities until I had positive control of his right hand and he was able to safely be restrained. I then gave the order for the team to move Jackson to the upper left shower to conduct an unclothed body search. Jackson was giving threats to myself and other staff members during the entire search. Once the search was completed, Jackson was escorted to the Unit 1-2 hallway to be evaluated by medical. After the evaluation was completed, Inmate Jackson was escorted back to his cell in unit 2B36. No further incident. End of report.

| Staff Name | Participation |
|---|---|
| KLEER, MACELEN | Reporting |

**Comment:**  CERT UOF

● Reports

**Report Type**  **Report Detail**

USEOF

On December 21, 2022 I Correctional Emergency Response Team Officer Kleer Macelen was working CERT my assigned post at Ely State Prison. A Planned Use of Force was authorized on Inmate Jackson #1186781 housed in 2B36, due to him propelling an unknown liquid on a officer earlier in the morning and refusing to come out the cell. Per policy if an Inmate propels on staff the Inmate has to be removed from the cell, and property be taken, and inventoried. Inmate Jackson is also on the desensitize list meaning he cant be gassed. I was assigned one position shield man. Once we arrived at the cell door (2B-36), at approximately 12:46pm, Inmate Jackson was ordered to submit to restraints. Inmate refused and retreated to the back of his cell. The signal was given to the control room to open the cell door. As I made entry inside the cell he was on his stomach with his head off to the right side watching us come inside the cell. I gave verbal orders to him to give us your hands multiple times as I walking to him. Both of his arms were tucked underneath his torso. Due to the possibility of a weapon being sheathed under him I hovered the shield over him and quickly realized he was not giving up his hands, as another officer was trying to pull out his arms free to restrain him and was unsuccessful. I quickly dropped the shield and attempted to gain positive control of his arm. Inmate Jackson was

Report Name: IGIDR
Reference Name: NOTIS-RPT-OR-0185.8
Run Date: APR-07-23 07:42 AM

**ER249**  **ER249**  **ER249**



# State of Nevada
# Department of Corrections

### Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

## Staff Involvement

● <u>Reports</u>

**Report Type**    **Report Detail**

resisting making it difficult to move his arms from underneath him. Inmate Jackson stopped resisting after a effective dry stun. At this point I was finally able to gain control of his left wrist and place it on his lower back where I was able to safely restrained him. Inmate Jackson was escorted to the upper left shower where I held a shield up Inmate Jackson stated that he was going to kill me and other officers once he got out. After a unclothed body search was conducted he was instructed to submit to restraints to be taken to the hallway where medical could evaluate him. Inmate Jackson stated that he was not going to come out and that we were going to have to come in and get him. Inmate Jackson was passive aggressive and later submitted to being restrained and taken to the hallway where he was evaluated by medical. Inmate Jackson was then escorted back to 2B36 with no further issues. End of Report.

| Staff Name | Participation |
|---|---|
| KIRKLAND, DENT | Reporting |

**Comment:** CERT UOF

● <u>Reports</u>

**Report Type**    **Report Detail**

INC028    On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by

---

**ER250**                **ER250**                **ER250**



# State of Nevada
# Department of Corrections

## Investigation Detail Report

| Investigation | | |
|---|---|---|
| **Investigator:** | **IR Number:** | IR-2022-ESP-002698 |
| **Assigned Date:** | **Occurrence Date:** | 12/21/2022 |
| **Report Due Date:** | **IA Number:** | **IA-** |
| **Disposition Date:** | **IN Number:** | **IN-** |
| | **Institution:** | ESP |

### Staff Involvement

● Reports

| Report Type | Report Detail |
|---|---|
| | medical. He was then escorted back to 2B36 without further incident. EOR |
| USEOF | On December 21, 2022, I C/O Kirkland was working my assigned shift at Ely State Prison. At approximately 12:45 pm I was ordered to prepare for a planned use of force on Inmate Jackson #1186781 housed in 2B36. I was assigned as the number two man in, in charge of the electronic stun device (TASER). Once we arrived at cell 2B36, Inmate Jackson refused all orders to be restrained and the order was given to make entry into his cell. Inmate Jackson then retreated to the back of his cell and laid on his bed tucking his hands and arms underneath him, orders were given to him as soon as we made entry into the cell to give up his wrist due to them being tucked underneath him. Not Knowing if Inmate Jackson had a weapon in his hands tucked underneath him. Inmate Jackson refused to give us his hands, and I immediately deployed my state-issued TASER to drive stun him in the lower back. Inmate Jackson was still able to keep his hands tucked underneath him. I gave several orders to Inmate Jackson to give up his hands, as he still was refusing. At that time, I drive stunned him a second time, but it seemed to be ineffective due to him squirming and sporadically moving his torso away affecting the contact with the drive stun. I observed the restraining Officer struggling to gain control of his arms, as Inmate Jackson was putting up some resistance with the restraining officer. I gave one verbal order to give up his hands and submit to restraints. Inmate Jackson refused and was still actively resisting. I drive stunned him a third time which was effective due to Inmate Jackson giving up and letting the restraining officer safely place wrist restraints on. I then placed Inmate Jackson in a modified escort and took him to the upper left shower for an unclothed body search. During the unclothed body search Inmate Jackson made threats to kill me and the Officers when he gets out. Once the search was complete Inmate Jackson was escorted to the hallway to be checked on by medical. He was then escorted back to 2B36 without further incident. EOR |

**ER251**            **ER251**            **ER251**

Log Number 2006-31-46909

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: Tarantae Jackson    I.D. NUMBER: 1186781

INSTITUTION: Ely    UNIT: 2B 36

GRIEVANT'S STATEMENT: Dec 21st officers used, use of force beacus i refused to cuff up after that i want to lay down on my Bed with my hands behind my Back officers Then came inside hit me in my Face mouth til i started to Bleed and Both eyes where Black durry all this officers Tased me for NO

### SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Tarantae Jackson    DATE: 12.22.22    TIME: 8 AM

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 12/27/22 TIME: 1.52 pm

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____ DATE: _____

____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____ DATE: _____

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

DOC 3091 (12 / 01)

ER252    ER252    ER252

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Tarante Jackson       I.D. NUMBER: 1186751

INSTITUTION: Ely       UNIT #: 2B-36

GRIEVANCE #: _____       GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION:   PG. 1 OF 2

reason 2 times they did all this. After i was sent to
the showers as you will see on the unit 2B video footage
i had no shirt on Blue levi Jeans and All white shoes
my family got me from the clothe package officers made
me strip out handcuff me and send me down to see
medical like you will also see on video they took
everything out my cell and never gave me my clothes or
shoes Back. AR 405 use of force clearly states
officers shall not use fist knees elbows nor are
they suppose to punish or abuse inmates which they
clearly did do i also spit Blood on the officers sheild
as you will see in the video. im sick of officers
abusing me over and over i want to go home, dont
feel safe in NDOCs custity what so ever they
Not only violate their own AR's But also violated
my 8th amendment rights my remedy for all this

Original:       Attached to Grievance
Pink:           Inmate's Copy

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

DOC – 3097 (01/02)

ER253                    ER253                    ER253

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Tavarive Jackson    I.D. NUMBER: 1186781

INSTITUTION: Ely    UNIT #: 2B 36

GRIEVANCE #: _____    GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION:    PG. 2 OF 2

I want All goodtime worktime i lost Back durin
This prison Bid my P.E.X.D is 5/22/23 right now
Yall could either let me go home before the end of
Jan 2023 or we can go to federal court. I'm
sick of officers Abusing me NDOC
I want a t.v. and cable card As soon as this get
look'd at while im waiting to go home i also want
500 dollars on my Books for Pain and sufferrs
and for officers using excessive force abusing
me and punishing me I will be Appealing when its
Time to. Please be advised this the 4th excessive
Force officers has used on me this years. Also be
Advised im really in Fear for my life
while doing time in NDOC Because of their
officers and they Bused my left Pinky Fingo
I tried to resove with officer they said Fuck me so these

Original:    Attached to Grievance
Ely St Pink: Prison    Inmate's Copy

DEC 2 7 2022

Grievance Coordinator

DOC – 3097 (01/02)

**ER254**                    **ER254**                    **ER254**

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322, 209.243 AND ADMINISTRATIVE REGULATION 740

DO **NOT** SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE, BOARD OF EXAMINERS, OR DIRECTOR

This form is to be attached to your grievance form for any injuries or any other claim (except property) arising out of a tort alleged to have occurred during your incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees or contractors.

The following information is necessary to fairly evaluate your claim. Please provide complete information. If you need more space, attach a separate sheet of paper. You may submit additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $ 500 is hereby made against the Department of Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | | 2. I.D. # | 3. INSTITUTION |
|---|---|---|---|
| Tavontae Jackson | | 1186781 | ELY |
| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | | 6. TIME (a.m. or p.m.) |
| 500 | 12-21-22 Afternoon | | 12:00 PM |
| 7. PLACE OF OCCURRENCE | | | |
| Unit 2B RM 36 | | | |

DOC 3095 (12/01)

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

Page 1 of 3

ER255                    ER255                    ER255

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

officers used excessive force punish and abused me which not only violate NDOC's AR's But Also violate my civil Rights 8th Amendment

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

warden, LT, Sgt and Sgt officers who hit me with closed fist, and the whole v2B see my eyes and it was Sgt officer Brown who hit me and Black'd my eyes

10. Other pertinent information:

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

Page 2 of 3

ER256                    ER256                    ER256

STATE OF Nevada                  )
                                 ) SS
COUNTY OF Clark                  )

I, Tarantae Jackson         , do hereby swear under penalty of perjury that I am the claimant named above, that I have read the foregoing claim and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those maters, I believe them to be true, and that THIS IS MY ENTIRE CLAIM AGAINST THE STATE OF NEVADA/DEPARTMENT OF CORRECTIONS.

I FULLY UNDERSTAND THAT I WILL HAVE TO SIGN A GENERAL RELEASE OF ALL CLAIMS IN THE PRESENCE OF A NOTARY PUBLIC FOR THE EXACT AMOUNT I AM CLAIMING BEFORE ANY PAYMENT WILL BE OFFERED TO ME. THIS GENERAL RELEASE WILL BECOME EFFECTIVE ONLY UPON ACTUAL PAYMENT OF THE CLAIM BY THE STATE OF NEVADA.

DATED this 22nd day of Dec                              , 20 22

                                    Tarantae
                            Signature of Claimant

## NOTICE

NEVADA REVISED STATUTE 197.160 provides that every person who knowingly presents a false or fraudulent claim is guilty of a gross misdemeanor, and is subject to criminal penalties of imprisonment of up to one year, and a fine of up to $2,000.00.

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

DOC - 3095 (12/01)

Page 3 of 3

ER257                          ER257                          ER257

## NEVADA DEPARTMENT OF CORRECTIONS

### ADMINISTRATIVE CLAIM RELEASE AGREEMENT

I, _Tavonte Jackson_, NDOC #_1186781_ as claimant, did on the _22nd_ day of _Dec_, _2022_, file against and deliver to the Department of Corrections, via the Warden of _Ely state prison_, an institution/facility of the Department of Corrections, an Inmate Grievance No. _informal_, alleging personal injuries or any other claim arising out of a tort alleged to have occurred during my incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees, or contractors described as _excessive use of force_

_____.

I acknowledge that $ _500_ will be deposited into my account as payment in full, for the above claim and hereby release the State of Nevada, the Nevada Department of Corrections and any and all agents, servants and/or employees of the state and agency from all liability of any kind whatsoever from any further claim for items identified on this grievance.

> I UNDERSTAND THIS RELEASE WILL BECOME EFFECTIVE ONLY UPON THE APPROVAL OF MY CLAIM BY THE STATE OF NEVADA AND/OR THE NEVADA DEPARTMENT OF CORRECTIONS.

DATED this _22nd_ day of _Dec_, _2022_

SIGNED: _Tavonte_          SOCIAL SECURITY # _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_
_____
Signature of Claimant

WITNESS:_____    TITLE:_____

DOC-3096 (2/02)

Ely State Prison

DEC 2 7 2022

Grievance Coordinator

**ER258**          **ER258**          **ER258**



# State of Nevada
# Department of Corrections

### INMATE GRIEVANCE REPORT

**ISSUE ID#** 20063146909                                    **ISSUE DATE:** 12/27/2022
**ISSUE LOC:** ESP

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | RTRN_INF | UOF | JUNDERWOOD |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 12/27/2022 | | Partially Granted | SCHILSON | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

I/M signed & dated 1/17/23 tb
Inmate Jackson, I am in receipt of grievance 2006-31- 46909 in regard to your use of force allegations.
Your grievance is partially granted as it has been referred to the IG?s office for further investigation.

GRIEVANCE RESPONDER

Report Name: NVRIGR                                                         Page 3 of 4
Run Date:    APR-07-23 07:39 AM

**ER259**                          **ER259**                          **ER259**



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**   20063146909                     **ISSUE DATE:**   12/27/2022
**ISSUE LOC:**  ESP

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | IG_REVIEW | UOF | JJONES |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 12/27/2022 | | | SCHILSON | INACTIVE |

### INMATE COMPLAINT
Case number IN-2023-0049 was opened for this use of force.

### OFFICIAL RESPONSE
Referred

GRIEVANCE RESPONDER

**ER260**                    **ER260**                    **ER260**

Log Number  2006-31-44909

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Tarontae Jackson   I.D. NUMBER: 1186781

INSTITUTION: ELY   UNIT: 9-A-30

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 20063146909 , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Tarontae Jackson   DATE: 3-29-23

WHY DISAGREE: No response after 90 days i need the high level officals to review remedy stay the same All good time work time Back that i lost And a t.v. with cable cord, 500 dollars on my Books

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: 4/3/23

FIRST LEVEL RESPONSE: _____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: 4/27/23

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____   DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Ely State Prison

APR 05 2023

Grievance Coordinator

ER261   ER261   DOC 3092 (12/04)   ER261



# State of Nevada
# Department of Corrections

INMATE GRIEVANCE REPORT

**ISSUE ID#**   20063146909                           **ISSUE DATE:**   12/27/2022
**ISSUE LOC:**  ESP

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | RCVD_L1 | UOF | JUNDERWOOD |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 1 | 04/05/2023 | 43 | | MSCHAEFER | A |

| INMATE COMPLAINT |
|---|

3-29-23
No response after 90 days I need the high level officals to review.
Remedy: Stay the same, All good time work time back that I lost and a T.V. with cable cord, 500 dollars on my books.

| OFFICIAL RESPONSE |
|---|

GRIEVANCE RESPONDER

**ER262**                    **ER262**                    **ER262**



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**   20063146909
**ISSUE LOC:**  ESP

**ISSUE DATE:**  12/27/2022

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | RCVD_INF | UOF | |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 12/27/2022 | | | SCHILSON | INACTIVE |

### INMATE COMPLAINT

12-22-22
Dec. 21st officers used use of force because I refused to cuff up after that I went to lay down on my bed with my hands behind my back. Officers then came insid hit me in my facemouth til, I started to bleed andboth eyes were black. During all this officers tased me for no reason 2 times they did all this.
See attached 2 pages.
I want a TV and cable cord as soon as this get look'd at while i'm waitiny to gi gine, U aksi wabt 599 dikkars ib nt biijs fir oaub abd syfferubg abd fir iffucers ysubg excessuve force abusing me and punching me I will be appealing when it's tome to. etc.

### OFFICIAL RESPONSE

GRIEVANCE RESPONDER

ER263        ER263        ER263



# Nevada Department of Corrections
## Improper Grievance Memo

| | |
|---|---|
| **TO:** | Jackson, Tarontae [0001186781]    9A 1 |
| **FROM:** | Tasheena Cooke, Associate Warden - Ely State Prison |
| **DATE:** | April 25, 2023 |
| **RE: Improper Grievance #** | 2006.31.4699, Untimely |
| | 46909 |

The attached grievance is being returned to you for the following reason(s):

---

**REJECTED - After correcting the deficiencies(s) listed below; you may re-submit your grievance at the same level unless specified.** Failure to re-submit the grievance through the prescribed timeframe shall constitute abandonment.

| | | | |
|---|---|---|---|
| ☐ | Missing documents | ☐ | More than one issue |
| ☐ | No harm/loss, action, or remedy | ☐ | Improper submission |
| ☐ | Not a KITE | ☐ | Not signed or dated |
| ☐ | Missing inmate personal property claim form | ☐ | Disciplinary appeal process/directly to warden |
| ☐ | Alterations | ☐ | Failure to correct deficiencies |
| ☐ | Missing administrative claim form | ☐ | Wrong form |
| ☐ | Continuation forms | ☐ | Staff misconduct (IG Review Submitted) |
| ☐ | Other specify: | | |

---

**NOT ACCEPTED - If not accepted due to any of the reasons in this box, the grievance may NOT proceed to the next level Per AR 740.03,5 and 740.04,G.**

| | | | |
|---|---|---|---|
| ☐ | Non-grievable issues: | | |
| | ☐ State and federal court decisions | ☐ | Parole Board actions and/or decisions |
| | ☐ State, federal and local laws and regulations | ☐ | Lacks standing |
| ☒ | Untimely submission | | |
| ☐ | Inmate elected NOT to sign and date any grievance form | | |
| ☐ | Grievance was granted | | |
| ☐ | Abuse of Inmate Grievance Procedure | | |
| | ☐ A threat of serious bodily injury to a specific individual | ☐ | Obscene, profane and derogatory language |
| | ☐ Specific claims or incidents previously filed by the same inmate | ☐ | More than one (1) grievance per week, Monday through Sunday |
| | ☒ Other specify: Inmate Jackson, your grievance has been referred to the IG's office. | | |

---

| | | | |
|---|---|---|---|
| _Witness Signature_ | _5/12/23_ Date | _Inmate Signature_ | _5-12-23_ Date |

cc: Original – Inmate
   Copy - Grievance File

DOC-3098 (12/2021)

**ER264**          **ER264**          **ER264**



# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#** 20063146909          **ISSUE DATE:** 12/27/2022
**ISSUE LOC:** ESP

| INMATE NAME | NDOC ID | CURR LOC | TRANS TYPE | GR CODE | ASSIGNED TO |
|---|---|---|---|---|---|
| JACKSON, TARONTAE DAJOHN | 1186781 | ESP | IG_RESP | UOF | BSHIELDS |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 1 | 05/09/2023 | | Denied | BSHIELDS | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Inmate Jackson, I am in receipt of your grievance. This incident was fully investigated under case number IN-2023-49. The result of the investigation determined that your allegations of excessive force were unsubstantiated. This was based on a review of the Officers? reports and an attempted interview with you. You could not be interviewed because you got into a use of force situation during the escort. Video surveillance footage was reviewed but does not show the use of force. Grievance denied.

GRIEVANCE RESPONDER

Ely State Prison

Report Name: NVRIGR
Run Date:     MAY-09-23 09:02 AM

Page 1 of 5
MAY 1 8 2023

Associate Warden

**ER265**                    **ER265**                    **ER265**



# State of Nevada
## Department of Corrections

Disciplinary Sanctions by IR -- **IR-2022-ESP-002698**

**Incidents on this report:**                                                                                    **0**

Report Name: IGDSIR
Reference Name: NOTIS-RPT-OR-0214
Run Date:  APR-07-23 07:43 AM

Page 1 of 1
Ordered by Offense Date, Incident ID

**ER266**                          **ER266**                          **ER266**



ER267                              ER267                              ER267



Steve Sisolak
*Governor*

William Gittere
*A/Director*

Gabriela Najera
*Warden, Southern Desert
Correctional Center*

Northern Administration
5500 Snyder Ave.
Carson City, NV 89701
(775) 977-5500

Southern Administration
3955 W. Russell Rd.
Las Vegas, NV 89118
(725) 216-6000

**STATE OF NEVADA**
Department of Corrections

## MEMORANDUM

Date:    December 31, 2022

To:    James Jones, Inspector General
       Calvin Johnson, A/Deputy Director of Operations

Subject:    Use of Force Review, IR-2022-SDCC-003018

A Use of Force Incident Review was completed on December 31, 2022 by Lieutenant Groover and Acting Associate Warden Tim Carlman, and then reviewed by Warden G. Najera.

Incident Date: September 4, 2022
Time: 1455 hours
Location: SDCC, Unit 6, B-Wing
Type of Force: Spontaneous –Hands On

Inmates Information: Jackson, Taontae #1186781

Staff Members involved in reported Use of Force: C/O Maxwell Harcourt, C/O Jared Hanlon

Staff Member witnesses to the reported Use of Force: C/O Maxwell Harcourt, C/O Jared Hanlon

Incident Summary: Based on recorded interviews, video and all pertinent written reports in NOTIS, it was determined that the following occurred:

On September 4, 2022 at approximately 1455 hours a spontaneous use of force was called over the radio from housing unit 6 a SDCC.

On September 4, 2022 At approximately 15:04 hours the following incident occurred: Inmate Jackson, Tarontae #1186781 was being moved with his cellmate Williams, Vernon #91706 to Unit 6 because of both inmates having COVID-19 symptoms. When Jackson found out that he would still be living in the same cell as Williams he became agitated with Officers Hanlon and Harcourt and began saying that he did not want to be housed in the same cell. Hanlon explained to Jackson that it would only be for count and that he would speak with supervisors about a bed move. At first Jackson understood and walked to his assigned cell but once at the door he

2

became verbally abusive to both officers and became visibly agitated. Hanlon then gave Jackson a direct order to submit to restraints which he refused to do. Hanlon was able to restrain his right wrist but then Jackson began to pull away from his grasp, at this time Officer Harcourt came to assist and with his help they were able to get the left wrist restrained. Once restrained Jackson continued to resist by pulling away and attempting to hit the Officers with his shoulders while being escorted to a day room. Hanlon then was able to push Jackson down to the ground where he was segmented by Hanlon. Spontaneous Use of Force was called over the radio by Officer Harcourt. Search and Escort and medical responded and escorted Jackson to the infirmary without further incident to be evaluated.

Use of Force was justified – Yes.

Use of Force was authorized – Yes.  The spontaneous hands-on Use of Force was authorized by AR 405 in order to control the offending inmates and to get them to comply with orders

Use of Force was necessary – Yes, it is lawful for a staff member to use the minimal amount of force required to compel the inmates to comply with orders based on the Use of Force Continuum.

Use of Force was limited – Use of force was limited to the least amount of force necessary to contain and control the inmates.

Disciplinary Action – None.

Corrective Action – None

Changes/Enhancements to policy, regulation, and training or physical security improvements related to this Use of Force necessary – No.

Recommend Letters of Commendation – No.

Enclosure – None

Additional Information – None

Gabriela Najera
Warden, Southern Desert Correctional Center
Nevada Department of Corrections

Attachments: N/A

cc:    N/A

ER269                    ER269                    ER269

AARON D. FORD
  Attorney General
RUDOLF M. D'SILVA, (Bar No.16227)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
(702) 486-3375 (phone)
(702) 486-3773 (fax)
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants*
*Daniel Jacobs, Michael Stolk,*
*And Dent Kirkland*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TARONTAE D. JACKSON,<br><br>            Plaintiff,<br><br> v.<br><br>STOLK, et al.*,*<br><br>            Defendants. | Case No. 3:23-cv-00247-MMD-CSD<br><br>**DEFENDANT'S ANSWER TO PLAINTIFF'S CIVIL RIGHTS COMPLAINT**<br>**[ECF NO. 6]**<br><br>**Jury Trial Demanded** |

Defendants Daniel Jacobs, Michael Stolk, and Dent Kirkland, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Rudolf M. D'Silva, Deputy Attorney General, hereby demand a jury trial and answer Plaintiff's Civil Rights Complaint as follows:

## A.    JURISDICTION

1.      In answering paragraph 1, on page 1, of Plaintiff's complaint, the responding Defendant admits that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.

2.      In answering paragraph 2, on page 1, of Plaintiff's complaint, the responding Defendant admits that Plaintiff was housed at Ely State Prison (ESP) at the time he filed this Complaint.

3.      In answering paragraphs 3, on page 1, of Plaintiff's complaint, the responding Defendant denies that there has been any violation of Plaintiff's constitutional rights.

## B.   DEFENDANTS

4.     In answering paragraph 1, on page 2, of Plaintiff's complaint, responding Defendants admit that Michael Stolk is currently employed as a Correctional Sergeant with Nevada Department of Corrections (NDOC) at ESP.

5.     In answering paragraph 2, on page 2, of Plaintiff's complaint, Officer Brown is not represented by the Office of the Attorney General (OAG) and therefore the responding Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph. Defendants therefore deny each and every allegation contained in this paragraph.

6.     In answering paragraph 3, on page 2, of Plaintiff's complaint, responding Defendants admit that Daniel Jacobs is currently employed as a Correctional Sergeant with NDOC at ESP.

7.      In answering paragraph 4, on page 2, of Plaintiff's complaint, Officer Davis is not represented by the Office of the Attorney General (OAG) and therefore the responding Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph. Defendants therefore deny each and every allegation contained in this paragraph.

8.     In answering paragraph 5, on page 2, of Plaintiff's complaint, this paragraph does not require a response as this Defendant has not been named. To the extent the Court finds this paragraph requires a response, the Defendants deny each and every allegation contained in this paragraph.

## C.   NATURE OF THE CASE

9.     In answering the paragraph titled "nature of the case" on page 2, no response is required as Plaintiff has left his section blank. To the extent the Court finds this paragraph requires a response, the Defendants deny each and every allegation contained in this paragraph.

### D.    CAUSES OF ACTION

**Claim 1[1]**

17.    In answering paragraphs 1-4, on page 3, of Plaintiff's complaint, the responding Defendants deny that there has been any violation of Plaintiff's constitutional rights.

18.    In answering sentence 1 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants admit that Plaintiff was transferred to ESP on December 15, 2022. The responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the remaining allegations in this sentence, and therefore deny the same.

19.    In answering sentence 2 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

20.    In answering sentence 3 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

21.    In answering sentence 4 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

22.    In answering sentence 5 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

---

[1] Plaintiff has failed to clearly number his complaint in a clear manner. Instead, he combines his answers in one large paragraph. In an attempt to accurately respond to Plaintiff's allegations Defendants, respond to each sentence in this section individually to the best of their ability.

**ER272**                    **ER272** Page 3              **ER272**

23. In answering sentence 6 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

24. In answering sentence 7 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

25. In answering sentence 8 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

26. In answering sentence 9 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

27. In answering sentence 10 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

28. In answering sentence 11 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

29. In answering sentence 12 under "supporting facts" on page 3 of Plaintiff's complaint, the allegations contained in this paragraph set forth legal conclusions to which no response is necessary. The responding Defendants are without knowledge and lack

sufficient information to form a belief about the truth of the remaining allegations in this sentence, and therefore deny the same.

30.    In answering sentence 13 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

31.    In answering sentence 14 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

32.    In answering sentence 15 under "supporting facts" on page 3, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

33.    For any sentences that were missed under Claim 1 under "supporting facts" on page 3, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in those sentences, and therefore deny each and every allegation in those sentences.

### Claim 2[2]

34.    In answering paragraphs 1-4, on page 4, of Plaintiff's complaint, the responding Defendants deny that there has been any violation of Plaintiff's constitutional rights.

35.    In answering sentence 1 under "under supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants deny each and every allegation made in this sentence.

---

[2] Plaintiff has failed to clearly number his complaint in a clear manner. Instead, he combines his answers in one large paragraph. In an attempt to accurately respond to Plaintiff's allegations Defendants, respond to each sentence in this section individually to the best of their ability.

36. In answering sentence 2 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

37. In answering sentence 3 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

38. In answering sentence 4 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

39. In answering sentence 5 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

40. In answering sentence 6 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

41. In answering sentence 7 under "supporting facts" on page 4 of Plaintiff's complaint, the allegations contained in this paragraph set forth legal conclusions to which no response is necessary. The responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the remaining allegations in this sentence, and therefore deny the same.

42. In answering sentence 8 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient

information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

43. In answering sentence 9 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

44. In answering sentence 10 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

45. In answering sentence 11 under "supporting facts" on page 4, of Plaintiff's complaint, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in this sentence, and therefore deny each and every allegation in this sentence.

46. For any sentences that were missed under Claim 2 under "supporting facts" on page 4, the responding Defendants are without knowledge and lack sufficient information to form a belief about the truth of the allegations in those sentences, and therefore deny each and every allegation in those sentences.

## E.    PREVIOUS LAWSUITS

47. In answering paragraphs 1-3, on page 5, of Plaintiff's complaint, the Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in these paragraphs, and therefore deny each and every allegation contained in these paragraphs.

## F.    REQUEST FOR RELIEF

48. Responding Defendants deny that Plaintiff is entitled to any of the relief set forth in his Request for Relief on page 5 of the complaint.

49. Each and every allegation in Plaintiff's complaint not specifically admitted is hereby denied.

### **DEFENDANTS' AFFIRMATIVE DEFENSES**

Defendants deny any and all liability in this matter and asserts the following affirmative defenses:

1. Plaintiff has failed to state a claim for which relief can be granted.

2. Plaintiff has failed to state a cognizable constitutional claim pursuant to 28 U.S.C. § 242, 28 U.S.C. § 1343 (a)(3), 42 U.S.C. §1983, and/or NRS 41.0322, 441A.220 and NRS 209.885.

3. At all times mentioned in Plaintiff's Complaint, Defendants did not personally participate in any of the alleged violations and/or were neither the cause-in-fact nor the proximate cause of Plaintiff's damages, if any.

4. Defendants are not legally responsible for the actions and/or omissions of other third parties.

5, Defendants are entitled to qualified immunity.

6. Defendants are entitled to discretionary act immunity.

7. Plaintiff's claims are barred pursuant to the doctrine of sovereign immunity and the Eleventh Amendment of the United States Constitution.

8. Plaintiff's claims are barred as Plaintiff has failed, refused, or neglected to take reasonable steps to mitigate his damages, therefore barring or diminishing his ability to recover.

9. Plaintiff failed to exhaust his administrative remedies pursuant to the Prisoner Litigation Reform Act, NRS 41.0322 and/or NRS 209.243, and NDOC Administrative Regulation (AR) 740.

10. Defendants held an objective good faith belief that they were acting reasonably and that their actions were privileged and legally justified.

11. There can be no recovery for damages under 42 U.S.C. § 1983 against government officials acting in their official capacity.

12. Defendants at all relevant times acted with due care and circumspection in the performance of their duties.

13. Plaintiff's claims for relief are barred as Plaintiff's damages are speculative and cannot be calculated with any certainty or reliability.

14. Defendants are not the direct or proximate cause of the alleged constitutional deprivations or tortious actions as alleged.

15. Defendants are immune from liability pursuant to Nevada Revised Statutes §§ 41.031- 41.032 et. seq.

16. Defendants at all relevant times acted in good faith toward Plaintiff and possessed a good faith belief that they were acting reasonably, and that their actions were privileged and legally justified, and Defendants are entitled to qualified good faith immunity from damages.

17. Plaintiff is barred from seeking punitive damages pursuant to Nevada law.

18. Plaintiff is barred from seeking an award of attorney fees pursuant to 42 U.S.C. § 1988 and § 1998.

19. Each purported claim for relief is barred by the doctrines of *res judicata* and/or collateral estoppel.

20. Each purported claim for relief is barred as Plaintiff is estopped from pursuing any claim against Defendants in accordance with equitable principles of jurisprudence.

21. Plaintiff's claims for relief are barred by the applicable statute of limitations.

22. Each purported claim for relief is barred as Defendants are not legally responsible for the actions and/or omissions of third-parties, including but not limited to other named or Doe Defendants.

23. Each purported claim for relief is barred pursuant to the doctrine of unclean hands.

24. Plaintiff's claims, or parts thereof, are barred due to the fact there is no causation between the alleged facts and the damages sought in the Complaint.

25. Plaintiff is barred from receiving Court costs arising under 42 USC 1988 and 1997e.

26.     Plaintiff is not entitled to prejudgment interest from the date of filing of his initial Complaint.

27.     Plaintiff has failed to provide for any cognizable damages.

28.     Plaintiff's claims are barred, all or in part, because Defendants did not breach any duty owed to Plaintiff.

29.     Plaintiff's claims are barred, all or in part, due to a failure to satisfy a condition precedent.

30.     Plaintiff's claims are barred because, at all relevant times, Defendants acted in accordance with applicable law and prison procedures.

31.     Defendants presently have insufficient knowledge or information upon which to form a belief as to whether it may have other, as yet unstated, defenses available. In the event further investigation or discovery reveals the applicability of any additional defenses, including but not limited to those affirmative defenses identified in Rule 8 of the Nevada Rules of Civil Procedure, Defendants reserve the right to amend this Answer to specifically assert such additional affirmative defenses.

## **DEFENDANT'S PRAYER FOR RELIEF**

**WHEREFORE**, Defendants pray for judgment and relief of this Court as follows:

1.     That Plaintiff's Complaint be dismissed with prejudice;

2.     That Plaintiff take nothing by virtue of his Complaint;

3.     For Defendant's attorneys' fees and costs of suit;

4.     A jury trial is demanded; and

5.     For such other relief as this Court may deem just and proper.

DATED this 31st day of May, 2024.

AARON D. FORD

Attorney General
By:     */s/ Rudolf M. D'Silva*
          RUDOLF M. D'SILVA, Bar No. 16227
          Deputy Attorney General
          *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada and that on this 31st day of May, 2024, I electronically filed the foregoing, **ANSWER TO PLAINTIFF'S CIVIL RIGHTS COMPLAINT [ECF NO. 6],** via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by depositing a copy for mailing in the United States Mail, first-class postage prepaid, addressed to the following:

Tarontae Jackson
6706 Cinnabar Coast Lane
North Las Vegas, NV 89084
*Plaintiff, Pro Se*

/s/ Kimalee Goldstein
Kimalee Goldstein, an employee of the
Office of the Nevada Attorney General

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TARONTAE D. JACKSON,

Plaintiff,

v.

STOLK, *et al.*,

Defendants.

Case No. 3:23-cv-00247-MMD-CSD

SCREENING ORDER

## I.   SUMMARY

State prisoner Tarontae Jackson brings this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when correctional officers retaliated and used excessive force against him while he was incarcerated at Ely State Prison ("ESP"). (ECF No. 1-1.) Jackson has applied to proceed *in forma pauperis* ("IFP") in this action. (ECF No. 4.) He moves for a status update. (ECF No. 5.) And he filed a First Amended Complaint ("FAC"). (ECF No. 6.)

An amended complaint replaces the original. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). The Court thus disregards Jackson's original complaint and now screens his FAC under 28 U.S.C. § 1915A. Having done so, the Court finds that Jackson states a colorable Eighth Amendment claim about use of excessive force, so that claim can proceed. But Jackson fails to state a colorable First Amendment retaliation claim, so that claim is dismissed with leave to amend. The Court temporarily defers ruling on Jackson's IFP application, and it denies his motion for a status update.

## II.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of

ER281                              ER281                              ER281

a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal

2

pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of a claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III.    SCREENING OF FAC**

**A.    Jackson's Factual Allegations**

Jackson alleges the following. On December 15, 2022, Jackson was sent to ESP because he had been charged with a work stoppage and battery and placed on "HRP." (ECF No. 6 at 3.) Early the next morning, he asked Sergeant Stolk for his personal property, and said that it had been over 72 hours since he last showered. (*Id.*) Stolk made a "smart remark" and Jackson responded by calling him a bitch. (*Id.*) Stolk and Corrections Officer Brown approached Jackson's door and said they were "gonna have fun beating [his] ass." (*Id.*)

3

On December 19 or 20, 2022, during Jackson's HRP hearing, the warden stated that Jackson had been grabbing corrections officers and holding the food flap on his cell's door, and ordered officers to get Jackson out of his face. (*Id.*) Later in the sally port, Stolk said that if Jackson grabbed officers and held the food flap at ESP, then officers would "beat [Jackson's] ass." (*Id.*) Jackson laughed and asked for his property. (*Id.*) Stolk said that it would be a while before Jackson received his personal property considering he faced charges for assaulting officers. (*Id.*)

On December 21, 2022, Stolk did not give Jackson his breakfast tray, claiming that Jackson had "propelled on him[.]" But the cell's design prevented Jackson from being able to throw anything outside it. (*Id.*) Jackson suspects that Stolk made up the incident to justify entering Jackson's cell with other officers to beat him up. (*Id.*) Later that same day, CERT officers entered Jackson's cell and beat him until his eyes were black and his mouth was bleeding. (*Id.*) Corrections officers came to Jackson's cell door and ordered him to cuff up. (*Id.* at 4.) Jackson refused because officers had previously cuffed him too tightly. (*Id.*) Jackson went to lie down on his bed with his hands behind his back. (*Id.*)

Corrections Officer Kirkland then entered Jackson's cell and tased him in the back. (*Id.*) Corrections Officer Brown and Sergeant Davis then hit Jackson in both of his eyes and temple "for no reason." (*Id.*) Stolk and Corrections Officer Jacobs were present but did not stop the other officers. (*Id.*) Jackson has been given at least three extra doses of his depression medication Prozac to help him cope with this experience. (*Id.*) He was allowed to see the nurse three days later, who gave him ice packs with instructions to put them over his eyes. (*Id.* at 3.) Jackson has lost sleep and fears for his life because of this incident. (*Id.*)

### B.    Jackson's Claims

Based on these allegations, Jackson sues Stolk, Brown, Jacobs, and Davis. (*Id.* at 2.) He brings two claims and seeks monetary relief. (*Id.* at 3-5.) The Court liberally construes the FAC as bringing claims based on two different theories of liability: (1) First Amendment retaliation and (2) Eighth Amendment use of excessive force. The Court

4

**ER284**        **ER284**        **ER284**

addresses each theory and any issues below.

### 1. First Amendment retaliation claim

Prisoners have a First Amendment right to file prison grievances and pursue civil-rights litigation in the courts "and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). A retaliation claim in the prison context has five elements. *Watison*, 668 F.3d at 1114. "First, the plaintiff must allege that the retaliated-against conduct is protected." *Id.* Filing or submitting a grievance, complaint, or lawsuit about prison conditions or alleged constitutional violations is protected conduct. *Entler v. Gregorie*, 872 F.3d at 1031, 1039 (9th Cir. 2017). The form that a prisoner's complaint takes—"even if verbal"—"is of no constitutional significance, and threats to sue fall within the purview of the constitutionally protected right to file grievances." *Id.*

Second, the plaintiff must allege that "the defendant took adverse action against [him]." *Watison*, 668 F.3d at 1114. "'The mere threat of harm can be an adverse action.'" *Id.* (brackets and emphasis omitted) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)). The third factor requires the plaintiff to "allege a causal connection between the adverse action and the protected conduct." *Id.* Allegations "of a chronology of events from which retaliation can be inferred is sufficient" at the screening stage. *Id.*

"Fourth, the plaintiff must allege that the 'official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* (quoting *Robinson*, 408 F.3d at 568). "A plaintiff who fails to allege a chilling effect may still state a claim if he alleges [that] he suffered some other harm that is more than minimal." *Id.* (brackets and quotation marks omitted) (quoting *Brodheim*, 584 F.3d at 1269 and *Robinson*, 408 F.3d at 568 n.11). The fact "[t]hat the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim" at the pleading stage. *Id.*

And the fifth factor requires the plaintiff to allege "'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution.'" *Id.*

5

**ER285**   **ER285**   **ER285**

(quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). A plaintiff can sufficiently plead "this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary or capricious, or that they were unnecessary to the maintenance of order in the institution." *Id.* (internal quotation omitted).

Jackson alleges that he was sent to ESP because he had been charged with work stoppage and battery. Stolk threatened to beat Jackson if he tried to grab corrections officers or hold his food flap while at ESP. On December 21, 2022, Stolk falsely claimed that Jackson had "propelled" on him to justify entering Jackson's cell and beating him along with other officers.

Jackson fails to state a colorable retaliation claim. There are no factual allegations that Jackson engaged in protected conduct like filing grievances or verbally reporting misconduct or unlawful prison conditions. Nor are there factual allegations that any Defendant acted because of Jackson's protected conduct. And Jackson does not allege the adverse action would have a chilling effect on an ordinary person's First Amendment activities. The First Amendment retaliation claim is therefore dismissed with leave to amend.

### 2. Eighth Amendment excessive force claim

When a prison official is accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors like the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See id.* at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual

ER286          ER286          ER286

punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *See id*. at 9-10. Officers can be held liable "for failing to intercede in situations where excessive force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000)).

Based on the allegations, Stolk falsely claimed that Jackson had "propelled" on him during breakfast delivery on December 21, 2022, to manufacture a reason for entering Jackson's cell and beating him up. Corrections officers then arrived at Jackson's cell and told him to cuff up. Jackson refused and went to lie down on his bed with his hand behind his back. But Kirkland tased Jackson in the back. Brown and Davis hit Jackson in both eyes and the temple. And Stolk and Jacobs watched the beating but did not intervene. Both of Jackson's eyes were blackened and his mouth was bloodied during this event. Jackson was given ice packs for his eyes when he saw the nurse three days later.

Liberally construed, the allegations are enough for screening purposes to arguably state that Kirkland's, Brown's, and Davis's use of force was not applied in a good-faith effort to maintain or restore discipline. The allegations also arguably state that Stolk and Jacobs were able to intervene to stop the other officers but refused to do so. The Eighth Amendment excessive force claim can therefore proceed against Kirkland, Brown, Davis, Stolk, and Jacobs.

IV.     **LEAVE TO AMEND**

Because it appears that Jackson may be able to correct the deficiencies of his First Amendment retaliation claim, the Court grants him leave to file a second amended complaint if he can plead true facts to support the claim's missing elements. If Jackson chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc.*, 896 F.2d at 1546. This means Jackson's amended complaint must contain all claims, defendants, and factual allegations that he wishes to pursue in this

7

ER287                          ER287                          ER287

lawsuit, including the claims that the Court allowed to proceed in this order. Jackson should file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be titled "Second Amended Complaint." Jackson must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights.

**V.      MOTION FOR STATUS UPDATE**

What remains is Jackson's motion for a status update, arguing that prison staff might have interfered with his mail from the Court. (ECF No. 5.) The Court expressly informed Jackson when he initiated this action that, "[d]ue to the large number of civil actions pending before the Court," it cannot respond to individual requests for case-status updates. (ECF No. 2 at 2.) The Court cautioned Jackson: "As long as you keep the Court apprised of your current address, you will receive all Court decisions [that] might affect the status of your case." (*Id.*) Jackson's concern that he is not receiving the Court's mail to him is not supported and appears to be unfounded. Indeed, Jackson timely responded to the Court's earlier order in this action. (ECF Nos. 3, 4.) And the Court generally cannot respond to individual requests for case-status updates. Accordingly, Jackson's motion for a status update is denied.

**VI.     CONCLUSION**

It is therefore ordered that a decision on Jackson's application to proceed *in forma pauperis* (ECF No. 4) is deferred.

It is further ordered that the First Amended Complaint (ECF No. 6) is the operative complaint.

It is further ordered that the First Amendment retaliation claim is dismissed without prejudice and with leave to amend.

It is further ordered that the Eighth Amendment excessive force claim can proceed against Kirkland, Brown, Davis, Stolk, and Jacobs.

It is further ordered that the motion for a status update (ECF No. 5) is denied.

8

It is further ordered that Jackson has 30 days from the date of this order to file a second amended complaint.

It is further ordered that if Jackson chooses to file an amended complaint, he should use the approved form and he will title it "Second Amended Complaint." Jackson is advised that the Court will screen the amended complaint in a separate screening order and the screening process will take several months. If Jackson chooses not to file an amended complaint, this action will proceed on only the Eighth Amendment claim about use of excessive force against Kirkland, Brown, Davis, Stolk, and Jacobs.

The Clerk of Court is further directed to (1) add "Kirkland" to the docket as a defendant and (2) send Plaintiff Jackson the approved form for filing a 42 U.S.C. § 1983 complaint, instructions for the same, and a copy of his First Amended Complaint (ECF No. 6).

DATED THIS 6th Day of December 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

9

Tarantae Dai'John Jackson 1186781
Name and Inmate Booking Number

Ely state Prison
Place of Confinement

P.O Box 1989 Ely NV
Mailing Address

Ely NV 89301
City, State, Zip Code

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Tarantae Dai'John Jackson ,
                          Plaintiff

vs.

(1) Sgt Stolk ,

(2) C/O Brown ,

(3) Jacobs, C/O ,

(4) C/O Davis ,

(5) _____ ,
                   Defendant(s).

Case No. _____
(To be supplied by Clerk of Court)

## CIVIL RIGHTS COMPLAINT
## BY AN INMATE

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

☒ Jury Trial Demanded

### A.    JURISDICTION

1)    This Court has jurisdiction over this action pursuant to:

        ☒ 28 U.S.C. § 1343(a)(3); 42 U.S.C. § 1983

        ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)

        ☐ Other: _____

2)    Institution/city where Plaintiff currently resides: Ely state prison

3)    Institution/city where violation(s) occurred: Ely state Prison

**ER290**                **ER290**                **ER290**

## B.     DEFENDANTS

1.  Name of first Defendant: _Sgt Stolk_ . The first Defendant is employed as:
    _Sgt_ at _Ely state Prison_ .
    (Position of Title)                         (Institution)

2.  Name of second Defendant: _Brown_ . The second Defendant is employed as:
    _C/O_ at _Ely state Prisen_ .
    (Position of Title)                         (Institution)

3.  Name of third Defendant: _C/O Jacobs_ . The third Defendant is employed as:
    _C/O_ at _Ely state Prison_ .
    (Position of Title)                         (Institution)

4.  Name of fourth Defendant: _C/O Davis_ . The fourth Defendant is employed as:
    _C/O_ at _Ely State Prison_ .
    (Position of Title)                         (Institution)

5.  Name of fifth Defendant: _____ . The fifth Defendant is employed as:
    _____ at _____ .
    (Position of Title)                         (Institution)

If you name more than five Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C.     NATURE OF THE CASE

Briefly state the background of your case.

2

ER291                    ER291                    ER291

**D. CAUSE(S) OF ACTION**

**CLAIM 1**

1. State the constitutional or other federal civil right that was violated: 1st Amendment Adverse Action retaliation

2. **Claim 1.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

   ☐ Basic necessities　　　☐ Medical care　　　☐ Mail

   ☐ Disciplinary proceedings　☐ Exercise of religion　☐ Property

   ☐ Access to the court　　　☐ Excessive force by officer　☒ Retaliation

   ☐ Threat to safety　　　☐ Other: _____.

3. **Date(s) or date range** of when the violation occurred: DEC 16th, 2022 .

4. **Supporting Facts**: State as briefly as possible the FACTS supporting Claim 1. Describe exactly what **each specific defendant (by name)** did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

DEC 15th 2022 i was sent to Ely Prison For work stoppage & Battery & Placed on lt. R.I.P DEC 16, 2022, around 8 or 9 am sgt stolk get called to my door; asked him when could i get my Property Because its Been well over 72 hours since i last showered. stolk made a smart remark i became mad and called him a female Dog stolk & cert Brown came Back by my door and stated we gone have Kin Beating your ass. However Dec 19th or 20th, 2022 i sent to my HR.P. hearing the warden stated you like grabbing my officers and holding the food Flap & told cert to get me out of his face once in the sally Port sgt stolk walks up to me & stated you like grabbing officers and holding the food Flap nun. & stated i want you to do anything up here and i mean anything we gone Beat your ass. i laughed at officers & asked if i could have my Property stolk stated oh its gone be awhile til you get your Property since you like to Assault staff. However cert DEC 21st 2022 sgt stolk worked that morning and didnt give me my food tray he did some type of clown thing and said i propelled on him the cell i was in, cauldnt throw anything out the side like any other Prison cell door plus i had a red Box on the food Flap to stop me from holding it. i honestly believe stolk did this to have reason to come in my room and have officers Beat me. However cert came Back later that day and Beat me up Both eyes was Black mouth was Bleeding i was later sent down to see nurse & later was handed ice Packs to Place over my eyes NDOC also hes a Policy AR405 that clearly states officers are not allowed to retaliate on inmates OR ABuse us. this hole year i been in Fear for my safety and alot of sleepless nights i have gotten atleast 3 extra doses 3 of my depression meds Pro Zac Because of Being ABused and having Death Threats By NDOC officers. and is currently talen meds to help me sleep. emotionally Depressed

ER292　　　ER292　　　ER292

## CLAIM 2

1. State the constitutional or other federal civil right that was violated: 8th Amendment, cruel unusal Punishment Malicicus and sadistic intent to harm

2. **Claim 2.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

   ☐ Basic necessities          ☐ Medical care          ☐ Mail

   ☐ Disciplinary proceedings   ☐ Exercise of religion  ☐ Property

   ☐ Access to the court        ☒ Excessive force by officer  ☐ Retaliation

   ☐ Threat to safety           ☐ Other: _____.

3. **Date(s) or date range** of when the violation occurred: Dec 21st 2022 _____.

4. **Supporting Facts**: State as briefly as possible the FACTS supporting Claim 2. Describe exactly what **each specific defendant (by name)** did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

Dec 21st 2022 officers used excessive Force on me. They came to my door that day and told me to cuff up i refused to because the last couple months officers has been using excessive force on me while in handcuffs. After refusig to cuff up i went to go lay down on my bed with my hands behind my Back officers then enter my cell Tased me in my Back in my Back office Kirkland did this officer Brown and sgt Davis Hit me in Both eyes and repeated hitting me in my temple For NO reason at all sgt stolk and officer Jacobs was Both present and didnt even attemp to even stop officers from using excessive Force on me Because this was all part of sgt stolk plan to have officers Beat me for the so called propelling on him they own AR-405 policy clearly state staff shall NOT Abuse or punish inmates im so sick of getting Abused and Threatsog to Be killed im in fear For my life and cant even sleep at Because im having Dreams of officers Beating me and Killing me in my sleep emotionally depressed this is my 3rd extra Dose of depressing meds prozac i dent even feel safe By the people who's suppose to protect me my head and eyes and lower Back hurted for weeks after this excessive Force

4

### E. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while incarcerated?     ☒ Yes     ☐ No

2. Has this Court or any other court designated you as subject to "three strikes" under 28 U.S.C. § 1915(g)?     ☐ Yes     ☒ No

3. If you have "three strikes" under 28 U.S.C. § 1915(g), does this complaint demonstrate that you are "under imminent danger of serious physical injury?"     ☐ Yes     ☒ No

### F. REQUEST FOR RELIEF

I believe I am entitled to the following relief: Past Pain & suffering 800,000 mental and emotional Damages ~~correction~~ 7.5 Million

All court costs and fees incurred BY Plaintiff

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____
(name of person who prepared or helped prepare this complaint if not the plaintiff)

Twentue Jackson
(signature of plaintiff)

10-11-23
(date)

### ADDITIONAL PAGES

You must answer all questions concisely in the proper space on the form. Your complaint may not be more than 30 pages long. It is not necessary to attach exhibits or affidavits to the complaint or any amended complaint. Rather, the complaint or any amended complaint must sufficiently state the facts and claims without reference to exhibits or affidavits. If you need to file a complaint that is more than 30 pages long, you must file a motion seeking permission to exceed the page limit and explain the reasons that support the need to exceed 30 pages in length.

6

ER294          ER294          ER294

AARON D. FORD
 Attorney General
RUDOLF M. D'SILVA, Bar No. 16227
 Deputy Attorney General
State of Nevada
1 State of Nevada Way., Suite 100
Las Vegas, Nevada 89119
Tel: (702) 486-3375
Fax: (702) 486-3768
Email: rdsilva@ag.nv.gov

*Attorneys for Defendants*
*Seth Davis, Daniel Jacobs,*
*Michael Stolk and Dent Kirkland*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| TARONTAE JACKSON, | Case No.  3:23-cv-00247-MMD-CSD |
| Plaintiffs, |  |
| v. | **NOTICE OF APPEAL** |
| STOLK, et al., |  |
| Defendants. |  |

Notice is hereby given that Defendants Seth Davis, Daniel Jacobs, Michael Stolk and Dent Kirkland,[1] by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Rudolf M. D'Silva, Deputy Attorney General, pursuant to Fed R. App. P. 3 & 4 and 28 U.S.C. § 1291, appeal to the United States Court of Appeals for the Ninth Circuit the district court's order, filed on October 3, 2025 (ECF No. 63), to the extent it denies Defendants' motion for summary judgment asserting qualified immunity, and any other appealable orders, which were pronounced, filed or entered, whether or not those orders have merged into the judgment.

---

[1] The District Court denied summary judgment against Defendants Madeline Pickens, Shane Brown, and Chet Rigney, denying their entitlement to qualified immunity with respect to Plaintiff's Eighth Amendment excessive force claim. ECF No. 63. To the extent any other Defendant is adversely affected by the judgment of the District Court or any other order in this matter, these Defendants join in this notice of appeal and appeal those orders or judgments.

This Court has jurisdiction because this Notice of Appeal is timely filed within 30 days after entry of the order denying Defendants' motion for summary judgment asserting qualified immunity, which ruling is an immediately appealable judgment, and once appealed divest the district court of jurisdiction.

DATED this 29th day of October 2025.

AARON D. FORD
Attorney General

By:    */s/ Rudolf M. D'Silva*
RUDOLF M. D'SILVA, Bar No. 16227
Deputy Attorney General

*Attorneys for Defendants*

**ER296**                          **ER296** ² 

**ER296**

## CERTIFICATE OF SERVICE

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on October 29, 2025, I electronically filed the foregoing, **NOTICE OF APPEAL**, via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically.

Tarontae Jackson #1186781
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
*Plaintiff, Pro Se*

/s/ Jamile Vazquez
An employee of the
Office of the Nevada Attorney General

**United States District Court**
**District of Nevada (Reno)**
**CIVIL DOCKET FOR CASE #: 3:23-cv-00247-MMD-CSD**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/06/2023 | 1 | MOTION/APPLICATION for Leave to Proceed in forma pauperis by Plaintiff Tarontae D. Jackson. (Attachments: # 1 Complaint)(DRM) (Entered: 06/07/2023) |
| 06/07/2023 | | Case randomly assigned to Chief Judge Miranda M. Du and Magistrate Judge Craig S. Denney. (DRM) (Entered: 06/07/2023) |
| 06/07/2023 | 2 | ADVISORY LETTER to litigant. (DRM) (Entered: 06/07/2023) |
| 07/11/2023 | 3 | ORDER - ECF No. 1 IFP application is **denied** without prejudice. $402 filing fee, or fully complete IFP application due by 9/11/2023. Clerk is directed to send Plaintiff the approved IFP application form for an inmate, and instructions, and to retain the complaint (ECF No. 1 -1) but not file it at this time. **(IFP form and instr attached hereto for distribution to P via ESP law library.)** Signed by Magistrate Judge Craig S. Denney on 7/11/2023. (Attachments: # 1 IFP form and Instructions)(Copies have been distributed pursuant to the NEF - DRM) (Entered: 07/12/2023) |
| 07/24/2023 | 4 | MOTION/APPLICATION for Leave to Proceed in forma pauperis, by Plaintiff Tarontae D. Jackson. (DLS) (Entered: 07/24/2023) |
| 10/10/2023 | 5 | MOTION Status check by Plaintiff Tarontae D. Jackson. Responses due by 10/24/2023. (LG) (misc) (presiding) (Entered: 10/11/2023) |
| 10/16/2023 | 6 | *FIRST* AMENDED COMPLAINT with Jury Demand against Brown, Stolk, Jacobs, Davis, by Tarontae D. Jackson. Adds new parties. (GA) (Entered: 10/16/2023) |
| 12/06/2023 | 7 | SCREENING ORDER - A decision on ECF No. 4 IFP application is deferred. The First Amended Complaint (ECF No. [6]) is the operative complaint. Claims are dismissed with leave to amend, or will proceed, as detailed herein. The motion for a status update (ECF No. 5 ) is **denied**. Jackson has 30 days from the date of this order (1/5/2024) to file a "Second Amended Complaint". The Clerk of Court is further directed to (1) add "Kirkland" to the docket as a defendant and (2) send Plaintiff Jackson the approved form for filing a 42 U.S.C. § 1983 complaint, instructions for the same, and a copy of his First Amended Complaint (ECF No. 6) **(Copy FAC, and 1983 form attached hereto for distribution to P via ESP law library.)** Signed by Chief Judge Miranda M. Du on 12/6/2023. (Attachments: # 1 1983 Form & Instructions, # 2 Copy of FAC for Plaintiff)(Copies have been distributed pursuant to the NEF - DRM) (Entered: 12/07/2023) |
| 12/18/2023 | 8 | MOTION to Proceed on the 8th Amendment Claim Only, by Plaintiff Tarontae D. Jackson. Responses due by 1/1/2024. (DLS) (misc) (nondispositive) (Entered: 12/18/2023) |
| 12/19/2023 | 9 | ORDERED that, Plaintiff's motion to proceed (ECF No. 8 ) is **granted**. Consistent with the Court's screening order (ECF No. 7 ), this action will proceed on only the Eighth Amendment claim about use of excessive force against Kirkland, Brown, Davis, Stolk, and Jacobs This action is **stayed** 90 days to allow parties to settle. 90-day report due by 3/18/2024. If case does not settle, Plaintiff will be required to pay the full filing fee. Clerk is directed to add the Nevada Department of Corrections to the docket as an Interested Party and e-serve a copy of this order, the screening order (ECF No. 7 ), and a copy of Plaintiff's first amended complaint (ECF No. 6 ) on the (E-service 12/19/2023; ECF Nos. 6 , 7 via NEF regeneration.) AG shall advise within 21 days of the date of the entry of this order (1/9/2024) re acceptance of service for the purpose settlement. Signed by Magistrate Judge Craig S. Denney on 12/19/2023. (Copies have been distributed pursuant to the NEF - DRM) (Entered: 12/19/2023) |
| 01/09/2024 | 10 | LIMITED NOTICE of Appearance by attorney Rudolf Moses D'Silva, I on behalf of Interested Party Nevada Department of Corrections. (D'Silva, Rudolf) (Entered: 01/09/2024) |
| 01/09/2024 | 11 | **ORDER Setting Inmate Early Mediation Conference for Tuesday, February 13, 2024, at 1:00 p.m. by video conference before Mediator Cindi Smith.** The parties' mediation statements must be received by the court no later than 4:00 p.m., on Tuesday, January 30, 2024. DO NOT FILE THE MEDIATION STATEMENTS; DO NOT SERVE A COPY ON OPPOSING COUNSEL. See the attached order for specifications. Signed by Magistrate Judge Craig S. Denney on 1/9/2024. (Copies have been distributed pursuant to the NEF - AB) (Entered: 01/09/2024) |
| 01/09/2024 | 12 | Mail Returned as Undeliverable (RTS, not at ESP) re ECF No. 11 Order, addressed to Tarontae D. Jackson. (GA) (Entered: 01/10/2024) |
| 01/10/2024 | 13 | Mail Returned as Undeliverable (RTS, not at ESP) re ECF No. 10 Limited Notice Appearance of Counsel, addressed to Tarontae D. Jackson. (GA) (Entered: 01/10/2024) |
| 01/11/2024 | 14 | ORDER - IT IS THEREFORE ORDERED that Plaintiff will file his updated address with the Court on or before **February 12, 2024**. IT IS FURTHER ORDERED that if Plaintiff fails to timely comply with this order, this case will be subject to dismissal without prejudice. The Clerk of the Court is directed to send Plaintiff Tarontae D. Jackson courtesy copies of this order, the Attorney General's Limited Notice of Appearance (ECF No. 10 ), and the Court's January 9, 2024, Order Setting Inmate Early Mediation Conference (ECF No. 11 ) by sending them to the email address that the Court has for High Desert State Prison (Adhoc to HDSP_LawLibrary@doc.nv.gov on 1/11/2024). Signed by Magistrate Judge Craig S. Denney on 1/11/2024. (Copies have been distributed pursuant to the NEF - DLS) (Entered: 01/11/2024) |
| 01/11/2024 | 15 | Mail Returned as Undeliverable 'RTS, Not at ESP', re ECF No. 14 Order, addressed to Tarontae D. Jackson. (DRM) (Entered: 01/11/2024) |
| 01/18/2024 | 16 | NOTICE of Change of Address by Plaintiff Tarontae D. Jackson. Previous address: ESP; New address: HDSP. (DLS) (Entered: 01/18/2024) |
| 01/24/2024 | 17 | NOTICE of Change of Address by Plaintiff Tarontae D. Jackson. Previous address: HDSP; New address: 1827 West Gowan Apt. 1114, NLV, NV 89032. (DLS) (Entered: 01/24/2024) |
| 01/29/2024 | 18 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Craig S. Denney on 1/29/2024. By Deputy Clerk: AB. The Court is aware that the Plaintiff is no longer incarcerated. Therefore, Mr. Jackson shall contact the Inmate Mediation Coordinator no later than **Tuesday, February 6, 2024**, to discuss the scheduling and logistics of the Inmate Early Mediation scheduled for 2/13/2024 at 1:00 p.m. (ECF No. 11 ). The Inmate Mediation Coordinator, Ashlyn Bye, can be reached at either Ashlyn_Bye@nvd.uscourts.gov or (775) 686-5835. IT IS SO ORDERED. **(no image attached)** (Copies have been distributed pursuant to the NEF - AB) (Entered: 01/29/2024) |
| 02/13/2024 | 19 | MINUTES OF PROCEEDINGS - Virtual Early Mediation Conference held on 2/13/2024 before Mediator Cindi Smith. Crtrm Administrator: *Karen Walker*; Pla Counsel: *Tarontae Jackson, Pro Se*; Def Counsel: *Rudolf D'Silva (NDOC Reps: Nancy Katafias and A.W. Drummond)*; Court Reporter: *Liberty Court Recorder*; Time of Hearing: *1:00 p.m.*; Recording start and end times: *1:22:24 p.m. - 1:24:14 p.m.*; Courtroom: *2*. 1st mediation session. A settlement was NOT reached. **(no image attached)** (Copies have been distributed pursuant to the NEF - KW) (Entered: 02/13/2024) |
| 02/15/2024 | 20 | ORDER - Plaintiff's IFP application for an inmate (ECF No. 4 ) is **denied** as moot. Plaintiff has until **March 18, 2024**, to either file a fully complete IFP application to proceed in forma pauperis for non-inmates or pay the full $402 filing fee. It is further ordered that the Clerk of the Court will send Plaintiff Tarontae Jackson the approved form application to proceed in forma pauperis for non-inmates and the document titled information and instructions for filing an in forma pauperis application. (Mailed 2/15/2024). Signed by Magistrate Judge Craig S. Denney on 2/15/2024. (Copies have been distributed pursuant to the NEF - DLS) (Entered: 02/15/2024) |

| 02/26/2024 | 21 | MOTION/APPLICATION for Leave to Proceed in forma pauperis by Plaintiff Tarontae D. Jackson. (DLS) (Entered: 03/01/2024) |
|---|---|---|
| 02/26/2024 | 22 | NOTICE of Change of Address by Plaintiff Tarontae D. Jackson. Old address: 1827 West Gowan Apt. 1114,North Las Vegas, NV 89032; New address: 292 E. Centennial Pkwy Apt. 5235, Las Vegas, NV 89031. (DLS) (Entered: 03/01/2024) |
| 03/04/2024 | 23 | ORDERED that IFP application (ECF No. 21 ) is **GRANTED**. The Clerk of the Court will electronically SERVE a copy of this order and a copy of Plaintiff's first amended complaint (ECF No. 6 ) on AG by adding the AG to the docket sheet. (E-service 3/4/2024; ECF No. 6 via NEF regeneration.) Service must be perfected within 90 days from the entry date of this order (6/2/2024) consistent with Rule 4(m). Within 21 days of the date of entry of this order (3/25/2024), AG shall file notice re acceptance of service; and file under seal addresses for Ds for which service not accepted. P shall file a motion re unserved Ds. If service accepted answer/response to the first amended complaint within 60 days from the date of this order (5/3/2024). Henceforth P shall serve Ds or Ds' counsel a copy of every pleading submitted for consideration, together with a certificate of service. This case is no longer stayed. Signed by Magistrate Judge Craig S. Denney on 3/4/2024. (Copies have been distributed pursuant to the NEF - DRM) (Entered: 03/04/2024) |
| 03/19/2024 | 24 | Mail Returned as Undeliverable (RTS) re ECF No. 23 Order, addressed to Tarontae D. Jackson. (GA) (Entered: 03/19/2024) |
| 03/25/2024 | 25 | ACCEPTANCE OF SERVICE by Jacobs, Kirkland, Stolk on 3/25/2024 executed by Jacobs, Kirkland, Stolk re 23 Order on Motion/Application to Proceed in forma pauperis,,,,,,,,,. Jacobs accepted service on 3/25/2024, answer due 5/24/2024; Kirkland accepted service on 3/25/2024, answer due 5/24/2024; Stolk accepted service on 3/25/2024, answer due 5/24/2024. (D'Silva, Rudolf) (Entered: 03/25/2024) |
| 05/20/2024 | 26 | NOTICE of Change of Address by Plaintiff Tarontae D. Jackson. Address updated to **1827 W Gowan, Apt 1114, Las Vegas 89032** . (DRM) (Entered: 05/21/2024) |
| 05/24/2024 | 27 | NOTICE of Change of Address by Plaintiff Tarontae D. Jackson. Address updated to **6706 Cinnabar Coast Ln., North Las Vegas, NV 89084** . (DLS) (Entered: 05/28/2024) |
| 05/31/2024 | 28 | ANSWER to 6 Amended Complaint with Jury Demand filed by Jacobs, Kirkland, Stolk. Certificate of Interested Parties due by 6/10/2024. Discovery Plan/Scheduling Order due by 6/30/2024.(D'Silva, Rudolf). NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must immediately file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 05/31/2024) |
| 06/05/2024 | 29 | ORDER SETTING MANDATORY TELEPHONIC CASE MANAGEMENT CONFERENCE - A mandatory telephonic case management conference will be held on **TUESDAY, JULY 9, 2024, at 11:00 a.m.** To join the conference, each party is directed to call the toll-free telephone number **1-888-363-4735**; Access Code: **9235833**; Security Code: **0709**, approximately five (5) minutes prior to the hearing. Each party shall file a case management report no later than **TUESDAY, JULY 2, 2024**. Signed by Magistrate Judge Craig S. Denney on 6/5/2024. (Copies have been distributed pursuant to the NEF - DRM) (Entered: 06/05/2024) |
| 06/27/2024 | 30 | NOTICE of intent to dismiss pursuant to FRCP 4(m). The * amended complaint* in this action was filed on* 10/16/2023.* To date no proper proof of service has been filed as to* Brown, Davis.* FRCP 4(m) dismissal deadline set for 7/27/2024. (WJ) (Entered: 06/27/2024) |
| 07/02/2024 | 31 | CASE MANAGEMENT REPORT by Defendants Jacobs, Kirkland, Stolk. **CONSENT** to jurisdiction of Magistrate Judge is included in the report. (D'Silva, Rudolf) (Entered: 07/02/2024) |
| 07/09/2024 | 32 | MINUTES OF PROCEEDINGS - Telephnic Case Management Conference held on 7/9/2024 before Magistrate Judge Craig S. Denney. Crtrm Administrator: *AB*; Pla Counsel: *Tarontae Jackson, Pro Se*; Def Counsel: *Rudolf D'Silva*; Court Reporter: *Liberty*; Time of Hearing: *11:00 a.m.*; Recording start and end times: *10:58:43 a.m. - 11:04:25 a.m. & 11:05:03 a.m. - 11:22:51 a.m.*; Courtroom: *2*. The Court received and reviewed Defendants' Case Management Report (ECF No. 31 ). The Court did not receive a report from Mr. Jackson and advises him to comply with the Court's Orders. Mr. D'Silva shall file either a notice of acceptance of service or file the last known addresses under seal as to Defendants Brown and Davis on or before **Tuesday, July 16, 2024**. If the Attorney General's Office does not accept service as to Defendants Brown and Davis, Mr. Jackson shall have up to and including **Thursday, August 15, 2024**, to serve them. The Court advises that a Scheduling Order outlining the dates that will govern this action will be issued after today's hearing. The Court discusses the general discovery process, limitations, rules, and deadlines with the parties. The Court explains the benefits of consenting to the jurisdiction of the Magistrate Judge for the entirety of the case. If the parties choose to consent, they shall complete the form and return it to the Clerk's Office for processing.**(no image attached)** (Copies have been distributed pursuant to the NEF - AB) (Entered: 07/09/2024) |
| 07/09/2024 | 33 | SCHEDULING ORDER. Discovery due by 1/6/2025. Dispositive Motions due by 2/5/2025. Proposed Joint Pretrial Order due by 3/7/2025. Signed by Magistrate Judge Craig S. Denney on 7/9/2024. (Copies have been distributed pursuant to the NEF - GA) (Entered: 07/09/2024) |
| 07/09/2024 | 34 | NOTICE PURSUANT TO LOCAL RULE IB 2-2: In accordance with 28 USC § 636(c) and FRCP 73, the parties in this action are provided with a link to the "AO 85 Notice of Availability, Consent, and Order of Reference - Exercise of Jurisdiction by a U.S. Magistrate Judge" form on the Court's website - www.nvd.uscourts.gov. **AO 85 Consent forms should NOT be electronically filed.** Upon consent of all parties, counsel are advised to manually file the form with the Clerk's Office. (A copy of form AO 85 has been mailed to parties not receiving electronic service.) (GA) (Entered: 07/09/2024) |
| 07/16/2024 | 35 | NOTICE *of Under Seal Submission of Last Known Address* by Jacobs, Kirkland, Stolk re 32 Scheduling Conference,,,,,,. (D'Silva, Rudolf) (Entered: 07/16/2024) |
| 07/16/2024 | 37 | ORDER RE: SERVICE OF PROCESS : Clerk shall ISSUE summons for defendants **Seth Davis and Shane Brown**, and deliver to USM, together with copies ECF No. 36 address under seal, ECF No. 6 First Amended Complaint, ECF No. 7 Screening Order and this Order. (Docs emailed to USMS 7/16/2024; Sealed ECF No. 36 sent encrypted.) The court will separately provide to the U.S. Marshal a completed USM 285 form for the Defendants. Plaintiff is reminded that **August 15, 2024**, is the deadline to complete service of process pursuant to Fed. R. Civ. P. 4(m) Signed by Magistrate Judge Craig S. Denney on 7/16/2024. (Copies have been distributed pursuant to the NEF - DRM) (Entered: 07/16/2024) |
| 07/16/2024 | 38 | SUMMONS ISSUED as to Seth Davis and Shane Brown. (Issued and emailed to USMS pursuant to 37 Order. (Attachments: # 1 as to Shane Brown) (DRM) (Entered: 07/16/2024) |
| 07/19/2024 | 39 | NOTICE *of Change of Address* by Davis, Jacobs, Kirkland, Stolk. (D'Silva, Rudolf) (Entered: 07/19/2024) |
| 07/19/2024 | 40 | ACCEPTANCE OF SERVICE by Davis on 7/19/2024 executed by Jacobs, Kirkland, Stolk, Davis. (D'Silva, Rudolf) (Entered: 07/19/2024) |
| 07/22/2024 | 41 | NOTICE: Attorney Action Required to 39 Notice (Other). Attorney Rudolf M. D'Silva advised to review and comply with LR IC 2-1(g) and update your user information account in Pacer/CMECF. **(no image attached)** (WJ) (Entered: 07/22/2024) |
| 08/09/2024 | 42 | SUMMONS Returned Executed re 38 Summons Issued. Shane Brown served on 8/7/2024. (DLS) (Entered: 08/09/2024) |
| 8/13/2024 | 43 | USM - 285/SUMMONS Returned Unexecuted as to Seth Davis. (Does not live at this address - unable to locate. Provide new address.) (GA) (Entered: 08/13/2024) |
| 11/21/2024 | 44 | MOTION re Copies of Documents by Plaintiff Tarontae D. Jackson. Responses due by 12/5/2024. (DLS) (misc) (nondispositive) (Entered: 11/22/2024) |

| | | |
|---|---|---|
| 11/25/2024 | 45 | ORDER - Plaintiff's Motion (ECF No. 44 ) is GRANTED to extent that the Clerk of the Court is directed to send Plaintiff a courtesy copy of ECF Nos. 33, 34, 35, 37, 38, 39, 40, 42, and 43. (Mailed 11/25/2024). Signed by Magistrate Judge Craig S. Denney on 11/25/2024.(Copies have been distributed pursuant to the NEF - DLS) (Entered: 11/25/2024) |
| 12/24/2024 | 46 | NOTICE of Change of Address by Plaintiff Tarontae D. Jackson. Address updated to **HDSP, PO Box 650, Indian Springs, NV 89070-0650** . (HKL) (Entered: 12/27/2024) |
| 01/15/2025 | 47 | MOTION re Discovery by Plaintiff Tarontae D. Jackson. Responses due by 1/29/2025. (DLS) (misc) (discovery) (Entered: 01/15/2025) |
| 01/22/2025 | 48 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Craig S. Denney on 1/22/2025. Documents submitted by: Tarontae Jackson. **REQUEST FOR COPIES** - The fee for the clerk to reproduce documents from an electronic format is $.10 per page. The docket sheets you have requested consist of a total of 14 pages. Please remit $1.40 to U.S. District Court to receive copies of those docket sheets. (**For Distribution by law library.**)(Copies have been distributed pursuant to the NEF - DRM) (Entered: 01/22/2025) |
| 01/30/2025 | 49 | MOTION for Leave to File Document re 47 Motion by Defendants Jacobs, Davis, Kirkland, Stolk. Responses due by 2/13/2025. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(D'Silva, Rudolf) (nondispositive) (Entered: 01/30/2025) |
| 01/30/2025 | 50 | RESPONSE to 47 Motion by Defendants Jacobs, Davis, Kirkland, Stolk. Replies due by 2/6/2025. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(D'Silva, Rudolf) (Entered: 01/30/2025) |
| 02/03/2025 | 51 | STIPULATION FOR EXTENSION OF TIME (First Request) *to Extend Dispositive Motion Deadline and Reopen Discovery* by Defendants Jacobs, Davis, Kirkland, Stolk. (D'Silva, Rudolf) (extend) (discovery) (Entered: 02/03/2025) |
| 02/03/2025 | 52 | AMENDED SCHEDULING ORDER **granting** 51 Stipulation to Reopen Discovery and Resetting Deadlines. Discovery due by **4/4/2025**. Motions due by **5/5/2025**. Proposed Joint Pretrial Order due by **6/4/2025**. Signed by Magistrate Judge Craig S. Denney on 2/3/2025. (**For Distribution by law library.**)(Copies have been distributed pursuant to the NEF - HJ) (Entered: 02/03/2025) |
| 05/05/2025 | 53 | MOTION for Summary Judgment re 52 Order on Motion,, Order on Motion for Leave to File Excess Pages,, Order on Stipulation,, Scheduling Order,, Terminate Motions, by Defendants Jacobs, Davis, Kirkland, Stolk. Responses due by 5/26/2025. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(D'Silva, Rudolf) (Entered: 05/05/2025) |
| 05/05/2025 | 54 | NOTICE of Manual Filing by Defendants Jacobs, Davis, Kirkland, Stolk re 53 Motion for Summary Judgment,,. Object: CD, Volume(s): 1 of 1, Description: video of cell extraction, manually filed with the Clerk's Office. (D'Silva, Rudolf) (Entered: 05/05/2025) |
| 05/06/2025 | 55 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Miranda M. Du on 5/6/2025. Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* as to 53 Motion for Summary Judgment. Opposition due 21 days from the date of this Minute Order, and reply due 14 days after the filing of the opposition. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - DRM) (Entered: 05/06/2025) |
| 05/23/2025 | 56 | RESPONSE/Declaration to 53 Motion for Summary Judgment, by Plaintiff Tarontae D. Jackson. Replies due by 6/6/2025. (GA) (Entered: 05/23/2025) |
| 06/05/2025 | 57 | REPLY to Response to 53 Motion for Summary Judgment,, by Defendants Jacobs, Davis, Kirkland, Stolk. (D'Silva, Rudolf) (Entered: 06/05/2025) |
| 07/17/2025 | 58 | REPORT AND RECOMMENDATION - IT IS HEREBY RECOMMENDED that the District Judge enter an order GRANTING Defendants' motion for summary judgment (ECF No. 53 ). Objections to R&R due by 7/31/2025. Signed by Magistrate Judge Craig S. Denney on 7/17/2025. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - GA) (Entered: 07/17/2025) |
| 08/04/2025 | 59 | MOTION to Extend Time to File Objections re 58 Report and Recommendation, by Plaintiff Tarontae D. Jackson. Responses due by 8/18/2025. (DRM) (objectrr) (Entered: 08/04/2025) |
| 08/05/2025 | 60 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Miranda M. Du on 8/5/2025. Good cause appearing, Plaintiff's Motion to Extend to file Objections to Report and Recommendation (ECF No. 59 ) is granted. Objections to Report and Recommendation (ECF No. 58 ) is due by 8/19/2025. (**no image attached**) (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - KW) (Entered: 08/05/2025) |
| 08/13/2025 | 61 | OBJECTION to 58 Report and Recommendation by Plaintiff Tarontae D. Jackson. Response to Objections to R&R due by 8/27/2025. (GA) (Entered: 08/13/2025) |
| 08/27/2025 | 62 | RESPONSE to 61 Objection to Report and Recommendation by Defendants Jacobs, Davis, Kirkland, Stolk. (D'Silva, Rudolf) (Entered: 08/27/2025) |
| 10/03/2025 | 63 | ORDER - It is therefore ordered that Judge Denney's report and recommendation (ECF No. 58) is rejected. It is further ordered that Defendants' motion for summary judgment (ECF No. 53) is denied. The Court refers this case to Judge Denney to conduct a settlement conference. The proposed joint pretrial order is due 30 days from the settlement conference. Signed by Judge Miranda M. Du on 10/3/2025. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - GA) Modified on 10/6/2025 - Terminated JPO (GA). (Entered: 10/03/2025) |
| 10/06/2025 | 64 | **ORDER setting video Settlement Conference for Thursday, February 5, 2026, at 9:00 a.m. before Magistrate Judge Craig S. Denney.** The settlement conference statements shall be received by the Clerk's Office, 400 S. Virginia Street, Suite 301, not later than Thursday, January 29, 2026, by 4:00 p.m. Signed by Magistrate Judge Craig S. Denney on 10/6/2025. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - AB) (Entered: 10/06/2025) |
| 10/29/2025 | 65 | NOTICE OF APPEAL as to 63 Order on Motion for Summary Judgment,,, Order on Report and Recommendation,,,,, by Defendants Davis, Jacobs, Kirkland, Stolk. Filing fee $ 605, receipt number ANVDC-8232237. E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. Designation of Transcripts and Transcript Order forms and instructions for appeal can be found on the Court's website at www.nvd.uscourts.gov. (D'Silva, Rudolf) (Entered: 10/29/2025) |
| 10/29/2025 | 66 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Craig S. Denney on 10/29/2025. By Deputy Clerk: AB. On October 29, 2025, the Defendants filed a Notice of Appeal (ECF No. 65 ) to District Judge Du's Order (ECF No. 63 ). In light of the pending appeal, the video Settlement Conference set for 2/5/2026 at 9:00 a.m. before Magistrate Judge Craig S. Denney (ECF No. 64 ) is hereby vacated. **IT IS SO ORDERED. (no image attached)** (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - AB) (Entered: 10/29/2025) |
| 10/31/2025 | 67 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Miranda M. Du on 10/31/2025. By Deputy Clerk: Karen Walker.Defendants appeal the part of the Court's order denying summary judgment on qualified immunity (ECF No. 63 ). (ECF No. 65 .) The Court has not certified that Defendants' "claim of qualified immunity is frivolous." See *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). "In the absence of such certification, the district court is automatically divested of jurisdiction to proceed with trial pending appeal." Id. Accordingly, this case is stayed pending resolution of Defendants' appeal. The Court directs the Clerk's Office to administratively close this case pending disposition of Defendants' appeal. (**no image attached**) (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - KW) (Entered: 10/31/2025) |
| 10/31/2025 | 68 | USCA TIME SCHEDULE ORDER and Docketing Notice as to 65 Notice of Appeal. **USCA Case Number 25-6898** assigned. (**For Distribution by law library.**) (Copies have been distributed pursuant to the NEF - GA) (Entered: 10/31/2025) |